UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHRISTOPHER D. SCHNEIDER,

        Plaintiff,

   v.

BANK OF AMERICA N.A., BANK OF AMERICA MORTGAGE, BANK OF AMERICA HOME LOANS SERVICING LP, BALBOA INSURANCE CO., HOME RETENTION GROUP, QUALITY LOAN SERVICE CORP., CLIFF COLER, DOES 1-40,

        Defendants.

            NO. CIV. S-11-2953 LKK/DAD PS

            O R D E R

Plaintiff Christopher Schneider, pro se, files this motion for a temporary restraining order to prevent Defendants from "taking possession of, selling, or showing Plaintiff's home located at 16291 Stone Jug Rd., Sutter Creek, CA 95688." Pl's Mot., ECF No. 9, at 2 (Nov. 14, 2011). Defendant and trustee Quality Loan Service Corp. has set the date for the sale of Plaintiff's property for Friday, November 18, 2011. Id. For the reasons stated herein, the court GRANTS Plaintiff's motion for a temporary restraining

order.

## I.  FACTS

On November 7, 2011, Plaintiff Christopher Schneider filed a complaint against, <u>inter alia</u>, Defendants Bank of America, N.A.; Bank of America Mortgage; Bank of America Home Loan Servicing, L.P.; Balboa Insurance Co.; Home Retention Group; and Quality Loan Service Corp.  Pl's Mot., ECF No. 1.

Plaintiff alleges, <u>inter alia</u>, the following facts.  In 2001, Plaintiff bought the property in dispute in this case, with financing obtained from Bank of America, N.A., in the amount "of or around $132,000 at 8% interest fixed for a term of 30 years, this equated to a monthly payment of $968.57 per month." <u>Id.</u> at 5.

Initially, the loan paperwork required that Plaintiff make two monthly payments: (1) $968.57 per month for the principal and interest; and (2) $57.20 per month for mortgage insurance, as required by law, and paid into an escrow account set up by the lender. <u>Id.</u> at 5-6.  Plaintiff made these monthly payments "until a new appraisal on his property was done in or around November of 2004." <u>Id.</u> at 6.  After reappraisal, Bank of America, N.A., dropped the mortgage insurance required and closed Plaintiff's escrow account, thereby lowering Plaintiff's monthly payments "from $1025.77 to $968.57 for [principal and interest] only, and per the Deed of Trust the monthly payment on the note was to be $968.57 until 02/01/31." <u>Id.</u>

In or around May 2010, Plaintiff received a notice from

2

Defendants that Bank of America Home Loan Servicing, L.P., had not received a copy of Plaintiff's homeowner's insurance policy. Id. Plaintiff argues that, because Defendants, for "the prior 8-9 years," had not asked for copies of the policies, they had not attempted to enforce any of the contract provisions that specified how Plaintiff was to maintain such insurance, and they had not sent him prior notices that they had concerns with the way he insured his property, Defendant's silence constitutes a waiver. Id. In "December 2010, after 6 months continuous effort," Plaintiff received a binding insurance policy, with coverage effective until December 2011. Id. at 7. Plaintiff sent a copy of this policy to Defendants Bank of America, N.A. and Bank of America Home Loan Servicing, L.P., at that time. Id.

Because Plaintiff was uninsured from May to December of 2010, Defendants placed a lender placed policy ("LPP") on his property during that time, which was allegedly cancelled by Defendants in December 2010, but for which Plaintiff was billed "until March 2011." Id. Plaintiff requested details of the LPP that Defendants purchased for his property on his behalf to ensure that Plaintiff was not being held to a different standard in insurance provision than Defendants, and "offered a full tender of the amounts ow[]ed on this LPP," but Defendants "did not respond," and instead, "created an improper and involuntary escrow account and demanded an increase in [Plaintiff's] payment to compensate for their actions." Id. at 7-8.

As a result of the parties' dispute over these insurance

3

funds, and therefore a resulting dispute over Plaintiff's total payments required per month (including the amount of his principal and interest), Defendants, "in or around October 2010," began to refuse payments that the Plaintiff tendered in the amount of $968.57 per month, and instead, "demanded Plaintiff's monthly payment to immediately become $1179.70." See id. at 8; see also Pl's Mot., ECF No. 9, at 4.  Plaintiff then "opened a dispute account under Civil Code § 1500 in the name of the original creditor (Bank of America, N.A.) in order to preserve his rights in this dispute," and has "deposited his monthly payments of $968.57 into that account" since that time. See Pl's Mot., ECF No. 1, at 8.  Plaintiff alleges that (1) he sent Defendants timely monthly notices of such deposits; (2) he made that account and all the amounts in it unconditionally the property of Defendants; and (3) that he made full, proper, and timely tender of payments with the specific intent of performance in full each month. Pl's Mot., ECF No. 9, at 4.

