1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   CHRISTOPHER D. SCHNEIDER,

11          Plaintiff,                Case No. 2:11-cv-2953 LKK DAD PS

12      vs.

13   BANK OF AMERICA N.A., et al.,        <u>ORDER</u>

14          Defendants.

15   _____/

16          This matter came before the court on March 2, 2012, for hearing of defendants'

17   motions to dismiss plaintiff's amended complaint pursuant to Rule 12(b)(6) of the Federal Rules

18   of Civil Procedure and plaintiff's motions for a preliminary injunction and imposition of

19   sanctions.  Plaintiff Christopher Schneider, who is proceeding pro se in this action, appeared on

20   his own behalf.  Attorney Ashley Hennessee appeared on behalf of defendant Quality Loan

21   Service Corporation.  Attorney Tracy Moyer appeared telephonically on behalf of defendants

22   Bank of America, N.A., BAC Home Loan Servicing, LP, and Balboa Insurance Company.  Oral

23   argument was heard, and the parties' motions were taken under submission.

24          Upon consideration of the briefing on file, the parties' arguments at the hearing,

25   and the entire file, defendants' motions to dismiss will be granted, as to plaintiff's federal causes

26   of action.  In this regard, the court finds that plaintiff's amended complaint fails to allege a

1

cognizable claim giving rise to federal jurisdiction.  Without a cognizable federal claim for relief, the court would recommend that the assigned District Judge decline to exercise jurisdiction over plaintiff's remaining state law claims.  Accordingly, the instant order addresses plaintiff's federal causes of action and identifies the deficiencies as those causes of action are alleged in the amended complaint.  However, plaintiff will be given the opportunity to file a second amended complaint in an effort to state a cognizable claim giving rise to federal jurisdiction.[1]

PROCEDURAL BACKGROUND

Plaintiff commenced this action on November 7, 2011, by paying the required filing fee and filing his original complaint.  (Doc. No. 1.)  On November 14, 2011, plaintiff filed a motion for a temporary restraining order.  (Doc. No. 9.)  On November 17, 2011, the assigned District Judge granted plaintiff's motion for a temporary restraining order and enjoined defendants from foreclosing on plaintiff's property.  (Doc. No. 12.)

On November 28, 2011, before a responsive pleading had been filed, plaintiff filed an amended complaint.  (Am. Compl. (Doc. No. 15.))  On November 29, 2011, plaintiff filed a request for an extension of the temporary restraining order and an order to show cause as to why a preliminary injunction should not issue.  (Doc. No. 16.)  On December 1, 2011, the assigned District Judge set a hearing on plaintiff's request for a preliminary injunction for January 17, 2012, and extended the temporary restraining order through the date of that hearing.  (Doc. No. 17.)  On December 19, 2011, plaintiff filed a motion for a preliminary injunction, (Doc. No. 24), and on December 22, 2011, defendants Bank of America, N.A., BAC Home Loan Servicing, LP, and Balboa Insurance Company (collectively "BOA, N.A.") filed a motion to dismiss.  (Doc. No. 26.)  On January 3, 2012, defendant BOA, N.A., filed an opposition to plaintiff's motion for a preliminary injunction, (Doc. No. 30), and that same day plaintiff filed an opposition to defendant BOA, N.A.'s, motion to dismiss.  (Doc. No. 32.)  However, on January

---

[1]  In light of the granting of leave to amend, and without a properly pled federal claim, the court will defer consideration of plaintiff's state law claims at this juncture.

1   12, 2012, the assigned District Judge vacated the January 17, 2012 hearing, and ordered the

2   parties to re-notice their motions before the undersigned.  (Doc. No. 42.)  The assigned District

3   Judge also ordered that the temporary restraining order remain in effect until the hearing before

4   the undersigned on plaintiff's motion for a preliminary injunction.

5          On January 18, 2012, defendant Quality Loan Service Corporation ("Quality

6   Loan") filed a motion to dismiss noticed for hearing before the assigned District Judge, (Doc.

7   No. 46), and then filed an amended motion to dismiss, noticed for hearing before the

8   undersigned.  (Doc. No. 47.)  On January 19, 2012, defendant BOA, N.A., re-noticed their

9   December 22, 2011 motion to dismiss for hearing before the undersigned, (Doc. No. 48), and on

10  January 20, 2012, plaintiff re-noticed his December 19, 2011 motion for a preliminary injunction

11  also for hearing before the undersigned.  (Doc. No. 49.)  That same day, plaintiff filed a motion

12  seeking imposition of sanctions against defendant Quality Loan.  (Doc. No. 51.)  On February 7,

13  2012, defendant Quality Loan filed an opposition to plaintiff's motion for sanctions.  (Doc. No.

14  54.)  On March 2, 2012, the parties came before the undersigned for hearing of their motions.

15                    PLAINTIFF'S FACTUAL ALLEGATIONS

16         In his amended complaint plaintiff alleges that in 2001, he purchased his home

17  with a mortgage obtained from defendant BOA, N.A.  Because plaintiff did not make an initial

18  down payment of 20% or greater, he was required to pay a monthly mortgage insurance premium

19  into an escrow account opened by BOA, N.A., in addition to his regular mortgage payment.

20  However, in November of 2004, plaintiff had his home re-appraised and, as a result, was able to

21  eliminate the mortgage insurance requirement so that he was obligated only for his monthly

22  mortgage payment of $968.57.  Defendant BOA, N.A., closed the escrow account associated with

23  plaintiff's mortgage insurance premium.  (Am. Compl. (Doc. No. 15) at 8.)[2]

24  /////

25  _____

26         [2] Page number citations such as this one are to the page number reflected on the court's
    CM/ECF system and not to page numbers assigned by the parties.

                                        3

1    In May of 2010, plaintiff, for the first time received a notice from defendant BOA,

2   N.A., notifying him that he had failed to provide defendant with a copy of his required

3   homeowner's insurance policy.  (Id. at 9.)  Defendant BOA, N.A., purchased homeowner's

4   insurance on plaintiff's behalf.[3]  On August 17, 2010, plaintiff sent defendant BOA, N.A., a letter

5   requesting a copy of the insurance policy "he was being asked to pay for, so that he could see

6   exactly what was covered and other significant details of it."  (Id. at 10.)  Plaintiff "wished to

7   verify" that the policy purchased by defendant provided the same coverage as the policy plaintiff

8   was being required to purchase, so that there was "no double standards of terms and conditions."

9   (Id.)  Defendant BOA, N.A., did not respond to plaintiff's letter.

10    After receiving defendant's May 2010 letter plaintiff contacted several insurers in

11   an attempt to purchase his own homeowners policy but, for various reasons, was denied

12   coverage.  Finally in December of 2010, plaintiff was able to purchase coverage through the CA

13   Fair Plan, California's insurer of last resort.  Though plaintiff obtained coverage in December of

14   2010, and the insurance purchased by the defendant lender was supposedly canceled that same

15   month, plaintiff received a statement indicating that he continued to be billed for the lender

16   purchased policy until March of 2011.  As a result of these circumstances, plaintiff alleges there

17   is a large credit balance in an escrow account that has not been returned to him.  (Id. at 9-10.)

18    On April 14, 2011, after defendant BOA, N.A., refused to accept plaintiff's

19   mortgage payment, plaintiff opened a disputed escrow account purportedly pursuant to California

20   Civil Code §1500, and deposited his monthly mortgage payment of $968.57 into that account.

21   Plaintiff has since deposited each monthly mortgage payment into this account and has notified

22   defendant BOA of each deposit and the account balance.  (Id. at 11.)

23

24    [3]  Plaintiff alleges that an escrow account was opened in connection with the
homeowner's insurance policy purchased by BOA, N.A.  (Am. Compl. (Doc. No. 15) at 17.)
According to plaintiff, at the time he purchased his home he negotiated an agreement with BOA,

25   N.A., employees Cliff Coler and Susan Birge, so that "absolutely no escrow accounts *ever* for
hazard insurance or property taxes" could be opened, and that this agreement is reflected in his

26   loan documents.  (Id. at 16-17.)

4

1   Defendants did not contact plaintiff regarding the disputed escrow account, but

2   instead alleged that plaintiff had defaulted on his mortgage and sought to foreclose on his home.

3   On November 9, 2011, plaintiff contacted defendant Quality Loan and BOA, N.A., to obtain the

4   amount he allegedly owed, so that he could stop the foreclosure sale scheduled for November 18,

5   2011.  Both defendants told plaintiff that he would have to contact the other defendant to obtain

6   the total amount owed and to stop the foreclosure sale.  (Id. at 12-13.)

7   Based on this conduct, plaintiff alleges federal causes of actions against

8   defendants for violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §

9   2607 et seq., Interpleader, 28 U.S.C. § 1335, the Racketeer Influenced and Corrupt Organizations

10  Act ("RICO"), 18 U.S.C. § 1961 et seq., Bank Fraud, 18 U.S.C. § 1344(2), Wire and Mail Fraud,

11  18 U.S.C. §§ 1341, 1343, and violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §

12  1681 et seq., as well as several state law causes of action.  (Id. at 3.)

13              LEGAL STANDARDS APPLICABLE TO DEFENDANT'S MOTION

14  A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the

15  complaint.  North Star Int'l v. Arizona Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983).

16  Dismissal of the complaint, or any claim within it, "can be based on the lack of a cognizable

17  legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  Balistreri

18  v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  See also Robertson v. Dean Witter

19  Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).  Thus, the court may dismiss a complaint or

20  any claim within it as frivolous where the claim is based on an indisputably meritless legal theory

21  or where the factual contentions are clearly baseless.  Neitzke v. Williams, 490 U.S. 319, 327

22  (1989).  The critical inquiry is whether a claim, even if inartfully pleaded, has an arguable legal

23  and factual basis.  Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989); Franklin v. Murphy,

24  745 F.2d 1221, 1227 (9th Cir. 1984).  As the Supreme Court has explained, in order to state a

25  claim on which relief may be granted, the plaintiff must allege "enough facts to state a claim to

26  relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

1    In determining whether a complaint states a claim, the court accepts as true the

2  material allegations in the complaint and construes those allegations, as well as the reasonable

3  inferences that may be drawn from them, in the light most favorable to the plaintiff.  Erickson v.

4  Pardus, 551 U.S. 89, 94 (2007); Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Hosp. Bldg.

5  Co. v. Trustees of Rex Hosp., 425 U.S. 738, 740 (1976); Love v. United States, 915 F.2d 1242,

6  1245 (9th Cir. 1989).  For purposes of a motion to dismiss, the court also resolves doubts in the

7  plaintiff's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

8    Pro se pleadings are held to a less stringent standard than those drafted by lawyers.

9  Haines v. Kerner, 404 U.S. 519, 520 (1972).  However, the court may disregard allegations in the

10  complaint that are contradicted by facts established by exhibits attached to the complaint.

11  Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).  In addition, the court need

12  not accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of

13  fact.  Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

14                                                       ANALYSIS

15    I. Rule 8

16    The minimum requirements for a civil complaint in federal court are as follows:

17    A pleading which sets forth a claim for relief . . . shall contain (1) a
       short and plain statement of the grounds upon which the court's
18    jurisdiction depends . . . , (2) a short and plain statement of the
       claim showing that the pleader is entitled to relief, and (3) a
19    demand for judgment for the relief the pleader seeks.

20  Fed. R. Civ. P. 8(a).

21    Although the Federal Rules of Civil Procedure adopt a flexible pleading policy, a

22  complaint must give the defendant fair notice of the plaintiff's claims and must allege facts that

23  state the elements of each claim plainly and succinctly.  Fed. R. Civ. P. 8(a)(2); Jones v.

24  Community Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984).  "A pleading that offers 'labels

25  and conclusions' or 'a formulaic recitation of the elements of cause of action will not do.'  Nor

26  does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual

1   enhancements.'" Ashcroft v. Iqbal, 556 U.S. 662, ---, 129 S. Ct. 1937, 1949 (2009) (quoting

2   Twombly, 550 U.S. at 555, 557).  A plaintiff must allege with at least some degree of

3   particularity overt acts which the defendants engaged in that support the plaintiff's claims.

4   Jones, 733 F.2d at 649.  A complaint must also contain "a short and plain statement of the

5   grounds for the court's jurisdiction" and "a demand for the relief sought." Fed. R. Civ. P. 8(a)(1)

6   & 8(a)(3).

7           Here, the amended complaint does not give the defendants fair notice of plaintiff's

8   claims.  In this regard, in his amended complaint plaintiff frequently fails to identify individual

9   defendants when referring to actions allegedly undertaken.  Instead, the amended complaint

10  frequently uses the non-specific identifier "defendants."  For example, plaintiff merely alleges

11  that the "defendants" violated provisions of RESPA, that the "defendants" violated RICO, and

12  that the "[d]efendants collectively" were "'aiding and abetting' each other's unlawful acts . . ."

13  (See Am. Compl. (Doc. No. 15) at 31, 40 and 42.)

14          Nor does plaintiff's amended complaint allege facts that state the elements of his

15  claims plainly or succinctly.  In this regard, while plaintiff's amended complaint provides

16  detailed factual allegations and asserts numerous causes of action, the factual allegations are

17  alleged almost entirely separate from the causes of action, so that it is difficult to determine what

18  factual allegations are intended to support which causes of action.  For example, although

19  plaintiff sets forth a claim for the violation of the FCRA, there are almost no factual allegations

20  stated in connection with that claim.  (Id. at 43.)

21          Below the court will address each of plaintiff's federal causes of action.

22  II.  RESPA

23          "RESPA creates a private right of action for only three types of wrongful acts: (1)

24  payment of a kickback and unearned fees for real estate settlement services, 12 U.S.C. § 2607(a),

25  (b); (2) requiring a buyer to use a title insurer selected by the seller, 12 U.S.C. § 2608(b); and (3)

26  the failure by a loan servicer to give proper notice of a transfer of servicing rights or to respond to

1    a qualified written request ("QWR") for information about a loan, 12 U.S.C. § 2605(f)."

2    Choudhuri v. Wells Fargo Bank, N.A., No. C 11-00518 SBA, 2011 WL 5079480, at *8 (N.D.

3    Cal. Oct. 25, 2011).  In his amended complaint plaintiff alleges that between "August 2010 and

4    October 2011," he sent "roughly 10-15 specific QWR's that have not been responded to . . ."[4]

5    (Am. Compl. (Doc. No. 15) at 31.)

6            Under RESPA, a QWR is a "written request from the borrower (or an agent of the

7    borrower) for information relating to the servicing of such loan."  12 U.S.C. § 2605(e)(1)(A).

8    Among other things, a QWR must include a "statement of the reasons for the belief of the

9    borrower, to the extent applicable, that the account is in error or provides sufficient detail to the

10   servicer regarding other information sought by the borrower."  12 U.S.C. § 2605(e)(1)(B)(ii).  A

11   loan servicer must respond to a QWR only if the information is related to a loan servicing.

12   Cuaresma v. Deustche Bank Nat. Co., No. C-11-03829 RMW, 2011 WL 4727805, at *5 (N.D.

13   Cal. Oct. 7, 2011); Lawther v. Onewest Bank, No. C 10-0054 RS, 2010 WL 4936797, at *6

14   (N.D. Cal. Nov. 30, 2010).  If a loan servicer fails to comply with the provisions of § 2605, a

15   borrower is entitled to any actual damages as a result of the failure.  Id.

16           Although the amended complaint refers to 10-15 QWR's plaintiff allegedly sent,

17   the only alleged QWR's referred to with specificity in the amended complaint are those sent on

18   August 17, 2010 and April 14, 2011.[5]  (Am. Compl. (Doc. No. 15) at 10-11.)  These are also the

19   only alleged QWR's that have been provided by plaintiff as exhibits to his amended complaint.

20   (Ex. Index (Doc. No. 15-1) at 31, 33.)

21   /////

22

23           [4]  Although plaintiff has alleged this claim against "all defendants" the allegations
     underlying this claim do not refer to defendant Quality Loan.
24

25           [5]  The amended complaint does not even refer to these two QWR's in plaintiff's RESPA
     claim, but instead discusses them in a lengthy section of the amended complaint designated
     "BACKGROUND FACTS COMMON TO ALL CAUSES OF ACTION."  (Am. Compl. (Doc.
26   No. 15) at 7.)

1          Morever, plaintiff's amended complaint does not allege what actual damages he

2   suffered as a result of the alleged failure to respond.  Instead the amended complaint merely

3   asserts in a conclusory manner that defendants' conduct "caused Plaintiff actual damages."  (Am.

4   Compl. (Doc. No. 15-1) at 31.)  "At the pleading stage, the plaintiff must include a

5   demonstration of some actual pecuniary loss and a causal relationship between the alleged

6   damages and the RESPA violation."  Cuaresma v. Deustche Bank Nat. Co., No. C-11-03829

7   RMW, 2011 WL 4727805, at *5 (N.D. Cal. Oct. 7, 2011).  See also Hussein v. Wells Fargo

8   Bank, No. CIV S-11-1023 KJM DAD (TEMP) PS, 2011 WL 2215815, at *3 (E.D. Cal. June 6,

9   2011) (recommending dismissal of RESPA claim, in part, because plaintiff failed "to allege what

10  actual damages he suffered as a result of the alleged failure to respond to the QWR."); Padilla v.

11  One West Bank, No. 10-04080 CW, 2010 WL 5300900, at *6 (N.D. Cal. Dec. 20, 2010) ("The

12  plaintiff must include, at the pleading state, a demonstration of some actual pecuniary loss.");

13  Farias v. FCM Corp., Civil No. 10cv260 L(CAB), 2010 WL 4806894, at *3 (S.D. Cal. Nov. 18,

14  2010) ("Under section 2605(f)(1), plaintiff must, at a minimum, allege the 'actual damages' he

15  suffered as a result of Litton's failure to respond to his QWR.").

16         Finally, the amended complaint also alleges that "defendants" have violated

17  various subsections of 12 U.S.C. § 2609.  (Am. Compl. (Doc. No. 15) at 32.)  While a lender

18  who violates 12 U.S.C. § 2609 is subject to imposition of penalties by the Secretary of Housing

19  and Urban Development, there is no private right of action under 12 U.S.C. § 2609.  See Hardy

20  v. Regions Mortg. Inc., 449 F.3d 1357, 1360 (11th Cir. 2006); Choudhuri v. Wells Fargo Bank,

21  N.A., No. C 11-00518 SBA, 2011 WL 5079480, at *8 (N.D. Cal. Oct. 25, 2011); Benas v. Shea

22  Mortg. Inc., No. 11cv1461-IEG (BGS),  2011 WL 4635645, at *4 (S.D. Cal. Oct. 4, 2011);

23  Birkholm v. Washington Mut. Bank, F.A., 447 F. Supp.2d 1158, 1163 (W.D. Wash. 2006).

24         For these reasons, the court concludes that plaintiff has yet to state a cognizable

25  claim under RESPA.

26  /////

III. <u>Interpleader</u>

Plaintiff's amended complaint also alleges a cause of action for "Interpleader" pursuant to 28 U.S.C. § 2361.  (Am. Compl. (Doc. No. 15) at 34.)  28 U.S.C. § 2361, however, does not provide a cause of action, but instead provides that:

> In any civil action of interpleader or in the nature of interpleader under section 1335 of this title, a district court may issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court. Such process and order shall be returnable at such time as the court or judge thereof directs, and shall be addressed to and served by the United States marshals for the respective districts where the claimants reside or may be found.
>
> Such district court shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment.

28 U.S.C. § 2361.

In turn, § 1335 provides that:

> The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more, or having issued a note, bond, certificate, policy of insurance, or other instrument of value or amount of $500 or more, or providing for the delivery or payment or the loan of money or property of such amount or value, or being under any obligation written or unwritten to the amount of $500 or more, if
>
> > (1) Two or more adverse claimants, of diverse citizenship as defined in subsection (a) or (d) of section 1332 of this title, are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation; and if (2) the plaintiff has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court, there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and

10

1     with such surety as the court or judge may deem
    proper, conditioned upon the compliance by the
2     plaintiff with the future order or judgment of the
    court with respect to the subject matter of the
3     controversy.

4     (b) Such an action may be entertained although the
    titles or claims of the conflicting claimants do not
5     have a common origin, or are not identical, but are
    adverse to and independent of one another.

6

7 28 U.S.C.A. § 1335.

8         Here, the import of these statutes is not apparent from plaintiff's amended

9 complaint.

10     IV.  RICO

11         Plaintiff's amended complaint also attempts to allege a civil RICO claim.  (Am.

12 Compl. (Doc. No. 15) at 40.)  To state a civil RICO claim, a plaintiff must allege: (1) conduct,

13 (2) of an enterprise, (3) through a pattern, (4) of racketeering activity (known as "predicate acts"),

14 (5) causing injury to plaintiff's business or property.  Sanford v. Memberworks, Inc., 625 F.3d

15 550, 557 (9th Cir. 2010); Walter v. Drayson, 538 F.3d 1244, 1247 (9th Cir. 2008); Grimmett v.

16 Brown, 75 F.3d 506, 510 (9th Cir. 1996).  The alleged enterprise must exist "separate and apart

17 from that inherent in the perpetration of the alleged [activity]."  Chang v. Chen, 80 F.3d 1293,

18 1300-01 (9th Cir. 1996).  A "pattern of racketeering activity" means at least two criminal acts

19 enumerated by statute.  18 U.S.C. § 1961(1), (5) (including, among many others, mail fraud, wire

20 fraud, and financial institution fraud).  These so-called "predicate acts" under RICO must be

21 alleged with specificity in compliance with Rule 9(b).  Schreiber Distrib. Co. v. Serv-Well

22 Furniture Co., 806 F.2d 1393, 1400-01 (9th Cir. 2004); see also Lancaster Community Hospital

23 v. Antelope Valley Hospital Dist., 940 F.2d 397, 405 (9th Cir. 1991) (holding with respect to the

24 predicate act of mail fraud that a plaintiff must allege with "particularity the time, place, and

25 manner of each act of fraud, plus the role of each defendant in each scheme"); Alan Neuman

26 Productions, Inc. v. Albright, 862 F.2d 1388, 1392-93 (9th Cir. 1988); Pineda v. Saxon Mortgage

1   Services, No. SACV 08-1187 JVS (ANx), 2008 WL 5187813, at *4 (C.D. Cal. Dec. 10, 2008)

2   ("It is not enough for [plaintiff] to rely on mere labels and conclusions" to establish a RICO

3   claim but rather, plaintiff must give each defendant notice of the particular predicate act it

4   participated in and must allege each predicate act with specificity).[6]

5          Here, the allegations of the amended complaint with respect to a civil RICO claim

6   are inadequate.  Plaintiff offers no factual allegations in support of his civil RICO claim, let alone

7   specific facts sufficient to meet the heightened pleading requirements applicable to fraud claims

8   under Rule 9(b).  Instead, the amended complaint offers mere conclusory allegations, such as that

9   "on, around, or after January 2001," defendants participated in "fraud(s), conspiracy(s), extorion,

10  and interstate scheme which has proximately caused injuries and damages to Plaintiff."  (Am.

11  Compl. (Doc. No. 15) at 40.)  Also deficient are plaintiff's allegations that each defendant is "an

12

13      [6] Plaintiff is advised that his various fraud claims are also subject to the specificity
    requirements of Rule 9.  In this regard, when claims of fraud are raised, "the circumstances
    constituting fraud . . . shall be stated with particularity." Fed. R. Civ. P. 9(b).  "Rule 9(b) serves
14  not only to give notice to defendants of the specific fraudulent conduct against which they must
    defend, but also 'to deter the filing of complaints as a pretext for the discovery of unknown
15  wrongs, to protect [defendants] from the harm that comes from being subject to fraud charges,
    and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society
16  enormous social and economic costs absent some factual basis.'"  Bly-Magee v. California, 236
    F.3d 1014, 1018 (9th Cir. 2001) (quoting In re Stac Elec. Sec. Litig., 89 F.3d 1399, 1405 (9th
17  Cir. 1996)).  Pursuant to Rule 9(b), a plaintiff alleging fraud at a minimum must plead
    evidentiary facts such as the time, place, persons, statements and explanations of why allegedly
18  misleading statements are misleading.  In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1547 n.7
    (9th Cir. 1994); see also Fecht v. Price Co., 70 F.3d 1078, 1082 (9th Cir. 1995).  Likewise,
19  "[u]nder California law, the 'indispensable elements of a fraud claim include a false
    representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages.'"
20  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1105 (9th Cir. 2003) (quoting Moore v.
    Brewster, 96 F.3d 1240, 1245 (9th Cir. 1996)).  Circumstances that must be stated with
21  particularity pursuant to Rule 9(b) include the "time, place, and specific content of the false
    representations as well as the identities of the parties to the misrepresentations."  Sanford v.
22  Memberworks, Inc., 625 F.3d 550, 558 (9th Cir. 2010) (quoting Edwards v. Marin Park, Inc., 356
    F.3d 1058, 1066 (9th Cir. 2004)).  See also Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir.
23  2007); Miscellaneous Serv. Workers, Drivers & Helpers v. Philco-Ford Corp., 661 F.2d 776, 782
    (9th Cir. 1981) (affirming district court's dismissal of the plaintiffs' deceit and misrepresentation
24  claims where plaintiffs failed to allege with sufficient particularity the content of the false
    representations and identities of the parties to the misrepresentations).  "In the context of a fraud
25  suit involving multiple defendants, a plaintiff must, at a minimum, 'identif[y] the role of [each]
    defendant[ ] in the alleged fraudulent scheme.'"  Swartz, 476 F.3d at 765 (quoting Moore v.
26  Kayport Package Express, 885 F.2d 531, 541 (9th Cir. 1989)).

1  'enterprise defendant,'" and that any reference to "any act of any Defendants . . . shall mean that

2  each Defendant acted individually and jointly with other Defendants." (Id.)  As noted above,

3  predicate acts must be alleged specifically and in relation to each defendant's particular, alleged

4  illegal conduct.  Plaintiff's amended complaint fails to set forth these specifics.

5        V.  Bank, Wire and Mail Fraud

6            Plaintiff's amended complaint also alleges causes of action for bank fraud (18

7  U.S.C. § 1344(2)), wire fraud (18 U.S.C. § 1343), and mail fraud (18 U.S.C. § 1341).[7]  (Am.

8  Compl. (Doc. No. 15) at 41-42.)  These provisions, however, are criminal statutes that do not

9  provide a private cause of action or a basis for civil liability.[8]  See Ellis v. City of San Diego, 176

10  F.3d 1183, 1189 (9th Cir. 1999) (affirming district court's dismissal of sixteen claims based on

11  California Penal Code sections because "these code sections do not create enforceable individual

12  rights"); Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980) (holding that criminal statutes

13  18 U.S.C. §§ 241 and 242 "provide no basis for civil liability"); see also Aguirre v. Cal-Western

14  Reconveyance Corp., No. CV 11-6911 CAS (AGRx), 2012 WL 273753, at *10 (C.D. Cal. Jan.

15  30, 2012) ("The mail fraud statute, 18 U.S.C. § 1341, is a criminal statute and does not provide

16  for a private right of action."); Cobb v. Brede, No. C 10-03907 MEJ, 2012 WL 33242, at *2

17  (N.D. Cal. Jan. 6, 2012) ("The Court assumes that Plaintiffs are referring to 18 U.S.C. §§ 1341

18  and 1343, which are the federal criminal statutes for mail and wire fraud.  These criminal

19  statutes, however, do not provide litigants with a private right of action."); Milgrom v. Burstein,

20  374 F. Supp.2d 523, 528-29 (E.D. Ky. 2005) (finding "no cognizable civil action flowing from

21

---

22      [7]  Though the amended complaint sets forth the bank fraud cause of action separately

23  from the causes of action for wire and mail fraud, all of these causes of action suffer from the
same defects and will therefore be addressed together.

24      [8]  Plaintiff concedes in his opposition to BOA, N.A.'s motion to dismiss that "there is no
independent private right of action when alleged as separate causes of action" and that

25  "[d]ismissal is thus proper as separate causes" of action.  (Pl.'s Opp.'n to BOA, N.A. MTD (Doc.
No. 32) at 13.)  In the event plaintiff chooses to file a second amended complaint, he should not

26  re-allege these causes of action.

1    the bank fraud statutes . . . 18 U.S.C. §§ 1344 and 1014.").[9]

2        VI.   FCRA

3            Finally, the amended complaint alleges a cause of action based upon a violation of

4    the "FCRA." (Am. Compl. (Doc. No. 15) at 43.)  Specifically, plaintiff alleges that the

5    "[d]efendants wrongfully, improperly and illegally reported negative information" about plaintiff

6    to one of more credit reporting agencies.  (Id.)  Accordingly, plaintiff alleges that he is entitled to

7    maintain a private cause of action against defendants pursuant to 15 U.S.C. §1681(s)-2(b).  (Id.)

8            Subsection 1681s-2(b) provides that, after receiving a notice of
          dispute, the furnisher [of credit information to a consumer
9           reporting agency ("CRA")] shall:

10                   (A) conduct an investigation with respect to the
                   disputed information;
11
                   (B) review all relevant information provided by the
12                   [CRA] pursuant to section 1681i(a)(2) ...;

13                   (C) report the results of the investigation to the
                   [CRA];
14
                   (D) if the investigation finds that the information is
15                   incomplete or inaccurate, report those results to all
                   other [CRAs] to which the person furnished the
16                   information ...; and

17                   (E) if an item of information disputed by a
                   consumer is found to be inaccurate or incomplete or
18                   cannot be verified after any reinvestigation under
                   paragraph (1) ... (i) modify ... (ii) delete[or] (iii)
19                   permanently block the reporting of that item of
                   information [to the CRAs].
20

21    Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1154 (9th Cir. 2009).  However, "[t]hese

22    obligations are triggered 'upon notice of dispute'–that is, when a person who furnished

23

24            [9]  Moreover, even if a private right of action was created by these statues, plaintiff's
     claims would be subject to dismissal for failing to meet the particularity requirements of Rule
25   9(b) as noted above.  See Vess, 317 F.3d at 1106 ("Averments of fraud must be accompanied by
     'the who, what, when, where, and how' of the misconduct charged.") (quoting Cooper v. Pickett,
26   137 F.3d 616, 627 (9th Cir. 1997)).

1   information to a [credit reporting agency] receives notice from the [credit reporting agency] that

2   the consumer disputes the information."  Id.

3           Here, while the amended complaint does allege that "[d]efendants qualified as a

4   provider of information to the credit reporting agencies," it is not alleged that plaintiff submitted

5   to either defendant a notice of dispute.[10]  (Am. Compl. (Doc. No. 15) at 43.)  Accordingly,

6   plaintiff has failed to state a cognizable FCRA claim.  See Cross v. Wells Fargo Bank, N.A., No.

7   CV11-00447 AHM (OPx), 2011 WL 6136734, at *8-9  (C.D. Cal. Dec. 9, 2011) ("Plaintiffs fail

8   to state a claim under these sections because they do not allege that they disputed their credit

9   ratings with any credit reporting agencies and do not allege that any agency subsequently notified

10  Defendant of any such dispute."); Zirelli v. BAC Home Loan Servicing, L.P., No. 2:11-cv-

11  00305-GEB-DAD, 2011 WL 6100442, at *4 (E.D. Cal. Dec. 7, 2011) (dismissing FCRA claim

12  where plaintiff failed to "allege that he disputed any negative information with a CRA or that

13  notice of such dispute was provided to any Defendant."); Von Brincken v. Mortgageclose.Com,

14  Inc., No. 2:10-CV-2153-JAM-KJN, 2011 WL 2621010, at *5 (E.D. Cal. June 30, 2011) ("to

15  succeed on such a claim, a plaintiff must allege that she had a dispute with a credit reporting

16  agency regarding the accuracy of an account, that the credit reporting agency notified the

17  furnisher of the information, and that the furnisher failed to take the remedial measures outlined

18  in the statute.").

19                              LEAVE TO AMEND

20          For the reasons explained above, defendants' motions to dismiss plaintiff's claims

21  giving rise to federal jurisdiction will be granted.

22          The court has carefully considered whether plaintiff may further amend his

23  complaint to state a federal claim upon which relief can be granted.  "Valid reasons for denying

24

25          [10]  Plaintiff concedes in his opposition to BOA, N.A.'s motion to dismiss that he "may not
    have properly pled this cause" of action.  (Pl.'s Opp.'n to BOA, N.A.'s MTD (Doc. No. 32) at

26  14.)

1  leave to amend include undue delay, bad faith, prejudice, and futility." California Architectural

2  Bldg. Prod. v. Franciscan Ceramics, 818 F.2d 1466, 1472 (9th Cir. 1988).  See also Klamath-

3  Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau, 701 F.2d 1276, 1293 (9th Cir. 1983) (holding

4  that while leave to amend shall be freely given, the court does not have to allow futile

5  amendments).  However, when evaluating the failure to state a claim, the complaint of a pro se

6  plaintiff may be dismissed "only where 'it appears beyond doubt that the plaintiff can prove no

7  set of facts in support of his claim which would entitle him to relief.'"  Franklin v. Murphy, 745

8  F.2d 1221, 1228 (9th Cir. 1984) (quoting Haines v. Kerner, 404 U.S. 519, 521 (1972).  See also

9  Weilburg v. Shapiro, 488 F.3d 1202, 1205 (9th Cir. 2007) ("Dismissal of a pro se complaint

10  without leave to amend is proper only if it is absolutely clear that the deficiencies of the

11  complaint could not be cured by amendment.") (quoting Schucker v. Rockwood, 846 F.2d 1202,

12  1203-04 (9th Cir. 1988)).

13          Here, the court cannot say that it is now beyond doubt that leave to amend would

14  be futile.  Plaintiff's amended complaint will therefore be dismissed, and he will be granted leave

15  to file a second amended complaint.  Plaintiff is cautioned however that, if he elects to file a

16  second amended complaint, "the tenet that a court must accept as true all of the allegations

17  contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements

18  of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal,

19  556 U.S.662, ---, 129 S. Ct. 1937, 1949 (2009).  "While legal conclusions can provide the

20  complaint's framework, they must be supported by factual allegations." Id. at 1950.  Those facts

21  must be sufficient to push the claims "across the line from conceivable to plausible[.]"  Id. at

22  1951 (quoting Twombly, 550 U.S. at 557).

23          Plaintiff is also instructed that the court cannot refer to a prior pleading in order to

24  make an amended complaint complete.  Local Rule 220 requires that any amended complaint be

25  complete in itself without reference to prior pleadings.  Any second amended complaint will

26  supersede the both the original and the amended complaint.  See Loux v. Rhay, 375 F.2d 55, 57

(9th Cir. 1967).  Thus, in a second amended complaint, just as if it were the initial complaint filed in the case, each defendant must be listed in the caption and identified in the body of the complaint, and each claim and the involvement of each defendant must be sufficiently alleged. Plaintiff's second amended complaint must include concise but complete factual allegations describing the conduct and events which underlie his claims.  Finally, if plaintiff elects to file a second amended complaint in an attempt to cure the deficiencies noted above, he should take heed of the court's analysis set forth in this order and neither include causes of action nor name defendants in a manner inconsistent with that analysis.

PRELIMINARY INJUNCTION

With respect to plaintiff's motion for a preliminary injunction, "injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008).  "The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'"  Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting Winter, 555 U.S. at 20); see also Center for Food Safety v. Vilsack, 636 F.3d 1166, 1172 (9th Cir. 2011) ("After Winter, 'plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction."); Am. Trucking Ass'n, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009).  The Ninth Circuit has also held that "[a] preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (quoting Lands

/////

/////

/////

1    Council v. McNair, 537 F.3d 981, 97 (9th Cir. 2008) (en banc)).[11]

2          As discussed above, plaintiff's amended complaint will be dismissed for failure to

3    state a claim upon which relief can be granted.  For this reason, there is at this time no likelihood

4    that plaintiff will succeed on the merits of the claims alleged in his amended complaint.

5    However, he will be granted leave to file a second amended complaint.  Accordingly, plaintiff's

6    motion for a preliminary injunction will be denied at this time without prejudice to refiling.  In

7    addition, as noted above, plaintiff was previously granted a temporary restraining order.  "The

8    purpose in issuing a temporary restraining order is to preserve the status quo pending a fuller

9    hearing."  Wilson v. Tilton, No. 2:07-cv-1192 GEB DAD (PC), 2012 WL 43615, at *1 (E.D. Cal.

10   Jan. 9, 2012).  "In many cases the emphasis of the court is directed to irreparable harm and the

11   balance of hardships because the merits of a controversy are often difficult to ascertain and

12   adjudicate on short notice."  (Id.)

13         Here, while the merits of this controversy are difficult to ascertain at this early

14   stage of the proceedings, it appears that plaintiff would suffer irreparable harm if the temporary

15   restraining order expired before it was determined whether he could state a cognizable federal

16   claim.  Because under these circumstances the balance of hardships tips in plaintiff's favor, the

17   temporary restraining order previously granted by the assigned District Judge will remain in

18   place until plaintiff has filed an amended complaint that states cognizable claims or this matter is

19   dismissed.

20                          MOTION TO RECORD LIS PENDENS

21         Plaintiff has also filed an ex parte motion for approval of filing a notice of lis

22   pendens.  (Doc. No. 6.)

23   _____

24   [11]   The Ninth Circuit has found that this "serious question" version of the circuit's sliding
     scale approach survives "when applied as part of the four-element Winter test."  Alliance for

25   Wild Rockies v. Cottrell, 632 F.3d 1127, 1134 (9th Cir. 2011).  "That is, 'serious questions going
     to the merits' and a balance of hardships that tips sharply towards the plaintiff can support

26   issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood
     of irreparable injury and that the injunction is in the public interest."  Id. at 1135.

"A lis pendens is a recorded document giving constructive notice that an action has been filed affecting right or title to possession of the real property described in the notice." Pedersen v. Greenpoint Mortgage Funding, Inc., No. S-11-0642 KJM EFB, 2011 WL 3818560, at * 22 (E.D. Cal. Aug. 29, 2011).  California Code of Civil Procedure § 405.20 provides that a party to an action who asserts a real property claim may record a notice of pendency of action in the office of the recorder of each county in which all or part of the real property is situated. However, under California Code of Civil Procedure § 405.21, "[t]he only way an individual in pro per can record a notice of pendency of action is with the approval of a judge." Wolf v. Wells Fargo Bank, N.A., No. C11-01337 WHA, 2011 WL 4595012, at *2 (N.D. Cal. Oct. 4, 2011). See also Orcilla v. Bank of America, N.A., No. C10-03931 HRL, 2011 WL 1113549, at *1 (N.D. Cal. Mar. 25, 2011) ("On February 25, 2011, this Court approved Plaintiffs' notice of lis pendens pursuant to Cal. Code Civ. Proc. § 405.21"); Costner v. MRA Funding Corp., No. CV 09-649 PSG (EX), 2009 WL 1106815, at *1 (C.D. Cal. Apr. 23, 2009) ("For instance, although not raised by Empire Mortgage X, because Costner is proceeding pro se, she was required to obtain the Court's approval before recording the Notice of Lis Pendens.  Cal. Civ. Proc. Code § 405.21. This she failed to do, thus making the recording improper."); Helppi v. Bowman, No. C 07-0853, 2007 WL 1521570, at *1 (N.D. Cal. May 23, 2007) ("Without regard to the conclusion expressed above that there presently is no right to record notice of this action, there is no dispute that California Civil Code section 405.21 prohibits the recording of a notice of pending action by a party appearing in pro se unless it has been 'approved by a judge.'").

Pursuant to California Code of Civil Procedure § 405.4, a "'[r]eal property claim' means the cause or causes of action in a pleading which would, if meritorious, affect (a) title to, or the right to possession of, specific real property or (b) the use of an easement identified in the pleading . . . " As noted above, plaintiff's amended complaint will be dismissed with leave to amend.  Accordingly, there is currently no pending cause of action which would, if meritorious, affect title to or the right to possession of specific real property.  Moreover, the court has ordered

that the previously issued temporary restraining order preventing a foreclosure sale remain in place. For all of these reasons, plaintiff's ex parte motion for approval of filing a notice of lis pendens will be denied without prejudice. See Austero v. Aurora Loan Services, Inc., No. C-11-00490 JCS, 2011 WL 1585530, at *13 (N.D. Cal. Apr. 27, 2011) ("Because the Court has dismissed Plaintiffs' case, the Court cannot determine whether Plaintiffs will be able to satisfy the requirements for lis pendens, i.e., the probable validity of the claims. The Plaintiffs' lis pendens application is DENIED WITHOUT PREJUDICE.").

MOTION FOR SANCTIONS

Plaintiff has filed a motion seeking the imposition of sanctions pursuant to Rule 11 of Federal Rules of Civil Procedure against defendant Quality Loan, its corporate counsel, Renee De Golier, and its foreclosure legal liaison, Bounlet Louvan. (Mot. for Sanctions (Doc. No. 51) at 1.) Therein, plaintiff argues that the identified parties filed a knowingly false declaration of nonmonetary status on December 12, 2011. (Id. at 4.) In this regard, plaintiff argues that because the temporary restraining order he filed alleged that it arose "out of acts or omission" on the part of defendant Quality Loan "in the performance of its duties as trustee," defendant Quality Loan's declaration of nonmonetary status filed with the court was knowingly false. (Id. at 6.)

In relevant part, Federal Rule of Civil Procedure 11 provides:

(b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper–whether by signing, filing, submitting, or later advocating it–an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

> (3) the factual contentions have evidentiary support
> or, if specifically so identified, will likely have
> evidentiary support after a reasonable opportunity
> for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted
> on the evidence or, if specifically so identified, are
> reasonably based on belief or a lack of information.

(c) Sanctions.

> (1) In General.  If, after notice and a reasonable
> opportunity to respond, the court determines that
> Rule 11(b) has been violated, the court may impose
> an appropriate sanction on any attorney, law firm, or
> party that violated the rule or is responsible for the
> violation.  Absent exceptional circumstances, a law
> firm must be held jointly responsible for a violation
> committed by its partner, associate, or employee.

Fed. R. Civ. P. 11(b)-(c)(1).  "[T]he central purpose of Rule 11 is to deter baseless filings in district court and . . . streamline the administration and procedure of the federal courts."  Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990).

Here, the filing at issue is defendant Quality Loan's December 12, 2011, declaration of nonmonetary status.  (Doc. No. 23.)  Therein, defendant Quality Loan asserted that it believed that it had been named in this action solely in its capacity as Trustee under the Deed of Trust.  (Id. at 2.)  Under California law, a trustee under a deed of trust that "maintains a reasonable belief that it has been named in the action or proceeding solely in its capacity as trustee, and not arising out of any wrongful acts or omissions on its part in the performance of its duties as trustee, . . . may file a declaration of nonmonetary status."  Cal. Civ. Code § 2924l(a). If a plaintiff does not object timely to a trustee's filing of such a declaration, "the trustee shall not be required to participate any further in the action or proceeding."  Id. § 2924l(d).  However, in "the event of a timely objection to the declaration of nonmonetary status, the trustee shall thereafter be required to participate in the action or proceeding."  Id. § 2924l(e).

In this regard, it appears clear that defendant's filing was authorized and not submitted for any purpose inconsistent with Rule 11.  See generally Smith v. Quality Loan

1   Service Corp., No. Civ S-11-2108 KJM-EFB, 2012 WL 202055, at *2-*3 (E.D. Cal. Jan. 23,

2   2012) (discussing defendant's filing of declaration of nonmonetary status).  Moreover, on

3   January 3, 2012, plaintiff filed his objection to defendant's declaration of nonmonetary status,

4   (Doc. No. 29), and defendant Quality Loan has since participated in these proceedings by filing a

5   motion to dismiss.  (Doc. No. 47.)[12]

6           For these reasons, plaintiff's motion for the imposition of sanctions will be

7   denied.

8                                  CONCLUSION

9           Accordingly, IT IS HEREBY ORDERED that:

10          1.  Plaintiff's November 8, 2011 ex parte motion for approval of filing lis pendens

11  (Doc. No. 6) is denied without prejudice;

12          2.  Plaintiff's December 19, 2011 motion for a preliminary injunction (Doc. No.

13  24), re-noticed before the undersigned on January 20, 2012, (Doc. No. 49) is denied without

14  prejudice;

15          3.  The temporary restraining order previously granted by the assigned District

16  Judge will remain in effect, absent further order of the court, until plaintiff has filed an amended

17  complaint found to state a cognizable claim or this matter is dismissed;

18          4.  Defendant BOA, N.A.'s December 22, 2011 motion to dismiss (Doc. No. 26),

19  re-noticed before the undersigned on January 19, 2012, (Doc. No. 48) is granted;

20          5.  Defendant Quality Loan's January 18, 2012, amended motion to dismiss (Doc.

21  No. 46) is granted;

22  _____

23      [12]  The court notes that Rule 11 has a safe harbor provision which requires that a party be
    given twenty-one days before the filing of a motion for sanctions to "withdraw or otherwise

24  correct" the allegedly offending paper.  Holgate v. Baldwin, 425 F.3d 671, 678 (9th Cir. 2005).
    That safe harbor provision is to be strictly enforced.  See Radcliffe v. Rainbow Const. Co., 254

25  F.3d 772, 788-89 (9th Cir. 2001) (citing Barber v. Miller, 146 F.3d 707, 710-11 (9th Cir. 1998)).
    It does not appear that plaintiff complied with that safe harbor provision.  See Spain v.

26  Eagleburger Group, No. CV-08-1089-PHX-DGC, 2009 WL 307280, at *4 (D. Ariz. 2009)
    (denying Rule 11 motion for failure to comply with safe harbor provision).

1    6.  Plaintiff's January 20, 2012 motion for the imposition of sanctions (Doc. No.

2  51) is denied;

3    7.  Plaintiff is granted forty-five days from the date of service of this order to file a

4  second amended complaint that complies with the requirements of the Federal Rules of Civil

5  Procedure, and the Local Rules of Practice; the second amended complaint must bear the docket

6  number assigned to this case and must be labeled "Second Amended Complaint"; failure to file a

7  second amended complaint in accordance with this order will result in a recommendation that

8  this action be dismissed; and

9    8.  Any defendant named in plaintiff's amended complaint filed November 28,

10  2011, named as a defendant in any second amended complaint plaintiff elects to file, shall

11  respond to the second amended complaint within thirty days after it is filed and served.

12  DATED: March 5, 2012.

13

14  _____

15  DALE A. DROZD
   UNITED STATES MAGISTRATE JUDGE

16

17  DAD:6
   Ddad1\orders.pro se\schneider2953.mtd.ord

18

19

20

21

22

23

24

25

26