1

CHRISTOPHER D SCHNEIDER
In Propria Persona
16291 Stone Jug Rd.
Sutter Creek CA 95685
(650) 863-2215

# FILED

JUL 1 1 2012

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
JTY CLERK



2

3

4

5

6

7

8                    IN AND FOR THE UNITED STATES

9                    EASTERN DISTRICT COURT

10

11   CHRISTOPHER D. SCHNEIDER,        )    Case No. 2:11-CV-02953-LKK-EFB
                                      )
12              Plaintiff,            )    PLAINTIFF'S SECOND AMENDED
                                      )    COMPLAINT "SAC"
13   vs.                              )
                                      )
14   BANK OF AMERICA N.A, et al.      )
                                      )
15              Defendants.           )
                                      )
16   _____)

17

18        Plaintiff pursuant to the Order of July 3, 2012 (ECF No. 89) hereby submits his Second

19   Amended Complaint "SAC." The SAC and its Exhibits are attached as **Exhibit 1** and are

20   incorporated here in full for reference. The SAC's Exhibits are bundled separately due to the

21   large page counts, and are made a part of the SAC.

22

23

24   Dated: July 11, 2012

25   Signed:

26

27   CHRISTOPHER D. SCHNEIDER, in pro per PLAINTIFF

28

Plaintiff's SAC cover sheet.                    - 1 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1

Plaintiff's SAC cover sheet.                              - 2 -

1  CHRISTOPHER D. SCHNEIDER
   IN PROPRIA PERSONA
2  16291 Stone Jug Rd.
   Sutter Creek CA 95685
3  (650) 863-2215

4

5

6

7              UNTITED STATES DISTRICT COURT

8        EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO

9

10 CHRISTOPHER D. SCHNEIDER,          )   Case No. 2:11-CV-02953-LKK-EFB
                                      )
11        Plaintiff,                  )   SECOND AMENDED COMPLAINT FOR:
                                      )   1) Violation of RESPA 12 USCA §2601 et seq.
12 vs.                                )   2) Violation of 12 CFR Part 226 Regulation Z
                                      )   3) Violation of California Rosenthal Act and Fair
13 BANK OF AMERICA N.A., FHLMC        )      Debt Collection Practices Act (15 USCS § 1692)
14 LBAC 173 a.k.a. FEDERAL HOME       )   4) Violation of California Civil C. §2954(a)(1)
   LOAN MORTGAGE CORPORATION          )   5) Fraud, Negligent Misrepresentation, Conspiracy
15 (FREDDIE MAC), BAC HOME LOANS      )   6) Breach of Deed of Trust, Note, Contract
   SERVICING LP, BALBOA INSURANCE     )   7) Declaratory Relief
16 CO, BANK OF AMERICA MORTGAGE,      )   8) Accounting
   QUALITY LOAN SERVICE CORP,         )   9) Tort of Conversion
17 HOME RETENTION GROUP, DOES 2-      )   10) Wrongful foreclosure
18 40                                 )   11) Violation of Good Faith and Fair Dealings
                                      )   12) Negligence
19        Defendants.                 )   13) Intentional infliction of emotional distress
                                      )   14) Violation of California Business & Professions
20                                    )      Code §17200 et seq.
                                      )   15) Civil RICO Claims 18 USCA §1961 et seq.
21                                    )
22                                    )
                                      )
23                                    )
                                      )
24                                    )
                                      )
25                                    )
                                      )
26                                    )
                                      )
27 _____ )   DEMAND FOR JURY TRIAL
28

Plaintiff's SAC                    - 1 -

## INTRODUCTION

Plaintiff's house is being wrongfully foreclosed upon, and no doubt this court has heard that proclaimed many times. This complaint arises out of a dispute between plaintiff and defendants that began in and around June 2010, when one or more defendants added an illegal escrow account to Plaintiff's loan. Plaintiff has repeatedly tried in good faith to bring defendants' errors beginning with the escrow account and escalating into a two-year payment dispute that caused plaintiff's mortgage to appear to be in default when it was not. Defendants have force this dispute by improperly accelerating plaintiff's loan, and initiating a foreclosure.

A notice of sale was filed by defendant trustee QLS, the original scheduled sale date was November 18, 2011. Plaintiff's last day to allegedly redeem his home per Civil C. §2924c(e)[1] was Saturday November 12, 2011. Allegedly the Trustee has postponed the sale. Plaintiff has never received any binding written notice of such "postponement" and therefore alleges that the sale has either 1) not been postponed as alleged or (2) that at any time the Trustee may cancel such alleged postponement and move to sell Plaintiff's home[2]. A TRO was issued by this Court on November 17, 2011 at 5PM for 14 days and is currently in effect[3].

*Plaintiff has paid, and continues to timely pay his mortgage as agreed;* his last disputed payment of $968.57 was tendered on July 5, 2012 into a California Civil Code §1500 account.[4] All amounts actually owed by plaintiff have been fully and legally tendered, or could have easily been had plaintiff been provided with the basic information requested from Defendants.

## JURISDICTION

1.      This action arises under Federal violations of lender, banking, racketeering, and commerce laws. This Court has jurisdiction of this action pursuant to 28 U.S.C.A. §§ 1331, 1335, 1337, 1397, and possibly §2361. The amount in controversy exceeds any amount needed for the jurisdiction of this court.

---

[1] *See also*, Deed of Trust Section 19.
[2] QLS has never filed any recorded Recession of notice of default and election to sell for the subject property.
[3] The extraordinarily long extension of the original TRO is arguably a de facto preliminary injunction.
[4] *See also*, California Commercial Code §3602(a), UCC 3-602(a), and CA Civil Code §1485.

2.      Pursuant to 28 U.S.C. § 1367(a) this court has supplemental jurisdiction, attendant and related causes of action, arising from the same set of events and facts, are also brought under California law, including but not limited to violations of Civil Code §2954, §1572, §1573, Commercial Code §1304, Rosenthal Act, Business and Professions Code §17200 et al.

VENUE

3.      Venue for this action properly lies within the above-captioned judicial district pursuant to 28 U.S.C. § 1391(a), (b).  The real property and deed of trust/contract in dispute are located in and were recorded in Amador County.  The events, rights, and causes of action, which form the basis of this complaint, occurred in this judicial district.

PARTIES

4.      Plaintiff CHRISTOPHER D. SCHNEIDER is a resident of Amador County, the events leading up to the instant case and the real property in dispute are in Amador County.

5.      Plaintiff is informed and believes, and thereon alleges that at all times mentioned in this complaint, Defendant BANK OF AMERICA N.A. "BAC NA" is the alleged original lender and is engaged in the business of providing mortgage and banking services, is a debt collector and provides a large variety of banking services, including foreclosure, insurance, and the acquisition, purchase, sale, securitization, and servicing of loans, in addition to a large variety of other business interests and services performed in Amador County.

6.      Plaintiff is informed and believes, and thereon alleges that at some of the times mentioned in this complaint, Defendant FHLMC LBAC 173 is or was the purported creditor on the subject property and is also known as the Federal Home Loan Mortgage Corporation (Freddie Mac), FHLMC LBAC 173/Freddie Mac is substituted as DOE 1 in this action.

7.      Plaintiff is informed and believes, and thereon alleges that at all times mentioned in this complaint, Defendant BAC HOME LOANS SERVICING LP "BAC HLS LP" is involved in the mortgage business as a debt collector and servicer of loans, including foreclosure, and was involved in the past servicing of the subject property in addition to a large variety of other business interests and services performed in Amador County.

8.      Plaintiff is informed and believes, and thereon alleges that at all times mentioned in this complaint, Defendant BALBOA INSURANCE "BALBOA" is a wholly owned subsidiary of Defendant BAC NA. and is in part, in the business of writing lender forced placed insurance policies, and other interstate insurance related services, in addition to a variety of other unknown services performed in Amador County.

9.      Plaintiff is informed and believes, and thereon alleges that at all times mentioned in this complaint, Defendant BANK OF AMERICA MORTGAGE "BAC M" is a subsidiary of BAC NA, and is in the business of providing mortgage and banking services, is a debt collector and provides other business interests and services in Amador County.

10.     Plaintiff is informed and believes, and thereon alleges that at all times mentioned in this complaint, Defendant QUALITY LOAN SERVICE CORP "QLS" is a California based company that is in the business of acting as a debt collector, loan servicer, and foreclosure trustee in addition to a variety of other business interests and services performed in Amador County.

11.     Plaintiff is informed and believes, and thereon alleges that at all times mentioned in this complaint, Defendant HOME RETENTION GROUP "HRG" is a Texas company that knew of, and participated in, Defendants' fraud and conspiracy in relation to the events in 2011 regarding the Making Home Affordable Modification program, collection of unlawful debts, and was acting as an authorized agent for BAC HLS LP, BAC NA, FHLMC LBAC 173, DOES.

12.     Plaintiff does not know the true names, capacities, or complete basis of liability of Defendants sued as DOES 3 through 40. Each fictitiously named Defendant is on information and belief, in some manner liable to Plaintiff for their part in the allegations herein, or claims some right, title, or interest in the subject property, or both.

13.     At all times relevant to this complaint, each of the Defendants was the agent or employee of each or some of the remaining Defendants, and was acting within the course and scope of such agency or employment.

*BACKGROUND FACTS COMMON TO ALL CAUSES OF ACTION*

14.     In or around September 2000, Plaintiff inquired about financing his first home with BAC NA, at this time his personal banker in the Jackson, CA BAC NA branch was Tricia Johnson.  On September 14, 2000 Plaintiff met with BAC M account executive Cliff Coler, who worked out of a Stockton BAC M/BAC NA office.  On or around this date, Plaintiff submitted a loan "application" to Mr. Coler for a "federally related mortgage loan."

15.     On or around December 21, 2000 Plaintiff made an offer on 16291 Stone Jug Rd. Sutter Creek CA 95685, Amador County Assessor Parcel # 030-010-012-000, with and thru his realtor and agent Gail Harris, at All Power Brokers R.E. Inc. in Jackson, CA.

16.     Plaintiff's offer led to the sale of the property, for a price of around $147,0000 with financing obtained from BAC NA as lender; loan number 6476664013 in the amount of or around $132,0000 at 8% interest fixed for a term of 30 years, equaling a monthly payment of $968.57.  Trustee under the DOT was "PR Lap Inc."

17.     The residential sale closed escrow on or around the end of January, beginning of February 2001.  The escrow company was Amador Title of Jackson, CA, with Margaret Doll as the escrow officer for the subject property's transaction, escrow No. 214204-MD.

18.     In or around the end of January, beginning of February 2001, Plaintiff moved onto the real property and began making payments on the mortgage and has always paid the past payments for Property Taxes and Insurance on the subject property from that time *Id.* forward.  A copy of the Deed of Trust is attached as **Exhibit A**, and is incorporated herein in full for reference; it was recoded with the Amador County Recorder as instrument # 2001-0001255-00 on February 6, 2001 and includes the legal description of the subject property.

19.     Initially the loan paperwork contained two items that were included in the payments plaintiff made on the loan, $968.57 was the monthly payment for Principle and Interest "P&I", and $57.20 per month for Mortgage Insurance "PMI" since Plaintiff had not put 20% down.  PMI was required by law, and such payments were paid into an escrow account set up by BAC NA or BAC M. This made Plaintiff's monthly payment $1025.77, this payment continued to be paid by Plaintiff until a

new appraisal was done in or around November of 2004.

20.     Plaintiff initiated and paid for this reappraisal as soon as his loan to value (LTV) was under 80% so that the PMI and the escrow account for its payment could be permanently removed from his loan. The new appraised value was $225,000, loan value at that time was $127,000, and the new LTV was thus 56%, lower than the 80% needed to drop PMI.

21.     Thereafter, BAC NA dropped the PMI and closed Plaintiff's escrow account.[5]  Plaintiff's monthly payments were permanently lowered from $1025.77 to $968.57 for P & I only, and per the DOT the monthly payment on the note was to be $968.57 until 02/01/31, attached and incorporated herein as **Exhibit B** is a copy of the payment schedule for Plaintiff's loan No. 6476664013, which was later changed by Defendants to No. 873583324, when Plaintiff's loan servicing was transferred from BAC NA to BAC HLS LP in November 2009.

22.     In May 2001 Plaintiff also took out a 2nd on his house to make improvements to the property, the lender was defendant BAC NA, Loan # 02500184441506998, with a total credit commitment of $16,000. Plaintiff continues to make timely payments to this account and the Principle balance due as of the June 2010 statement was $15,412.29.

**The Insurance Policy Dispute**

23.     In May 2010 Plaintiff received a notice from Defendant BAC HLS LP stating that they had "not received a [copy of] homeowner's insurance policy. This caused your policy to expire on 04/16/2010." For roughly the prior 8-9 years (since 2001 or 2002) defendants BAC NA, BAC HLS LP, FHLMC LBAC 1773, DOES, had never *once* asked for any copies of Plaintiff's policies, or even attempted to enforce any of the provisions of the DOT that specified exactly how plaintiff was to maintain such insurance, nor had Defendants ever sent Plaintiff any prior notices that they had a problem or concern with the way he insured his property or his prior insurance coverage terms. Plaintiff believes that Defendants' silence for the preceding eight or nine years could arguably represent a waiver.

24.     Beginning In May 2010, Plaintiff spoke with numerous insurance brokers in Amador

---

[5] Plaintiff is not sure on exactly which defendant did this action, but is alleging BAC NA, though he has since learned that defendant Balboa may also be involved in the maintenance of escrow accounts for BAC.

County and throughout California, and was always told that none of them would write a policy (to defendants specifications) on the property for a variety of reasons including; "pier and post foundation, fireplace/woodstove, age of house, wildland fire zone, over 5 acres" etc.

25.     Plaintiff contacted the CA Fair Plan insurance, which is the "insurer of last resort" in the state for properties such as Plaintiff's who are denied coverage from conventional sources.  He submitted an application to CA Fair Plan in May 2010; this application was denied due to a minor mistake by Plaintiff in filling out the application.  Plaintiff resubmit his application in or around August 2010, which was again declined this time because "This [May 25, 2010] application had expired" plaintiff then resubmitted a third application in or around November 2010 which was initially rejected over yet another and new technicality that was fixed in December 2010.  In December 2010, after 6 months of continuous effort, Plaintiff received a binding policy for a period of 1 year from CA Fair Plan (that met defendants policy terms), coverage was in place from December 14, 2010 and has been and remains continuously in effect until December 14, 2012, BAC NA, BAC HLS LP receives exact copies of all policy paperwork and notices at the same time as plaintiff as an "additional" insured.

26.     As a result of Plaintiff's challenges in obtaining bank approved Insurance coverage for his house, BAC NA, BAC HLS LP, BALBOA, FHLMC LBAC 173, DOES placed a lender placed policy "LPP" on his property around June 21, 2010 predated effective from "April 16, 2010."  That policy was allegedly cancelled by Defendants BAC NA, BAC HLS LP, BALBOA, DOES in December 2010, however from a statement plaintiff received in April 2011, he continued to be billed until March 2011.  The March 2011 billing of the LPP left a credit balance of $194.50 in the escrow account, which has never been returned to Plaintiff.

27.     Attached and incorporated herein in full for reference as **Exhibit C** is Plaintiff's letter/QWR of August 17, 2010, it was sent to his loan servicer BAC HLS LP and specifically related to the LPP that Defendants BAC NA, BAC HLS LP, BALBOA, FHLMC LBAC 173, DOES purchased for his property on his behalf, this QWR among other things requested a copy of the insurance policy plaintiff was being asked to pay for, so that he could see exactly what was (or was not) covered and other details of it.  Plaintiff wished to verify in part that the LPP was meeting the same requirements as he was

being asked to provide in any policy he should get, i.e. no double standards of terms and conditions. Plaintiff offered a full tender of the amounts owed on this LPP **Exhibit C** *Id.* (*see also* California Civil Code §1511) as soon as he received a copy of the policy he was being asked to pay for under the terms of the Deed of Trust, no copy has ever been furnished to plaintiff.

28.     Defendants BAC NA, BAC HLS LP, BALBOA, FHLMC LBAC 173, DOES willfully ignored plaintiff's August 17, 2010 QWR and did not respond, even after it was repeatedly requested, instead they created an improper and involuntary escrow account, *refused* to simply let plaintiff pay the LPP sums without an escrow account, and demanded an increase in Plaintiff's monthly payments to $1179.70.

29.     Defendants BAC NA, BAC HLS LP, BALBOA, FHLMC LBAC 173, DOES on information and belief, knew of plaintiff's requests for a copy of the LPP, and participated in, or were an accessory in fact to, the events surrounding the willful denial of information on the LPP policy to Plaintiff, and to BALBOA, BAC NA, BAC HLS LP, FHLMC LBAC 173, DOES in the procurement and underwriting of the LPP of accepting improper kickbacks, overcharging plaintiff for insurance, withholding lawfully required disclosures of material facts, along with collecting excessive and unnecessary fees for their participation in the LPP and/or in the alternative *never* placing the LPP insurance that plaintiff was billed for on the subject property.

30.     Defendants BALBOA, BAC NA, BAC HLS LP, BAC M, and on information and belief, defendants FHLMC LBAC 173, DOES, were also aware that plaintiff was in a very vulnerable position in regards to the subject property and that after defendant BAC HLS LP's May 2010 letter plaintiff had been repeatedly refused bank approved coverage by *all* regular sources of insurance.  Plaintiff informed BAC HLS LP of these facts on May 26, 2010, who's representative "made a note" in plaintiff's servicing file, which is also accessible by all or a portion of the other defendants.

31.     Defendants BAC NA, BAC HLS LP, BALBOA, BAC M, FHLMC LBAC 173, QLS, DOES used this information (along with other internal files) in part to improperly (1) take advantage of Plaintiff in an anti-competitive and detrimental way (2) overcharge him for excessive or unneeded costs/fees for the LPP in violation of laws, i.e. California Business & Professions Code §17200 as well as

the California Insurance Code and; (3) unilaterally open the disputed escrow account (in violation of California Civil Code §2954) in order to improperly extort fees and costs out of Plaintiff on more than two occasions, and later by initiating an improper acceleration and foreclosure on the subject property.

**The California Civil Code §1500 "dispute account"**

32.     On or around April 14, 2011 defendants BAC HLS LP, BAC NA, BAC M, FHLMC LBAC 173, DOES, refused to accept Plaintiff's tendered payment and after having *repeatedly* misapplying his prior monthly payments, and refused prior tendered payment on October 13, 2010 and other dates, Plaintiff opened a dispute account under Civil Code § 1500 in the name of the original creditor (Bank of America N.A.) in order to protect his rights.  Plaintiff then deposited his monthly payments of $968.57 into that account.  Attached as **Exhibit D** and incorporated herein in full for reference is a copy of the letter/QWR Plaintiff sent to Defendant BAC HLS LP when the account was opened.[6]

33.     This account has remained open since then, and plaintiff has *legally tendered all amounts due to defendants* on a timely basis, and has notified defendant BAC HLS LP/BAC NA each and every month[7] of such payment(s) and the current balance in the account.  Defendants BAC NA, BAC HLS LP, BALBOA, BAC M, FHLMC LBAC 173, DOES prior to the filing of this case, made no meaningful efforts to settle this dispute or mitigate damages, *all the while knowing that plaintiff continues to faithfully make his monthly payments*, and the balance in that dispute account continues to build.  As of July 5, 2012 Plaintiff's El Dorado Savings Bank "Bank of America N.A." dispute account now stands at "$20,772.04."[8]

34.     Defendants BAC NA, BAC HLS LP, BALBOA, BAC M, FHLMC LBAC 173, QLS, DOES act only for their own self-interests and against federal and state laws, at the expense of and serious continuing irreparable damage to plaintiff.  With a simple phone call and letter to El Dorado Savings Bank, defendants could have easily verified the account's existence, terms, balances etc.

---

[6] This QWR had a typo, "$956.87" vs "$968.57" which was actually deposited, and any later statements sent to Defendants would have shown the true amount deposited ($968.57) and running balance.
[7] Excluding times after this case was initiated in November 2011.
[8] Plaintiff's believes that this amount is in excess of what is *actually* owed to defendants.

Defendants *Id.* at no time prior to filing this action made any comment about or *objection* to Plaintiff's method of tendering payments into this account, *see* California Civil Code §1501, instead they blindly allege a payment default and initiated an improper acceleration and now seek the expensive and drastic foreclosure option so they, their agents, subsidiaries, affiliated companies, and co-conspirators may collect and extort improper additional attorney fees, unnecessary and inflated fees and/or costs, and expenses under their interstate scheme to take plaintiff's money and property/home.

35.    Attached and incorporated here in full as **Exhibit E** is an El Dorado Savings Bank printout from September 2011, signed by Amber Loiler for the "Dispute Account" beginning with the opening deposit.  The most recent July 5, 2012 statement, and deposit slip from El Dorado Savings Bank, are attached and incorporated herein in full for reference as **Exhibit F**.  Attached as **Exhibit G** is the September 30, 2011 letter Plaintiff sent to BAC NA regarding his then deposit into the dispute account, it is incorporated here in full for reference.

36.    On the morning of November 9, 2011 Plaintiff again called Defendants QLS, and BAC NA to get the actual amount allegedly owed to Defendants (in order to stop the foreclosure schedule for November 18, 2011).  This was done prior to filing his TRO motion with the intention of paying all amounts owed (and in dispute) to all Defendants to redeem his home.  Defendants QLS customer service rep "Fernando" and/or "Janis" stated that they could not, and "would not" give the amount owed "over the phone" and that it would take "3 to 5 [business] days" to mail (or Email) Plaintiff the "reinstatement figures" and that "QLS had to get the figures from the lender" (BAC via "Email").  Plaintiff then requested that the trustee postpone the sale, while his mandatory reinstatement rights under CC §2924 were in full force and to avoid the filing of the TRO, QLS refused and stated "only the *lender* could postpone the sale."

37.    Immediately after speaking with QLS on November 9, 2011 Plaintiff called Defendant BAC NA (with the phone number furnished by QLS) customer service rep "Robert" and again asked for the "reinstatement figures" and to "postpone the sale" Plaintiff was told that he "needed to call the trustee QLS [to get the reinstatement figures]", and that "only the *trustee* could postpone the sale."[9]  Plaintiff

---

[9] The BAC phone rep. never used the word "trustee" (or QLS) always referring to QLS as 'the attorney's.'

was amazed, *QLS was saying call BAC, and BAC was saying call QLS,* and *both* stated that *only* the *other party* could "postpone the sale" <u>or</u> provide accurate "reinstatement figures."  Plaintiff alleges that these actions were intentional, and a knowing part of Defendants' QLS, BAC NA, BAC HLS LP, BAC M, FHLMC LBAC 173, DOES racketeering and unethical business practices, and conspiracy supporting an unlawful interstate scheme to take Plaintiff's money and property.  Defendants *Id.* refused to answer any meaningful questions or provide Plaintiff with necessary, specific, and critically important loan information.

38.     Defendants QLS, BAC NA, BAC HLS LP, BAC M, FHLMC LBAC 173, DOES never mailed, emailed, called, or in any way gave plaintiff the "reinstatement figures" "<u>prior to</u> the scheduled sale date of November 18, 2011" or even to this day.  This was in violation of 12 CFR § 226.36 (c)(iii). Even if plaintiff wanted to (and was able to) lawfully "redeem" his house *before or at* the foreclosure sale he would *not* have been able to since defendants *Id. never* gave him the reinstatement figures they were allegedly foreclosing for, and may not have known the figures, due to their own negligence, disorganization, and poor protocols, yet *continued* to proceed forward with the foreclosure of plaintiff's home.

39.     Defendants QLS, BAC NA, BAC HLS LP, BAC M, FHLMC LBAC 173, DOES had more than enough time to turn over the reinstatement figures so that Plaintiff could pay off all amounts allegedly owed, and that Defendants *Id.* knowing and intentional denial of those figures to Plaintiff (at such a critical time) represented a de facto ***refusal*** to accept Plaintiff's good faith ability (and offer) to tender the balance due on his loan. [10]  Plaintiff specifically requested those figures nine days *prior to* the sale in order to get facts and preserve his rights.

## CAUSES OF ACTION

### I.  VIOLATION OF RESPA 12 USC §§2601-2617, Regulation X 24 CFR Part 3500 et seq.

40.     Plaintiff incorporates and re-alleges all of the preceding paragraphs here in full.

41.     The consumer loan transaction between Plaintiff and Defendants BAC NA, BAC HLS LP,

---

[10] See also California Civil Code §1512 "If the performance of an obligation be prevented by the creditor, the debtor is entitled to all benefits which he would have obtained if it had been performed by both parties."

BAC M, FHLMC LBAC 173, DOES is a federally related mortgage loan covered by RESPA, as mortgage lenders, servicers etc. Defendants *Id.* each individually are subject to the provisions of the Real Estate Settlement Procedures Act ("RESPA"), 12 USC §2601 et. seq.[11]

A. BAC NA'S violation of 24 CFR § 3500.21, 12 USC § 2605(e), (k)(1)(C) & (D)

42.     BAC NA is the current servicer of the loan as defined in 12 USCS § 2605(i)(2), BAC HLS LP was the prior servicer from November 16, 2009.  A servicing transfer "Servicing Disclosure Statement" from Defendants BAC HLS LP to BAC NA was received by plaintiff between July 15-19, 2011 (when BAC NA/BAC HLS LP were alleging plaintiff's payment default).  This statement was regulated under 12 USCS § 2605(b) and 24 CFR § 3500.21.

43.     Plaintiff sent BAC NA a QWR dated July 24, 2011.  This letter was addressed to BAC CA6-919-01-41 PO Box 1140 Simi Valley, CA 93062-1140, specifically relate to the Servicing Disclosure Statement and Debt Validation Notice, BAC doc ID "BANACOM3A" *Id.* and requested in part the "name and address of the current creditor" and clearly "disputing the validity of [all] the amounts owed to Bank of America, the owner of the loan 'FHLMC LBAC 173'…the disputed debt is $119, 512.63" and [¶] "due to the yearlong dispute with BAC…the amounts [*Id.*] owed is inaccurate ['charges, fees, costs' included in that sum]…which I am unaware of contractual or legal authority [for]" all within 30 days, no response with any such requested information was received by Plaintiff, it has been more than 60 days as defined in 12 USC 2605(e)(2), and 1) a lack of a proper response is a violation of 24 CFR § 3500.21(e) and 12 USC § 2605(e), (k)(1)(C) & (D) and; 2) subsequent action has been taken in violation of  24 CFR § 3500.21(e)(3) and 12 USCS 2605(e)(2) "before taking any action with respect to the inquiry, the servicer shall…."

44.     BAC NA, acting on behalf of FHLMC LBAC 173 as its servicing agent, continued to attempt to collect a clearly disputed debt ("year long"), to "take [] action," including *not* properly investigating "inaccurate charges, fees, costs or other line items" ignoring plaintiff's QWR'S, never furnishing him with the "name and address of the current creditor" or a complete accounting statement or

---

[11] A violation of RESPA is made unlawful under California state law by Financial Code § 50505, which states: "Any person who violates any provision of [RESPA] or any regulation promulgated under thereunder, violates this division [California Residential Mortgage Lending Act]."

insurance policy copy, never removing the escrow account, refunding overcharged fees, escrow excess sums, negligently not properly responding to or investigating the errors from previous letters, as BAC NA was required to under 24 CFR 3500.21(e)(3)(i) & (ii) and 12 USC § 2605(e) and finally proceeded to foreclose on Plaintiff's home after BAC NA received the QWR dispute of July 24, 2011.

45.     BAC NA'S conduct has caused plaintiff countless unnecessary and substantial actual costs, damages, fees, and injuries in fact that sections of RESPA were specifically written to *avoid*. Plaintiff has been and continues to be subject to extreme emotional and physical stress and anxiety over all of the events that occurred after the July 24, 2011 QWR.  Plaintiff seeks all damages and costs as allowed by § 3500.21(f)(1)(i), 12 USCA 2605(f) and any other amount equitable or punitive, which might be supplemental to RESPA under CA law.

B.  Violation of 12 USC § 2605(e)

46.     Defendants BAC NA, BAC HLS LP, BAC M, FHLMC LBAC 173, DOES have violated 12 USC § 2605(e) by failing to answer, do an adequate investigation and respond to Plaintiff's repeated Qualified Written Responses on numerous occasions within the last 3 years.  Between August 2010 and October 2011 Plaintiff sent defendants BAC NA, BAC HLS LP, *over* 10 specific QWR's attempting to have corrected numerous errors in the servicing of his home loan, these have not been responded to according to § 2605(e).  Defendants *Id.* had 60 days to properly respond to plaintiff's QWR's, they did not, and that time has passed *for all 10 plus* QWR'S as defined in 12 USC 2605(e)(2).  Defendants *Id.* willfully violated RESPA, and such violations have caused Plaintiff actual damages and injuries in fact as stated in 12 USC § 2605(f), including in part a detriment to plaintiff's ability to sell or refinance his home due to Defendants *Id.* failure to properly and adequately address the errors, concerns, *actual payoff amounts due*, and mistakes that plaintiff stated in his numerous QWR'S to BAC HLS LP and BAC NA. Defendants *Id.* engaged in a "pattern or practice" of non-compliance with the requirements of RESPA and as set forth in 12 USC §2605 using the US Mail and wires.

47.     Plaintiff's QWR's ("over 10" *Id.*) pursuant to 12 USCS § 2605(e) specifically were mailed to BAC HLS LP, or BAC NA address' as the "servicer" of his loan, and clearly stated 1) his name, address, loan #, 2) on a separate letterhead from any normal payment coupon 3) the reasons he

thought his mortgage account was in error and/or other mortgage related information requested, and; 4) with sufficient detail for the servicer to investigate the QWR.

48.     BAC HLS LP, BAC NA also violate 12 USCS § 2605(e) by not "acknowledging receipt of the correspondence within 20 days" instead of actually acknowledging plaintiff's specific correspondence (certain months in 2010 and/or 2011 plaintiff mailed *multiple* correspondences) defendants *Id.* only acknowledge a generic (unidentified) correspondence.  These actions make it impossible for plaintiff to "properly and accurately" determine which BAC NA communication is related to which specific QWR, and does not comply with § 2605(e).

C.  Violation of 12 USC § 2609 and 24 CFR Part 3500.17(c), (c)(2), (f)(2)(i) Reg. X

49.     Defendants BAC NA, BAC HLS LP, BAC M, FHLMC LBAC 173, BALBOA, DOES "established" the escrow account sometime *before* the June 29, 2010 statement, which is attached as **Exhibit O** and incorporated here in full for reference.  It *appears* the new escrow account was "established" no later than on June 21, 2010, *see* statement page 2, an "escrow" posting for the BALBOA LPP Insurance cost of $<981.00> on that date.

50.     24 CFR § 3500.17(c)(2) states that "*Before* establishing an escrow account, the servicer *must* conduct an escrow account analysis..."  (Emphasis added).  Plaintiff's escrow account was established no later than June 21, 2010, on information and belief Defendants BAC HLS LP, BAC NA, BALBOA, DOES violated 3500.17(c)(2) by not perform the required escrow account analysis *before* they created the escrow account.  Plaintiff alleges that the escrow account analysis was performed in or around July 2010 when the escrow account statement was prepared, long *after* the account was "established" in violation of 24 CFR § 3500.17(c)(2).

51.     Defendants BAC NA, BAC HLS LP, BAC M, FHLMC LBAC 173, BALBOA, DOES have violated 12 USC §2609(c)(1)(B) by not properly and timely ("[no] later than the expiration of the 45- day period beginning on the date of the establishment of the escrow account") submitting to Plaintiff an "Escrow account statement ...clearly itemizing the estimated taxes, insurance premiums..." for the disputed escrow account.

52.     The first statement Plaintiff received from Defendants BAC HLS LP for the disputed escrow account was on August 16, 2010.  Therefore a *minimum* of 54 days (June 21-August 16) had

elapsed; this is more than the 45 days allowed under RESPA. Plaintiff alleges that BAC NA, BAC HLS LP intentionally predate their statements and letters as much as three weeks *prior to* Plaintiff receiving them, but at no time has he received them sooner than an average of 5-7 days after they are dated, *i.e.* **Exhibit. F** and **Exhibit I**.

53.     RESPA 12 USC §2609(d) does not appear to allow for a private right of action solely for the violation of this section, however in this case the allege violation is intimately connected with the other causes of action, for other RESPA violations (i.e. §2605, Regulation X), as well as for the alleged violation of the contract (DOT Section 3), and improper unauthorized escrow account at the heart of this dispute, and the numerous QWR's Plaintiff sent to Defendants BAC HLS LP, BAC NA relating to that escrow account and California Business and Professions Code § 17200 et seq., and the DOT, which *do* allow for a private right of action.

54.     Plaintiff alleges Defendants BAC NA, BAC HLS LP, BAC M, FHLMC LBAC 173, BALBOA, DOES knowingly violated RESPA § 24 CFR 3500.17(c) related to the proper amount of total allowable reserve requirements displayed on the "escrow account statement" showing $162.85 or 16.6% of the base amount, and later actually charging him improper amounts. Defendants *Id.* knowingly inflated the "estimated" reserve requirements to a level that was not necessary, and was in excess of what was allowed by law under RESPA.

55.     Plaintiff's Escrow account on loan No. 6476664013 in 2010 and 2011 was created in violation of the Deed of Trust, and California Civil Code 2954(a)(1), was void-able, and in August 2010 (*see* **Exhibit C**) Plaintiff sent a QWR to have it *immediately voided*. Thus *any* amount of reserves or other charges to Plaintiff's improper escrow account was a violation of Regulation X, and a breach of contract under the DOT Section 3 et al, since *no sums* could lawfully be owed or collected on an illegal escrow account.

56.     Defendants BAC NA, BAC HLS LP, BAC M, FHLMC LBAC 173, BALBOA, DOES violated RESPA Reg. X, 3500.17(f)(2)(i), by not properly returning plaintiff's excess funds in the disputed escrow account "within 30 days" as required by RESPA, not counting the violation in even collecting such sums in the first place. These sums were allegedly collected by BAC NA, BAC HLS LP, or BAC M on March 4, 2012, were greater than $50.00 ($194.52), have never been returned to Plaintiff, and his payments were current at that time and such actions also represent a breach of the Deed of Trust

Section 3, page 5.

57.     All of plaintiff's RESPA violations fall within the Statute of Limitations "SOL" under 12 USC § 2614 (3 years for QWR'S) however, if it appears any do not, then Plaintiff contends that such events are timely and that principles of equitable tolling should be employed by this court to toll any SOL. Plaintiff has faithfully tried to work with, pay, and get answers from Defendants and they have delayed or not properly responded to such requests, and their actions may have been designed to run any SOL that would apply to Plaintiff's RESPA claims.

58.     Defendants BAC NA, BAC HLS LP, BAC M, FHLMC LBAC 173, BALBOA, DOES acts and omissions have been with deliberate indifference, oppression and fraud, and have proximately caused Plaintiff actual damages, including, but not limited to: severe emotional distress, loss of sleep, loss of appetite, frustration, anger, fear, nervousness, anxiety, direct monetary loss, psychological and physiological harm, in sum, immense, and irreparable injury that continues to this very day. He has been damaged in an amount according to proof at trial.

II. Violation of 12 CFR Part 226 Regulation Z "Truth in lending" 15 USC 1601 et. seq. As to Defendants BAC NA, BAC HLS LP, BAC M, QLS, FHLMC LBAC 173, DOES

59.     Plaintiff incorporates and re-alleges all of the preceding paragraphs here in full.

60.     On November 9, 2011 Plaintiff called both QLS and BAC NA, BAC HLS LP to get the exact alleged 1) amounts in arrears and costs and 2) the payoff amount necessary to redeem his home i.e. "an accurate statement of the total outstanding balance." No such statement was ever mailed, emailed, or verbally given to Plaintiff at or around that time, prior to the foreclosure sale date of November 18, 2011, or even to this day over seven months later. This was in violation of 12 CFR § 226.36(c)(iii) requiring a statement "within a reasonable time."

61.     On December 13, 2010 defendant BAC HLS LP received plaintiff's payment of $968.57 (*See* Exhibit L, ¶ 106), that payment was for the full monthly amount due on the loan and was not posted to plaintiff's loan until December 21, 2012. BAC HLS LP intentional delay in not posting plaintiff's timely payment check was stamped "Lock bag" and was in violation of 12 CFR § 226.36(c)(i) which prohibits a servicer from "Fail[ing] to credit a payment to the customer's loan account as of the day of

receipt" this "lock bag" delay by BAC HLS LP caused plaintiff's payment to be "late" causing him damages, an unneeded "late fee" of $ 48.43[12] and delayed the payment for 8 days arguably resulting in a possible violation of 12 CFR 226.36(c)(2) mandating crediting of a [non-conforming] payment "within 5 days after receipt."

### III. VIOLATION OF CALIFORNIA ROSENTHAL ACT and FAIR DEBT COLLECTION PRACTICES ACT 15 USC 1692 et seq.  AND (As to all Defendants and DOES)

62.     Plaintiff incorporates and re-alleges all of the preceding paragraphs here in full.

63.     BAC NA, BAC M, BAC HLS LP, QLS, HRG, FHLMC LBAC 173, DOES actions enumerated herein constitute a violation of the Rosenthal Act and FDCPA in that they threaten to, and did, take actions not permitted by law, including but not limited to: not properly responding to a written response to disputed debt, falsely stating the amount of a debt owed, increasing the amount of a debt by including amounts that are not permitted by law or contract; and using unfair, unconscionable, deceptive and oppressive means in an attempt to collect a debt.

64.     Defendants BAC NA, BAC M, BAC HLS LP, QLS, HRG, DOES are "debt collectors" as defined under California Civil Code § 1788.2 and 15 USCS § 1692a(6) and are not exempt from the requirements of the FDCPA.  BAC NA took over the servicing on Plaintiff's consumer home loan in July 2011, at which time BAC NA & BAC HLS LP alleged that plaintiff was currently in a payment default, and defendants *Id.* initiated an acceleration and foreclosure activities.  The debt is allegedly owned by defendant; "FHLMC LBAC 173."

65.     Plaintiff's July 24, 2011 letter/QWR is attached here and incorporate in full for reference as **Exhibit Q** it was a timely response (within 30 days) to the "debt validation notice" he received from BAC NA on pages 3 and 4 of "BANACOM3A" between July 15-19, 2011.  BAC NA'S debt validation notice stated "The amount of the debt: as of July 5, 2011, you owe $119,512.63" and that "Bank of America, N.A. does not own your loan" and "Bank of America, N.A. is required to inform you that this communication is from a debt collector...."

////

---

[12] For which plaintiff actually paid this charge with the December 30, 2010 electronic bank transfer of $615.98.

A.  Violation of § 1692g

66.    Defendant BAC NA violated 15 USCS § 1692g(a)(5) by *never* furnishing to Plaintiff (when requested in the July 24, 2011 QWR) the "name and address of the current creditor" or other debt validation items, nothing was "mailed to the consumer by the debt collector" and BAC NA violated 1692g(b) by not ceasing collection of the [long disputed] debt.  Included in the July 2011 disputed sum of $119,512.63 are amounts not properly related to plaintiff's mortgage loan; amounts in violation of the Deed of Trust, Federal and State law and Freddie Mac servicing guidelines.  Fees, costs, and charges for which BAC NA, and BAC HLS LP are not entitled to lawfully or contractually bill and collect from plaintiff.

B.  Violation of § 1692e

67.    BAC NA, QLS violated § 1692e on November 9, 2011 by falsely stating that "only [the other] could postpone the trustee sale" and that only [the other] "could give plaintiff the reinstatement figures" when in fact one of them (or both) had the authority and capability to give plaintiff the alleged reinstatement figures due and the amounts in arrears or to postpone the sale, and intentionally gave plaintiff a misleading representation/run-a-round that neither party could.  Both QLS and BAC NA were trying to collect a debt, they were under a legal duty to supply this information, failed to and such actions were false and misleading.

C.  Violation of § 1692e(3) and Cal. Civil. C. § 1788.13(b)

68.    On November 9, 2011 BAC NA customer service representative "Robert" also *repeatedly* and *exclusively* referred to QLS as "the attorney's" saying "did you try calling the attorney's" and that "the attorneys [are handling the foreclosure]" to "call the attorney's [to get the reinstatement amount]" and in order to stop the foreclosure or postpone the sale.  QLS is the *Trustee* in this dispute, and plaintiff alleges on information and belief that BAC NA/BAC HLS LP'S, DOES training, manuals, protocols, and or scripts *intentionally* instructs representatives such as "Robert" to refer to the trustees in this manner, so as to give a "false representation or implication that any individual [firm] is an attorney" a violation of § 1692e(3) and CA law when QLS is the Trustee and not a law firm (which would be attorney's) and that such actions are know and sanctioned by QLS, and QLS is as culpable for this conduct as is BAC NA.

D.  Violation of § 1692e(2)(A)

69.     BAC HLS LP, BAC M, BAC NA, FHLMC LBAC 173, DOES made false and misleading statements in violation of § 1692e(2)(A) in attempting to collect amounts allegedly owed on plaintiff's mortgage during the phone conversation and electronic payments of December 30, 2010.  At which time BAC phone reps "Trinidad" and "Mary" misstated the "character, amount of legal status of any debt" by falsely stating that plaintiff owed "615.98" when in fact he did not, and that *at least* one late fee of $48.43 for December 2010 was never owed to defendants[13], and BAC HLS LP knew this fact by holding plaintiff's timely payment, making it late (*see* **Exhibit L**, ¶ 106).

70.     Section 1962e(2)(A) was again violated in connection with the held December 10, 2010 payment where BAC HLS LP knowingly and falsely misstated the true amounts owed by plaintiff in their "Notice of intent to Accelerate" of December 20, 2010 by; 1) holding the Dec. 10 payment until *after* the notice was printed and 2) back dating the "monthly charges" total due from "11/1/2010" when plaintiff had made 2 additional payments of $968.57 (on 11/10/10 and 12/10/10) that were not reflected. All to give a knowingly false and inflated picture of the alleged debt owed (*see* **Exhibit J**).  These actions are a violation of 1962e(2)(A) by BAC HLS LP, BAC M, BAC NA, FHLMC LBAC 173, DOES and the same type of false and misleading amounts due were also used with the acceleration notice dated January 18, 2011 (*see* **Exhibit K**) which failed to properly show the 2 payments of December 2010 and the accurate debt due.

71.     QLS, BAC NA, FHLMC LBAC 173, DOES further violated § 1692e(2)(A) by recording the notice of default and notice of sale in 2011 with knowingly "false and misleading" representations of the total debt owed by plaintiff as $120,620.44 and $122,801.92 respectively (*see* **Exhibit P**).  These numbers contained fees, costs, and charges for which BAC NA, BAC HLS LP, QLS, FHLMC LBAC 173, DOES were not entitled to lawfully or contractually bill and collect from plaintiff, were known to be in error and were long in dispute i.e. escrow issues, late charges from December 10, 2010's payment etc.

///

---

[13] There may be other portions of this amount that are not owed by plaintiff, but he has never received the full accounting he requested so that he may reconcile his mortgage account and all fees, costs, charges etc.

IV.  VIOLATION OF CALIFORNIA CIVIL CODE §2954(a)(1) (As to Defendants BAC NA, BAC HLS

LP, BAC M, BABLOA, FHLMC LBAC 173, DOES)

72.     Plaintiff incorporates and re-alleges all of the preceding paragraphs here in full.

73.     When Plaintiff initiated the loan application and later signed the final paperwork on the

subject property on or around January 30, 2001 this was the civil code section that he quoted to the BAC

NA, BAC Mortgage rep Cliff Coler, and later to the BAC NA, BAC Mortgage contact Susan Birge.  The

relevant parts of California Civil Code §2954(a)(1) state "[T]he establishment of such an [escrow]

account shall not be required as a condition of the execution of the loan or sale agreement…" there was

never any agreement to allow for such an account under "mutually agreeable" terms, rather there was a

dispute at closing, then an oral and written mutual agreement to *never* allow such an escrow account on

the subject property.

74.     Plaintiff *specifically* put down 10.20% in 2001 when he purchased the subject property to

fit within the exemption established by §2954(a)(1) "No impound…account…shall be *required* as a

condition of a real property sales contract…Except [under (A)-(G)]."

75.     In or around August 2010 Defendant BAC HLS LP mailed Plaintiff a notice that

calculated the value of Mr. Schneider's home at $126,623.  BAC HLS LP willfully misrepresented and

mischaracterized the written valuation of plaintiff's home, and this misrepresentation was material to the

subject property dispute over plaintiff's principal dwelling.  On information and belief this "value" was

knowingly fraudulent and intentionally low so BAC HLS LP, BAC NA, BALBOA could in part "justify"

their improper and illegal escrow account.

76      June 2010: Amador County Tax Assessor's office valued the subject property at

$171,584[14].  Plaintiff's 1st loan Principle Balance in June 2010 was $116,552.83 (**Exhibit O**), the Second

loan principle balance in June 2010 was $15,412.29 (¶ 22).  The "combined principle amount of all loans

secured by the real property"[15] = $131,965.12.  Assessor's value of $171,584 divided by "all loans"

principles of $131,965 = 76 %, this is less then the "exceeds 80 percent" that the law requires for the

_____

[14] A difference of $44,961 vs. BAC'S value, or > 35% *less* than the County's appraised value on the property.
[15] California Civil Code § 2954(a)(1)(E) exception for escrow account.

1   BAC escrow account to be legal, "when established" in June 2010 (*see* **Exhibit O**). No other § 2954

2   exemption applied to the subject property, and defendants' *Id.* escrow account was unlawful from the

3   moment it was established.

4   77.   California Civil Code §2954(a)(1) states "An impound, trust, or other type of account for

5   the payment of taxes, insurance premiums, or other purposes relating to property *established* in violation

6   of this subdivision *is voidable*, at the option of the purchaser or borrower, *at any time*, (emphasis

7   added)."

8   78.   On August 17, 2010 (long *before* any default had been alleged) Plaintiff wrote a letter

9   (QWR) to Defendant BAC HLS LP, see **Exhibit C**. Pursuant to §2954(a)(1) Plaintiff (1) objected to the

10  illegal opening of the escrow account, and (2) demanded that "the abovementioned [Mortgage] account

11  have its escrow account removed immediately and my home loan be placed back in the state that it was

12  prior to this account being established." BAC HLS LP ignored this request in violation of Civil C. §

13  2954(a)(1), 12 USC § 2605(e), et al.

14

15  79.   Defendants BAC HLS LP, BAC NA, BALBOA, FHLMC LBAC 173, DOES then

16  willfully and intentionally continued to keep the escrow account open in violation of §2954(a)(1) and the

17  deed of trust, and took their illicit escrow account actions many steps further.

18  ## V.  FRAUD, NEGLIGENT MISREPRESENTATION AND CONSPIRACY (As to Defendants BAC
    ## NA, BAC M, BAC HLS LP, HRG, QLS, DOES)

19

20  80.   Plaintiff incorporates and re-alleges all of the preceding paragraphs here in full

21  81.   Plaintiff *stopped* the entire purchase of the property at his final closing paperwork signing

22  on January 30, 2001 and was *ready and willing* to cancel it had BAC NA, BAC Mortgage authorized

23  employees, not agreed to his demand of "absolutely no escrow accounts *ever* for hazard insurance or

24  property taxes." Plaintiff specifically wished to avoid the exact situation he is now in today, with this

25  dispute and the resulting "mistakes" and litigation.

26  82.   Plaintiff sought and received BAC M loan Representatives specific approval for the

27  modification of the mortgage contract closing paperwork by first contacting Cliff Coler, and ultimately

28  the final OK and instructions to Margaret Doll of Amador Title and I were given by Susan Birge as BAC

Plaintiff's SAC                           - 21 -

Mortgage's "lender closing contact" on the lender's Instructions to escrow officer dated 1/29/01 at 3:23PM. Susan Birge was the individual authorized with final authority to speak for defendants BAC NA, BAC M, DOES. Birge specifically told Plaintiff what to cross out, change, and initial to make the required changes to the closing paperwork before signing, she also would not allow Plaintiff to change the actual deed of trust (which he wanted to do-crossing out Section 3 portions of the DOT), and stated that the changes to the forms (BA 174 and BA084) would have the exact same effect (this statement was known to be false by Susan Birge when made, plaintiff relied upon the purported truth of it to his detriment at that time, and did not realize that BAC NA, had no intention of abiding by the contract of no escrow account ever for the remainder of the loan).

83.     Plaintiff specifically modified in writing the original closing documents at the escrow signing on or about January 30, 2001, so as to avoid any "escrow accounts" other than the one for PMI required by law, this was further documented by the written changes and notes memorializing the modifications of the final loan paperwork plaintiff signed. Plaintiff had numerous income sources then and could have easily gone to another lender (and would have) had BAC NA, BAC M not agreed to the modification of the final closing documents that day.

84.     In or around June 2010, Defendants BAC HLS LP, BALBOA, BAC NA, FHLMC LBAC 173, DOES created an escrow account on Plaintiff's loan. In or around June 2010 defendant BAC HLS LP, BALBOA began billing plaintiff for escrow items and reserves, this improperly increased plaintiff's alleged monthly payment to $1179.70, an over 20% increase. This escrow account and resulting increase in Plaintiff's Mortgage payments, took place roughly 10 years into a 30-year contract, and was in violation of California Civil Code §2954(a).

85.     Plaintiff first learned of Defendant BAC NA, BAC M, DOES fraudulent misrepresentation (as to 2001 events) in or around July 2010 when he received an escrow account notation on his mortgage statement, any statute of limitations that may have expired, should be equitably tolled, and should begin to run in or around that date. Prior to this Plaintiff had no idea, nor would he have had any idea under the circumstances (since this had never come up before, and there had been no prior major disputes) to suspect or know that defendants *Id.* **never** planned on honoring their acceptance

of the specifically modified terms of the mortgage contract from 2001 related to any escrow account for any items other than PMI. Rather, the fact that BAC NA deleted the old escrow account for PMI in 2004 implied that they were honoring the agreement reached when the closing paperwork and DOT was signed in 2001.

86.     These Defendants BAC M, BAC NA, DOES and their representatives fraudulently tricked Plaintiff that day in January 2001 into signing the modified documents knowing full well that they were not going to honor the modified terms regarding any future escrow account.[16] This only came to light once it became clear that defendants *Id.* had *no* intention of abiding by the contract, when it became obvious in 2010-2011 that they (BAC HLS LP, BAC NA, BAC M, FHLMC LBAC 173, BALBOA, DOES) refused to remove the new escrow account.

87.     This information about having no intention of honoring the escrow account agreement was intentionally and knowingly withheld from Plaintiff by defendants BAC NA, BAC M, DOES. Had Plaintiff known that defendants BAC M, BAC NA, DOES, had no intention of honoring the loan agreement as specifically agreed to and modified on or around January 30, 2001 to reflect "absolutely *no* escrow accounts *ever* for property taxes and homeowner's insurance", when the deed of trust and note were signed, plaintiff would have never have agreed to the loan in the first place. He would have canceled the deal, and found another lender. Plaintiff specifically got a "fixed" rate mortgage (at a significant cost increase) so that *all* his expenses would remain the *same* for the life of the loan, once PMI was dropped.

88.     Defendants BAC NA, BAC M, DOES knew or should have known that they never intended to honor the contract, and conspired to withhold such information from Plaintiff, or to give the known false assurances that Plaintiff had modified the closing documents and DOT to reflect the agree upon changes that day in January 2001. Plaintiff relied on (stated truth of) the intentional misrepresentation or omission of defendants *Id.* to his detriment, plaintiff has been damaged by defendant's acts, for example by; (1) the creation and billing of the escrow account in 2010-2012, (2)

---

[16] Such modification on the face of the DOT would have made the loan unmarketable using normal secondary market sources (i.e. Freddie Mac securitization & MBS'S), and BAC M'S Susan Birge knew this at that time.

having to pay excess and improper mortgage charges/fees, (3) filing and fighting the instant action, and; (4) facing the wrongful acceleration and foreclosure of his house and all the monetary and personal cost associated with that, these damages and many more never would have happened had it not been for defendant's fraud, material misrepresentation and conspiracy, from 2001.

88.5    The BAC NA Deed of Trust, Note and related final closing documents signed on or around January 30, 2001 were obtained thru Defendant BAC NA, BAC M, and DOES'S Fraud and deceit, and now that plaintiff is aware of the facts surrounding these events he prays that all ill gotten gains that followed that fraudulent conduct/transaction be immediately returned to him, and for the DOT and Note evidencing that fraud to be declared void/invalid along with any related recorded documents.

The Home Affordable Modification Program negligent misrepresentation, fraud and deceit

89.    In or around December of 2010, and/or early 2011 Defendant Home Retention Group ("HRG") began sending Plaintiff payment demands on more then two occasions, that intentionally misstated (increased) the amounts Plaintiff owed on his mortgage loan, these demands were in violation of California Rosenthal Act, 15 USCS § 1692.  These violations were knowingly committed by HRG in conjunction and cooperation with, as agent for Defendants BAC NA, BAC HLS LP, FHLMC LBAC 173, DOES, who had a meeting of the minds to cooperate and achieve their unlawful and improper goals of, but not limited to, (1) attempting to collect from Plaintiff debts not actually owed, or in excess or debts owed to Defendants *Id.* (2) denying plaintiff access to the Home Affordable Modification Program ("HAMP") thru improper means, and (3) on information and belief defrauding the US Government.

90.    In response to the repeated notices from HRG, Plaintiff sent HRG a letter of dispute dated April 11, 2011 disputing the amounts owed in full and asking for verification of all debts allegedly owned along with a host of other demands, this letter was on information and belief forwarded to BAC NA, BAC HLS LP either electronically or via the US Mail.  No verification of the debt was ever mailed to Plaintiff in the statutorily mandated time frame in violation of 15 USCS § 1692g(b).

91.    Around April or May 2011 Plaintiff received a notice from HRG in conjunction with, or as agent for, BAC HLS LP, BAC NA, FHLMC LBAC 173, DOES that fraudulently stated that Plaintiff had sent in their loan modification package for the "HAMP", that he was seeking a home loan

modification and was asking for assistance.  The notice started out "Thank you for your interest in the federal government's Home Affordable Modification Program."

92.     At no time had Plaintiff *ever* send in any paperwork requesting a modification to HRG or any other defendants, and any such knowingly false representation by defendants HRG, BAC HLS LP, BAC NA, FHLMC LBAC 173, DOES sent thru the US mail was possibly mail fraud.  Plaintiff was then *precluded* from *later* filling out, applying for, and possibly qualifying for the HAMP program if he lawfully chooses to *actually* send in such a request.

93.     According to Defendants HRG, BAC HLS LP, BAC NA Plaintiff had *already* done this and Defendant BAC HLS LP letter stated "As of the date of this letter, we are **missing the required documents.**  We cannot complete our eligibility review until we receive the following information for each borrower by May 29, 2011" (Emphasis in original).

94.     On June 28, 2011 Plaintiff received yet another knowingly false and fraudulent interstate communication from "BAC HLS LP 5401 N Beach St Fort Worth TX 76137" that stated "We have reviewed *your request for a loan modification* under [HAMP]." Emphasis added.  Then going on to state that plaintiff's loan [modification request] was denied because he had not sent in the requested documents etc.  Indeed they were "missing the required documents" because Plaintiff never turned in an application for any a home modification.

95.     On information and belief Defendants HRG, BAC NA, BAC HLS LP, DOES, knowingly submitted false information to the administrator of the HAMP federally backed program or other government agencies as to Plaintiff's alleged "interest" (and subsequent denial) in this program which is alleged to be a violation of 18 USC §§1001, 1002, and 1005.

96.     Or in the alternative, Defendants BAC NA, BAC HLS LP, HRG, DOES, repeatedly made false statements to Plaintiff so that Defendants *Id.* could then improperly proceed with the foreclosure of Plaintiff's home stating that they *had* complied with the law and Freddie Mac servicing guidelines, when in fact they had not, that they had attempted to work with plaintiff, when in fact they had done just the opposite.  Defendant's actions prematurely and permanently closed the door to the HAMP program for plaintiff by their knowingly false representations and Plaintiff has been damaged and injured by defendants HRG, BAC HLS LP, BAC NA, DOES coordinated interstate scheme and unlawful actions to

take his property.

97.     On or around July 1, 2011 Plaintiff received a FedEx envelope from (BAC NA, BAC HLS LP) "Keith Gillard BAC 811 Villa Park Dr. Richmond VA 23228" stating "We have received your request for workout assistance" then going on to state that "within 48 hrs" Plaintiff needed to include (7) items relating to his (nonexistent) request for a workout. This letter was knowingly false and fraudulent; at no time did Plaintiff *ever* make any request for a workout, loan modification, or anything of the sort. This letter was not some "clerical error" or "mistake."

## VI. BREACH OF DEED OF TRUST ("DOT"), CONTRACT (As to BAC NA, BAC HLS LP, BAC M, BALBOA, FHLMC LBAC 173, QLS, DOES)

98.     Plaintiff incorporates and re-alleges all of the preceding paragraphs here in full.

99.     In June 2010, Defendants BAC HLS LP, BAC NA, DOES knowingly and intentionally (and without proper prior notice to Plaintiff as required under section 15 of the deed of trust) created an unlawful escrow account on Plaintiff's Mortgage loan to in part fund the payment of improper sums billed and paid to BALBOA. The creation and billing of sums under the new escrow account was a breach of the DOT section 3 as modified in January 2001.

100.    Beginning in or around September 2010, Defendants BAC HLS LP, BAC NA, BAC M failed to credit plaintiff's payments as required by the Deed of Trust/Contract section 2 (Application of Payments or Proceeds Pg. 4 of 15). This section states "all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the note; (b) principle due under the note; (c) amounts due under section 3."

101.    Defendants BAC HLS LP, BAC NA, BAC M, BALBOA, FHLMC LBAC 173, DOES in 2010 and 2011, changed the priority of payments and paid items under (c) *Id.* first, items such as alleged escrow charges, late fees, and other fees or costs unknown to plaintiff. Then Defendants *Id.* applied or held the remaining proceeds (which were then *short*, due to defendant's improper actions) to a suspense account or much later applied these to interest and principle on the loan but only when enough funds were accumulated, which took about 2 months payments by plaintiff for every one month credited by Defendants. These actions caused plaintiff's mortgage to appear in default when it was actually not.

Plaintiff's SAC                                   - 26 -

102.    Defendant BAC HLS LP, BAC M, BAC NA, did not apply Plaintiff's November 2010 payment of $968.57 per the terms of the DOT or note. Defendant BAC HLS LP received this payment on November 12, 2010 (per USPS Confirmation) and posted it that same day as "misc. posting" "other Unapplied 968.57." Attached and incorporated herein as **Exhibit H** in full for reference is a copy of Plaintiff's statement allegedly dated November 29, 2010, proving this fact. Defendants *Id.* did *not* apply it to *any* part or payment of the loan, rather it appeared to be improperly held until September 2011, then BAC NA "refunded [it] as a partial payment" of $497.88 (**Exhibit G**). The Note clearly states "Each monthly payment will be applied as of its *scheduled* due date and will be applied to interest before Principle." Defendants did not do this, November's scheduled due date was November 1, 2010.

103.    Plaintiff's December 2010 statement is attached as **Exhibit I** and incorporated herein in full for reference, it is allegedly dated 12/31/10 and does *not* appear to show Plaintiff's payment of $968.57 made on Dec. 10, 2010 nor his payment of Dec. 30, 2010 (**Exhibit M**), instead shows three items being paid/posted on 12/20/10; (1) Principle $198.02, (2) Interest $770.55, and (3) Escrow $211.13 *all* for NOVEMBER. Plaintiff does not know what happened to his Dec. 10, 2010 payment, yet it appears to have been *received and used* (but not posted) in the 12/20/10 posting (the "partial payment balance" held still shows $968.57).

104.    The posted payments of $211.13 on 12/20/10 and *again* on 12/30/10 for escrow items and the posting of these items were *ahead of* (and a breach of Sec. 3) the received payments and posting of Principle and Interest for the November and December payments paid timely and in full for $968.57 each in November and December. These items were not posted per the terms of the note and DOT. The posting of the escrow items made plaintiff's payments allegedly short, when in reality they were not. At the *same time* Defendants BAC HLS LP, BAC NA, FHLMC LBC 173, DOES were declaring a "payment default" *see* pg. 3 of 6 **Exhibit I** *Id.* No such default existed, and arguendo if any did exist plaintiff could have, and would have cured it if he had been given timely information and documentation requested in prior QWR'S.

105.    BAC HLS LP, BAC NA, DOES sent a "Notice of Intent to Accelerate" allegedly dated December 20, 2010 and another "Notice of Intent to Accelerate" on January 18, 2011 that alleged "the

loan is in serious default because the required payments have not been made" these notices are attached herein as **Exhibit J and K**, and are incorporated here in full for reference.

106.    Plaintiff's payment on December 10, 2010 was received by BAC HLS LP on December 13, 2010, attached as **Exhibit L** is a copy of the USPS tracking printout and it is incorporated herein in full for reference. BAC HLS LP, BAC NA, DOES specifically held the December 10 payment and did *not* cash it until December 21, 2010 a day *after* defendants issued the "notice of intention to accelerate" this was intentionally done to *not* reflect that payment on this notice and to produce a *knowingly false and inflated picture* of Plaintiff's *timely* payment under the DOT and Note; to inflate amounts allegedly owed to FHLMC LBAC 173. These actions violated Federal and State debt collection laws, Freddie Mac servicing guidelines, RESPA, the DOT and Note, Defendants *Id.* were negligent at the very least.

107.    Plaintiff made a payment on December 30, 2010 for $615.98 for unknown items demanded by defendants BAC HLS LP, BAC NA, BAC M, BALBOA, FHLMC LBAC 173, DOES this payment was done via an *electronic transfer* from his checking account, and according to the BAC representative was the "full tenderable amount [owed] as of today" process and cure the alleged default. This amount *Id.* as being the "full tenderable amount owed" may be supported by BAC's own statement of "Total [Due]" on Pg. 2 of **Exhibit I**, *supra.* Proof of this transaction being confirmed on December 31, 2010 is attached herein as **Exhibit M** and incorporated here in full for reference.

108.    Plaintiff's electronic payment of December 30, 2010 for $615.98 does not appear to ever get posted (or credited?) to Plaintiff's mortgage account statements. What happened to plaintiff's money after BAC MORTGAGE[17], BAC HLS LP, BAC NA, and DOES received it is unknown to Plaintiff to this day. Plaintiff's January 28, 2011 statement is attached as **Exhibit N** and incorporated herein in full for reference, it does *not* show the posted payment either, and the December 31, 2010 statement (**Exhibit I**) did *not* show it being received or posted.

109.    Defendants' *did not* stop the acceleration process as agreed on December 30, 2010 by their phone rep, when they were paid consideration in full for the performance on their part. This was

---

[17] Plaintiff's bank's confirmation (**Exhibit M**, pg. 2) clearly states "Bank of America Mortgage" and he alleges that this entity is a proper party to this action, and was served with the summons and complaint/FAC and has actual notice of this suit.

another and separate breach of contract by BAC M, BAC HLS LP, BAC NA, FHLMC LBAC 173, DOES. Plaintiff was disputing all sums (under their "interpretation") at that time *yet still fully paid them*. Plaintiff did equity, offered consideration, and expected Defendants *Id.* to honor their part of the agreement. Instead Defendants issued additional Intent to Accelerates' on January 18, 2011, February 17, 2011 and March 14, 2011 and *continued* to claim Plaintiff was in a payment default in excess of 90 days while appearing to not post his two December payments, and holding *one full monthly unapplied payment* of $968.57.

110.   The Notice of Intent to Accelerate of January 18, 2011 falsely *and intentionally* fails to disclose timely payments made by plaintiff, including the electronic transfer on December 30, 2011 in the amount of $615.98, yet oddly seems to show the "late fees" allegedly owing to have been *paid*, appearing to be another breach of Section 2 paying other (Defendants) fees ahead of principle and interest payments.

111.   The notices of intent to accelerate were knowingly false; plaintiff timely tendered, and paid all sums lawfully due under the note (payments received by the 16th of the month are not late) at those times, *Id.* The alleged "payment default" was caused by *Defendants* BAC HLS LP, BAC M, BALBOA, FHLMC LBAC 173, DOES; (1) improper and voidable escrow account (2) not properly and timely posting Plaintiff's payments per the terms of the contract, section 2, which clearly states Interest, Principle, and other charges, in that order, and by the terms of the Note; and (3) defendants breach of the December 30, 2010 agreement with Plaintiff via the BAC phone rep. and; (4) defendants posting "late fees" when payments were *not* late under the DOT.

112.   Defendants BAC NA, BAC HLS LP, BAC M, FHLMC LBAC 173, DOES have also not accounted for; (1) nearly $1000 that BAC HLS LP was holding in a suspense account since November 2010, which appears to be only partially refunded (< $500) in September 2011(10 months later); plaintiff then deposited said "partial payment refund" amount into the dispute account on 9/30/2011 (*see* bank statement **Exhibit F**) (2) the $615.98 electronic payment on December 30, 2010 (*see* **Exhibits J, O** *supra*) (3) a $194 overcharge on the escrow account that was not refunded to plaintiff, and (4) other unknown charges in the last 2 years.

113.    The breaches of section 2 of the DOT (and Note) were on information and belief knowingly, intentionally, or negligently committed by Defendants BAC NA, BAC HLS LP, BAC M, BALBOA, FHLMC LBAC 173, DOES pursuant to their corporate policies and procedures, policies known and sanctioned by senior management of the subsidiaries, and of the parent companies, their board of director's, BAC NA and its involved affiliates.  Defendants' conduct was an intentional scheme to take plaintiff's property; to make and then reinvest such illegally made profits.

114.    Defendants BAC NA, BAC HLS LP, BAC M, FHLMC LBAC 173, DOES also breached Section 3 (Funds for Escrow Items) of the contract.  In or around June 2010, they created an improper escrow account, collected unlawful sums, and refused to refund such sums and overcharges, all in violation of the DOT, RESPA and California laws.  These actions specifically violated numerous sections of RESPA as outlined above, the DOT states in part escrow funds shall "(b) not to exceed the maximum amount a lender can require under RESPA" (pg. 2, ¶ 2), and "or otherwise in accordance with Applicable Law" including California Civil Code § 2954.  The new Escrow account was arguably illegal under § 2954, and thus any funds were in excess of the "maximum amount…under RESPA."

115.    "If there is a surplus of Funds held in escrow, as defined under RESPA [which there was as alleged ¶ 26 *supra*], Lender shall account to Borrower for the excess funds in accordance with RESPA" DOT pg. 5 ¶ 4.  Defendants BAC HLS LP, BAC NA, BAC M, FHLMC LBAC 173, DOES did not do this and their failure was a breach of the DOT, see ¶ 56 *supra*.

116.    As to Plaintiff's allegations regarding a violation of RESPA § 2609(c), the DOT states "if there is a shortage of funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA."  According to Defendants BAC HLS LP, BAC NA, BAC M, DOES the June 21, 2010 opening statement for the "escrow" item showed a *negative* balance of $981.00, *see* **Exhibit O**.  24 CFR § 3500.17 (b) defines "shortage" as "an amount by which a current escrow account balance falls short of the target balance at the time of the escrow analysis" (which arguably was no later than plaintiff's August 16, 2010 statement).  Defendants *Id.* did not "notify borrower as required by RESPA" they took 54 days to give plaintiff his "Initial escrow account statement" and that is more than the "45-

day period beginning on the date of the establishment of the escrow account." mandated under § 2609(c) *see* ¶ 52. Plaintiff has suffered damages due to defendants *Id.* breach of the DOT and Note.

117.   BAC NA, BAC HLS LP, BAC M, FHLMC LBAC 173, DOES violated the DOT section 1 by not properly crediting or returning plaintiff's alleged "unapplied funds" sooner. The DOT states "Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time Lender shall either apply such funds or return them to Borrower." Plaintiff's loan was "current" according to the BAC phone rep when Plaintiff paid the $615.98 on December 30, 2010, he paid the "true tenderable amount due exactly as of today" to make his loan "current as of today." *See* **Exhibit M**. And arguably was never in default. Defendants Id. holding the unapplied funds for 10 months until September 2011 was excessive, given the events and facts of this case.

118.   BAC HLS LP, BAC M, BAC NA, FHLMC LBAC 173, DOES breached the DOT Section 5 by refusing to let Plaintiff pay the "LPP" sums due in one payment without the imposition of an escrow account, and such actions are *against* the clear public policy of letting a debtor pay his just debts in any lawful manner as *he* sees fit, i.e. *immediately* rather then thru a **forced** year long payment schedule, and improper escrow account.

119.   The DOT Section 5 ¶ 2 property insurance states, "Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument." The LPP policy was "disbursed by Lender" on June 21, 2010 (see **Exhibit O** received in July 2010), and no later than August 17, 2010 (**Exhibit C**) plaintiff was offering to pay for the LPP (without an escrow account). BAC NA, BAC HLS LP refused, the BAC representatives stated to plaintiff that they could only accept payments for either "principle or interest", and on information and belief that defendant's BAC NA, BAC HLS LP, BALBOA, DOES policies and procedures dictate that an escrow account must be opened rather than allowing the borrower to pay the "additional debt of borrower."

120.   BAC M, BAC HLS LP, BAC NA, FHLMC LBAC 173, DOES violated the oral agreement/contract reached on December 30, 2010 when plaintiff made an electronic transfer to pay any and all alleged sums that were owed under his DOT in the amount of $615.98. And was specifically

assured that such payments would "stop the acceleration" and make his loan "totally current." Plaintiff offered consideration, it was accepted, and he expected the other party to fulfill their end of the bargain; they did not. The result of defendants' *Id.* fraudulent or negligent misrepresentation breach that day proximately led to the wrongful acceleration and foreclosure of his home and the instant case.

121. Defendants acts and omissions have proximately caused Plaintiff actual damages, including, but not limited to: severe emotional distress, loss of sleep, loss of appetite, frustration, anger, fear, nervousness, anxiety, direct monetary loss, psychological and physiological harm, in sum, immense, and irreparable injury that continues to this very day. He has been damaged in an amount according to proof at trial.

**Public Policy Considerations and the Deed of Trust**

122. The Deed of Trust as written is vague and against the public interest in that one of the fundamental tenants of a 30 year *fixed* contract is the public policy that every borrower /mortgagor shall know exactly what amount they are required to pay now and in the future, so that they can plan their life around such an *exact and known* payment.

123. If as here, Defendants are able to "revoke the [escrow account] waiver as to any or all Escrow items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3." This is an unconscionable clause that gives the Lender complete and improper discretion for any reason whatsoever, *or for no reason*, to thereby significantly modify [increase] a mortgagee's payment on a 30 year fixed loan, "at any time."

124. Section 15 of the contract is also no help to the public interest considerations, and again is *against* such interests in that the contract does *not* state how many days or other time period that mortgagee shall provide mortgagor notice prior to this (any) significant and drastic change. So if lender simply *sends* a "first class letter" announcing the addition of such a new escrow account and makes it effective *immediately*, or 10 days, or any length of time they choose, since the contract makes no mention at all of time for such notice. Then if borrower (as here) disputes such a change, he is then declared in default, foreclosed upon, and his house sold, even though he is making all payments as per the original

contract, in this case $968.57 rather than the new bank demanded payment of $1179.70 (which is also a higher payment then initially required ($1146.61) had plaintiff had an escrow account in 2001).

125.    As a contract of adhesion, public policy considerations should dictate a closer look at all of the possible and actual effects of, and possible abuses of, clauses such as "3" and "15", with the actual actions of defendants in this case. Defendants own actions are creating a situation that benefits *only* the Mortgagee and their assignees, while demanding (out of the blue) a drastic and expensive change [increase] in the middle of a 30 year contract of the mortgagor, as is illustrated in the instant case, who was improperly demanded to pay an increase of over 20% in his mortgage payment, that went into effect overnight, with little or no notice.

126.    Section 15 is also repugnant of public policy considerations; it applies a double standard to mailing and delivery of "all" written notices under the contract, and for the 30 year term. Mortgagee's notice is deemed given "when *mailed* by first class mail" thus if mortgagor never receives it, too bad for them according to the contract. Yet if mortgagor mails a notice to mortgagee (QWR) such notice "shall not be deemed to have been given to Lender until *actually received* by Lender." (Emphasis added). If for example, the lender or it's agent (servicer) has poor mail handling or poor data input protocols and somehow "looses" the notice sent by borrower, then as far as the lender is concerned, they never "actually received" such notice since it is not *shown* in their system (even though they may indeed have "actually received" it). Defendants are then improperly policing their own interests, and as stated, such interests promote "loosing" as many notices (or payments) as possible, or at the very least making little or no effort to avoid such "accidents" or "clerical" errors that solely benefit them.

127.    The only way a borrower can ever hold a lender/servicer to the terms of the contract is to send *every* written notice either certified or some other confirmed delivery method, all at unneeded expense to simply uphold his or her rights. Yet there is no such expense or requirement on notices sent by the Lender. This is against the public interest, and is unbalance and costly for the borrower (extra 5% of a monthly payment amount per year for Certified mail).

### VII.  DECLARATORY RELIEF (as to all defendants)

128.    Plaintiff incorporates and re-alleges all of the preceding paragraphs here in full.

129.     Plaintiff generally contends a payment default of the obligation for which the deed of trust is security has not occurred.  Defendants contend that Plaintiff is in serious payment default and look to foreclose on the subject property.  An actual controversy exists between Plaintiff and Defendants concerning their respective rights and duties pertaining to the subject property, the described transactions and payments, note, and Deed of Trust and associated paperwork as modified and that if this court does not use its declaratory and equitable powers plaintiff will suffer further irreparable harm by the wrongful foreclosure and sale of his property.

130.     Subject Property is very unique and cannot be replaced, regardless of any monetary judgment.

131.     Plaintiff desires a judicial determination and declaration of plaintiff's and defendants' respective rights and duties; in part specifically, (1) that the deed of trust was modified and agreed to by both parties, as to preclude defendants from adding any escrow accounts to plaintiffs loan now or for the remainder of the contract (which extents 20 years into the future; (2) that plaintiff was not in default and; (3) any other determination this court finds appropriate given the circumstances to resolve the disputes.  Such a declaration is appropriate at this time so that plaintiff may determine his rights and duties before the subject property is sold at a foreclosure sale, and so that any future payments may be made with certainty as to their legal effect.

VIII.  ACCOUNTING (As to: BAC NA, BAC HLS LP, BAC M, FHLMC LBAC 173, DOES)

132.     Plaintiff incorporates and re-alleges all of the preceding paragraphs here in full.

133.     All payments since 2001 remain in dispute.  Plaintiff alleges that he has paid all sums lawfully owed under the contract either to Defendants or into the Civil Code §1500 account, and that any sums still in dispute, <u>Plaintiff would have paid, and had the means to pay, had defendants *Id.* simply furnished him with timely, full, and accurate accountings, and initially (Aug. 2010) with a copy of the temporary lender placed insurance policy.</u>

134.     This accounting has been asked for in writing beginning in December 2010, and continuing as late as July 24, 2011.  Plaintiff feels that Defendants *Id.* demands to pay sums that may be improper and unlawful under the DOT is wrong, against public policy, and that a full accounting of any

and all transactions from the beginning of the loan until today is warranted due to the convoluted circumstances, and numerous disputes over the last two years.  Plaintiff believes he has actually *overpaid* Defendants *Id.* and is entitled to a refund on his mortgage account.

## IX.  CONVERSION (As to BAC NA, BAC HLS LP, BAC M, BALBOA, FHLMC LBAC 173, DOES)

135.    Plaintiff incorporates and re-alleges all of the preceding paragraphs here in full.

136.    Defendants BAC NA, BAC HLS LP, BAC M, FHLMC LBAC 173, DOES by mutual agreement and understanding improperly collected, kept and later refused to return surplus escrow funds and other unknown fees, costs, expenses Plaintiffs paid between July 2010 and November 2011 in violation of the DOT and/or federal or state law.

137.    These specific and identifiable sums paid were Plaintiffs money that was at all times to be properly credited to his mortgage payments of interest and principle, with any extra amount demanded by Defendants and paid, to be his alone, and to be promptly returned to him.

138.    As a direct result of, and proximately caused by, Defendants' actions and inactions, plaintiff has, and continues to, suffer damages and asks for all converted sums paid by plaintiff to be fully accounted for and returned to him immediately.

139.    Defendants acts and omissions have been with deliberate indifference, malice, oppression and fraud, and have proximately caused Plaintiff actual damages, including, but not limited to:  severe emotional distress, loss of sleep, loss of appetite, frustration, anger, fear, nervousness, anxiety, direct monetary loss, psychological and physiological harm, in sum, immense, and irreparable injury that continues to this very day.  He has been damaged in an amount according to proof at trial.

## X.  WRONGFUL FORECLOSURE (As to all Defendants and DOES)

140.    Plaintiff incorporates and re-alleges all of the preceding paragraphs here in full.

141.    Attached as **Exhibit P** and incorporated herein in full by reference, is one of the "Notice of Sale" plaintiff received from defendant QLS.  This notice was not properly given to Plaintiff, he further notes that "every" notice of sale plaintiff receive is *neither signed, nor dated* in violation of California Code §2924 et. seq., and is not a valid "copy" per California Evidence Code §260, nor a valid legal document.  CC §2924 speaks of "copy/copies" of notices when is states "all requirements of law

regarding the mailing of *copies* of notices or the publication of a *copy* of the notice of default or the

personal delivery of the *copy* of the notice of default or the posting of *copies* of the notice of sale or the

publication of a *copy* thereof shall constitute prima facie evidence of compliance with these

requirements..." So by logic if the documents are *not* true or accurate "copies" of what they purport to

be, then there is *not* prima facie evidence of compliance [with §2924 et. seq.].

142.   CC §2924b is headed "*Copies* of Notices of Sale and Default", and the operative section

for this allegation is CC §2924f, which speaks of the Notice of Sale Under Power of Sale...and "*before*

any sale of property can be made under the power of sale contained in any deed of trust or

mortgage...notice [a *copy* of the Notice of Sale] of the sale thereof shall be given" later the section also

plainly states "A copy of the notice of sale shall also be posted in a conspicuous place on the property to

be sold at least 20 days before the date of sale..."

143.   Defendants QLS, BAC NA, BAC HLS, FHLMC LBAC 173, DOES have not mailed,

posted, or in any way properly severed or notified Plaintiff in accordance with CC §2924 et seq., rather

they knowingly gave Plaintiff "false copies" with the intent to defraud and trick him into giving into their

unlawful and coordinated demands, knowing that Plaintiff is most likely in a financially vulnerable

position. These intentionally false notices were "mailed" on more than 2 occasions in or around July

2011 to November 2011, and were a part of their scheme to defraud.

144.   Plaintiff has been damaged and prejudiced in his defense by these false notices. How is

Plaintiff to challenge the notices of sale when he; (1) does not have a true and actual copy of the notice of

sale (2) plaintiff is not notified *who* exactly is authorized or proceeding with the "notice of sale" he

cannot challenge an unknown person, nor can an unknown person foreclose on his house, nor can they be

an authorized agent (3) the notice of sale was *not* dated, and CC §2924 et seq. are *very* date specific

codes, as the date of these notices are used to calculate deadlines for redemption, sale, extensions etc.

Defendants' intentional failure to comply with statutory notice requirements denied Plaintiff due process

under the Fourteenth Amendment of the Constitution, and the opportunity to exercise the rights that CC

§2924 et seq. are specifically designed to protect.

145.   Any notice of sale Plaintiff received is fatally flawed, prejudicial to Plaintiff, is not a true legal copy, and lacks any signature or date, such things are required by the Codes, basic law *and* public policy, as well as being "essential elements" of the validity of a document.  The notice of Sale should be void, expunged, and any sale under it should be enjoined or voided.

146.   The notice of default also should be void because it does not contain the correct Assessor's Parcel number on it and was materially flawed in a significant fashion.  The notice was *recorded* with the incorrect information that does not even relate to Plaintiff's property, the APN # recorded and printed is "484-010-012-000" and this is *not* Plaintiff's APN number (030-010-012-000).

147.   Regardless of any errors, Plaintiff has plead his full and timely tender of all amounts owed to defendants and that any other sums in dispute could have been paid if not for defendants own unclean and improper actions as alleged herein.

148.   Plaintiff alleges that Defendants BAC NA, BAC HLS LP, BAC M, BALBOA, QLS, individually and/or as an enterprise of joint effort and coordination have *not* done equity as outlined in the proceeding paragraphs of this complaint, and that they have repeatedly violated (1) the covenant of good faith and fair dealings, (2) the contract, (3) note, (4) committed fraud, extortion, conspiracy, and; (5) knowingly and willfully violated various federal and state laws on numerous occasions within the last 10 years.  Yet in spite of such *inequity* they now demand an improper and unlawful foreclosure of Plaintiff's real property.

149.   Plaintiff is informed and believes and thereon alleges that Defendant QUALITY LOAN SERVICE CORP. is not the lawful and duly appointed trustee for the actual owner of the note, which is no longer BAC NA, and is purported to be FHLMC LBAC 173, which plaintiff alleges is not the holder in due course of the note, and does not have the lawful right to foreclose on the subject property, or to enforce the DOT and Note.  That Defendants BAC NA, BAC HLS LP, BAC M, QLS, FHLMC LBAC 173, DOES have (1) failed to record or (2) improperly recorded some or all prior substitutions of trustees, and transfers of ownership of the note as required by law, and do not have the lawful right to foreclose on the subject property.

## XI.  VIOLATION OF COVENANT OF GOOD FAITH AND FAIR DEALINGS (As to all BAC NA, BAC HLS LP, BALBOA, BAC M, QLS and DOES)

150.    Plaintiff incorporates and re-alleges all of the preceding paragraphs here in full.

151.    A duty of good faith and fair dealings was implied by law into the deed of trust, note, LPP, and all agreements between Plaintiff and Defendants that is at issue in this action.  Defendants BAC M, BAC HLS LP, BAC NA, BALBOA, FHLMC LBAC 173, QLS, DOES duties of good faith and fair dealings included, but were not limited to, the following: (i) Defendants had a duty to pay at least as much consideration to Plaintiff's financial interests as to Defendants financial interest; (ii) Defendants had a duty to comply with all applicable federal and California state laws; (iii) Defendants had a duty to faithfully keep their end of the agreements that were made between Plaintiff and them.

152.    At all times herein relevant, Defendants BAC M, BAC HLS LP, BAC NA, BALBOA, FHLMC LBAC 173, QLS, DOES agreed to act in good faith and deal fairly and honestly with Plaintiff when they entered into the mortgage and accepted payments from Plaintiff.  Defendants thereby assume obligations of good faith and fair dealings towards Plaintiff and thereby agreed to abide by such obligations.

153.    Nevertheless, Defendants *Id.* breached the implied duty of good faith and fair dealings owed to Plaintiff by, among other things, performing the acts and failures to act herein alleged, and by failing to perform the duties specifically enumerated herein.

154.    In the absence of a reasonable basis for doing so, and with full knowledge and or deliberate indifference of the consequences to Plaintiff, Defendants *Id.* further acted in bad faith towards Plaintiff, including initiating and continuing foreclosure proceedings when they were fully informed that Plaintiff has specifically set aside money for his mortgage payments and such money was readily available to them.

155.    Defendants *Id.* refusal to follow through on their duty to act honestly in all dealings, to timely respond to plaintiff, and mitigate unneeded expenses, were made with the intent to intimidate, vex, and harass Plaintiff, so as to discourage (and wear him down) him from pursuing his rights under the deed of trust, federal and state laws.

156. On all counts in the complaint (where allowed, proper, or equitable) against defendants BAC NA, BAC HLS LP, BAC M, QLS, BALBOA, FHLMC LBAC 173, DOES, Plaintiff prays that punitive and exemplary damages be awarded according to proof at trial pursuant to Federal Law, and Civil Code §3294 et al. in order to deter such outrageous and improper conduct in the future and prevent repetition thereof against other borrowers as a practice, by way of punishment and as an example.

XII.  NEGLIGENCE (As to QLS, BAC NA, BAC HLS LP, BAC M, BALBOA, FHLMC LBAC 173, DOES)

157.     Plaintiff incorporates and re-alleges all of the preceding paragraphs here in full.

158.     To each of the following defendants plaintiff alleges that they each owed a legal duty to plaintiff in contract, as a fiduciary, or other lawful manner to use "reasonable care" in exercising each of their duties and obligations, that they each breached that/those duties, that such breach proximately caused plaintiff's injury and damage that he would not have ordinarily sustained, all as outlined in the allegations of this complaint.

159.     To defendant QLS as Trustee under the DOT on the subject property. QLS negligently breached their duty to use reasonable care and failed to perform their duties on numerous occasions since being substituted in place of PR LAP, Inc. in or around July 21, 2011. QLS'S failures have caused plaintiff damages and injuries in fact that can be directly traced to the failure to perform their duties with reasonable care. These breaches include but are not limited to the following events, actions, and inactions that are stated in this complaint; 1) negligently failing to lawfully follow the non-judicial foreclosure proceedings outlined in Cal. Civil C. § 2924 et seq. while at the same time continuing with the foreclosure as if the Trustee had; 2) failure to respond in a timely and meaningful fashion to plaintiff's inquiry and demand for the actual reinstatement figures on November 9, 2011 and incorrectly stating the amounts owed in both the notice of default and notice of sale; 3) failure to maintain a neutral fiduciary position in regards to both the beneficiary and trustor, and to only act accordingly; 4) failure to accurately prepare and record the notice of default which did not contain the proper APN # for the subject property; 5) failure to post and deliver "any" true copy of the notice of sale to plaintiff at the subject property, all copies were neither signed nor dated in violation of § 2924f; 6) failure to do an

adequate and appropriate investigation into the alleged reasons for default, amount of default, presence of the Cal. Civil C. § 1500 account, and other pre foreclosure activities with reasonable care; 7) failure to postpone the sale when asked to do so by plaintiff on November 9, 2011 when such postponement was justified given the facts and; 8) failure to adequately and properly communicate with plaintiff regarding the postponement or cancellation of any or all scheduled sales of the subject property.

160.    To defendant BAC HLS LP who was the servicer of plaintiff's mortgage under the DOT, from around November 16, 2009 to around July 1, 2011 and to BAC NA who was the servicer of plaintiffs loan before and after these dates, and who is the current servicer of plaintiff's loan. BAC HLS LP and BAC NA had a duty under the DOT and Note to use reasonable care in all aspects of their servicing of plaintiff's loan.

161.    BAC HLS LP, BAC NA, BALBOA, DOES had a duty to correct the mistakes and errors of "the transaction" which encompassed the unlawful opening of the escrow account and billing of the LPP, BAC HLS LP, BAC NA and BALBOA'S refusal to provide plaintiff with a copy of the LPP policy, refusal to close the account when asked under § 2954, or to allow plaintiff to pay the LPP charge of $981 without an escrow account, and their repeated refusal to correct their mistakes which was intended to affect plaintiff. These actions directly led to the later chain of events of defendants' *Id.* misapplication of plaintiff's timely payments, making it appear as if he was in default when he was not–and their refusal to adequately investigate, correct, or respond to plaintiff's QWR'S collectively were BAC HLS LP, BAC NA, BALBOA'S mistakes alone.

162.    Defendant FHLMC LBAC 173 had a duty to properly and adequately supervise and monitor their servicing agents BAC HLS LP and BAC NA in the transactions described in this complaint, to make sure that those working for them were following the laws, they failed to do so when they were aware of numerous prior similar incidences and errors, and such failures and negligence directly led to the chain of events ending in the attempted foreclosure of plaintiff's home causing him damages, and injuries in fact.

## XIII. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (As to BAC NA, BAC HLS LP, BALBOA, QLS, FHLMC LBAC 173, DOES)

163.    Plaintiff incorporates and re-alleges all of the preceding paragraphs here in full.

164.    Defendants BAC NA, BAC M, BAC HLS LP, BALBOA, QLS, HRG, FHLMC LBAC 173, DOES were at all times relevant to this complaint acting with intentional disregard for the effects of their actions.

165.    Defendants *Id.* intentionally failed to correct their mistakes, errors, and unlawful actions beginning with the August 2010 letter requesting that the escrow account be closed and continuing with numerous actions of all parties leading to the foreclosure as alleged.  These actions, inactions, and chain of events and the results they produced were clearly foreseeable to defendants *Id.* that they would and did produce emotional (and physical) distress to plaintiff by the attempted foreclosure of his home when he was not in default and had repeatedly attempted to pay defendants.

166.    Defendants *Id.* actions as outlined in this complaint did produce great emotional distress, injuries in fact, and damages to plaintiff as alleged herein.

## XIV.  VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONAL CODE §17200 (As to all Defendants and DOES)

167.    Plaintiff incorporates and re-alleges all of the preceding paragraphs here in full.

168.    Defendants BAC NA, BAC M, BAC HLS LP, BALBOA, QLS, HRG, DOES, have used illegal, unfair, and unconscionable methods on numerous occasions as outlined in the complaint to give them an unlawful, unfair and improper advantage, and to improperly take advantage of Plaintiff.

169.    The majority of the acts alleged against all defendants herein occurred within the statute of limitations under §17208 (4 years) and there is a private right of action to "restore to any person...any money or property...which may have been acquired by means of such unfair competition" §17203.

170.    Defendants acts as enumerated herein are the types specifically outlawed under Business & Professional Code §17200, both the "unfair" ones and any "unlawful" acts by any defendants as outlined below.

171.    As to BAC HLS LP'S and BAC NA'S "unlawful" and "unfair" acts in part are alleged as: 1) the establishment of the 2010 escrow account on Plaintiff's loan; 2) refusal to void/cancel the escrow account after being asked to by plaintiff in August 2010; 3) failure to follow RESPA regarding plaintiff's

QWR'S, and the various mandated escrow account disclosures, refunds etc. as alleged in this complaint; 4) refusal to allow plaintiff to simply pay the LPP policy cost once instead of only by the escrow account payments; 5) refusal to provide plaintiff with a copy of the LPP policy that he was being asked to pay for under the DOT; 6) holding plaintiff's timely payments making them late in at least November and December 2010; 7) failure to credit plaintiff's payments (i.e. November and December 2010); 8) making knowingly false statements as to the amounts owed by plaintiff on his mortgage during 2010 and 2011; 9) improper acceleration of plaintiff's debt when he was not late on his payments and there was a justified dispute; 10) violation of the Truth in Lending act as alleged; 11) failure to timely remit the pay off figures after November 9, 2011; 12) violations of the Fair Debt Collections Practices Act/Rosenthal Act; 13) failure to postpone the trustee's sale where they were aware of errors and mistakes in their records and of the existence of the sums in the Civil Code § 1500 account; 14) BAC NA'S participation in the fraud committed in 2001 at the signing of the closing documents; 15) refusal to give plaintiff a full and proper accounting on his mortgage; 16) unlawful conversion of plaintiff's money paid into the escrow account; 17) all misleading and false statements in regards to the HAMP program, and BAC HLS LP'S actions in precluding plaintiff from applying for HAMP; 18) breach of contract/DOT/Note and of December 30, 2010; 19) bank and wire fraud in connection with plaintiff's December 30, 2010 payment of $615.98; 20) conducting and billing plaintiff for unauthorized costs, fees, and expenses under the DOT; 21) failure to follow Freddie Mac guidelines regarding the servicing, foreclosure related protocols, collection activities, etc. on plaintiff's property/loan et alia, and these acts constitute unfair, unlawful, or fraudulent acts within the meaning of Business and Professions Code Section 17200.

172.    As to defendant QLS "unlawful" and "unfair" acts in part are alleged as: 1) failure to comply with Cal. Civil C. § 2929f regarding the "false copies" of the notice of sale; 2) failure to comply with § 2924 by listing the wrong APN # on the notice of default; 3) failure to timely remit the payoff figures to plaintiff after the November 9, 2011 conversation; 4) continuing with the foreclosure when they knew that they had not followed California non-judicial foreclosure laws; 5) refusing to postpone the sale when asked on November 9, 2011, when they knew they had not followed California non-judicial foreclosure laws; 6) failing to maintain a neutral relationship with the beneficiary and trustor and

to act in the best interests of both; 7) negligently conducting their foreclosure duties; 8) intentionally giving plaintiff the run-a-round in conjunction with BAC NA on November 9, 2011 et alia, and these acts constitute unfair, unlawful, or fraudulent acts within the meaning of Business and Professions Code Section 17200.

173.    As to defendant BAC M'S "unlawful" and "unfair" acts in part are alleged as: 1) bank and wire fraud along with negligent misrepresentation and breach of contract, committed upon plaintiff on December 30, 2010 when he made a bank electronic payment to Bank of America Mortgage under false pretenses and assurances as outlined in the complaint in the amount of $615.98; 2) fraud in relation to the events surrounding plaintiff's signing of the closing documents in January 2001, and the false and misleading assurances of BAC M'S representative Susan Birge, and these acts constitute unfair, unlawful, or fraudulent acts within the meaning of Business and Professions Code Section 17200. The events of 2001 are normally outside the SOL for § 17200 claims, but the fraud exception should toll the SOL so that defendant BAC NA, BAC M, and their co-conspirators are held accountable.

174.    As to defendant BALBOA'S "unlawful" and "unfair" acts in part are alleged as: 1) participation in and possibly management of BAC HLS LP'S unlawful escrow account, all of the funds collected for the LPP, and the refusal to a) close the escrow account and b) refund plaintiff's overpayment in March 2012 for $194.52; 2) the repeated mistakes regarding plaintiff's actual home owner's policy, and the wrongful allegations that his CA Fair Plan policy was not in force; 3) forcing plaintiff to only pay for the LPP via BAC HLS LP escrow account rather than a one time payment; 4) refusing to give plaintiff a copy of the LPP policy for which he was billed for, and paid for; 5) negligently handling plaintiff's LPP policy issues and the payments thereof to the escrow account; 6) conspiring with BAC HLS LP to only accept payment of the LPP thru an escrow account, and to not provide plaintiff with a copy of LPP policy, and these acts constitute unfair, unlawful, or fraudulent acts within the meaning of Business and Professions Code Section 17200.

175.    As a result of the aforementioned acts, plaintiff has lost money or propery and suffered injuries in fact as stated herein.

## XV. CIVIL RICO CLAIMS 18 USC§1951 et seq. (As to all Defendants and DOES)

167. Plaintiff incorporates and re-alleges all of the preceding paragraphs here in full.

168. Plaintiff alleges *inter alia* that BAC HLS LP, BAC M, BALBOA, QLS, HRG, FHLMC LBAC 173, DOES conspired/participated/and conducted their business, banking, foreclosure, and other normally lawful activities in an unlawful manner as herein alleged, such activities in whole or part were done as separate entities and as joint participants in/of an "enterprise" which by these activities violated The Organized Crime Control Act of 1970 a.k.a. RICO 18 USC §1951 et seq. by knowingly engaging in a pattern of racketeering acts as defined in 18 USC §1961, including but not limited to Bank Fraud 18 USC § 1344(2), Mail Fraud 18 USC § 1341, and Wire Fraud 18 USC § 1343.

169. On information and belief, the enterprise was formed to unlawfully foreclose of properties in California (and potentially across the U.S) using defendants *Id.* unique market power, financial resources, government loans, experience, and collective talents are used to take advantage of loopholes in the laws regulating the securitization of home loans, housing, foreclosure, real estate, and Forced Placed Insurance markets which combined with BAC NA'S horizontal and vertical integrated affiliates and subsidiaries, and certain trustees including QLS allowed the enterprise to unlawfully gain profits and income from the activities herein alleged.

170. The relevant times for the racketeering activities spanned a period from January 2001 to November 2012, and more specifically thru certain activities commencing in or around January 2010 and continuing to at least around December 31, 2011 well within the four-year Statute of Limitations.

171. Plaintiff is the real party of interest, and has sustained injuries as defined in 18 USC § 1964(c); to his "business or property" as stated in the aforementioned complaint, including damages to his small business enterprise and real property that is his home. Plaintiff brings this action for himself and for the public benefit of those past and future not before this court.

172. Plaintiff alleges that the enterprise and each/all/or some of the defendants *Id.* that make up the enterprise have received income deprived from unlawful activities as defined in § 1962(a), (b) (c) and (d), and as alleged in this complaint.

///

Plaintiff's SAC                                                    - 44 -

173.   Plaintiff CHRISTOPHER D. SCHNEIDER demands a Jury trial.

**WHEREFORE**, Plaintiff prays for judgment and order against Defendants as follows:

1.   That judgment be entered in his favor and against Defendants, and each of them;

2.   For an injunctive order compelling said Defendants, and each of them, to release any and all encumbrances on subject property, to cease any and all activities related to the pending foreclosure, enjoining any and all violations of Business and Professions Code Section 17200 et seq., and to return any monies owed to Plaintiff or deposit them with the Court;

3.   For a declaration and determination that Plaintiff is the rightful holder of title to the subject property, that he has complied with the deed of trust and timely tendered payments, that defendants have breached their agreements and caused plaintiff unnecessary injury and damages, that the foreclosure was improperly initiated by defendants, is illegal, void, and should be expunged;

4.   That the Deed of Trust and Note are void due to fraud committed at the signing of them.

5.   For deposit of all funds in the Civil Code § 1500 account with this Court;

6.   For actual, compensatory, exemplary, and punitive damages against all Defendants;

7.   For all actual costs of the suit herein and all legal research expenses incurred;

8.   For any and all of Plaintiff's attorney fees and cost;

9.   For any and all statutorily imposed penalties for violating Federal and/or State Laws;

10. For such other further equitable relief as the Court may deem just and proper.

Dated: July 11, 2012                    Respectfully submitted,


CHRISTOPHER D. SCHNEIDER in pro per PLAINTIFF

COURT:        USDC Eastern District Sacramento, CA
CASE NO:      2:11-cv-02953-LKK-EFB
CASE NAME:    *Schneider v. Bank of America N.A. et al.*

## PROOF OF SERVICE

I, the undersigned, am a citizen of the United States, employed in the County of Amador, State of California.  My business Address is:

My Pak & Ship Korner
12 Ridge Rd. Ste. A
Sutter Creek CA 95685

I am over the age of 18, and not a party to the above-entitled action and on July 11, 2012 I served via First-Class Mail, a copy of; **1) Plaintiff's SAC with Exhibit's**

      I, served the above mentioned on:

SEE ATTACHED SERVICE LIST

By placing the sealed envelopes for collection and processing for mail, following this business's usual practices, with which I am readily familiar.  On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

1.      The envelopes were addressed and mailed as follows:

SEE ATTACHED SERVICE LIST

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 11, 2012 at Sutter Creek, CA

By:_____

Print Name:_____

Proof of Service

- 1 -

COURT:          USDC Eastern District Sacramento, CA
CASE NO:       2:11-cv-02953-LKK-EFB
CASE NAME:   *Schneider v. Bank of America N.A. et al.*

## SERVICE LIST FOR DEFENDANTS AND THEIR AGENTS

McGuireWoods LLP
Bank of America N.A.,ET AL
Att: Tracy Evans Moyer
1800 Century Park East 8th Floor
Los Angeles, CA 90067

McCarthy & Holthus LLP
Quality Loan Service Corp.
Att: Andrew Hall
1770 4TH Avenue
San Diego, CA 92101