1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   CHRISTOPHER D. SCHNEIDER,

11          Plaintiff,                    No. 2:11-cv-2953-LKK-EFB PS

12      vs.

13   BANK OF AMERICA N.A.; FHLMC
     LBAC 173 a.k.a. FEDERAL HOME LOAN
14   MORTGAGE CORPORATION (FREDDIE
     MAC); BAC HOME LOANS SERVICING LP;     ORDER AND
15   BALBOA INSURANCE CO.; BANK OF          FINDINGS AND RECOMMENDATIONS
     AMERICA MORTGAGE; QUALITY LOAN
16   SERVICE CORP.; HOME RETENTION
     GROUP; and DOES 2-40,
17
            Defendants.
18   _____/

19          This case, in which plaintiff is proceeding *pro se*, is before the undersigned pursuant to

20   Eastern District of California Local Rule 302(c)(21).  *See* 28 U.S.C. § 636(b)(1).  Defendants

21   Quality Loan Service Corporation ("QLS"), Bank of America, N.A. ("BANA") for itself and as

22   successor by merger to BAC Home Loans Servicing, LP ("BAC"), Balboa Insurance Company

23   ("Balboa"), and Federal Home Loan Mortgage Company (erroneously sued herein as FHLMC

24   LBAC 173 a.k.a. Federal Home Loan Mortgage Corporation (Freddie Mac)) ("FHLMC") move

25   to dismiss plaintiff's second amended complaint pursuant to Federal Rule of Civil Procedure

26   12(b)(6).  Dckt. Nos. 93, 96; *see also* Dckt. No. 100.  Plaintiff also seeks approval for the filing

1

of a lis pendens.  Dckt. No. 121.  For the reasons stated herein, the undersigned recommends that the motions to dismiss be granted in part and that plaintiff's motion for approval of a lis pendens be denied without prejudice.

I.      PROCEDURAL BACKGROUND

        In November 2011, plaintiff filed a complaint in this action, alleging numerous state and federal claims against a variety of defendants based on the purported foreclosure of his home.  He also filed a motion for a temporary restraining order and an ex parte motion for approval of plaintiff's filing of a lis pendens.  Dckt. Nos. 1, 6, 9.  On November 17, 2011, the assigned district judge granted the motion for a temporary restraining order and enjoined defendants from foreclosing on plaintiff's property.  Dckt. No. 12.  The court provided that the restraining order would expire within fourteen days.  *Id.* at 8.[1]

        On November 28, 2011, before a responsive pleading had been filed, plaintiff filed an amended complaint.  Dckt. No. 15.  Then, on November 29, 2011, plaintiff filed a request for an extension of the temporary restraining order and for an order to show cause as to why a preliminary injunction should not issue.  Dckt. No. 16.

        On December 1, 2011, the assigned district judge directed plaintiff to file his motion for a preliminary injunction in accordance with the Local Rules and set a hearing on the motion for January 17, 2012.  The court also extended the temporary restraining order through the date of that hearing.  Dckt. No. 17.  On December 19, 2011, plaintiff filed his formal motion for a preliminary injunction, Dckt. No. 24, and on December 22, 2011, some of the defendants filed a motion to dismiss, Dckt. No. 26.

        Then, on January 12, 2012, the district judge vacated the January 17, 2012 hearing and ordered the parties to re-notice their motions before the assigned magistrate judge.  Dckt. No. 42.
////

---

[1] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

1    The January 12, 2012 order provided that the temporary restraining order was to remain in effect

2    until the hearing on plaintiff's motion for a preliminary injunction. *Id.* at 3.

3           Defendants then noticed their motions to dismiss before the assigned magistrate judge,

4    Dckt. Nos. 47 and 48, and plaintiff re-noticed his motion for a preliminary injunction, Dckt. No.

5    49.  Plaintiff also filed a motion for sanctions against defendant QLS.  Dckt. No. 51.

6           On March 2, 2012, the then-assigned magistrate judge held a hearing on all of the

7    pending motions.  Dckt. No. 63.  At the hearing, and in a subsequent written order, the

8    magistrate judge denied plaintiff's motion for a preliminary injunction without prejudice, denied

9    plaintiff's motion for sanctions, denied plaintiff's ex parte motion for approval of a lis pendens

10   without prejudice, and granted defendants' motions to dismiss plaintiff's federal claims with

11   leave to amend.[2]  *Id.*; *see also* Dckt. No. 65.  The court also held that the district judge's

12   temporary restraining order "will remain in effect, absent further order of the court, until plaintiff

13   has filed an amended complaint found to state a cognizable claim or this matter is dismissed."

14   Dckt. No. 65 at 22.

15          Per the parties' agreement, on March 16, 2012, the then-assigned magistrate judge

16   conducted an early settlement conference.  Dckt. Nos. 63, 64, 69.  The parties reached a tentative

17   settlement agreement, subject to approval by defendant BANA.  Dckt. No. 69.  On March 26,

18   2012, BANA filed a notice of approval of settlement terms.  Dckt. No. 70.  However, on April

19   17, 2012, plaintiff filed a motion for extension of time to file a second amended complaint,

20   stating that "settlement negotiations [are] taking additional time."  Dckt. No. 71.  Accordingly,

21   the court scheduled a status of settlement conference for May 25, 2012.  Dckt. No. 72.

22          At the May 25, 2012 status conference, the court noted that the matter had settled on

23   March 16 and reviewed the terms that had been agreed upon at the settlement conference.  Dckt.

24   No. 73.  The court also addressed plaintiff's motion for an extension of time to file a second

25

26          [2] Because the court dismissed all of plaintiff's federal claims, it did not address any of
     plaintiff's state law claims.

1    amended complaint and inquired as to the status of the settlement.  *Id.*  Plaintiff then informed

2    the court of his position and objections, as well as his proposed changes to the settlement.  *Id.*

3    Counsel for BANA then stated BANA's position with respect to those objections.  *Id.*  A further

4    settlement conference was then set for June 6, 2012.  *Id.*

5         Because the court was unable to resolve plaintiff's objections to the proposed written

6    settlement agreement memorializing the agreement that had been reached at the March 16, 2012,

7    settlement conference, on June 8, 2012, the court concluded that the matter had not been settled

8    and granted plaintiff's motion for an extension of time to file a second amended complaint.

9    Dckt. No. 85.  Also on June 8, the then-assigned magistrate judge disqualified himself from the

10   action pursuant to 28 U.S.C. § 455, and the case was reassigned to the undersigned.  Dckt. Nos.

11   83, 84.

12        On July 11, 2012, plaintiff filed a second amended complaint, alleging fifteen claims for

13   relief against seven defendants, including four new claims and a new party, FHLMC.  Second

14   Am. Compl. ("SAC"), Dckt. No. 91.  Defendants QLS, BANA (on behalf of itself and BAC),

15   Balboa, and FHLMC now move to dismiss that complaint pursuant to Federal Rule of Civil

16   Procedure 12(b)(6).[3]  Dckt. Nos. 93, 96; *see also* Dckt. No. 100.  Plaintiff opposes the motions,

17   Dckt. Nos. 107,[3] 117, and 118, and once again moves for approval of the filing of a lis pendens,

18   Dckt. No. 121.

19   II.   FACTUAL BACKGROUND

20        Plaintiff's second amended complaint alleges various state and federal claims related to

21   the property located at 16291 Stone Jug Drive, Sutter Creek, California 95685 (the "subject

22   _____

23        [3] Defendants Bank of America Mortgage and Home Retention Group have not yet
     appeared in this action.  The docket does not reflect that those defendants have been served with

24   the second amended complaint.  Therefore, as discussed in greater detail below, plaintiff will be
     ordered to show cause why those defendants should not be dismissed.

25        [3] Although QLS contends that plaintiff's opposition to QLS's motion should be
     disregarded as untimely since it was filed one day late, Dckt. No. 108 at 2, in light of plaintiff's

26   pro se status, the court will excuse the one day delay.

4

property"). *See generally* SAC. Specifically, plaintiff alleges the following federal claims: (1) violation of the Real Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C. § 2605; (2) violation of Regulation Z of the Truth in Lending Act ("TILA"), 12 C.F.R. Part 226; (3) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692; (4) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et. seq.*; and (5) a request for declaratory relief (arguably under the Declaratory Judgment Act, 28 U.S.C. § 2201). *Id.* Plaintiff also alleges the following state law claims: (1) violation of California's Rosenthal Fair Debt Collection Practices Act ("RFDCPA"); (2) violation of California Civil Code section 2954(a)(1); (3) fraud, negligent misrepresentation, and conspiracy; (4) breach of deed of trust and contract; (5) accounting; (6) conversion; (7) wrongful foreclosure; (8) violation of the covenant of good faith and fair dealing; (9) negligence; (10) intentional infliction of emotional distress; and (11) violation of California Business and Professions Code section 17200. *Id.*

Plaintiff alleges that in late January or early February of 2001 he purchased his home with a mortgage obtained from defendant BANA. *Id.* ¶¶ 14-17. Because plaintiff did not make an initial down payment of 20% or greater when purchasing his home, he was required to pay a monthly mortgage insurance premium into an escrow account opened by BANA, in addition to his regular mortgage payment. *Id.* ¶ 19. In November of 2004, plaintiff had the value of his home reappraised. As a result of the reappraisal, he was able to eliminate the mortgage insurance requirement. This reduced plaintiff's monthly payment to the mortgage payment only, which was in the amount of $968.57. *Id.* ¶¶ 19-20. Accordingly, BANA closed the escrow account associated with plaintiff's mortgage insurance premium and permanently lowered plaintiff's monthly payment to $968.57. *Id.* ¶ 21.

Plaintiff alleges that in May of 2010, he received, for the first time, a notice from defendant BAC stating that they had not received a copy of plaintiff's homeowner's insurance policy. *Id.* ¶ 23. Plaintiff contends that for the eight to nine years prior, defendants BANA,

1   BAC, and FHLMC never asked for any copies of his homeowner's insurance policies, never

2   attempted to enforce any of the provisions in the deed of trust regarding homeowner's insurance,

3   and never notified plaintiff regarding any concerns with regard to his homeowner's insurance.

4   *Id.* Plaintiff states that he believes defendants' silence amounted to a waiver. *Id.*

5          Plaintiff contends that in May 2010, he spoke to numerous insurance brokers who were

6   unwilling to insure the subject property. *Id.* ¶ 24. Plaintiff alleges that in December 2010, "after

7   six months of continuous effort," plaintiff obtained a binding insurance policy for the property,

8   with coverage effective until December 2011. *Id.* ¶ 25. Plaintiff contends that, as additional

9   insured, BANA and BAC receive copies of all policy paperwork at the same time as plaintiff.

10  *Id*.

11         However, because the subject property was uninsured from May to December of 2010,

12  defendants BANA, BAC, Balboa, and FHLMC placed a lender placed policy ("LPP") on the

13  property during that time, which was allegedly cancelled by those defendants in December 2010,

14  but for which plaintiff was billed "until March 2011." *Id.* ¶ 26. Plaintiff contends that the

15  March 2011 billing of the LPP left a credit balance of $194.50 in the escrow account, which has

16  never been returned to plaintiff. *Id.*

17         According to the second amended complaint, on August 17, 2010, plaintiff sent a

18  Qualified Written Request ("QWR") to BAC, requesting a copy of the LPP. *Id.* ¶ 27, Ex. C.

19  Plaintiff contends that he also offered a full tender of the amounts owed on the LPP as soon as he

20  received a copy of the policy; however, no copy has ever been provided to plaintiff. *Id.* Plaintiff

21  contends that BANA, BAC, Balboa, and FHLMC willfully ignored the QWR and did not

22  respond; instead, "they created an improper and involuntary escrow account, *refused* to simply

23  let plaintiff pay the LPP sums without an escrow account, and demanded an increase in

24  plaintiff's monthly payments to $1179.70." *Id.* ¶ 28. Plaintiff contends that BANA, BAC,

25  Balboa, and FHLMC all knew of plaintiff's requests for a copy of the LPP, and participated in

26  events surrounding the denial of that policy information. *Id.* ¶¶ 29-30. Plaintiff contends that

6

1   those defendants, as well as defendants QLS and Bank of America Mortgage, used that

2   information to "take advantage of plaintiff in an anti-competitive and detrimental way"; to

3   "overcharge him for excessive or unneeded costs/fees for the LPP"; and to "unilaterally open the

4   disputed escrow account . . . in order to improperly extort fees and costs out of plaintiff . . . ." *Id.*

5   ¶ 31.

6         On April 14, 2011, after defendants BANA, BAC, FHLMC, and Bank of America

7   Mortgage refused to accept plaintiff's mortgage payment and repeatedly misapplied his prior

8   monthly payments, plaintiff opened a disputed escrow account pursuant to California Civil Code

9   section 1500 "in order to protect his rights." *Id.* ¶ 32.  Plaintiff then deposited his monthly

10  mortgage payment of $968.57 into that account.  *Id.*  Plaintiff sent a "letter/QWR" to BAC when

11  the account was opened.  *Id.*, Ex. D.  Plaintiff has since deposited each monthly mortgage

12  payment into this account and has notified defendants BAC and BANA of each deposit and the

13  balance of the account.  *Id.* ¶ 33.

14        Plaintiff contends that none of the defendants contacted plaintiff regarding the dispute,

15  even though they knew about the account; instead, they claimed that plaintiff defaulted on his

16  mortgage payments and sought to foreclose on plaintiff's home.  *Id.* ¶¶ 33-34.  On November 9,

17  2011, plaintiff contacted defendants QLS and BANA to obtain the amount plaintiff allegedly

18  owed, so that plaintiff could stop the foreclosure sale scheduled for November 18, 2011.  *Id.*

19  ¶¶ 36-37.  Each defendant told plaintiff that he would have to contact the other defendant to

20  obtain the total amount owed and to stop the foreclosure sale.  *Id.*  Plaintiff contends these

21  actions were intentional and were a knowing part of defendants QLS, BANA, BAC, FHLMC,

22  and Bank of America Mortgage's "racketeering and unethical business practices, and conspiracy

23  supporting an unlawful interstate scheme to take plaintiff's money and property."  *Id.* ¶ 37.

24  ////

25  ////

26  ////

1   Plaintiff further alleges that defendants QLS, BANA, BAC, FHLMC, and Bank of America

2   Mortgage never provided plaintiff with the "reinstatement figures" prior to the scheduled sale

3   date of the subject property, or even to this day, despite plaintiff's specific requests for that

4   information.  *Id.* ¶¶ 38-39.

5   III.   <u>MOTION TO DISMISS</u>

6          A.   <u>Rule 12(b)(6) Standard</u>

7          To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint

8   must contain more than a "formulaic recitation of the elements of a cause of action"; it must

9   contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell*

10  *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "The pleading must contain something more

11  . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of

12  action." *Id.* (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-

13  36 (3d ed. 2004)).  "[A] complaint must contain sufficient factual matter, accepted as true, to

14  'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949

15  (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff

16  pleads factual content that allows the court to draw the reasonable inference that the defendant is

17  liable for the misconduct alleged."  *Id.*  Dismissal is appropriate based either on the lack of

18  cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal

19  theories.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

20         In considering a motion to dismiss, the court must accept as true the allegations of the

21  complaint in question, *Hospital Bldg. Co. v. Rex Hosp. Trs.*, 425 U.S. 738, 740 (1976), construe

22  the pleading in the light most favorable to the party opposing the motion, and resolve all doubts

23  in the pleader's favor.  *Jenkins v. McKeithen*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869

24  (1969).  The court will "'presume that general allegations embrace those specific facts that are

25  necessary to support the claim.'"  *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 256,

26  (1994) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

1   Pro se pleadings are held to a less stringent standard than those drafted by lawyers.

2   *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir.

3   1985).  However, the courts liberal interpretation of a pro se litigant's pleading may not supply

4   essential elements of a claim that are not plead.  *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir.

5   1992); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

6   Furthermore, "[t]he court is not required to accept legal conclusions cast in the form of factual

7   allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v.*

8   *Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).  Neither need the court accept

9   unreasonable inferences, or unwarranted deductions of fact.  *W. Mining Council v. Watt*, 643

10   F.2d 618, 624 (9th Cir. 1981).

11   In deciding a Rule 12(b)(6) motion to dismiss, the court may consider facts established

12   by exhibits attached to the complaint.  *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th

13   Cir. 1987).  The court may also consider facts which may be judicially noticed, *Mullis v. U.S.*

14   *Bankr. Ct.*, 828 F.2d at 1338, and matters of public record, including pleadings, orders, and other

15   papers filed with the court.  *Mack v. South Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir.

16   1986).

17   B.   Plaintiff's Federal Claims

18   1.   RESPA

19   Plaintiff alleges that defendants BANA, BAC, FHLMC, Balboa, and Bank of America

20   Mortgage violated the Real Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C.

21   §§ 2601 *et seq.*[4]  SAC ¶¶ 40-58.  Specifically, plaintiff alleges that (1) BANA violated 12 U.S.C.

22   § 2605(e), (k)(1)(C), and (k)(1)(D), as well as 24 C.F.R. § 3500.21, by not properly responding

23

24   [4] Plaintiff's RESPA claim is not brought against defendants QLS or Home Retention
    Group.  *See generally* SAC ¶¶ 40-58.  Additionally, because plaintiff apparently has not served
    Bank of America Mortgage with process, and therefore because Bank of America Mortgage has

25   not appeared, the court will not address this claim as to Bank of America Mortgage.  Nor will the
    court address any of plaintiff's other claims against Bank of America Mortgage and/or Home

26   Retention Group.

to a QWR that plaintiff sent on July 24, 2011, SAC ¶¶ 42-45; (2) BANA, BAC, FHLMC, and Bank of America Mortgage violated 12 U.S.C. § 2605(e) by failing to respond to over 10 specific QWRs plaintiff sent between August 2010 and October 2011, SAC ¶¶ 46-48; and (3) BANA, BAC, FHLMC, Balboa, and Bank of America Mortgage violated 12 U.S.C. § 2609 and 24 C.F.R. Part 3500, 17(c), (c)(2), and (f)(2)(ii), by not conducting an escrow account analysis before creating plaintiff's escrow account on or before June 21, 2010, by not providing plaintiff with an escrow account statement, by knowingly inflating the estimated reserve requirements to an unnecessary and illegal level, and by not returning plaintiff's excess escrow account funds within thirty days, SAC ¶¶ 49-58.

Plaintiff alleges that BANA's conduct in failing to respond to his July 24, 2011 QWR has caused him "countless unnecessary and substantial actual costs, damages, fees, and injuries in fact" and that he "has been and continues to be subject to extreme emotional and physical stress and anxiety over all of the events that occurred after the July 24, 2011 QWR." *Id.* ¶ 45.  He also contends that defendants' failure to respond to his other QWRs resulted in "actual damages" that include "a detriment to plaintiff's ability to sell or refinance his home."  *Id.* ¶ 46.

Plaintiff also contends that BANA, BAC, FHLMC, Balboa, and Bank of America Mortgage's "acts and omissions" in violation of § 2609 "have proximately caused plaintiff actual damages, including, but not limited to: severe emotional distress, loss of sleep, loss of appetite, frustration, anger, fear, nervousness, anxiety, direct monetary loss, psychological and physiological harm . . . ."  *Id.* ¶ 58.

a.  12 U.S.C. § 2605(e) and 24 C.F.R. § 3500.21

Defendants BANA, BAC, and FHLMC now move to dismiss plaintiff's RESPA claim under 12 U.S.C. § 2605(e), arguing that plaintiff has failed to allege that BANA has not complied with § 2605(e) and that plaintiff has failed to plead facts that establish actual damages as required by that statute.  Dckt. No. 96 at 17.

////

10

RESPA imposes certain disclosure obligations on loan servicers who transfer or assume the servicing of a federally-related mortgage loan.  12 U.S.C. § 2605(b).  A borrower may obtain such information by submitting a qualified written request or "QWR," which is statutorily defined as "a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—(I) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."  12 U.S.C. § 2605(e)(1)(B); *see also* 24 C.F.R. § 3500.21(e)(2).

Under RESPA's § 2605(e), a loan servicer "who receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan" is required to provide the borrower with a written acknowledgment of receipt within twenty days.  *Id*. § 2605(e)(1)(A).  Within sixty days of receipt of a QWR, excluding weekends and holidays, the servicer must conduct an investigation; if the servicer determines that the account is in error, the servicer must make appropriate corrections to the borrower's account and notify the borrower of the correction in writing.  *Id*. § 2605(e)(2)(A).  If a loan servicer fails to comply with the provisions of § 2605, a borrower is entitled to any actual damages as a result of the failure.  *Id.* § 2605(f).

## I. July 24, 2011 QWR to BANA

Although BANA argues that plaintiff has failed to allege that BANA has not complied with § 2605(e), plaintiff's second amended complaint does allege that (1) plaintiff sent BANA a QWR on July 24, 2011, *id.* ¶ 42, Ex. Q; (2) BANA was the servicer of his loan as of July 24, 2011, SAC ¶ 42; and (3) more than 60 days have passed and he has not received a response to the July 24, 2011 QWR, *id.* ¶¶ 42-43.  Those allegations would appear to be sufficient to state a claim against BANA under § 2605(e)(2)(A) for failure to timely respond to plaintiff's July 24, 2011 QWR.

1    However, at the pleading stage, plaintiff must include a demonstration of a causal

2    relationship between the alleged damages and the RESPA violation.  Section 2605(f) imposes

3    liability on servicers that violate RESPA.  12 U.S.C. § 2605(f).  Although this section does not

4    explicitly make a showing of damages part of the pleading standard, "a number of courts have

5    read the statute as requiring a showing of pecuniary damages in order to state a claim."  *Allen v.*

6    *United Financial Mortg. Corp.*, 660 F. Supp. 2d 1089, 1097 (N.D. Cal. 2009).  This pleading

7    requirement has the effect of limiting the cause of action to circumstances in which plaintiffs can

8    show that a failure to respond or give notice has caused them actual harm.  *See Singh v. Wash.*

9    *Mut. Bank*, 2009 WL 2588885 (N.D. Cal. 2009) (dismissing RESPA claim because, "[i]n

10   particular, plaintiffs have failed to allege any facts in support of their conclusory allegation that

11   as a result of defendants' failure to respond, defendants are liable for actual damages, costs, and

12   attorney fees") (quotation marks and citation omitted).  Courts, however, have interpreted this

13   requirement liberally.  *Yulaeva v. Greenpoint Mortg. Funding, Inc.*, 2009 WL 2880393, at *15

14   (E.D. Cal. 2009) (concluding plaintiffs pled pecuniary loss by alleging that they were "required

15   to pay a referral fee that was prohibited under RESPA").

16   Regardless, a plaintiff is only entitled to recover for the loss that relates to the RESPA

17   violation, not for all losses related to foreclosure activity.  *See Lal v. Am. Home Servicing, Inc.*,

18   680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010) ("[T]he loss alleged must be related to the RESPA

19   violation itself.");  *Torres v. Wells Fargo Home Mortg., Inc.*, 2011 WL 11506, at *8 (N.D. Cal.

20   Jan. 4, 2011) ("The plaintiff must also allege a causal relationship between the alleged damages

21   and the RESPA violation.").

22                              (a)  Actual Damage Claim

23   Here, plaintiff contends that as a result of BANA's failure to respond to the July 24, 2011

24   QWR he incurred "actual costs, damages, fees, and injuries in fact" and "extreme emotional and

25   physical stress and anxiety over all of the events that occurred after the July 24, 2011 QWR."

26   SAC ¶ 45.  However, plaintiff must "point to some colorable relationship between his injury and

the actions or omissions that allegedly violated RESPA." *See Allen*, 660 F. Supp. 2d at 1097

(dismissing RESPA claim where plaintiff alleged "actual damages" but failed to show how the

alleged RESPA violations caused any kind of pecuniary loss – "indeed, his loss of property

appears to have been caused by his default").   Although plaintiff contends that defendants'

failure to respond to QWRs in general resulted in "a detriment to plaintiff's ability to sell or

refinance his home," *id.* ¶ 46, he does not allege that he ever made an attempt to sell or refinance

his home, nor explain how any such attempt was disrupted or prevented by the failure to

respond. *See Luciw v. Bank of America, N.A.*, 2010 WL 3958715, at *5 (N.D. Cal. 2010)

(dismissing RESPA claim where plaintiff alleged that defendants' failure to respond to the QWR

prevented her from modifying her current loan but failed to allege that she made an attempt to

modify her loan).   As such, plaintiff's actual damage claims are too conclusory, and therefore

fail to state a claim.

(b)  <u>Emotional Distress Claim</u>

Without an accompanying causal link, plaintiff's allegation that he suffered emotional

distress is similarly unpersuasive.   Courts in the Ninth Circuit have interpreted the pecuniary loss

requirement liberally; several have considered an averment of emotional harm sufficient to

recover actual damages under RESPA. *Apodaca v. HSBC Bank USA*, 2010 WL 1734 945, at

*3–4 (S.D. Cal. Apr. 7, 2010).   Regardless, plaintiff must allege a causal relationship between

the emotional distress and the RESPA violations.

In *Lawther v. Onewest Bank,* 2010 WL 4936797, at *7 (N.D. Cal. Nov. 30, 2010), the

court dismissed plaintiff's RESPA claim because he failed to explain how the lender's failure to

respond to the QWR was causally connected to the claimed distress of plaintiff or his family.

The court reasoned that the failure to respond to a QWR could contribute to the emotional

distress of foreclosure where the information sought would have identified the party with the

authority to modify the loan's terms. *Id.*  However, the facts supplied elsewhere in the plaintiff's

complaint evidenced that the plaintiff already knew it was Onewest who had this authority. *Id.*

13

1    Furthermore, the plaintiff sent the QWR months after issuance of the Notice of Default and

2    Notice of Trustee Sale or, in other words, after events directly connected to the emotional harm

3    he alleged.  *Id.*  Accordingly, the court dismissed the complaint for failure to allege actual harm

4    causally connected to the alleged RESPA violation.

5          Here, plaintiff's alleged July 24, 2011 QWR seeks the "name and address of the current

6    creditor, as well as that of the original creditor as well as all subsequent creditors of this loan."

7    SAC, Ex. Q.  However, like the plaintiff in *Lawther*, plaintiff already knew the name of his

8    creditor because he received a "Servicing Disclosure Statement" at least five days prior to

9    sending the QWR.  SAC ¶ 42.  Additionally, plaintiff sent the QWR *after* issuance of the Notice

10   of Default and Notice of Trustee Sale – events directly connected to the emotional harm he

11   alleges.  SAC, Ex. P; Def. QLS's Req. for Judicial Notice, Dckt. No. 94, Ex. C (indicating that

12   the Notice of Default and Election to Sell was issued July 19, 2011 and recorded on July 21,

13   2011).[5]  Although plaintiff disputes the amount that the Notice of Default and Election to Sell

14   stated that plaintiff owed, SAC ¶ 71, and he contends that the notice was not properly provided

15   to him, *id.* ¶ 141, the fact is that according to his own complaint the Notice of Default and

16   Election to Sell was issued *before* plaintiff sent the July 24, 2011 QWR.  Accordingly, plaintiff

17   has not alleged a causal connection between BANA's failure to properly respond to that QWR

18   and his alleged emotional and physical stress.

19                              (c)  <u>Statutory Damage Claim</u>

20         RESPA also allows courts to award statutory damages not to exceed $1,000 in cases

21   where there is a "pattern or practice of non-compliance" with § 2605.  12 U.S.C. § 2605(f)(1).

22   However, plaintiffs seeking statutory damages "cannot rely simply on stock legal conclusions,

23   but must allege facts that are sufficient to 'raise a right to relief above the speculative level.'"

24

25         [5] The court grants QLS's request for judicial notice of the fact that the Notice of Default
     and Election to Sell, which was purportedly issued on July 19, 2011, was recorded on July 21,
26   2011.  Fed. R. Evid. 201.

*Lal,* 680 F. Supp. 2d at 1223.  To recover statutory damages, plaintiffs must plead some pattern or practice of noncompliance with RESPA.  12 U.S.C. § 2605(f)(1)(B).  In other words, when plaintiffs seeking statutory damages "flatly claim a pattern of noncompliance but state no facts" in support of that claim, the courts are "not required to accept as true a legal conclusion couched as a factual allegation."  *Lal,* 680 F. Supp. 2d at 1223.  As to the July 24, 2011 QWR, almost as a matter of definition, a single failure to respond to a QWR does not state a claim for a "pattern or practice" of doing so.  *See also Garcia v. Wachovia Mortg. Corp.*, 676 F. Supp. 2d 895, 909 (C.D. Cal. 2009).

Therefore, because plaintiff has failed to allege any causal connection to his alleged actual damages, emotional distress, or the requisite "pattern or practice" for statutory damages, plaintiff's RESPA claim against BANA based on a failure to respond to the July 24, 2011 QWR must be dismissed.  *Franklin v. Murphy*, 745 F.2d 1221, 1228 (9th Cir. 1984) (quoting *Haines v. Kerner*, 404 U.S. 519, 521 (1972) (when evaluating the failure to state a claim, the complaint of a pro se plaintiff may be dismissed "only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'").  In any third amended complaint, plaintiff shall set forth what actual damages he suffered as a result of BANA's failure to respond that QWR.

### ii.  Other QWRs to BANA, BAC

Plaintiff also alleges that he sent more than ten additional QWRs to defendants BANA and BAC, that the QWRs were mailed to either BANA or BAC as the servicer of his loan, and that BANA and BAC failed to respond to those QWRs within the required sixty day period.[6] SAC ¶ 46.  However, plaintiff does not provide any additional information regarding when those

---

[6] Plaintiff also alleges that BANA and BAC failed to acknowledge receipt of the QWRs within 20 days, as required by § 2605(e)(1)(A).  SAC ¶ 48.  However, plaintiff also alleges that defendants *did* provide a generic, unidentified correspondence acknowledging receipt of the QWR, but complains that defendants failed to identify which QWRs the acknowledgments were referencing.  *Id.*

1  QWRs were sent and to whom.  Plaintiff does specifically allege that on August 17, 2010, he

2  sent a QWR to BAC requesting a copy of the LPP, *id.* ¶ 27, Ex. C, and he also contends that he

3  sent a "letter/QWR" to BAC after opening a disputed escrow account pursuant to California

4  Civil Code section 1500, *id.* ¶ 32; Ex. D (QWR dated April 15, 2011).  However, his second

5  amended complaint does not allege that BAC failed to respond to *those* QWRs within sixty days.

6  Therefore, plaintiff's allegations regarding the more than ten additional QWRs he sent to

7  defendants BANA and BAC are too conclusory to "raise a right to relief above the speculative

8  level."  *Twombly*, 550 U.S. at 555.

9      Moreover, as discussed above with regard to the July 24, 2011 QWR, plaintiff has not

10  adequately alleged any causal connection to actual damages or emotional distress that he alleges

11  he suffered as a result of BAC's alleged failure to respond to "the more than ten additional"

12  QWRs.  Although he contends that his "actual damages" include "a detriment to plaintiff's

13  ability to sell or refinance his home," SAC ¶ 46, he has not alleged how BAC's failure to

14  respond to the QWRs caused those purported damages.  Further, although plaintiff alleges that

15  defendants engaged in a "pattern or practice of non-compliance" (SAC ¶ 46) by failing to

16  respond on "numerous occasions" to all "ten plus QWRs," plaintiff's second amended complaint

17  lacks the requisite facts necessary to demonstrate a "pattern" of non-compliance and is therefore

18  too conclusory.  *Twombly*, 550 U.S. at 555.

19      Therefore, plaintiff's RESPA claims against BANA and BAC under § 2605(e) based on

20  the numerous additional QWRs plaintiff purportedly sent to defendants BANA and BAC,

21  including the August 17, 2010 and April 15, 2011 QWRs to BAC, should be dismissed with

22  leave to amend.  In any third amended complaint, plaintiff shall specifically include all

23  allegations relating to the QWRs, including when each QWR was sent and to whom it was sent,

24  and shall set forth what actual damages plaintiff suffered as a result of defendants' failure to

25  respond to each such QWR.

26  ////

16

iii.  QWRs to FHLMC

Plaintiff also alleges that he sent more than ten QWRs to defendants FHLMC and Bank of America Mortgage and that those defendants failed to respond thereto within the required sixty day period.  SAC ¶ 46.  Plaintiff does not provide any additional information regarding those purported QWRs to FHLMC and Bank of America Mortgage, nor does he allege that those defendants were the servicers of his loan, within the meaning of RESPA, at the time plaintiff sent the purported QWRs.  Therefore, plaintiff's allegations regarding those QWRs also are too conclusory to "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  As a result, plaintiff's claims against FHLMC and Bank of America Mortgage under § 2605(e) based on the numerous additional QWRs plaintiff purportedly sent to those defendants should be dismissed with leave to amend only if plaintiff can cure these deficiencies.

b.  12 U.S.C. § 2605(k)(1)(C), (k)(1)(D)

Plaintiff also alleges that BANA violated 12 U.S.C. § 2605(k)(1)(C) and (k)(1)(D).  The Dodd-Frank Wall Street Reform and Consumer Act, Pub.L. 111–203, 124 Stat. 1376 (2010) ("Dodd–Frank Act"), passed in 2010, amended certain provisions in RESPA and added subsections (k)-(m).  Section 2605(k) "requires the servicer to identify the owner or assignee of a borrower's loan within 10 days of his request for such information."  *Fazio v. Experian Information Solutions, Inc.*, 2012 WL 2119253, at *2 (N.D. Cal. June 11, 2012) (citing Pub.L. No. 111–203, § 1463(a), 124 Stat. at 2182).  However, as several courts have held, the Dodd-Frank Act's revisions to RESPA were not in effect as of the time when plaintiff allegedly submitted his QWRs to defendants in 2010 and 2011.  *Id.*; *see also Bever v. Cal-Western Reconveyance Corp.,* 2012 WL 2522563, at *3-4 (E.D. Cal. June 28, 2012).  Thus, the deadline to acknowledge receipt of plaintiff's QWRs was 20 days, as provided in 12 U.S.C. § 2605(e)(1)(A).  Accordingly, plaintiff's claims under 12 U.S.C. § 2605(k)(1)(C) and (k)(1)(D) must be dismissed.  Plaintiff should be granted leave to amend these claims only if he can cure these deficiencies.

c. 12 U.S.C. § 2609 and 24 C.F.R. § 3500.17

Plaintiff further alleges in his second amended complaint that defendants have violated various subsections of 12 U.S.C. § 2609 and 24 C.F.R. § 3500.17.  While a lender who fails to comply with the requirements of § 2609 may be subject to penalties by the Secretary of Housing and Urban Development, there is no private right of action under § 2609.  *See Hardy v. Regions Mortg. Inc.*, 449 F.3d 1357, 1360 (11th Cir. 2006); *Choudhuri v. Wells Fargo Bank, N.A.*, 2011 WL 5079480, at *8 (N.D. Cal. Oct. 25, 2011); *Benas v. Shea Mortg. Inc.*, 2011 WL 4635645, at *4 (S.D. Cal. Oct. 4, 2011); *Birkholm v. Washington Mut. Bank, F.A.*, 447 F. Supp. 2d 1158, 1163 (W.D. Wash. 2006).  Nor is there a private right of action under 24 C.F.R. § 3500.17, since that regulation was promulgated under § 2609.  *Hardy*, 449 F.3d at 1360; *Gusenkov v. Washington Mut. Bank,* 2010 WL 2612349, at *5 (N.D. Cal. June 24, 2010); *Hilton v. Washington Mut. Bank,* 2010 WL 727247, at *4 (N.D. Cal. Mar. 1, 2010).  Therefore, plaintiff's claims under 12 U.S.C. § 2609 and 24 C.F.R. § 3500.17 should be dismissed without leave to amend.

2. TILA, Regulation Z

Plaintiff also alleges that defendants BANA, BAC, FHLMC, QLS, and Bank of America Mortgage violated Regulation Z, 12 C.F.R. § 226.36(c), of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq.[7]  SAC ¶¶ 59-61.  Specifically, plaintiff alleges that he called QLS, BANA, and BAC to find out the alleged amount in arrears and the payoff amount, but he was never provided that information, in violation of 12 C.F.R. § 226.36(c)(iii).  *Id.* ¶ 60.  Plaintiff also alleges that BAC delayed in timely posting plaintiff's December 13, 2010 mortgage payment, thereby causing plaintiff to incur a late fee of $48.43, in violation of 12 C.F.R. § 226.36(c)(I) and a possible violation of 12 C.F.R. § 226.36(c)(ii).  *Id.* ¶ 61.

////

---

[7] Plaintiff's TILA/Regulation Z claim is not brought against defendants Balboa or Home Retention Group.  *See generally* SAC ¶¶ 59-61.

1    Defendant QLS moves to dismiss plaintiff's TILA Regulation Z claim, arguing that QLS

2  is not a creditor under TILA and Regulation Z and it is not the person to whom the debt arose.

3  Dckt. No. 93 at 11-12.  Defendants BANA, BAC, and FHLMC move to dismiss plaintiff's TILA

4  Regulation Z claim, arguing that plaintiff's allegations do not amount to TILA violations

5  because neither BANA, BAC, nor FHLMC are "servicers" or "creditors" as defined by TILA,

6  that any TILA claims are time-barred because plaintiff did not file within one year of

7  consummating the original loan documents, and because plaintiff failed to allege tender.  Dckt.

8  No. 96 at 18-20.

9    TILA and its implementing regulation, Regulation Z, apply to credit transactions when

10  (1) the credit is offered to "consumers"; (2) the offering or extension of credit is done regularly;

11  (3) the credit is subject to a finance charge or payable in more than four installments; and (4) the

12  credit is for personal, family, or household purposes.  12 C.F.R. § 226.1(c)(1).  A "creditor" is a

13  person, natural or not, to whom the debt is initially payable on the face of the promissory note or

14  other agreement of indebtedness and that regularly extends consumer credit that is payable in

15  more than four installments or that requires the payment of a finance charge.  15 U.S.C.

16  § 1602(g), 12 C.F.R. § 226.2(a)(17).  An "assignee" of a creditor in a credit transaction secured

17  by real property may be liable for that creditor's TILA violation if the TILA violation is

18  "apparent on the face of the disclosure statement" provided in connection with the transaction,

19  and the assignment to the assignee was voluntary.  15 U.S.C. § 1641(e)(1).  A "servicer" is not a

20  creditor under TILA unless it is or was the owner of the obligation.  *Id.* § 1641(f)(1).  The term

21  "servicer" means the person responsible for servicing of a loan (including the person who makes

22  or holds a loan if such person also services the loan).  *Id.* § 1641(f)(3).  A servicer also is not a

23  creditor under TILA if its ownership of the loan arose solely "on the basis of assignment for

24  administrative convenience."  *Id.* § 1641(f)(2).

25  ////

26  ////

1          a.  TILA/Regulation Z Claim Against QLS

2          Plaintiff alleges in his second amended complaint that he called QLS to find out the

3    alleged amount in arrears and the total outstanding balance of his loan, but QLS did not respond

4    "within a reasonable period of time."  SAC ¶ 60.  QLS moves to dismiss plaintiff's TILA

5    Regulation Z claim, arguing that QLS is not a creditor under TILA and Regulation Z, and is not

6    the person to whom the debt arose.  Dckt. No. 93-1 at 11-12.

7          Regulation Z, 12 C.F.R. § 226.36(c)(iii), requires a "servicer" to provide, within a

8    reasonable time after receiving a request from the consumer, an accurate statement of the total

9    outstanding balance that would be required to satisfy the consumer's obligation in full as of a

10   specified date.  12 C.F.R. § 226.36(c)(iii).  A "servicer" is not a creditor under TILA unless it is

11   or was the owner of the obligation.  15 U.S.C. § 1641(f)(1).  To be a creditor under TILA and

12   Regulation Z, one must (I) regularly extend credit, and (ii) be the person to whom the obligation

13   is initially payable, either on the face of the note or contract, or by agreement when there is no

14   note or contract.  12 C.F.R. § 226.2(a)(17); 15 U.S.C. § 1602(g).  QLS, as a trustee who does not

15   regularly extend credit, is not the person to whom plaintiff's obligation was initially payable.

16   Plaintiff does not and cannot assert any claims against QLS related to the subject loan

17   origination nor can he assert that QLS was the owner of the obligation.  Therefore, plaintiff's

18   TILA claim against QLS must be dismissed without leave to amend.

19          b.  TILA/Regulation Z Claim Against FHLMC

20          Plaintiff's TILA/Regulation Z claim against FHLMC must be dismissed since plaintiff

21   does not allege which provision of TILA and/or Regulation Z FHLMC violated, nor does he

22   allege how FHLMC violated TILA and/or Regulation Z.[8]  Plaintiff also fails to allege facts

23   demonstrating that FHLMC amounts to a creditor under TILA and Regulation Z.  *See* 12 C.F.R.

24

25          [8] In fact, although plaintiff lists FHMLC in the heading of his second cause of action, he
     does not otherwise plead any facts in support of his allegation that FHLMC has violated TILA or
26   Regulation Z.

1   § 226.2(17); 15 U.S.C. § 1602(g).  Therefore, plaintiff's TILA claim against FHMLC must be

2   dismissed.  Plaintiff should only be granted leave to amend if he can cure these defects.

3                    c.  TILA/Regulation Z Claim Against BAC – December 2010

4          Plaintiff alleges that BAC failed to post his December 13, 2010 payment "on the date of

5   receipt," which resulted in a $48.43 late charge, in violation of 12 C.F.R. § 226.36(c)(I) and

6   possibly 12 C.F.R. § 226.36(c)(ii).[9]  SAC ¶ 61.  Section 226.36(c)(I) requires a servicer to credit

7   a payment to the consumer's loan account as of the date of receipt, except when a delay in

8   crediting does not result in any charge to the consumer.  12 C.F.R. § 226.36(c)(I).  Section

9   226.36(c)(ii) prohibits a servicer from imposing on a consumer "any late fee or delinquency

10  charge in connection with a payment, when the only delinquency is attributable to late fees or

11  delinquency charges assessed on an earlier payment, and the payment is otherwise a full payment

12  for the applicable period and is paid on its due date or within any applicable grace period."  *Id.*

13  § 12 C.F.R. § 226.36(c)(ii).

14         Regardless of whether plaintiff's allegations are sufficient to state a § 226.36(c)(I) or

15  § 226.36(c)(ii) claim against BAC as a "creditor" who is also a "servicer" under TILA and

16  Regulation Z (as discussed above), plaintiff's claim for damages as a result of those alleged

17  violations is barred by the statute of limitations.  A plaintiff's claim for damages relating to

18  improper disclosures under TILA and/or Regulation Z is subject to a one-year statute of

19  limitations, 15 U.S.C. § 1640(e), which runs from the date of the occurrence of the violation.[10]

20  *King v. State of Cal.*, 784 F.2d 910, 915 (9th Cir. 1986); *see also Meyer v. Ameriquest Mortg.*

21  *Co.*, 342 F.3d 899, 902 (9th Cir. 2003) (failure to make the required disclosures under TILA

22

23         [9] Although plaintiff alleges that BANA is the original lender, SAC ¶ 7, and BAC is
       BANA's successor by merger, plaintiff appears to assert this claim against BAC only.  *Id.* ¶ 61.

24         [10] Although a lender's violation of TILA allows the borrower to seek damages *or* to
25     rescind a consumer loan secured by the borrower's primary dwelling, *Copeland v. Lehman
       Brothers Bank, FSB*, 2010 WL 2817173, at *5 (S.D. Cal. July 15, 2010), and the statute of
       limitations for a rescission claim is three years, plaintiff's second amended complaint does not
26     seek rescission as a result of the alleged TILA/Regulation Z violations.

1   occurs at the time the loan documents were signed); *Villagomez v. JPMorgan Chase Bank, N.A.*,

2   2012 WL 3030357, at *5 (S.D. Cal. July 25, 2012) ("Because any claim under Regulation Z is

3   derivative of a TILA claim, the same statute of limitations applies to Regulation Z claims" as it

4   does to TILA claims.).

5         Although equitable tolling of TILA claims may be appropriate "in certain

6   circumstances," and can operate to "suspend the limitations period until the borrower discovers

7   or had reasonable opportunity to discover the fraud or non-disclosures that form the basis of the

8   TILA action," *King*, 784 F.2d at 914-15, when a plaintiff fails to allege facts demonstrating that

9   he could not have discovered the alleged violations by exercising reasonable diligence, dismissal

10  is appropriate.  *Meyer*, 342 F.3d at 902-03 (refusing to apply equitable tolling to TILA claim

11  because the plaintiff was in full possession of all loan documents and did not allege any

12  concealment of loan documents or other action that would have prevented discovery of the

13  alleged TILA violations); *see also Hubbard v. Fid. Fed. Bank*, 91 F.3d 75, 79 (9th Cir. 1996)

14  (finding that plaintiff was not entitled to equitable tolling of her TILA claim because "nothing

15  prevented [plaintiff] from comparing the loan contract, [the lender's] initial disclosures, and

16  TILA's statutory and regulatory requirements").

17        Plaintiff's claim for damages resulting from the alleged December 13, 2010 "failure to

18  post" violation is time-barred since plaintiff did not allege this cause of action until he filed his

19  second amended complaint on July 11, 2012, more than a year after the occurrence of the alleged

20  violation in December 2010, and plaintiff does not allege any facts demonstrating that the statute

21  of limitations on this claim should be equitably tolled.  Moreover, although plaintiff argues that

22  the newly-presented TILA, Regulation Z cause of action "relates back" to the original complaint

23  within the meaning of Federal Rule of Civil Procedure 15, his argument is too conclusory.  It is

24  not enough to simply say that "the cause is concerning the same events and facts that relate back

25  to the original filing date."  Dckt. No. 117 at 9.  The relation back doctrine, which saves

26  otherwise untimely claims when they arise from the same transaction or occurrence as

1   timely-filed claims, applies where the additional claim is supported by facts that are similar in

2   both time and type from those set forth in the original pleading. *Mayle v. Felix*, 545 U.S. 644,

3   125 (2005). Plaintiff presents no such facts. Accordingly, plaintiff's claim against BAC and

4   BANA for violation of 12 C.F.R. § 226.36(c)(I) and/or § 226.36(c)(ii) must be dismissed.

5   Plaintiff should be granted leave to amend this claim if he can allege an adequate factual basis

6   supporting (1) the application of equitable tolling or (2) that his TILA/Regulation Z claims arise

7   from the same transaction or occurrence.

8               d.  Plaintiff's TILA Claim Against BANA, BAC – November 2011

9           Plaintiff's second amended complaint also alleges that plaintiff called BANA and BAC

10  on November 9, 2011 to obtain the amount of arrears and the total outstanding balance of his

11  loan, but neither BANA nor BAC provided the requested information "within a reasonable

12  time," in violation of 12 C.F.R. § 226.36(c)(iii). SAC ¶ 60.

13          As noted above, 12 C.F.R. § 226.36(c)(iii) requires a "servicer" to provide, within a

14  reasonable time after receiving a request from the consumer or any person acting on behalf of the

15  consumer, an accurate statement of the total outstanding balance that would be required to

16  satisfy the consumer's obligation in full as of a specified date. Plaintiff alleges that BANA is the

17  original lender, is engaged in providing mortgage and banking services, and failed to provide

18  him with requested payoff information. SAC ¶¶ 5, 60. Plaintiff also alleges that BAC is

19  involved in the mortgage business as a debt collector and servicer of loans and that BAC failed

20  to provide him with requested payoff information. *Id.* ¶¶ 7, 60. Accepting plaintiff's allegations

21  as true, these facts are sufficient to "state a claim to relief that is plausible on its face" against

22  BANA and BAC under § 226.36(c)(iii). *Twombly*, 550 U.S. at 570.

23          Defendants BAC and BANA argue that plaintiff's TILA claim is barred by the statute of

24  limitations since the loan at issue was consummated in 2001 and this action was not filed until

25  November 7, 2011. Dckt. No. 96 at 20. If plaintiff were claiming a violation with respect to the

26  initial disclosures he received at the time the loan was consummated, defendants' arguments

23

1  would have merit.  However, plaintiff alleges defendants BAC and BANA failed to respond

2  within a reasonable time to his November 9, 2011 request for information, as required by 12

3  C.F.R. § 226.36(c)(iii).  SAC ¶¶ 59-61.  Since the statute of limitations runs from the time of

4  occurrence of the violation, 15 U.S.C. § 1640(e), defendants allegedly violated § 226.36(c)(iii)

5  on or about November 14, 2011, i.e. five days later, when they allegedly failed to respond.  *See*

6  *In re Herrera*, 422 B.R. 698, 714 (9th Cir. 2010) (construing Regulation Z as requiring a servicer

7  to provide a final payout report on five days' notice).  Plaintiff filed the second amended

8  complaint on July 11, 2012 – well within the one year statute of limitations period.  Accordingly,

9  plaintiff's claim against BAC and BANA for violation of 12 C.F.R. § 226.36(c)(iii) is not time-

10  barred and should not be dismissed.

11          3.  Federal Fair Debt Collection Practices Act ("FDCPA")

12          Plaintiff's third cause of action alleges that defendants BANA, BAC, FHLMC, QLS,

13  Bank of America Mortgage, and Home Retention Group violated the FDCPA, 15 U.S.C. §§ 1692

14  *et seq.*, by threatening to take actions not permitted by law and by taking such actions.[11]  SAC

15  ¶¶ 62-71.  Specifically, plaintiff alleges that defendants failed to properly respond to plaintiff's

16  QWRs regarding the disputed debt, falsely stated the amount of a debt owed, increased the

17  amount of the debt by including amounts that are not permitted by law or contract, and used

18  unfair, unconscionable, deceptive, and oppressive means in an attempt to collect a debt.  *Id.* ¶ 63.

19  Plaintiff contends that all the defendants are "debt collectors" under the FDCPA, *id.* ¶ 64, and

20  asserts the following FDCPA claims: (1) a violation of 15 U.S.C. § 1692g(a)(5) and 1692g(b) by

21  BANA, *id.* ¶ 66; (2) a violation of § 1692e by BANA and QLS, *id.* ¶ 67; (3) a violation of

22  § 1692e(3) by BANA and BAC, *id.* ¶ 68; and (4) a violation of § 1692e(2)(A) by BANA, BAC,

23  FHLMC, QLS, and Bank of America Mortgage, *id.* ¶¶ 69-71.

24  ////

25

26          [11] Although plaintiff states that his FDCPA claim is brought against all defendants,
plaintiff does not allege any actual FDCPA claims against Balboa.  *See generally* SAC ¶¶ 62-71.

a.  FDCPA Claims Against BANA, BAC

Plaintiff's second amended complaint alleges that BANA and BAC violated various provisions of the FDCPA.  SAC ¶¶ 66-71.  BANA and BAC move to dismiss those claims, arguing that they are not debt collectors within the meaning of the FDCPA and that the FDCPA does not apply to lenders or mortgage servicers.  Dckt. No. 96 at 20-21.

The purpose of the FDCPA is to "prohibit debt collectors from engaging in unfair and deceptive practices in the collection of consumer debts, and to require debtors to act fairly into entering into and honoring such debts."  *See* 15 U.S.C. § 1692.  The FDCPA applies only to a "debt collector," defined as "a person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  *Id.* § 1692a.  The FDCPA expressly excludes from this definition any person collecting or attempting to collect a debt originated by that person.  *Id.* § 1692a(6)(F)(ii).  Moreover, "[t]he law is well-settled that creditors, mortgagors, and mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the FDCPA."  *Costantini v. Wachovia Mortg. FSB*, 2009 WL 1810122, at *3 (E.D. Cal. June 24, 2009) (internal alterations omitted) (quoting *Hepler v. Wash. Mut. Bank, F.A.*, 2009 WL 1045470 at *4 (C.D. Cal. Apr. 17, 2009)).

Consequently, neither BANA, nor its successor by merger, BAC, is liable under the FDCPA because neither is a "debt collector" within the meaning of that statute.  Therefore, plaintiff's FDCPA claim against BANA and BAC must be dismissed without leave to amend.

b.  FDCPA Claims Against FHLMC

Plaintiff's second amended complaint alleges that FHLMC violated § 1692e(2)(A) of the FDCPA by "ma[king] false and misleading statements . . . in an attempt to collect amounts," SAC ¶ 69, and violated § 1692e(2)(A) by recording a "false and misleading" notice of default,

////

1   *id.* ¶ 71.  FHLMC moves to dismiss plaintiff's FDCPA claims, arguing that plaintiff cannot

2   establish the elements of those claims.  Dckt. No. 96 at 20-21.

3          While the FDCPA generally prohibits "debt collectors" from making false or misleading

4   representations and from engaging in various abusive and unfair practices in collecting debts, the

5   defendant *must* be a debt collector.  *Marques v. Fed. Home Loan Mortg. Corp.,* 2012 WL

6   6091412, at *7 (S.D. Cal. Dec. 6, 2012) (citing *Klohs v. Wells Fargo Bank, N.A.*, 2012 WL

7   4758126 (D. Haw. Oct. 4, 2012)).  Courts have found that a defendant is not a "debt collector"

8   within the meaning of the FDCPA when the plaintiff does not adequately allege that the

9   defendant was "(1) a person whose principal business is the collection of debts (whether on

10  behalf of himself or others); or (2) a person who regularly collects debts on behalf of others

11  (whether or not it is the principal purpose of his business)."  *Derusseau v. Bank of Am., N.A.*,

12  2011 WL 5975821, at *6 (S.D. Cal. Nov. 29, 2011).

13         Here, under these standards, plaintiff has not alleged facts sufficient to show that

14  FHLMC is a debt collector within the meaning of the FDCPA.  Therefore, plaintiff's FDCPA

15  claim against FHLMC should be dismissed with leave to amend.  In any third amended

16  complaint, plaintiff shall specifically include allegations demonstrating that the FDCPA is a debt

17  collector within the meaning of the FDCPA.[12]

18                              c.  FDCPA Claims Against QLS

19         Plaintiff alleges that QLS violated § 1692e of the FDCPA by withholding reinstatement

20  figures and the amount of the arrears, SAC ¶ 67, and violated §1692e(2)(A) by recording a "false

21  and misleading" notice of default, *id.* ¶ 71.[13]  QLS moves to dismiss those claims, arguing that

22  QLS is not a debt collector within the meaning of FDCPA, and that plaintiff failed to allege facts

23

24         [12] Plaintiff is cautioned that simply stating that a defendant "is a debt collector" is
    insufficient.

25         [13] It is unclear whether plaintiff also intended to allege that QLS violated § 1692e(3).
    SAC ¶ 68.  However, to the extent that he did, that claim is dismissed as conclusory with leave to
26  amend.

                                          26

1    to support his contention that QLS engaged in any harassment or abuse or that it used false or

2    misleading representations or unfair practices.  Dckt. No. 93-1 at 12-13.

3           QLS argues, as numerous California district courts have concluded, that the activity of

4    foreclosing on a property pursuant to a deed of trust does not constitute "debt collection" under

5    the FDCPA.  *Tina v. Countrywide Home Loans, Inc.*, 2008 WL 4790906, *6 (S.D. Cal. Oct. 30,

6    2008) (quoting *Hulse v. Ocwen Fed. Bank, FSB*, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002)); *see*

7    *also Gamboa v. Trustee Corps*, 2009 WL 656285, at *4 (N.D. Cal. Mar. 12, 2009) ("the law is

8    clear that foreclosing on a property pursuant to a deed of trust is not a debt collection within the

9    meaning of the RFDCPA or the FDC[P]A."); *Keen v. Am. Home Mortg. Serv., Inc.*, 664 F. Supp.

10   2d 1086, 1095 (E.D. Cal. 2009).

11          However, while the Ninth Circuit has not specifically addressed the issue, several other

12   courts have concluded that foreclosing on a property pursuant to a deed of trust or some other

13   lien does constitute debt collection under the FDCPA.  *See, e.g.*, *Kaltenbach v. Richards*, 464

14   F.3d 524, 528-29 (5th Cir. 2006) ("We therefore hold that a party who satisfies § 1692a(6)'s

15   general definition of a 'debt collector' is a debt collector for the purposes of the entire FDCPA

16   even when enforcing security interests."); *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373,

17   376 (4th Cir. 2006) ("Wilson's 'debt' remained a 'debt' even after foreclosure proceedings

18   commenced"); *see also Pizan v. HSBC Bank USA, N.A.*, 2011 WL 2531104 (W.D. Wash. June

19   23, 2011) ("In asserting that QLS Corp. is not a 'debt collector' within the meaning of FDCPA,

20   defendants rely on *Hulse v. Ocwen Fed. Bank, FSB.  Hulse*, however, has been called into

21   question by two circuits and at least two district courts within the Ninth Circuit"); *Carter v.*

22   *Deutsche Bank Nat. Trust Co.*, 2010 WL 1875718, at *1-2 (N.D. Cal. May 7, 2010) (discussing

23   split in authority and declining to dismiss plaintiff's FDCPA claim at the pleading stage).

24          Here, the court need not address whether foreclosure itself constitutes debt collection

25   under the statute because plaintiff's allegations that QLS used unfair, unconscionable, deceptive,

26   and oppressive means in an attempt to collect a debt, SAC ¶ 63, are too conclusory to "raise a

1  right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Accordingly, plaintiff's

2  claims against QLS for allegedly violating FDCPA must be dismissed.  Plaintiff will should

3  granted leave to amend his FDCPA claims against QLS only if he can cure those deficiencies.

4               4.  Civil RICO

5        Plaintiff's second amended complaint also attempts to allege a civil RICO claim against

6  all of the defendants.  SAC ¶¶ 167-72.  Plaintiff alleges that defendants conspired to conduct

7  their business in an unlawful manner, as otherwise alleged in the second amended complaint;

8  that those activities were done as separate entities and as joint participants in an "enterprise"

9  within the meaning of RICO.  *Id.* ¶ 168.  According to plaintiff, the enterprise was formed to

10  unlawfully foreclose on properties in California, using defendants' unique market power,

11  financial resources, government loans, experience, and collective talents to take advantage of

12  loophole in the laws regulating the securitization of home loans, housing, foreclosure, real estate,

13  and insurance markets.  *Id.* ¶ 169.

14        QLS, BANA, BAC, Balboa, and FHLMC move to dismiss the RICO claim, arguing that

15  plaintiff fails to allege the required elements for a RICO claim and fails to plead his RICO claim

16  with particularity, as required by Federal Rule of Civil Procedure 9(b).  Dckt. No. 93 at 14-15;

17  Dckt. No. 96 at 35-36.

18        To state a civil RICO claim, a plaintiff must allege: (1) conduct, (2) of an enterprise, (3)

19  through a pattern, (4) of racketeering activity (known as "predicate acts"), (5) causing injury to

20  plaintiff's business or property.  *Sanford v. Memberworks, Inc.*, 625 F.3d 550, 557 (9th Cir.

21  2010); *Walter v. Drayson*, 538 F.3d 1244, 1247 (9th Cir. 2008); *Grimmett v. Brown*, 75 F.3d

22  506, 510 (9th Cir. 1996).  The alleged enterprise must exist "separate and apart from that

23  inherent in the perpetration of the alleged [activity]."  *Chang v. Chen*, 80 F.3d 1293, 1300-01

24  (9th Cir. 1996).  A "pattern of racketeering activity" means at least two criminal acts enumerated

25  by statute.  18 U.S.C. § 1961(1), (5) (including, among many others, mail fraud, wire fraud, and

26  financial institution fraud).  Those so-called "predicate acts" under RICO, if based on a theory of

1    fraudulent conduct, must be alleged with specificity in compliance with Rule 9(b).  *Schreiber*

2    *Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400-01 (9th Cir. 2004); *see also*

3    *Lancaster Community Hospital v. Antelope Valley Hospital Dist.*, 940 F.2d 397, 405 (9th Cir.

4    1991) (holding with respect to the predicate act of mail fraud that a plaintiff must allege with

5    "particularity the time, place, and manner of each act of fraud, plus the role of each defendant in

6    each scheme"); *Alan Neuman Productions, Inc. v. Albright*, 862 F.2d 1388, 1392-93 (9th Cir.

7    1988); *Pineda v. Saxon Mortgage Services*, 2008 WL 5187813, at *4 (C.D. Cal. Dec. 10, 2008)

8    ("It is not enough for [plaintiff] to rely on mere labels and conclusions" to establish a RICO

9    claim but rather, plaintiff must give each defendant notice of the particular predicate act it

10   participated in and must allege each predicate act with specificity).

11          Here, the allegations found in the second amended complaint with respect to a civil RICO

12   claim are inadequate.  In this regard, the second amended complaint offers no factual allegations

13   in support of the civil RICO claim, let alone specific facts sufficient to meet the heightened

14   pleading requirements under Rule 9(b).  Instead, the second amended complaint offers mere

15   conclusory allegations, such as that the "relevant times for the racketeering activities spanned a

16   period from January 2001 to November 2012, and more specifically thru [sic] certain activities

17   commencing in or around January 2010 and continuing to at least around December 31, 2011."

18   SAC ¶ 170.  Plaintiff alleges that each defendant is "an 'enterprise defendant,'" and that

19   "each/all/or some of the defendants that make up the enterprise have received income deprived

20   [sic] from unlawful activities."  *Id.* ¶ 172.  As noted above, predicate acts must be described

21   specifically and in relation to each defendant's particular, alleged illegal conduct.  Plaintiff's

22   second amended complaint fails to set forth these specifics.  Accordingly, plaintiff's civil RICO

23   claim against the moving defendants must be dismissed.  Although plaintiff was previously

24   warned about the requirements for pleading a civil RICO claim, *see* Dckt. No. 65 at 11-13,

25   plaintiff should be given one more chance to attempt to amend his civil RICO claims to cure

26   those deficiencies.

5. <u>Declaratory Relief</u>

Plaintiff also seeks an order defining and determining the rights, obligations, duties, and responsibilities of plaintiff and defendants with regard to the subject property.  SAC ¶ 129. Defendants move to dismiss plaintiff's declaratory relief claim, arguing that other remedies are available to redress past conduct.  Dckt. No. 93-1 at 11; Dckt. No. 96 at 18.

Declaratory relief is a remedy, not an independent cause of action.  *See e.g., Morongo Band of Mission Indians v. California State Board of Equalization*, 849 F.2d 1197, 1201 (9th Cir. 1988) ("The Declaratory Judgment Act merely creates a remedy in cases otherwise within the court's jurisdiction; it does not constitute an independent basis for jurisdiction."  The declaratory relief plaintiff seeks is commensurate with the relief sought through his other causes of action and entitlement to such relief will depend on the outcome of those claims.  Thus, plaintiff's declaratory relief claim is duplicative and unnecessary.  See *Permpoon v. Wells Fargo Bank Nat. Ass'n*, 2009 WL 3214321, at *5 (S.D. Cal. Sep. 29, 2009).  Accordingly, plaintiff's claim for declaratory relief as an independent cause of action must be dismissed without leave to amend.[14]

C. <u>Plaintiff's State Law Claims</u>

1. <u>Violation of California Rosenthal Act</u>

Plaintiff's third cause of action alleges that defendants BANA, BAC, FHLMC, QLS, Bank of America Mortgage, and Home Retention Group violated the California Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), California Civil Code section 1788, by threatening to take actions not permitted by law and by taking such actions.[15]  SAC ¶¶ 62-71.  Plaintiff

---

[14]  It is unclear whether plaintiff intended to bring his declaratory relief claim under the Declaratory Judgment Act, 28 U.S.C. § 2201.  However, regardless of the underlying basis for plaintiff's request for declaratory relief, for the reasons stated here, the claim should be dismissed without leave to amend.

[15]  Although plaintiff states that this claim is brought against all defendants, plaintiff does not allege any actual RFDCPA claims against Balboa.  *See generally* SAC ¶¶ 62-71.

1    alleges that defendants failed to properly respond to plaintiff's QWRs regarding the disputed

2    debt, falsely stated the amount owed, increased the amount of the debt by including amounts that

3    are not permitted by law or contract, and used unfair, unconscionable, deceptive, and oppressive

4    means in an attempt to collect a debt. *Id.* ¶ 63.

5                                    a.   RFDCPA Claims Against BANA and BAC

6          Like the FDCPA, the RFDCPA applies only to debt collectors. *Izenberg v. ETS Services,*

7    *LLC*, 589 F. Supp. 2d 1193, 1199 (C.D. Cal. 2008).  The definition of 'debt collector' found in

8    the state statute, however, is broader than that contained in the FDCPA. *Id.*  "The RFDCPA

9    defines a 'debt collector' as 'any person who, in the ordinary course of business, regularly, on

10   behalf of *himself or herself or others*, engages in debt collection.'" *Id.*  Accordingly, while

11   plaintiff's FDCPA claim as to BANA and BAC fails because these defendants are not "debt

12   collectors," the RFDCPA covers an entity that collects a debt on its own behalf.

13         Nevertheless, plaintiff's conclusory allegations that defendants BANA and BAC used

14   "unfair, unconscionable, deceptive and oppressive means in an attempt to collect a debt" do not

15   "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Accordingly,

16   plaintiff's RFDCPA claim against BANA and BAC must be dismissed.  Plaintiff should be

17   granted leave to amend his RFDCPA claims against these defendants only if he can cure those

18   deficiencies.

19                                    b.   RFDCPA Claims Against FHLMC and QLS

20         As with plaintiff's FDCPA claim against FHLMC, plaintiff has not alleged facts

21   sufficient to show that FHLMC is a debt collector within the meaning the RFDCPA.  As to QLS,

22   plaintiff's conclusory allegations that QLS used "unfair, unconscionable, deceptive and

23   oppressive means in an attempt to collect a debt" do not "raise a right to relief above the

24   ////

25   ////

26   ////

31

1   speculative level."[16]  *Twombly*, 550 U.S. at 555.  Accordingly, plaintiff's RFDCPA claim against

2   those defendants must be dismissed with leave to amend.

3                         2.   Violation of California Civil Code § 2954(a)(1)

4          Plaintiff's second amended complaint alleges that defendants BANA, BAC, Balboa,

5   FHLMC, and Bank of America Mortgage violated California Civil Code section 2954(a)(1) by

6   creating an improper mortgage-related escrow account.  SAC ¶¶ 72-79.  According to plaintiff,

7   when the loan closed in January 2001, there was "an oral and written mutual agreement to *never*

8   allow . . . an escrow account on the subject property," and that plaintiff specifically put enough

9   money down at the time so that an impound would not be required under Section 2954(a)(1).  *Id.*

10  ¶¶ 73-74.  Nonetheless, plaintiff alleges that in June 2010, because of plaintiff's inability to

11  obtain "bank approved insurance coverage" for the subject property, BANA, BAC, Balboa, and

12  FHLMC placed a lender placed insurance policy ("LLP") on his property, *id.* ¶ 26, and in August

13  2010 "created an improper and involuntary escrow account" into which it would deposit

14  plaintiff's monthly insurance payment, *id.* ¶ 28.  Plaintiff alleges that those defendants refused to

15  allow plaintiff to pay the sums directly to the insurer without an escrow account and instead

16  "demanded an increase in Plaintiff's monthly payments . . . ."  *Id.*

17         Plaintiff further alleges that in or around August 2010, BAC mailed plaintiff a notice that

18  willfully, intentionally, and fraudulently under-calculated the value of the subject property in

19  part to justify BAC, BANA, and Balboa's improper and illegal escrow account (by suggesting

20  that plaintiff's loan-to-value was greater than 80% and that therefore an escrow account would

21  be proper).  *Id.* ¶¶ 75-76.  Plaintiff alleges that BAC notified him that the value of his property

22  was $126,623 in August 2010, while the Amador County Assessor's Office valued the property

23  at $171,584 in June 2010.  *Id.*  Plaintiff alleges that, at that time, he owed $131,965.12 in loans

24

25         [16] It is unclear whether plaintiff also intended to allege that QLS violated California Civil
    Code section 1788.13(b).  SAC ¶ 68.  However, to the extent that he did, that claim is dismissed
26  as conclusory with leave to amend.

                                                32

1   on the property; therefore, based on the valuation by the Assessor's Office, plaintiff's

2   outstanding loans were 76% of the value of the property.  *Id.* ¶ 76.

3        Plaintiff alleges the escrow account violates California Civil Code section 2954(a)(1)

4   because the total amount of his outstanding loans in August 2010 was 76% of the value and no

5   other exemption set forth in that statute authorized defendants to open the escrow account.  *Id.*

6   ¶¶ 76-77.  Plaintiff contends that on August 17, 2010, he wrote a letter to BAC objecting to the

7   illegal opening of the escrow account and demanding that the escrow account be removed

8   immediately, but BAC ignored the request.  *Id.* ¶ 78.  Plaintiff contends that BAC, BANA,

9   FHMLC, and Balboa "willfully and intentionally continued to keep the escrow account open in

10  violation of § 2954(a)(1) and the deed of trust, and took their illicit escrow account actions many

11  steps further."  *Id.* ¶ 79.

12       California Civil Code section 2954(a)(1) provides that "[n]o impound, trust, or other type

13  of account for payment of taxes on the property, insurance premiums, or other purposes relating

14  to the property shall be required as a condition of a real property sale contract or a loan secured

15  by a deed of trust or mortgage on real property containing only a single-family, owner-occupied

16  dwelling," except in five enumerated circumstances.  One of those circumstances is "whenever

17  the combined principal amount of all loans secured by the real property exceeds 80 percent of

18  the appraised value of the property securing the loans."  Cal. Civ. Code § 2954(a)(1)(E).  The

19  statute further provides that "[a]n impound, trust, or other type of account for the payment of

20  taxes, insurance premiums, or other purposes relating to property established in violation of this

21  subdivision is voidable, at the option of the purchaser or borrower, at any time, but shall not

22  otherwise affect the validity of the loan or sale."  *Id.* § 2954(a)(1).

23       Here, plaintiff alleges that at the time the August 2010 escrow account was created, the

24  combined principal amount of all loans secured by the real property in August 2010 did not

25  exceed 80% of the value of the property, based on the Assessor's Office's June 2010 valuation.

26  ////

33

Defendants BANA, BNC, Balboa, and FHLMC argue that (1) plaintiff's allegations are based on the June 2010 assessed value, as opposed to the August 2010 "appraised value" as provided in the statute, and (2) plaintiff has not alleged that the escrow account was created "as a condition of a real property sale contract or a loan secured by a deed of trust," and instead argues just the opposite: that at the time of the loan closing in 2001, the parties agreed *not* to impose an escrow account. Dckt. No. 96 at 21-22. Defendants do not argue that the allegations regarding this claim are not specific enough. Rather, they suggest that the claim fails as a matter of law. However, they have not provided convincing authority for that proposition. Given that section 2954(a)(1) was "intended to protect consumers" and "should be construed liberally to implement its purpose," *Kirk v. Source One Mortgage Services Corp.*, 46 Cal. App. 4th 483, 490 (1996), defendants' conclusory arguments in support of their motion to dismiss are insufficient and do not meet their burden of demonstrating (1) that the statute only applies to escrow accounts that were created at the time a loan closed or (2) that plaintiff's allegations regarding the "assessed value" of his home are insufficient, even though the statute references the "appraised value." Accordingly, defendants' motion to dismiss for failure to state a claim with respect to this cause of action should be denied.

### 3. Fraud, Misrepresentation, Conspiracy

Plaintiff's second amended complaint alleges "fraud, negligent misrepresentation, and conspiracy"[17] against BAC, BANA, Bank of America Mortgage, Home Retention Group, and QLS. SAC ¶¶ 80-97. Plaintiff alleges that BANA and Bank of America Mortgage tricked him into signing the initial loan documents in January 2001. *Id.* ¶¶ 81, 86. According to plaintiff, Susan Birge, the "lender closing contact" for Bank of America Mortgage, who was "authorized to speak" on behalf of Bank of America Mortgage and BANA led him to believe that Bank of

---

[17] Although plaintiff's fifth cause of action is for "fraud, negligent misrepresentation, and conspiracy," the negligent misrepresentation claim is addressed separately below in connection with plaintiff's negligence claim.

1   America Mortgage would never open an escrow account for hazard insurance or property taxes.

2   *Id.* ¶ 81.  Plaintiff alleges that Susan Birge told him "what to cross out, change, and initial" on

3   the closing paperwork.  *Id.*  Plaintiff contends that BANA "had no intention of abiding by the

4   contract of no escrow account ever for the remainder of the loan," and he therefore seeks

5   damages because he "relied to his detriment" because he could have "easily gone to another

6   lender." *Id.*  Plaintiff further alleges that he did not discover BANA and Bank of America

7   Mortgage's alleged fraud until July 2010 when he opened his mortgage statement and noticed

8   the escrow account.  *Id.* ¶ 85.  Plaintiff contends that any statute of limitations regarding the

9   alleged fraudulent January 2001 loan documents should be tolled because he had no reason to

10  suspect the alleged fraud until that time.  *Id.*

11      Plaintiff's second amended complaint further alleges "fraud, negligent misrepresentation

12  and conspiracy" against Home Retention Group, BANA, BAC, and FHLMC because they

13  conspired to intentionally misstate the amount plaintiff owed on his loan.  *Id.* ¶ 89.  Plaintiff also

14  alleges BANA, BAC, and FHLMC requested, on his behalf and without his consent, a loan

15  modification through the federal government's Home Affordable Modification Program

16  ("HAMP").  *Id.* ¶¶ 89-97.  According to plaintiff, this alleged unlawful interstate scheme

17  "prematurely and permanently closed the door" to his ability to later apply on his own.  *Id.* ¶ 96.

18  Further, as noted above, the second amended complaint alleges that QLS violated § 1692e of the

19  FDCPA by withholding reinstatement figures and the amount of the arrears, SAC ¶ 67, and

20  violated § 1692e(2)(A) by recording a "false and misleading" notice of default, *id.* ¶ 71.

21      Defendants BANA, BAC, and FHLMC move to dismiss plaintiff's claims, arguing that

22  the fraud and misrepresentation claims are time-barred and lack the requisite specificity pursuant

23  to Federal Rule of Civil Procedure 9(b).  Dckt. No. 96 at 24-25.  Defendant QLS moves to

24  dismiss plaintiff's claims, also arguing that they lack the requisite specificity pursuant to Rule

25  9(b).  Dckt. No. 93 at 13-15.

26  ////

a.  Fraud/Misrepresentation – January 2001

Federal Rule of Civil Procedure 9(b) requires fraud claims to be pled with particularity. To state a claim for fraud, a plaintiff must plead "(a) misrepresentation; (b) knowledge of falsity (or scienter); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Small v. Fritz Cos.*, 30 Cal. 4th 167, 173 (2003); *see also* Cal. Civ. Code §§ 1709-10.  "In all averments of fraud . . . , the circumstances constituting fraud . . . shall be stated with particularity."  Fed. R. Civ. P. 9(b).  The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).  In addition to the "time, place and content of an alleged misrepresentation," a complaint "must set forth what is false or misleading about a statement, and . . . an explanation as to why the statement or omission complained of was false or misleading." *Yourish v. Cal. Amplifier*, 191 F.3d 983, 993, n.10 (9th Cir. 1999).  The complaint must also name the persons who made the allegedly fraudulent statements. *See Morris v. BMW of N. Am., LLC*, 2007 WL 3342612, at *3 (N.D. Cal. 2007) (citing *In re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 n.7 (9th Cir. 1994) (en banc)).

Plaintiff's fraud/misrepresentation claims as to BAC and Bank of America Mortgage lack the specificity required by Rule 9(b).  Plaintiff alleges that he would not have signed the loan documents if he had known that defendants BANA and Bank of America Mortgage did not intend to adhere to his alleged oral agreement with Ms. Birge. *Id.* ¶ 81, 82.  However, plaintiff does not identify any specific misrepresentations or any specific facts about the purported misrepresentations.  Plaintiff only states that Ms. Birge told him "what to cross out, change, and initial" on the closing paperwork.  He does not provide what statements she allegedly made to him or any details of their alleged conversation. *Id.* ¶ 82.  Additionally, plaintiff has not demonstrated that Ms. Birge, or anyone else acting on defendants' behalf, *intended* to defraud plaintiff.  More importantly, however, plaintiff's alleged damages are based on the opening of

36

1    the purported escrow account, SAC ¶ 88, yet he acknowledges in his second amended complaint

2    that the account was opened, at least in part, by the fact that he did not maintain property

3    insurance.

4         For these reasons, plaintiff fails to satisfy the requirements of Rule 9(b) and his

5    fraud/negligent misrepresentation claims related to the original loan documents must be

6    dismissed with leave to amend.[18]

7                        b.  Fraud/Misrepresentation – 2010, 2011

8         Although plaintiff also makes numerous other conclusory allegations regarding fraud

9    and/or misrepresentations by defendants BANA, BAC, FHLMC, and QLS (by opening the 2010

10   escrow account, by misstating the outstanding balance of plaintiff's loan, by requesting a loan

11   modification through HAMP on his behalf and without his consent, by recording a false and

12   misleading notice of default, etc.), plaintiff has not pled any of those claims with the requisite

13   specificity under Rule 9(b).  Plaintiff has not clearly alleged what roles each defendant played in

14   each alleged fraud, nor provided the necessary specifics regarding each alleged

15   fraud/misrepresentation.  "In the context of a fraud suit involving multiple defendants, a plaintiff

16   must, at a minimum, 'identif[y] the role of [each] defendant[ ] in the alleged fraudulent

17   ////

18   ////

19

─────────────────────

20       [18] Defendants contend that the claims related to the original loan documents are barred by
     the statute of limitations.  The limitations period for fraud is three years.  *Broberg v. The*
21   *Guardian Life Ins. Co. of America*, 171 Cal. App. 4th 912, 920 (2009); Cal. Civ. Proc. Code
     § 338.  Plaintiff filed the original complaint on November 7, 2011.  Dckt. No. 1.  Plaintiff closed
22   escrow on the original loan in January 2001.  SAC ¶ 17.  As such, more than three years have
     elapsed.  However, plaintiff alleges that he did not, and could not, know that defendants "never
23   intended" to honor their alleged oral agreement until July 2010 (when he discovered they had
     opened an impound account).  SAC ¶ 85.  "If a reasonable plaintiff would not have known of the
24   existence of a possible claim within the limitations period, then equitable tolling will serve to
     extend the statute of limitations for filing suit until the plaintiff can gather what information he
25   needs." *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000).  Because plaintiff's fraud
     claim is dismissed on other grounds, the court need not decide at this time whether plaintiff's
26   fraud claim should be equitably tolled.

1    scheme.'" *Swartz*, 476 F.3d at 765 (quoting *Moore v. Kayport Package Express*, 885 F.2d 531,

2    541 (9th Cir. 1989)).  Therefore, all of plaintiff's post-2001 fraud/ misrepresentation claims

3    against BANA, BAC, FHLMC, and QLS must be dismissed with leave to amend.

4                                    c.  Conspiracy

5             Plaintiff's second amended complaint alleges that all of the defendants engaged in a

6    conspiracy to defraud him.  SAC ¶ 88, 89-97.  A conspiracy is not an independent cause of

7    action, but is instead "a legal doctrine that imposes liability on persons who, although not

8    actually committing a tort themselves, share with the immediate tortfeasors a common plan or

9    design in its perpetration." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 510-

10   11 (1994); *see also Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.*, 122

11   F.3d 1211, 1228 (9th Cir.1997).  Thus, to properly state a claim for imposing liability under a

12   conspiracy basis, plaintiff must not only properly allege facts showing the elements for the

13   underlying cause of action, he must also satisfy the elements for establishing conspiracy.

14   Liability for civil conspiracy generally requires three elements: (1) formation of a conspiracy (an

15   agreement to commit wrongful acts); (2) operation of a conspiracy (commission of the wrongful

16   acts); and (3) damage resulting from operation of a conspiracy. *Id.* at 511.  A civil conspiracy is

17   therefore activated by the commission of an underlying wrongful act. *Id.*  As noted, plaintiff's

18   underlying causes of action for fraud and negligent misrepresentation fail to state a claim

19   because he has not properly pled facts showing the required elements for those claims.  Nor has

20   plaintiff sufficiently alleged facts demonstrating an agreement among defendants to commit the

21   alleged wrongful acts.  Therefore, plaintiff's conspiracy claims against the moving defendants

22   must be dismissed with leave to amend.

23                          4.  Breach of Deed of Trust, Note, Contract

24           Plaintiff's second amended complaint alleges a claim for breach of contract against

25   BANA, BAC, Bank of America Mortgage, Balboa, FHLMC, and QLS.  SAC ¶¶ 98-127.

26   ////

Specifically, plaintiff alleges that defendants BAC and BANA breached the Deed of Trust by opening an escrow account without notice, posting payments late, and incorrectly applying payments to his account (not based on "priority"). SAC ¶¶ 99-101. Plaintiff further alleges that defendants BANA, BAC, Bank of America Mortgage, Balboa, and FHLMC breached the Deed of Trust by changing the priority of payments they received. *Id.* ¶ 99.

As an initial matter, plaintiff alleges that he entered into the original contract and Deed of Trust with BANA/BAC. SAC ¶¶ 14, 16. A cause of action for breach of contract requires: (1) that a contract exists between the parties, (2) that the plaintiff performed his contractual duties or was excused from nonperformance, (3) that the defendant breached those contractual duties, and (4) that plaintiff's damages were a result from the breach. *First Commercial Mortgage Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001); *Reichert v. General Ins. Co.*, 68 Cal. 2d 822, 830 (1968).[19] Since plaintiff has not alleged that FHLMC, Balboa, and/or QLS were parties to the Deed of Trust, the breach of contract claims against those defendants must be dismissed. Moreover, it appears from the facts already alleged in the current complaint as well as from its attachments, this defect cannot be cured by amendment.

As to BANA and BAC, plaintiff claims that these defendants breached the Deed of Trust contract by opening an escrow account without notice, posting payments late, and incorrectly applying payments to his account (not based on "priority"). SAC ¶¶ 99-101. Plaintiff's second amended complaint alleges that plaintiff entered into a written and oral contract with BANA/BAC, but he has not produced any written contract.

////

////

---

[19] Plaintiff argues in his opposition, Dckt. No. 107 at 6, that QLS, as a trustee, has a duty to properly and impartially perform their (sic) ministerial functions and to act as a common agent for the trustor and beneficiary," citing *Pro Value Properties v. Quality Loan Service Corp.*, 170 Cal. App. 4th 579 (2009) – a case which is neither on point nor relevant. Regardless of whether QLS is a trustee, with or without ministerial functions owing to the lender, it is nevertheless not a party to the original contract and therefore could not have breached the contract.

a.  <u>Plaintiff's Claims Are Subject to the Statute of Frauds</u>

Certain types of contracts are invalid unless memorialized by a written document signed by the party against whom the contract is being enforced.  Cal. Civ. Code § 1624.  Mortgages and deeds of trust are subject to the statute of frauds.  *Secrest v. Sec. Nat'l Mortg. Loan Trust 2002–2*, 167 Cal. App. 4th 544, 552 (2008).  "An agreement to modify a contract that is subject to the statute of frauds is also subject to the statute of frauds" and must be in writing.  *Basham v. Pac. Funding Group*, 2010 WL 2902368 (E.D. Cal. July 22, 2010) (dismissing a claim that defendant breached an oral contract to provide plaintiffs with a loan modification because, under the statute of frauds, "absent a writing, there can be no contract, much less a breach of contract."); *Justo v. Indymac Bancorp, et al.*, 2010 WL 623715 (E.D. Cal. Feb. 19, 2010) (plaintiff's claim that defendants breached an oral contract to modify his loan and cancel the foreclosure sale was barred by the statute of frauds).  A written contract may not be modified by an oral agreement, unless that oral agreement is memorialized in writing and signed by the parties.  Cal. Civ. Code § 1698.

Here, the alleged oral agreement to "never open an escrow account" is subject to the statute of frauds because, according to plaintiff, it modified the original mortgage agreement and Deed of Trust.  SAC ¶ 99.  Absent a written agreement to modify the loan, any claim based upon an oral contract to modify the loan is barred by the statute of frauds.  *See Secrest*, 167 Cal. App. 4th at 552.

b.  <u>Plaintiff's Allegations Are Contradictory</u>

Even if the alleged oral agreement to modify the loan was not barred by the statute of frauds (which it is), plaintiff attaches to his second amended complaint a copy of the Deed of Trust, SAC Ex. A, which contradicts many of the allegations regarding the alleged oral contract. In ruling on a motion to dismiss for failure to state a claim, if a complaint is accompanied by attached documents, the court is not limited by allegations contained in complaint, but rather, documents are part of the complaint, and may be considered in determining whether plaintiff can

1    prove any set of facts in support of claim.  *See Durning v. First Boston Corp.*, 815 F.2d 1265,

2    1267 (9th Cir. 1987).

3           The Deed of Trust provides broad discretion to BANA/BAC to require plaintiff to pay

4    premiums for any and all insurance into an escrow account; to waive an escrow account, but only

5    in writing; and to require plaintiff to maintain property insurance in accordance with the terms of

6    the Deed of Trust, allowing BANA/BAC to obtain insurance coverage if plaintiff failed to do so

7    on his own.  SAC, Ex. A at 7-9.  Specifically, the Deed of Trust provides as follows:

8           3. Funds for Escrow Items.  Borrower shall pay to Lender on the day Periodic
            Payments are due under the Note, until the Note is paid in full, a sum (the
9           "Funds") to provide for payment of amounts due for ... (c) premiums for any and
            all insurance required by lender under Section 5.
10
                                        ***
11
            Borrower shall pay Lender the Funds for Escrow Items unless Lender waives
12          Borrower's obligation to pay the funds for any or all Escrow Items.  Lender may
            waive Borrower's obligation to pay Lender Funds for any or all Escrow Items at
13          any time.  Any such waiver may only be in writing.

14   SAC, Ex. A.

15          These provisions of the Deed of Trust expressly belie plaintiff's allegations that he

16   entered into an oral agreement with BANA/BAC's employee to "never open an escrow account."

17   SAC ¶ 81.  Additionally, the plain language of the Deed of Trust requires plaintiff to pay

18   insurance premiums into an escrow account unless BANA/BAC waived this obligation *in*

19   *writing.*  Plaintiff has not alleged that BANA or BAC or any representative on their behalf ever

20   waived this requirement in writing.[20]

21          Plaintiff also alleges that defendants BANA and BAC failed to post his payments

22   correctly.  Specifically, plaintiff alleges that the Deed of Trust requires the defendants to post the

23   payments in the following order of priority: (a) interest due under the note, (b) principal due

24

25          [20] Because plaintiff has not alleged that BANA or BAC waived the insurance obligation
     in writing, plaintiff's claim that defendants were required to provide him with notice before
26   revoking such waiver also necessarily must fail.

                                          41

1  under the note; (c) amounts due under the section 3.  SAC ¶ 100.  However, the Deed of Trust

2  also allows defendant BANA to apply the payments "in the order in which [the amount] became

3  due . . . any remaining amounts shall be applied first to late charges, second to any other amounts

4  due . . . and then to reduce the principal balance of the Note."  SAC, Ex. A.  Plaintiff admits that

5  defendants "changed the priority of payments and paid [the escrow account] first," but he does

6  not (and based on his current complaint and attachments, likely cannot) allege that he was not

7  behind in his payments at that time.  Thus, it appears that defendants had discretion to post his

8  past-due payments before applying them to the principal.  Accordingly, plaintiff has not alleged

9  any facts to show that defendants breached that portion of the Deed of Trust.

10                          c.  Plaintiff Has Not Performed

11        Finally, a cause of action for breach of contract requires that the plaintiff has performed

12  his contractual duties or was excused from nonperformance.  *Reece*, 89 Cal. App. 4th at 745.  It

13  appears from the Deed of Trust that plaintiff did not perform his contractual duties.  For

14  example, the Deed of Trust provides as follows:

15        5.  Borrower shall keep the improvements now existing or hereafter erected on the
          Property insured against loss by fire, hazards included within the term 'extended
16        coverage,' and any other hazards, including, but not limited to, earthquakes and
          floods, for which Lender requires insurance.

17                                      ***

18        If Borrower fails to maintain any of the coverage described above, Lender may
19        obtain insurance coverage, at Lender's option and Borrower's expense.

20  SAC, Ex. A.

21        Notwithstanding these provisions, plaintiff admits in the second amended complaint that

22  he did not have insurance in May 2010 when defendant BANA requested a copy of his policy.

23  SAC ¶ 23.  Plaintiff also admits that, after repeated attempts to obtain insurance, he was unable

24  to do so for approximately seven months because of "pier post foundation, fireplace/woodstove,

25  ////

26  ////

1    age of house, wildland fire zone, over 5 acres, etc." problems.[21]  *Id.* ¶ 24.  Based on these

2    allegations, it appears that plaintiff failed to perform under the terms of the Deed of Trust

3    because he did not maintain property insurance.  As a result of this failure, plaintiff has not and

4    cannot allege a breach of contract claim against BANA/BAC.  Accordingly, plaintiff's breach of

5    contract claims against all the moving defendants must be dismissed without leave to amend.

6                    5.  <u>Accounting</u>

7        Plaintiff also seeks an accounting from BANA, BAC, FHLMC, and Bank of America

8    Mortgage, alleging that "all payments since 2001 remain in dispute," he has actually overpaid

9    defendants and is entitled to a refund, and he has asked for, but has not received, an accounting

10   between December 2010 and July 2011.  SAC ¶ 133.  Defendants BANA, BAC, and FHLMC

11   move to dismiss plaintiff's claim, arguing that plaintiff has not pled the elements required for an

12   equitable action of an accounting because plaintiff has not alleged that he is entitled to an

13   accounting to determine what sums the defendants owe to him.  Dckt. No. 96 at 28.

14       Under California law, an accounting is generally an equitable remedy.  *Batt v. City &*

15   *County of San Francisco*, 155 Cal. App. 4th 65, 82 (Ct. App. 2007).  An accounting may be

16   sought to compel a defendant to account to a plaintiff for money where (1) a fiduciary duty

17   exists; or (2) where no fiduciary duty exists, "the accounts are so complicated that an ordinary

18   legal action demanding a fixed sum is impracticable."  *Civic W. Corp. v. Zila Indus., Inc.*, 66

19   Cal. App. 3d 1, 14 (1977) ("A suit for an accounting will not lie where it appears from the

20   complaint that none is necessary or that there is an adequate remedy at law.") (quoting *St. James*

21   *Church v. Super. Ct.*, 135 Cal. App. 2d 352, 359 (1955)); *see also* 5 Witkin, *Cal. Procedure*,

22   Pleading § 819, p. 236 (4th ed.1 997).  Here, plaintiff has not alleged that the accounts are so

23   complicated that an ordinary legal action demanding a fixed sum is impracticable.  Instead,

24   plaintiff has attached to his second amended complaint the Notice of Trustee's Sale, which lists

25

26       [21] It also appears that plaintiff failed to maintain property insurance for several years prior
     to defendant's request for proof of insurance.  SAC ¶ 23.

                                                 43

the total unpaid balance of $122,801.92.  SAC, Ex. P.  Furthermore, it appears that plaintiff

continued to receive statements, or was already in possession of information, related to the

outstanding balance between December 2010 until he received the Notice of Trustee's Sale.

SAC ¶¶ 33, 49, 65, 71, 76, 84, 89, 100-105, 109-120, 173-174, Exs. B, H-L, N-P.  As such,

plaintiff has failed to allege that he cannot calculate the amount of arrears without an accounting.

He simply rejects the underlying premise that he was required under the contract to, among other

things, maintain insurance on the property.  Although plaintiff has alleged that he "believes that

he has actually overpaid defendants and is entitled to a refund on his mortgage account," it

appears that the amount of funds plaintiff has actually paid to defendants is readily available to

plaintiff – in other words, he would be the one to account for those monies.

Finally, the amounts at issue are monies plaintiff owes to defendants BANA and BAC

under the mortgage and not amounts defendants may owe plaintiff.  "Plaintiff, as the party owing

money, not the party owed money, has no right to seek an accounting."  *Hernandez v. First Am.

Loanstar Trustee Servs.*, 2010 WL 1445192, *5 (S.D. Cal. Apr. 12, 2010); *Nguyen v. LaSalle

Bank Nat'l Ass'n*, 2009 WL 3297269, *10–11 (C.D. Cal. Oct. 13, 2009).  Therefore, plaintiff's

accounting claim against BANA, BAC, and FHLMC should be dismissed with leave to amend.

### 6.  Tort of Conversion

Plaintiff's second amended complaint alleges a cause of action for conversion against

defendants BANA, BAC, Balboa, Bank of America Mortgage, and FHLMC for improperly

collecting, keeping, and later refusing to return, surplus funds and other unknown fees, costs, and

expenses between July 2010 and November 2011.  SAC ¶ 136.  Defendants BANA, BAC,

Balboa, and FHLMC move to dismiss plaintiff's claim, arguing that plaintiff has failed to allege

a claim for conversion of the payments made to BANA under the terms of the Deed of Trust

because plaintiff's claims arise under the terms of the Deed of Trust, which does not give rise to

the independent tort of conversion.  Dckt. No. 96 at 29.

////

Under California law, "conversion is the wrongful exercise of dominion over another's personal property in denial of or inconsistent with the rights in the property." *In re Emery*, 317 F.3d 1064, 1069 (9th Cir. 2003).  To adequately plead a claim of conversion the plaintiff must show: (1) a present right to possess the property, (2) the defendant's conversion by a wrongful act or disposition of property, and (3) damages.  *Miranda v. Field Asset Services*, 2013 WL 124047 (S.D. Cal. 2013) (citing *Hernandez v. Lopez,* 180 Cal. App. 4th 932, 939-40 (2009)).  Plaintiff can show the defendant assumed control over the property either by preventing the plaintiff from taking possession, or by showing the defendant applied the property to his own use.  *See Messerall v. Fulwider*, 199 Cal. App. 3d 1324, 1329 (1988).  The act of moving property from one place to another "without an assertion of ownership or preventing the owner from exercising all rights of ownership" is not enough to constitute conversion.  *Itano v. Colonial Yacht Anchorage*, 267 Cal. App. 2d 84, 89 (1968).

Here, because the court has already found that plaintiff failed to allege a breach of contract claim, plaintiff has also failed to allege that defendants wrongfully exercised control over plaintiff's funds by charging plaintiff's escrow accounts for insurance coverage above the principal loan balance.  Accordingly, plaintiff's claim for conversion against BANA, BAC, Balboa, and FHLMC must be dismissed.  Plaintiff should be granted leave to amend his claims only if he can cure these deficiencies.

### 7. Wrongful Foreclosure

Plaintiff's second amended complaint alleges a cause of action for wrongful foreclosure against all defendants.  SAC ¶¶ 140-149.  Plaintiff alleges QLS did not provide him with proper notice of the Notice of Sale and Default and that none of the defendants posted the Notice as is required by California Civil Code section 2924(b).  Plaintiff goes on to allege that he suffered damages as a result of defendants' failure to provide appropriate notice.  SAC ¶¶ 150-156.  Regardless of these claims, defendants BANA, BAC, FHLMC, and Balboa move to dismiss, arguing that plaintiff has not alleged tender and that any failure to perform the terms of the

45

1    mortgage defeats his wrongful foreclosure claim.  Dckt. No. 96 at 30.   Defendant QLS also

2    moves to dismiss, arguing that the claim is premature and that a trustee cannot incur liability for

3    a good faith error resulting from reliance on information it received from the beneficiary of a

4    deed of trust, secured obligation, or mortgage.  Dckt. No. 93-1 at 18.

5    　　　　Indeed, plaintiff's claim for wrongful foreclosure is premature.  An action for wrongful

6    foreclosure may only be maintained "if the property was fraudulently or illegally sold under a

7    power of sale contained in a mortgage or deed of trust."  *Rosenfield v. JPMorgan Chase Bank,*

8    *N.A.*, 732 F. Supp. 2d 952, 961 (N.D. Cal. 2010) (*citing Munger v. Moore*, 11 Cal. App. 3d 1, 7

9    (1970)).  However, a wrongful foreclosure claim is premature prior to the foreclosure sale.

10   *Bogdan v. Countrywide Home Loans*, 2010 WL 1241540, at *8 (E.D. Cal. Mar. 26, 2010)

11   (quoting *Vega v. JP Morgan Chase Bank, N.A.*, 654 F. Supp. 2d 1104, 1113 (E.D. Cal. 2009)

12   ("[A] purported wrongful foreclosure claim is premature given there has been no foreclosure of

13   the property.  The wrongful foreclosure claim fails to allege a cognizable cause of action in

14   absence of a foreclosure sale.")).  Unless the foreclosure sale has already taken place, plaintiff's

15   claim for wrongful foreclosure is premature even to the extent there are, theoretically, grounds

16   upon which the claim could be predicated.  Plaintiff's second amended complaint does not allege

17   that his property has been sold in a foreclosure action.  As such, wrongful foreclosure cannot

18   have occurred.  Plaintiff's wrongful foreclosure claim must be dismissed without leave to amend.

19   　　　　　　　　　8.  Violation of the Covenant of Good Faith and Fair Dealing

20   　　　　Plaintiff's second amended complaint alleges defendants BANA, BAC, Balboa, Bank of

21   America Mortgage, FHLMC, and QLS violated the covenant of good faith and faith dealing

22   from the outset when they "entered into the mortgage and accepted payments from plaintiff,"

23   SAC ¶ 152, and when they "acted in bad faith by initiating and continuing foreclosure

24   proceedings."  *Id.* ¶ 154.  BANA, BAC, Balboa, and FHLMC move to dismiss, arguing that no

25   fiduciary relationship exists between these defendants and plaintiff, and that plaintiff has failed

26   to allege any action taken by defendant to "frustrate [plaintiff's] ability to obtain the benefits of

1    the original mortgage loan." Dckt. No. 96 at 31.  QLS moves to dismiss, arguing that without an

2    underlying contract between itself and plaintiff, QLS could not have breached the covenant of

3    good faith and fair dealing.  Dckt. No. 93-1 at 19.

4            Under California law, every contract carries with it an implied covenant of good faith and

5    fair dealing.  *Carma Developers, Inc. v. Marathon Development Cal., Inc.*, 2 Cal. 4th 342, 371

6    (1992).  This duty requires contracting parties to exercise discretion given to them under the

7    contract in a way consistent with the parties' expectations at the time of contracting.  *Id.* at

8    372–73.  A party breaches this duty when it acts in a way that deprives another contracting party

9    of benefits conferred by the contract.  Therefore, "[t]he prerequisite for any action for breach of

10   the implied covenant of good faith and fair dealing is the existence of a contractual relationship

11   between the parties."  *Smith v. City & County of San Francisco*, 225 Cal. App. 3d 38, 49 (1990).

12   Plaintiff's second amended complaint does not (and cannot) allege that a contract exists between

13   plaintiff and defendants Balboa, FHLMC, or QLS. Accordingly, as to those defendants,

14   plaintiff's claims must be dismissed without leave to amend.

15           Plaintiff's claims against defendants BANA and BAC also fail.  Plaintiff has not alleged

16   that BANA or BAC have deprived him of the benefits conferred by the contract between them.

17   The Deed of Trust apparently allows defendants BANA and BAC to open and maintain an

18   escrow account for insurance premiums and to require plaintiff to insure the property against loss

19   by fire, hazards, etc. SAC, Ex. A.  As such, plaintiff has failed to allege how defendants acted in

20   a way that was inconsistent with the parties' expectations at the time of contracting when

21   defendants "accepted payments from plaintiff . . . and initiated and continued foreclosure

22   proceedings against him when he did not pay his mortgage."  SAC ¶¶ 152, 154.

23           Regardless, the statute of limitations for a claim of breach of the implied covenant of

24   good faith and fair dealing under California law is four years.  Cal. Civ. Proc. Code § 337;  *see*

25   *also Wilkerson v. World Savings and Loan Ass'n*, 2009 WL 2777770, at *3 (E.D. Cal. Aug. 27,

26   2009).  As noted above, the loan at issue closed in January 2001, yet plaintiff did not file this

47

1   action until November 7, 2011, which was more than four years later.  Additionally, plaintiff has

2   not alleged any facts that would support equitable tolling.  Therefore, this cause of action is time

3   barred.  Accordingly, plaintiff's claim against BANA and BAC for breach of the covenant of

4   good faith and fair dealing must be dismissed.  Plaintiff should be granted leave to amend this

5   claim against BANA and BAC only if he can cure these deficiencies.

6            9.   Negligence

7        Plaintiff's second amended complaint alleges a claim for negligence against all of the

8   defendants.  SAC ¶¶ 157-162; *see also id.* ¶¶ 80-97.  Plaintiff alleges BAC negligently serviced

9   plaintiff's loan, *id.* ¶ 160, and BAC, BANA, and Balboa negligently opened, maintained, and

10  later refused to close the escrow account.  *Id.* ¶ 161.  Plaintiff also alleges FHLMC negligently

11  failed to properly supervise and monitor BANA and BAC.  *Id.* ¶ 172.  Plaintiff also alleges that

12  the misrepresentations discussed above in connection with plaintiff's fraud claims were

13  negligently made.  *Id.* ¶¶ 80-97.  Defendants BANA, BAC, FHLMC, and Balboa move to

14  dismiss plaintiff's negligence claims, arguing they do not owe plaintiff a legal duty.[22]

15       Under California law, the elements of a claim for negligence are that: (1) defendant had a

16  legal duty to plaintiff, (2) defendant breached this duty, (3) defendant was the proximate and

17  legal cause of plaintiff's injury, and (4) plaintiff suffered damage.  *See* Cal. Civ. Code § 1714;

18  *Ladd v. County of San Mateo*, 911 P.2d 496, 498 (1996).  Plaintiff's second amended complaint

19  fails to allege any facts establishing that BANA, BAC, Balboa, or FHLMC owed plaintiff a duty

20  of care.  *See Nymark v. Heart Fed. S. & L. Assn.*, 231 Cal. App. 3d 1089, 1096 (1991) ("[A]s a

21  general rule, a financial institution owes no duty of care to a borrower when the institution's

22  ───────────────

23      [22] Plaintiff alleges QLS negligently failed to follow the non-judicial foreclosure
    proceedings outlined in California Civil Code section 2924; incorrectly stated the amounts owed
24  in the Notice of Default and Sale; failed to maintain a neutral fiduciary position; failed to
    accurately prepare and record the Notice of Default; failed to post notice of the default; failed to
25  investigate plaintiff's California Civil Code section 1500 account; failed to postpone the sale;
    and failed to communicate with plaintiff.  *Id.* ¶ 159.  However, QLS did not move to dismiss any
26  of plaintiff's negligence claims.

1    involvement in the loan transaction does not exceed the scope of its conventional role as a mere

2    lender of money.").  Therefore, plaintiff's negligence claim against those defendants should be

3    dismissed with leave to amend.

4                       10.    <u>Intentional Infliction of Emotional Distress</u>

5            Plaintiff's second amended complaint also alleges a claim against all defendants for

6    intentional infliction of emotional distress.  SAC ¶¶ 163-166.  According to plaintiff, defendants

7    "failed to correct mistakes beginning with the August 2010 letter requesting the escrow account

8    be closed and continuing with numerous acts of all parties leading to foreclosure."  *Id*. ¶ 165.

9    This behavior, plaintiff alleges, "produced emotional (and physical) distress to plaintiff."  *Id.*

10   Defendants BANA, BAC, FHLMC, Balboa, and QLS move to dismiss plaintiff's claims, arguing

11   plaintiff does not identify any extreme and outrageous conduct by defendants in support of his

12   claim.  Dckt. Nos. 96 at 32, 93-1 at 20.

13           "In order to establish a claim for intentional infliction of emotional distress under

14   California law, [plaintiff is] required to show (1) that the defendant's conduct was outrageous,

15   (2) that the defendant intended to cause or recklessly disregarded the probability of causing

16   emotional distress, and (3) that plaintiff's severe emotional suffering was (4) actually and

17   proximately caused by defendant's conduct."  *Austin v. Terhune*, 367 F.3d 1167, 1172 (9th Cir.

18   2004).  "Only conduct 'exceeding all bounds usually tolerated by a decent society, of a nature

19   which is especially calculated to cause, and does cause, mental distress' is actionable."  *Brooks*

20   *v. United States*, 29 F. Supp. 2d 613, 617–18 (N.D. Cal. 1998).

21           Plaintiff's conclusory statement that "defendants intentionally failed to correct their

22   mistakes, errors and unlawful actions" fails to identify any outrageous or extreme conduct.

23   Plaintiff admits that he was unable to obtain property insurance, SAC ¶ 24, and the Deed of

24   Trust clearly provides that the lender can insure the property on plaintiff's behalf if plaintiff fails

25   to insure the property.  SAC, Ex. A.  The Deed of Trust also allows defendants to open and

26   maintain an escrow account to provide for payments related to the property insurance.  *Id.*  As

49

1   such, plaintiff has failed to allege any facts that would suggest these actions were extreme or

2   outrageous.

3         The Deed of Trust also allows defendant BANA to apply payments "in the order in which

4   [the amount] became due . . . any remaining amounts shall be applied first to late charges, second

5   to any other amounts due . . . and then to reduce the principal balance of the Note." *Id.* Plaintiff

6   admits that defendants "changed the priority of payments and paid [the escrow account] first,"

7   but he does not (and likely cannot) allege that he was not behind in his payments at that time.

8   Regardless, it is unclear how this conduct is extreme or outrageous.

9         Finally, plaintiff bases his intentional infliction of emotional distress claim on the

10  allegation that the defendants' actions "led to the foreclosure." SAC ¶ 165. However, courts

11  have found as a matter of law that foreclosing on property does not amount to the "outrageous

12  conduct" required to support a claim for intentional infliction of emotional distress. *Davenport*

13  *v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 884 (N.D. Cal. 2010) (holding that the act of

14  foreclosing on a home "falls shy of 'outrageous,' however wrenching the effects on the

15  borrower"); *Mehta v. Wells Fargo Bank, N.A.*, 737 F. Supp. 2d 1185, 1204 (S.D. Cal. 2010)

16  ("The fact that one of Defendant[-lenders'] employees allegedly stated that the sale would not

17  occur but the house was sold anyway is not outrageous as that word is used in this context.");

18  *Harvey G. Ottovich Revocable Living Trust Dated May 12, 2006 v. Wash. Mut., Inc.*, 2010 WL

19  3769459, at *4-5, 13 (N.D. Cal. Sept. 22, 2010) (holding that the act of foreclosing on a home by

20  itself does not constitute outrageous conduct for an intentional infliction of emotional distress

21  claim). Therefore, plaintiff's intentional infliction of emotional distress claim against BANA,

22  BAC, FHLMC, Balboa, and QLS should be dismissed with leave to amend.

23        11.  <u>Violation of California Business & Professions Code §§ 17200 *et seq*.</u>

24        Finally, plaintiff's second amended complaint attempts to allege a violation of California

25  Business and Professions Code section 17200 against defendants BANA, BAC, Bank of America

26  Mortgage, Balboa, QLS, and Home Retention Group, claiming they used "illegal, unfair, and

50

1   unconscionable methods on numerous occasions . . . to give them an unlawful, unfair and

2   improper advantage, and to improperly take advantage of plaintiff."  SAC ¶ 168.

3         Specifically, as to BANA and BAC, plaintiff alleges these defendants engaged in

4   unlawful and unfair acts when they opened, maintained, and refused to close the escrow account;

5   failed to respond to QWRs (including, not providing plaintiff with payoff figures or an

6   accounting); failed to provide plaintiff with a copy of the LPP; held plaintiff's payments and

7   failed to credit them; accelerated plaintiff's debt; violated TILA; violated the FDCPA and

8   Rosenthal Act; failed to postpone the trustee's sale; committed fraud (including bank and wire

9   fraud) and unlawful conversion; breached the terms of the Deed of Trust and contract; conducted

10  unauthorized fees, costs, and expenses; and failed to follow Freddie Mac guidelines. *Id.* ¶ 171.

11        As to Balboa, plaintiff alleges this defendant engaged in unlawful and unfair acts when it

12  participated in managing the escrow account; refused to close the account, refund plaintiff's

13  money, and repeated the mistakes regarding plaintiff's homeowner's policy; refused to provide a

14  copy of the LPP, handled plaintiff's LPP negligently; and conspired with other defendants.

15        As to QLS, plaintiff alleges this defendant engaged in unlawful and unfair acts when it

16  provided "false copies" of a notice of sale; listed the wrong APN on the notice of default; failed

17  to provide payoff figures; continued to foreclose and refused to postpone the sale; failed to

18  maintain a neutral relationship with the beneficiary and trustor; conducted negligent foreclosure

19  duties; and gave plaintiff the "run around." *Id.* ¶ 173.

20        Defendants BANA, BAC, and Balboa move to dismiss, arguing that plaintiff failed to

21  allege damages and to establish a predicate wrong.  Dckt. No. 96 at 34.  Defendant QLS moves

22  to dismiss, arguing that plaintiff's allegations are conclusory, generally vague, and that he fails

23  to state a valid cause of action.  Dckt. No. 93-1 at 21.

24        California's Unfair Competition Law, section 17200, prohibits any "unlawful, unfair or

25  fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  Section 17200

26  incorporates other laws and treats violations of those laws as unlawful business practices

51

independently actionable under state law.  *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d

1042, 1048 (9th Cir. 2000).  Violation of almost any federal, state or local law may serve as the

basis for a section 17200 claim.  *Saunders v. Super. Ct.*, 27 Cal. App. 4th 832, 838–39 (1994).

In addition, a business practice may be "unfair or fraudulent in violation of [section 17200] even

if the practice does not violate any law."  *Olszewski v. Scripps Health*, 30 Cal. 4th 798, 827

(2003).

   Here, plaintiff alleges that defendants engaged in unlawful business practices under

section 17200.  He contends that defendants' conduct violated numerous laws.  However, as

discussed above, the only allegations sufficient to state a claim that defendants violated a

statutory provision are plaintiff's allegations that BANA and BAC violated TILA, Regulation Z,

12 C.F.R. § 226.36(c)(iii).  Additionally, the court has recommended that BANA, BAC and

FHLMC's motion to dismiss plaintiff's California Civil Code section 2954 claim be denied.

Thus, to the extent plaintiff's section 17200 claim is based on these alleged violations, BANA,

BAC, and FHLMC's  motion to dismiss the claim should be denied.  However, with regard to

plaintiff's other allegations, plaintiff's conclusory section 17200 claims must be dismissed.

Plaintiff should be granted leave to amend only if he can cure these deficiencies.

IV.   LEAVE TO AMEND

   If these recommendations are adopted in full, plaintiff will be granted leave to file a third

amended complaint to the extent provided herein.  In doing so, plaintiff must take heed of the

analysis in these findings and recommendations and neither include causes of action nor name

defendants in a manner inconsistent with that analysis.  He also shall not add any new claims or

new defendants in his third amended complaint.

   Plaintiff is cautioned that the court cannot refer to a prior pleading in order to make an

amended complaint complete.  Local Rule 220 requires that any amended complaint be complete

in itself without reference to prior pleadings.  Any third amended complaint will supersede the

original, the amended complaint, and the second amended complaint.  *See Loux v. Rhay*, 375

F.2d 55, 57 (9th Cir. 1967).  Thus, in a third amended complaint, just as if it were the initial

complaint filed in the case, each defendant must be listed in the caption and identified in the

body of the complaint, and each claim and the involvement of each defendant must be

sufficiently alleged.  Plaintiff's third amended complaint must include concise but complete

factual allegations describing the conduct and events which underlie his claims.

The third amended complaint must bear the docket number assigned to this case and must

be labeled "Third Amended Complaint."  If plaintiff fails to timely file a third amended

complaint, the second amended complaint will remain the operative complaint, and the only

claims that will remain are the limited claims that survived defendants' dismissal motions.

V.      MOTION TO RECORD LIS PENDENS

Plaintiff has also filed a renewed ex parte motion for approval of the filing a notice of lis

pendens.  Dckt. No. 121.  After plaintiff's first amended complaint was dismissed with leave to

amend, the court denied plaintiff's previous application because there was "no pending cause of

action which would, if meritorious, affect title to or the right to possession of specific real

property" and because the court had "ordered that the previously issued temporary restraining

order preventing a foreclosure sale remain in place."  Dckt. No. 65 at 19-20.  That circumstance

has not changed.

"A lis pendens is a recorded document giving constructive notice that an action has been

filed affecting right or title to possession of the real property described in the notice."  *Pedersen*

*v. Greenpoint Mortgage Funding, Inc*., 2011 WL 3818560, at *22 (E.D. Cal. Aug. 29, 2011).

California Code of Civil Procedure section 405.20 provides that a party to an action who asserts

a real property claim may record a notice of pendency of action in the office of the recorder of

each county in which all or part of the real property is situated.  However, under California Code

of Civil Procedure § 405.21, "[t]he only way an individual in pro per can record a notice of

////

////

53

pendency of action is with the approval of a judge." *Wolf v. Wells Fargo Bank, N.A.*, 2011 WL

4595012, at *2 (N.D. Cal. Oct. 4, 2011); *see also Orcilla v. Bank of America, N.A.*, 2011 WL

1113549, at *1 (N.D. Cal. Mar. 25, 2011).

Pursuant to California Code of Civil Procedure section 405.4, a "'[r]eal property claim'

means the cause or causes of action in a pleading which would, if meritorious, affect (a) title to,

or the right to possession of, specific real property or (b) the use of an easement identified in the

pleading . . . " Here, as noted above, with the exception of plaintiff's TILA, Regulation Z claim

against BANA and BAC and his claim under California Civil Code section 2954 claim against

BANA, BAC, and FHLMC, plaintiff's second amended complaint should be dismissed with

leave to amend. Accordingly, there is currently no cause of action in a pleading which would, if

meritorious, affect title to, or the right to possession of, specific real property. Additionally,

because plaintiff will be given leave to amend, the temporary restraining order remains in effect.

*See* Dckt. No. 65 at 22 ("The temporary restraining order previously granted by the assigned

District Judge will remain in effect, absent further order of the court, until plaintiff has filed an

amended complaint found to state a cognizable claim or this matter is dismissed.").

Therefore, plaintiff's renewed ex parte motion for approval of filing a notice of lis

pendens will be denied without prejudice. *See Austero v. Aurora Loan Services, Inc.*, 2011 WL

1585530, at *13 (N.D. Cal. Apr. 27, 2011) ("Because the Court has dismissed Plaintiffs' case,

the Court cannot determine whether Plaintiffs will be able to satisfy the requirements for lis

pendens, i.e., the probable validity of the claims. The Plaintiffs' lis pendens application is

denied without prejudice.").

VI.   ORDER TO SHOW CAUSE REGARDING SERVICE

Because it is unclear from the docket whether defendants Bank of America Mortgage and

Home Retention Group have been timely and properly served with the second amended

complaint, plaintiff is ordered to show cause why those defendants should not be dismissed for

failure to effect service of process within the time prescribed by Rule 4(m) and/or for failure to

1  comply with the Federal Rules of Civil Procedure and this court's previous orders.[23]  *See* Dckt.

2  Nos. 14, 65; Fed. R. Civ. P. 4(m); *see also* Fed. R. Civ. P. 4(l)(1) (requiring that proof of service

3  be made to the court); E.D. Cal. L.R. 210(b) (same); E.D. Cal. L.R. 110 ("Failure of counsel or

4  of a party to comply with these Rules or with any order of the Court may be grounds for

5  imposition by the Court of any and all sanctions authorized by statute or Rule or within the

6  inherent power of the Court."); E.D. Cal. L.R. 183 ("Any individual representing himself or

7  herself without an attorney is bound by the Federal Rules of Civil or Criminal Procedure and by

8  these Local Rules."); *Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995) ("Failure to follow a

9  district court's local rules is a proper ground for dismissal.").  Failure to timely comply with this

10  order may result in sanctions, including a recommendation that defendants Bank of America

11  Mortgage and Home Retention Group, and/or this action, be dismissed for lack of prosecution,

12  for failure to follow this court's orders and Local Rules, and/or for failure to effect service of

13  process within the time prescribed by Rule 4(m).

14      If plaintiff elects to file a third amended complaint and does not name Bank of America

15  Mortgage or Home Retention Group, he need not respond to this order to show cause.  However,

16  if plaintiff elects to proceed with the limited claims that remain in the second amended

17  complaint, he must respond as provided herein.  And, if one or both of the unserved defendants

18  is named in the third amended complaint, in addition to responding to the order to show cause,

19  plaintiff shall timely serve those defendants and file proof of such service as provided in the

20

21      [23] Although Home Retention Group was served with plaintiff's first amended complaint,
Dckt. No. 28, and the clerk previously entered that defendant's default, Dckt. No. 35, because
22  the second amended complaint asserts new claims and new allegations against that defendant,
plaintiff was required to serve that defendant with a copy of the second amended complaint.  *See*
23  The Rutter Group, *Cal. Prac. Guide Fed. Civ. Pro. Before Trial*, § 8:1437 ("An amended
complaint need not be served on defendants whose default has been entered for failure to
24  respond to the original complaint . . . *unless* the amendment asserts new or additional claims for
relief *against those defendants*. . . . If new or additional claims for relief are sought against the
25  party in default, the amendment 'opens' the default and new service is required under Rule 4."
(citing Fed. R. Civ. P. 5(a)(2); *Blair v. City of Worcester*, 522 F.3d 105, 109 (1st Cir. 2008);
26  *D'Angelo v. Potter*, 221 F.R.D. 289, 293 (D. Mass. 2004)).

1  Federal Rules of Civil Procedure and this court's Local Rules.

2  VII.   <u>CONCLUSION</u>

3      Accordingly, IT IS HEREBY ORDERED that:

4      1.  Within forty-five days from the date of any order adopting or declining to adopt these

5  findings and recommendations, plaintiff shall show cause, in writing, why defendants Bank of

6  America Mortgage and Home Retention Group should not be dismissed for failure to effect

7  service of process within the time prescribed by Rule 4(m) and/or for failure to comply with the

8  Federal Rules of Civil Procedure and this court's previous orders.  If plaintiff elects to file a third

9  amended complaint and does not name Bank of America Mortgage or Home Retention Group,

10  he need not respond to this order to show cause.  However, if plaintiff elects to proceed with the

11  limited claims that remain in the second amended complaint, he must respond as provided

12  herein.  And, if one or both of the unserved defendants is named in the third amended complaint,

13  in addition to responding to the order to show cause, plaintiff shall timely serve those defendants

14  and file proof of such service as provided in the Federal Rules of Civil Procedure and this court's

15  Local Rules.

16      2.  Failure of plaintiff to comply with this order may result in a recommendation that

17  Bank of America Mortgage and Home Retention Group and/or this action be dismissed for

18  failure to follow court orders, for failure to effect service of process within the time prescribed

19  by Rule 4(m), and/or for lack of prosecution under Rule 41(b).

20      3.  Plaintiff's renewed ex parte motion for approval of filing lis pendens, Dckt. No. 121,

21  is denied without prejudice.

22      IT IS FURTHER RECOMMENDED that:

23      1.  Defendants' motions to dismiss, Dckt. Nos. 93 and 96, be granted in part as provided

24  herein.

25  ////

26  ////

1     2.  Plaintiff be granted forty-five days from the date of any order adopting these findings
2  and recommendations to file a third amended complaint as provided herein.
3          These findings and recommendations are submitted to the United States District Judge
4   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days
5  after being served with these findings and recommendations, any party may file written
6  objections with the court and serve a copy on all parties.  Such a document should be captioned
7  "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections
8  within the specified time may waive the right to appeal the District Court's order. *Turner v.*
9  *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).
10  DATED:  March 26, 2013.

                                    EDMUND F. BRENNAN
                                    UNITED STATES MAGISTRATE JUDGE