Plaintiff alleges that, even though Defendants had 7 months to object to Plaintiff's account, they "made no such efforts," and now "seek the drastic measure of foreclosure on Plaintiff's home when he is not even late on his payments." Id. at 5.

Now before the court is Plaintiff's motion for a temporary restraining order, filed on November 14, 2011, to prevent Defendants from "taking possession of, selling, or showing Plaintiff's home located at 16291 Stone Jug Rd., Sutter Creek, CA 95688." Id. at 2.  Defendant and trustee Quality Loan Service

4

Corp. has set the date for the sale of Plaintiff's property for Friday, November 18, 2011. Id. In support of his motion for a TRO, Plaintiff has submitted a declaration setting forth his attempts to notify Defendants of his TRO motion. Pl's Decl., ECF No. 7 (Nov. 10, 2011).

## II. STANDARD OF REVIEW FOR FED. R. CIV. P. 65 MOTION FOR A TEMPORARY RESTRAINING ORDER

Fed. R. Civ. P. 65 provides authority to issue either preliminary injunctions or temporary restraining orders. Ordinarily, a plaintiff seeking a preliminary injunction must demonstrate that it is "[1] likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." Am. Trucking Ass'ns v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting Winter v. Natural Res. Def. Council, 129 S. Ct. 365, 374 (2008)). The requirements for a temporary restraining order are largely the same. Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 (9th Cir. 2001); see also Wright and Miller, 11A Fed. Prac. & Proc. Civ. § 2951 (2d ed.). A TRO is an emergency measure, intended to preserve the status quo pending a fuller hearing on the injunctive relief requested.

Courts apply a more stringent standard where an adverse party has not received notice of a motion for a TRO. Specifically, courts may only "issue a temporary restraining order without written or oral notice to the adverse party or its attorney if: [¶] (A)

specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and [¶] (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

## II. Analysis

Plaintiff seeks a temporary restraining order enjoining Defendants' foreclosure of his home loan. Because the foreclosure sale is scheduled for Friday, November 18, 2011, Plaintiff's loss will result before the Defendants can be heard in opposition. Plaintiff, proceeding pro se, has submitted a declaration setting forth his efforts to notify the Defendants of Plaintiff's plans to file a TRO in this case. Although Plaintiff did not receive a response to his efforts to notify the Defendants of his plan to file motion for a TRO in this case, due to the serious risk of loss faced by Plaintiff, and Plaintiff's efforts to notify the Defendant, the court determines that confirmation of the Defendants' receipt of notice is not required in this instance. Thus, these facts satisfy the requirements of Federal Rule of Civil Procedure 65(b)(1).

The balance of equities tip sharply in support of Plaintiff because he will lose his home on November 18, 2011 if a temporary restraining order does not issue. In contrast, defendants will suffer no serious hardship as their security in the home will remain. Similarly, Plaintiff faces irreparable harm of foreclosure

of his home. See, e.g., <u>Sundance Land Corp. v. Community First Federal Sav. & Loan Ass'n.</u>, 840 F.2d 653 (9th Cir. 1988) (loss of real property, because it is unique, is an irreparable injury). Furthermore, the court determines that it is in the public interest to require lenders to comply with existing California statutes enacted to protect homeowners from unnecessary foreclosures. Because each of these elements tip in Plaintiff's favor, Plaintiff must only establish a serious question as to his likelihood of success for the court to issue a TRO.

    Here, Plaintiff has submitted evidence indicating that, per the terms of his initial loan agreement, he has made regular payments of $968.57 directly to Defendants, or to an account opened in Defendant Creditor's name. Plaintiff has also indicated that he has made attempts to pay the initial amount that caused the dispute between the parties--that is, the insurance costs which the Defendants have charged Plaintiff for insurance costs incurred between May and December 2010--but that the Defendants have failed to respond to these inquiries and offers regarding these insurance payments. The court determines that these facts establish a serious possibility that Plaintiff could succeed on the merits of his complaint.

    Accordingly, the court ORDERS as follows:

        [1] Plaintiff's request for a TRO to enjoin the Defendant's foreclosure of Plaintiff's property located at 16291 Stone Jug Rd., Sutter Creek, CA 95688, is GRANTED. This order is issued as of 5:00 p.m. on

November 17, 2011 and will expire fourteen (14) days after its issuance.

[2] Pursuant to Eastern District of California Local Rule 302(c)(21), this case is REFERRED to Magistrate Judge Dale A. Drozd for all further pretrial proceedings.

IT IS SO ORDERED.

DATED: November 17, 2011.

/s/ Lawrence K. Karlton
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT