1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         EASTERN DISTRICT OF CALIFORNIA

10

11    CHRISTOPHER D. SCHNEIDER,        No. CIV. S-11-2953 LKK/DAD PS

12              Plaintiff,

13         v.                          **ORDER**

14    BANK OF AMERICA N.A., BANK OF
      AMERICA MORTGAGE, BANK OF
15    AMERICA HOME LOANS SERVICING
      LP, BALBOA INSURANCE CO.,
16    HOME RETENTION GROUP, QUALITY
      LOAN SERVICE CORP., CLIFF
17    COLER, DOES 1-40,

18              Defendants.

19

20        This is a mortgage foreclosure case.  Plaintiff, proceeding

21    pro se, alleges fifteen (15) federal and state causes of action

22    relating to the foreclosure of his home.  Defendants' motions to

23    dismiss were heard by a United States Magistrate Judge pursuant

24    to E.D. Cal. R. ("Local Rule") 302(c)(21).

25        On March 26, 2013, the Magistrate Judge filed extensive

26    Findings and Recommendations herein which were served on all

27    parties and which contained notice to all parties that any

28    objections to the Findings and Recommendations were to be filed

                                     1

within fourteen days. Plaintiff timely has filed objections to the Findings and Recommendations, and defendants have timely filed a response to plaintiff's objections.

In accordance with the provisions of 28 U.S.C. 636(b)(1)(c) and Local Rule 304, this court has conducted a _de novo_ review of this case. Having carefully reviewed the entire file, this court finds the Findings and Recommendations to be supported by the record and by the Magistrate Judge's analysis, except as set forth below.

Defendants Bank of American, NA ("BANA"), BAC Home Loans Servicing LP ("BAC Home Loans") and Balboa Insurance Co. ("Balboa"), assert that the 45-page complaint "should be dismissed in its entirety, with prejudice," because it is not a "short and plain" statement of the claims, and is confusing as to which claims are asserted against which defendants.[1] ECF No. 96 at 14-15. It is within this court's discretion to dismiss an incomprehensible or over-long complaint which no reasonable defendant could comprehend or know how to respond to. See, e.g., McHenry v. Renne, 84 F.3d 1172, 1179 (9th Cir. 1996).

It is true that plaintiff's _pro se_ Complaint is a bit of a mess.[2] However, the Complaint does not deserve a Rule 8

---

[1] The motions to dismiss were filed by defendants BANA, BAC Home Loans and Balboa, in one motion, and by Quality Loan Service Corp. ("QLS"), in another. No dismissal motions were filed by defendants Bank of America Mortgage ("BAC Mortgage"), Home Retention Group ("HRG") or "FHLMC LBAC 173 a.k.a. Federal Home Loan Mortgage Corp." ("FLHMC").

[2] For example, the Complaint has an unfortunate tendency to lump all defendants together. However, it is possible to disentangle even these allegations, in most cases. For example, plaintiff typically alleges that Defendant A engaged in unlawful conduct,

2

dismissal, as the court is able to disentangle much of what plaintiff is alleging. The court also notes that pro se plaintiff here is essentially caught in the legal vise created by the defendants' complaining that the Complaint is at once too specific for Rule 8, while also being not specific enough for Rules 9(b) and 12(b)(6).

## I.    CLAIM ONE - RESPA

### A.    12 U.S.C. § 2605(e) and 24 C.F.R. § 3500.21.

Plaintiff alleges that defendants BANA and BAC Home Loans violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e), and 24 C.F.R. § 3500.21, by failing to respond to his Qualified Written Requests ("QWR"), that is, letters he wrote to defendant loan servicers regarding the servicing of his loan.[3]

Specifically, **(1)** plaintiff alleges that on August 17, 2010, he sent a QWR to defendant BAC Home Loans Servicing LP ("BAC Home Loans"), the loan servicer at the time. The QWR is attached as Exhibit C to the Complaint. See Second Amended Complaint (ECF No. 91) ("Complaint") ¶ 27; Exhibit C to the Complaint (ECF No. 91-1) at 31.[4] BAC Home Loans "willfully ignored" the QWR and

---

and then alleges that Defendants A, B, C and D are liable without any allegation that would make Defendants B, C and D liable for A's violation. In that case, the court considers plaintiff to be alleging a claim only against Defendant A.

[3] Defendants BANA and BAC Home Loans assert that on July 1, 2011, BAC Home Loans merged into and became a part of BANA. ECF No. 96 at 1 n.1.

[4] The document is attached to the Complaint as Exhibit C, and therefore is a part of the Complaint for all purposes. See Fed. R. Civ. P. 10(c).

"did not respond."[5]  Complaint ¶ 28.  **(2)** Plaintiff alleges that

on April 15, 2011, he sent another QWR to BAC Home Loans.  The

QWR is attached as Exhibit D to the Complaint.  Defendant did not

respond to this QWR in a timely manner.[6]  <u>See</u> Complaint ¶ 46.

**(3)** Plaintiff alleges that on July 24, 2011, he sent a third QWR,

this time to Bank of America, N.A. ("BANA"), who had become the

servicer on the loan.  This QWR is attached as Exhibit Q to the

Complaint.  Complaint ¶¶ 43 & 46; Exhibit Q to the Complaint (ECF

No. 91-1) at 33.  BANA did not timely respond to this QWR.

Complaint ¶ 43.[7]

     The Complaint goes on to allege that defendants' conduct

"caused plaintiff actual damages and injuries … including in part

a detriment to plaintiff's ability to sell or refinance his

home."  Complaint ¶ 46 (emphasis in text).[8]

---

[5] Plaintiff alleges that several other defendants also did not
respond.  However, plaintiff does not allege that he sent a QWR
to them, nor does he allege any basis that would impose an obligation for
those defendants to respond to a QWR that was not sent to them.

[6] The Complaint alleges that defendants failed to respond timely
to any of the QWR's plaintiff sent between August 2010 and
October 2011.  Complaint ¶ 46.

[7] Plaintiff further alleges that between August 2010 and October
2011, he sent BAC Home Loans and BANA "over 10 specific QWR's,"
none of which were responded to in a timely manner.  Complaint
¶ 46.  Plaintiff did not attach any of these other QWRs to the
Complaint, nor does he allege when he sent them, nor to which
defendants, nor anything about the substance of the
communications, other than that they were QWRs.

[8] Plaintiff also alleged that defendants' conduct caused him to
suffer "extreme emotional and physical stress and anxiety."
Complaint ¶ 44.

1    Defendants BANA and BAC Home Loans move to dismiss.[9]  They

2    assert that, "save for one letter," plaintiff "has not alleged

3    the dates on which he sent each of his alleged QWR's."  BANA

4    Motion To Dismiss ("BANA Motion") (ECF No. 96) at 17.  There are

5    two problems with this assertion.

6        First, defendant does not address even that "one letter" –

7    the July 24, 2011 letter.  See BANA Motion at 17 ("Plaintiff now

8    alleges the date of only one such alleged letter, July 24, 2011,

9    that he claims constitutes a QWR to the bank").  RESPA does not

10   require that a loan servicer fail to respond to a slew of QWRs

11   before it will be found to have violated the law.  It states that

12   if one is sent, the loan servicer must respond to that one.  See

13   12 U.S.C. §§ 2605(e)(1)(A) (if a loan servicer "receives a

14   qualified written request from the borrower … the servicer shall"

15   acknowledge the letter within 5 days) (emphasis added),

16   2605(e)(2) (servicer must substantively respond to "any qualified

17   written request" within 30 days) (emphasis added).  Defendant

18   seems to argue that because plaintiff failed to allege the date

19   of each one of the QWR's (even assuming this is a fatal pleading

20   error), the claim must be dismissed even as to those QWR's where

21   the dates are alleged.  This court knows of no legal basis for

22   such an argument, nor has defendant provided any.

23       Second, plaintiff has specifically identified three

24   ─────────────

25   [9] The Magistrate Judge indicates that FHLMC also moved to
     dismiss.  ECF No. 123 at 10.  However, as best this court can
26   tell, FHLMC, which is apparently represented by counsel, has not
     answered, moved to dismiss, or otherwise responded to the
27   Complaint, although it has responded to plaintiff's Objections to
     the Findings and Recommendations.
28

                                  5

communications he says are QWRs. He specifies the dates they were sent and to whom they were sent. They are, as described above, the August 17, 2010 letter, the April 15, 2011 letter, and the July 24, 2011 letter, and all three are attached as exhibits to the Complaint. <u>See</u> Exhibits C, D & Q to the Complaint.[10]

Defendants also move to dismiss on the ground that plaintiff "has failed to plead facts that establish actual damages as required by the statute," citing 12 U.S.C. § 2605(f)(1)(A). Specifically, defendants argue for dismissal because plaintiff "fails to provide any detail as to how the alleged QWR violation has damaged him." BANA Motion at 17. Defendants assert that:

> Plaintiff only makes the general allegation that that "[BANA'S] conduct has caused plaintiff countless unnecessary and substantial actual costs, damages, fees and injuries in fact … Plaintiff has been and continues to be subject to extreme and physical stress and anxiety over all of the events that occurred after the July 24, 2011 QWR."

BANA Motion at 17 (citing Complaint ¶ 45).

This supposedly complete recitation of plaintiff's alleged damages ignores the very next paragraph of the complaint, which alleges that plaintiff's damages include "a detriment to plaintiff's ability to sell or refinance his home." <u>See</u> Complaint ¶ 46. Defendant nowhere asserts that this damage allegation is not specific enough, or lacks causality, and the court will not make those arguments on defendants' behalf.[11]

---

[10] As for the remaining, unidentified letters, defendant can simply ask for them, or ask about them, in discovery.

[11] The court is aware of the district court cases which seem to

In addition, plaintiff has specifically alleged three
clearly identified instances where he sent a QWR to the loan
servicer, and got no timely response to any of them.
Accordingly, the Complaint alleges a "pattern or practice of
noncompliance" sufficient to state a claim for statutory damages
under RESPA.  See 12 U.S.C. § 2605(f)(1)(B) ("additional damages"
are available "in the case of a pattern or practice of
noncompliance with the requirements of this section").

In short, plaintiff alleges a violation of the Real Estate
Settlement Procedures Act ("RESPA"):

> RESPA requires the servicer of a federally
> related mortgage loan to provide a timely
> written response to inquiries from borrowers
> regarding the servicing of their loans.  12
> U.S.C. § 2605(e)(1)(A), (e)(2).  If the
> servicer fails to respond properly to such a
> request, the statute entitles the borrower to
> recover actual damages and, if there is a
> "pattern or practice of noncompliance,"
> statutory damages of up to $1,000.  Id.
> § 2605(f).

Medrano v. Flagstar Bank, FSB, 704 F.3d 661, 665 (9th Cir. 2012),
cert. denied, 133 S. Ct. 2880 (2013).

Defendant also asserts that the Complaint's allegation of
damages resulting from stress and anxiety are "conclusory," and
lacking in detail.  The court does not find the allegations to be

---

hold that the complaint must demonstrate a causal relationship
between the alleged damages and the RESPA violation (at least one
of which relies upon the Magistrate Judge's decision in this
case).  See, e.g., Guidi v. Paul Financial LLC, 2014 WL 60253 at
*4 (N.D. Cal. 2014).  It is not necessary to address the issue
here, since plaintiff here does allege a causal relationship to a
specific harm.  Moreover, plaintiff adequately alleges statutory
damages, as discussed below.

conclusory.  To the contrary, plaintiff paints quite a clear picture.  Plaintiff found himself in a dispute with the Bank of America, and BAC Home Loans, the originator and servicers of his home mortgage, a dispute which he must have known could lead to him losing his home.  He wrote to the bank requesting information, and received no response, even though the bank was legally required to give him an acknowledgement and then a substantive response.  This failure to respond caused him "extreme emotional and physical stress and anxiety."  There is nothing "conclusory" about those allegations.  They set forth an entirely plausible, factual sequence of events – with clear causality between the violation and the damages – to which defendant must now respond.[12]

**B.   12 U.S.C. § 2609 and 24 C.F.R. § 3500.17.**

The court adopts the findings and recommendation of the Magistrate Judge that this portion of the first claim be dismissed as to BANA, BAC Home Loans and Balboa, for lack of a private right of action.  See ECF No. 123 at 18.

////

////

---

[12] Plaintiff also alleges that defendants' conduct violates 12 U.S.C. § 2605(k), which requires, among things, that a servicer timely "respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties."  12 U.S.C. § 2605(k)(1)(C).  Defendants, all of whom are represented by counsel, have not briefed or moved to dismiss this claim.  Accordingly, the court will not adopt the Magistrate Judge's recommendation that it be dismissed.

## II. CLAIM TWO – TRUTH IN LENDING ACT ("TILA")[13]

Plaintiff alleges that on November 9, 2011, he called BANA, BAC Home Loans and Quality Loan Service Corp. ("QLS"), requesting the exact amount his mortgage was in arrears, and the payoff balance. Complaint ¶ 60. Plaintiff alleges that these defendants never responded, in violation of banking regulations providing that "no servicer shall … [f]ail to provide, within a reasonable time after receiving a request from the consumer … an accurate statement of the total outstanding balance that would be required to satisfy the consumer's obligation in full as of a specified date."[14] 12 C.F.R. § 226.36(c)(1)(iii).[15]

Plaintiff also alleges that BAC Home Loans delayed posting plaintiff's December 13, 2010 mortgage payment for eight days. Complaint ¶ 61. See 12 C.F.R. § 226.36(c)(1)(i) ("no servicer shall … [f]ail to credit a payment to the consumer's loan account

---

[13] See 15 U.S.C. § 1601, et seq., and 12 C.F.R. § 226.36(c)(1).

[14] The court notes that 15 U.S.C. § 1639g provides that "A creditor or servicer of a home loan shall send an accurate payoff balance within a reasonable time, but in no case more than 7 business days, after the receipt of a written request for such balance from or on behalf of the borrower").

[15] The cited regulation is a part of "Regulation Z," Subpart E, originally promulgated by the Board of Governors of the Federal Reserve System "to implement the federal Truth in Lending Act." See 12 C.F.R. § 226.1 (Regulation Z: authority, purpose and coverage); Home Funds Direct v. Monroy (In re Monroy), 650 F.3d 1300, 1301 (9th Cir. 2011) ("As authorized by TILA, on October 1, 2009, new 12 C.F.R. § 226.36(c)(1)(iii) went into effect (also known as part of 'Regulation Z')," and "The Federal Reserve Board of Governors was authorized to promulgate Regulation Z under 15 U.S.C. § 1604(a)"). It appears that responsibility for enforcing Regulation Z now lies with the U.S. Consumer Financial Protection Bureau ("CFPB"). See 76 Fed. Reg. 79,768 (December 22, 2011) (effective December 31, 2011).

as of the date of receipt").[16]  Plaintiff alleges that this
posting delay caused him to be liable for a late fee of $48.43.
Complaint ¶ 61.

###### A.    "Vague," "Incomplete" and "Generic" Allegations.

Defendants BANA and BAC Home Loans move to dismiss both
parts of this claim because the allegations "are vague and
incomplete," ECF No. 96 at 20, and because the Complaint contains
only "generic allegations of a statutory violation, unsupported
by facts," ECF No. 96 at 19.  In fact, plaintiff's allegations of
defendants' Regulation Z violations are clear and very specific.

Plaintiff alleges that on a specified date, November 9,
2011, he called specified defendants, "both QLS and [BANA]," and
requested a specified piece of information, namely "the payoff
amount necessary to redeem his home, i.e. 'an accurate statement
of the total outstanding balance.'"  Complaint ¶ 60.  This
failure to respond is alleged to violate Regulation Z, which
makes it unlawful for those defendants to fail to provide the
above-specified information in a timely manner, once requested.
See 12 C.F.R. § 226.36(c)(1)(iii).

Plaintiff further alleges that on a specified date, December
13, 2010, "defendant [BAC Home Loans] received plaintiff's
payment" of a specified amount, namely $968.57.  Complaint ¶ 61.
Plaintiff further alleges that the payment "was for the full
monthly amount due on the loan."  Id.  Plaintiff goes on to

---

[16] The court notes that 15 U.S.C. § 1639f provides that "no
servicer shall fail to credit a payment to the consumer's loan
account as of the date of receipt."

allege that BAC Home Loans delayed posting that payment until a specified date, namely, December 21, 2010, eight days later.[17] Id. The Complaint specifies the legal provision that this conduct violates, namely, 12 C.F.R. § 226.36(c)(i), which makes it unlawful for a servicer to "[f]ail to credit a payment to the consumer's loan account as of the date of receipt."

Defendants do not explain what is "vague," "incomplete" or "generic" about these allegations, or what additional information they would need in order to understand and respond to the claim. This court finds that there is nothing vague, incomplete or generic about these allegations.

**B.    Failure To Provide Pay-Off Balance.**

**1.    Defendant QLS.**

The court adopts the recommendation of the Magistrate Judge that the TILA/Regulation Z claim against QLS be dismissed, but will do so without leave to amend.  This court writes separately to set out its reasoning.

Defendant QLS asserts that it cannot be liable for the failure to provide a payoff balance because it is not a "lender," citing Chow v. Aegis Mortg. Corp., 286 F. Supp. 2d 956 (N.D. Ill. 2003) ("The only parties who can be liable for Truth in Lending Act ("TILA") violations are the original creditor, 15 U.S.C. § 1640, and assignees of that creditor, 15 U.S.C. § 1641").  QLS does not mention 12 C.F.R. § 226.36(c)(1), upon

---

[17] The Complaint contains an error that has the delay extending to "December 21, 2012."  Defendants' brief makes clear that they understand that this was just an error, and that the payment was allegedly delayed 8 days.

11

which plaintiff's claim rests, which specifically addresses "[s]ervicing practices," and which specifically prohibits the "servicer" from failing to provide the payoff balance to the borrower within a reasonable time after being asked for it. See 12 C.F.R. § 226.36(c)(1)(iii).

QLS does not explain why it is exempted from liability for violations of Regulation Z that are specifically addressed to it as a servicer.[18]  Rather, it has simply ignored the plain language of the Complaint's allegations, leaving it to the Magistrate Judge and this court to figure out, without any input from the parties, whether plaintiff may have a claim against a servicer under the plain language of Regulation Z.

Nevertheless, as QLS does argue, the governing statute here, TILA, provides for civil liability only against the creditor and its assignee. See 15 U.S.C. §§ 1640(a) ("any creditor who fails to comply with any requirement imposed under this part … is liable") (emphasis added) & 1641 (liability of assignees of creditors).[19]  This court knows of no principle that would permit

_____

[18] The court notes that the district courts are divided over whether there is an independent private right of action under Regulation Z.  See New Mexico ex rel. King v. Capital One Bank (USA) N.A., ___ F. Supp. 2d ___, 2013 WL 5944087 at *7 (D.N.M. 2013) (finds private right of action); Purcell v. Universal Bank, N.A., 2003 WL 1962376 at *3 n.2 (E.D. Pa. 2003) (same); Runkle v. Federal Nat. Mortg. Ass'n, 905 F. Supp. 2d 1326, 1332 (S.D. Fla. 2012) (same).  Contra, Kievman v. Federal Nat. Mortg. Ass'n., 901 F. Supp. 2d 1348, 1353 (S.D. Fla. 2012) (no private right of action).

[19] At least one court has resolved the apparent dilemma created by a regulation that imposes an obligation on the servicer, under a statute that imposes a liability only against the creditor, by saying that the creditor is liable for the servicer's violation. See Runkle, 905 F. Supp. 2d at 1332-33 (creditor's assignee may

an implementing regulation to create a liability that is broader
than, or not even contemplated by, the governing statute.  To the
contrary,

> The rulemaking power granted to an
> administrative agency charged with the
> administration of a federal statute is not
> the power to make law.  Rather, it is "'the
> power to adopt regulations to carry into
> effect the will of Congress as expressed by
> the statute.'"

Ernst & Ernst v. Hochfelder, 425 U.S. 185, 212-214 (1976)
(quoting Dixon v. United States, 381 U.S. 68, 74 (1965)).
Therefore, even if the regulation creates a private right of
action, "its scope cannot exceed the power" granted to the Board
of Governors (or the CFPB), by the governing statute.  Ernst, 525
U.S. at 214.

Accordingly, this claim will not lie against QLS, which is
alleged to be a loan servicer, not a creditor or lender.[20]  See
Complaint ¶ 10 (QLS "is in the business of acting as a debt
collector, loan servicer, and foreclosure trustee").

**2.   Defendants BANA and BAC Home Loans.**

Defendants BANA and BAC Home Loans argues that the claim is
vague, incomplete and generic.  See ECF No. 96 at 19-20.  As
discussed above, the allegations are sufficiently specific.  They
also argue that the claim is barred by the statute of limitations

---

be held liable for the loan servicer's RESPA violation, otherwise
the loan servicer could violate Regulation Z with impunity,
leaving both it and the creditor immune from liability).

[20] Since the claim must be dismissed, there is no need for the
court to address QLS's statute of limitations argument.

since the loan documents were signed in 2001.  However, the claim is based upon conduct alleged to have occurred in 2010 and 2011. The limitations argument fails.

### C.    Failure To Credit Payment – BAC Home Loans.

Defendant BAC Home Loans asserts that it is not liable for the alleged failure to post plaintiff's December 13, 2010 mortgage payment in a timely manner, because the claim is "time barred after December 2011."  Defendant makes two limitations arguments.  First, it asserts that the TILA and Regulation Z claim is time-barred because the claim is based upon loan documents that were signed in 2001.  The court adopts the Magistrate Judge's findings and recommendation that the Complaint not be dismissed on this basis.  See ECF No. 123 at 23-24.

Second, defendant asserts that the Second Amended Complaint, which first explicitly asserted a claim under TILA and Regulation Z, was filed in 2012, more than one year after the delayed posting.[21]  Plaintiff's original complaint, however, was filed on November 7, 2011, within the one-year limitations period.  See ECF No. 1.  That complaint alleges that "the payment he [plaintiff] made on December 10, 2010, was received" by BAC Home Loans, but that defendants "specifically held the December

---

[21] BANA and BAC Home Loans also assert that the claim is conclusory and internally inconsistent.  There is no real explanation of this argument and frankly, the court does not understand it.  Plaintiff clearly alleges that defendants did not post his December 2010 payment for eight days, rather than posting it immediately as required by Regulation Z.  As a result of their own delay, defendants charged plaintiff a late fee.  The court does not view these allegations as being conclusory, unclear or internally consistent.

14

10 payment and did not credit it until December 21, 2010." ECF No. 1 ¶ 67 (emphasis in text). It goes on to allege that "this was intentionally done … to produce a knowingly false and inflated picture of Plaintiff's timely payment under the contract." Id. (emphases in text). It concludes this allegation by stating that Defendants' actions "violated Federal and State debt collection laws …." Id. Thus, the original complaint of November 2011 expressly sets out the transactions and conduct that give rise to plaintiff's TILA and Regulation Z claim.

Under these circumstances, the "relation back" doctrine applies. Fed. R. Civ. P. 15(c)(1)(B) ("An amendment to a pleading relates back to the date of the original pleading when … the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading").[22] The pro se plaintiff's failure to explicitly mention the statute or regulation does not prevent him from taking advantage of the relation back doctrine.

The claim is not time-barred.[23]

### III. CLAIM THREE – FDCPA & ROSENTHAL ACT

#### A. Fair Debt Collection Practices Act ("FDCPA")

Plaintiff alleges that BANA, BAC Home Loans and QLS violated

---

[22] Accordingly, the court does not adopt the Magistrate Judge's findings or recommendation on this point.

[23] Defendants also assert that the claim based upon their alleged failure to provide a payoff statement pursuant to plaintiff's November 9, 2011 request, is barred by plaintiff's "failure to allege tender." The "tender" defense is frivolous, as it has nothing to do with this case, inasmuch as the TILA claim does not seek rescission.

the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e and 1692g.

Section 1692e prohibits "debt collectors" from using any "false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e(1).  Among other things, debt collectors may not falsely represent or imply "that any individual is an attorney or that any communication is from an attorney."  15 U.S.C. § 1692e(3). They also may not falsely represent "the character, amount, or legal status of any debt."  Id., § 1692e(2)(A).

Section 1692g requires a debt collector to provide, upon request, "the name and address of the original creditor, if different from the current creditor."  15 U.S.C. § 1692g.

### 1.    BANA and BAC Home Loans.

Defendants BANA and BAC Home Loans assert that they are categorically exempt from the FDCPA because they are not "debt collectors."  The FDCPA exempts from its provisions the "originator" of a debt the person is trying to collect.  15 U.S.C. § 1692a(6)(F)(ii); De Dios v. International Realty & Investments, 641 F.3d 1071, 1074 (9th Cir. 2011) ("the person who originated the debt, such as a creditor to whom the debt was originally owed, is not considered a debt collector").  The Complaint alleges that BANA is the originator of the mortgage at issue here.  See Complaint ¶ 16.  Accordingly, the court adopts the Magistrate Judge's finding and recommendation that BANA be dismissed from the FDCPA claims because it is categorically exempt as a "creditor."

The court adopts the Magistrate Judge's recommendation that BAC Home Loans also be dismissed from the FDCPA claim, but not because BAC Home Loans is <u>categorically</u> exempt from the FDCPA based upon its status as a mortgage loan servicer. According to the Ninth Circuit, the legislative history shows that "mortgage service companies" are only exempt "'so long as the debts were not in default when taken for servicing.'" <u>De Dios</u>, 641 F.3d at 1075 n.3.

In fact, the FDCPA specifically exempts a person collecting a debt "which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii); <u>De Dios</u>, 641 F.3d at 1076 ("International Realty is exempt from the definition of a 'debt collector' under § 1692a(6)(F)(iii) because it obtained the right to collect De Dios's rent before the debt was contractually overdue"). The Complaint alleges that BAC Home Loans became the servicer of the mortgage "in November 2009," before any alleged arrearage occurred. Complaint ¶ 21. Accordingly, BAC Home Loans, whether or not it is a "debt collector," is exempt from plaintiff's FDCPA claims.[24]

### 2. QLS.

QLS asserts that "Plaintiff fails to support his conclusory statement that Quality is a debt collector within the meaning of the FDCPA." QLS Motion at 13. The FDCPA defines a "debt collector to be:

_____

[24] The court notes, however, that BAC Home Loans' correspondence, attached as exhibits to the Complaint, states that "BAC Home Loans Service, LP is required by law to inform you that this communication is from a debt collector." <u>See</u> Exh. H (ECF No. 91-1) at 41.

> any person who uses any instrumentality of
> interstate commerce or the mails in any
> business the principal purpose of which is
> the collection of any debts, or who regularly
> collects or attempts to collect, directly or
> indirectly, debts owed or due or asserted to
> be owed or due another.

15 U.S.C. § 1692a(6). The Complaint alleges that QLS "is in the business of acting as a debt collector." Complaint ¶ 10. The Complaint also alleges that QLS is a "'debt collector'" as defined by 15 U.S.C. § 1692A(6), and that it is "not exempt from the requirements of the FDCPA." Complaint ¶ 64. In addition, the Complaint alleges that QLS was "trying to collect a debt," namely, the mortgage at issue here, and that some of the communications with QLS took place over the telephone, an instrument of interstate commerce. Complaint ¶¶ 60 (phone call to QLS), 67 (QLS is trying to collect a debt).

These allegations, standing alone, are sufficient to allege that QLS is a debt collector within the meaning of the FDCPA, for purposes of this dismissal motion.[25] The Complaint goes further, however, by attaching a communication from QLS to plaintiff. See

---

[25] There are 9 separate exceptions to the definition of "debt collector" set forth at 15 U.S.C. § 1692a(6)(A)-(E) and F(i)-(iv). Plaintiff need not set forth facts showing that QLS is not exempt pursuant to each and every one of these exceptions, as they are in the nature of affirmative defenses. Accord, Scott v. Jones, 964 F.2d 314, 316 (4th Cir. 1992) ("Jones asserted the affirmative defense that he was not a "debt collector" as defined in the FDCPA, and therefore was not in violation of that statute"); Murphy v. Stephens & Michaels Associates, Inc. 2011 WL 1465761 at *1 (S.D. Cal. 2011) ("whether Defendant falls within an exception to the 'debt collector' definition under 15 U.S.C. Section 1692a is an affirmative defense").

Exhibit P ("Notice of Trustee's Sale").  The communication

states, in bold, capital letters:

> **THIS NOTICE IS SENT FOR THE PURPOSE OF COLLECTING A DEBT.  THIS FIRM IS ATTEMPTING TO COLLECT A DEBT ON BEHALF OF THE HOLDER AND OWNER OF THE NOTE.  ANY INFORMATION OBTAINED BY OR PROVIDED TO THIS FIRM OR THE CREDITOR WILL BE USED FOR THAT PURPOSE.**

Exhibit P (ECF No. 91-1) at 66.[26]

QLS goes on to argue that the Complaint fails to allege that

it engaged in any "unfair practices."  QLS Motion at 13.  The

Complaint, in fact, alleges that QLS made a false, deceptive, or

misleading representation in connection with its efforts to

collect a debt, in violation of 15 U.S.C. § 1692e.  Specifically,

the Complaint alleges that QLS falsely denied that it could give

plaintiff information about the debt, and also, that "'only the

lender could postpone the sale.'"  Complaint ¶ 36 (emphasis in

text).  Yet, when plaintiff called the lender that same day, the

lender's employee told plaintiff that he had to get the

information from QLS, and that "'only the trustee [QLS] could

postpone the sale.'"  Complaint ¶ 37 (emphasis in text).  There

is nothing conclusory or vague about these allegations, which

plainly point to an unfair credit collection practice.[27]

---

[26] The court is not ruling on whether this admission is conclusive.  However, the admission is certainly sufficient to put the burden on QLS to establish why it is not a debt collector.

[27] The court does not adopt the Magistrate Judge's findings and recommendation that FHLMC be dismissed from the FDCPA claim, because FHLMC, which is represented by counsel, has not moved to dismiss the claim.

1    Accordingly, the claim alleging that QLS violated 15 U.S.C.

2    § 1692e(2)(A) & (3) will not be dismissed.

3    **B.    Rosenthal Fair Debt Collection Practices Act.**

4        Plaintiff alleges that BANA violated the Rosenthal Fair Debt

5    Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code

6    §§ 1788, <u>et seq.</u>, by falsely referring to QLS, the entity it was

7    referring plaintiff to in order to resolve the foreclosure, as

8    "the attorneys."  Complaint ¶ 68.

9        BANA moves to dismiss solely on the grounds that it is

10   exempt from the Rosenthal Act because it is a mortgage "lender[]

11   and/or servicer[]."  As the Magistrate Judge points out, BANA

12   incorrectly relies on the federal statute to argue that it is

13   exempt under the state law.  BANA cites no provision of the

14   Rosenthal Act where this asserted exemption can be found, and

15   cites no cases decided under the Act that stand for this

16   proposition.[28]  BANA has failed to show that it is exempt under

17   the Rosenthal Act.

18       Plaintiff alleges that BANA is a "debt collector" pursuant

19   to Cal. Civ. Code 1788.2 of the Rosenthal Act.  That provision

20   defines "debt collector" broader than the FDCPA does, by

21   including persons collecting their own debts, whereas such

22   persons are expressly exempted under the FDCPA.  <u>Compare</u> Cal.

23

24   [28] BANA cites <u>Caballero v. Ocwen Loan Serv.</u>, 2009 WL 1528128 at *1
25   (N.D. Cal. 2009) and <u>Scott v. Wells Fargo Home Mortg. Inc.</u>, 326
     F. Supp. 2d 709, 718 (E.D. Va.), <u>aff'd mem.</u>, 67 Fed. Appx. 238
26   (4th Cir. 2003), both of which are about the FDCPA, not the
     Rosenthal Act.  It also cites <u>Ines v. Countrywide Home Loans,</u>
27   <u>Inc.</u>, 2008 WL 2795875 *3 (S.D. Cal. 2008) which defines "debt
     collectors" in the context of the FDCPA, not the Rosenthal Act.
28

Civ. Code § 1788.2(c) ("The term "debt collector" means any person who, in the ordinary course of business, regularly, <u>on behalf of himself or herself</u> or others, engages in debt collection") (emphasis added), <u>with</u> 15 U.S.C. § 1692a(6) ("The term 'debt collector' means any person who … regularly collects or attempts to collect … debts owed or due or asserted to be owed or due <u>another</u>") (emphasis added).

Accordingly, the court adopts the Magistrate Judge's finding that BANA is not exempt under the Rosenthal Act.  <u>See</u> ECF No. 123 at 31.  However, the court does not adopt the recommendation that the claim be dismissed for lack of specificity.  As noted above, the Complaint specifically alleges that BANA falsely referred to QLS as "the attorneys," conduct that is expressly made unlawful by the Rosenthal Act.  <u>See</u> Cal. Civ. Code § 1788.13(b) (prohibiting a debt collector from making "[a]ny false representation that any person is an attorney or counselor at law").

### IV.   CLAIM 4 – CAL. CIV. CODE § 2954(a)(1)

Plaintiff alleges that BAC Home set up an illegal escrow account against his mortgage.[29]  California law provides that:

> [n]o … account for payment of … insurance premiums or other purposes relating to the property shall be required as a condition of a … loan secured by a deed of trust or mortgage on real property [except in specified situations].

---

[29] The Complaint is clear that BAC Home is responsible for this alleged conduct, but it is unclear whether any of the other defendants mentioned there are responsible.  The court interprets the claim to be against BAC Home only.

Cal. Civ. Code § 2954(a)(1).  It further provides that any such account "established in violation" of Section 2954(a)(1) "is voidable, at the option of the purchaser or borrower."  Id.

The court adopts the Magistrate Judge's findings and recommendation that Claim 4 not be dismissed, and it will proceed against BAC Home only.  See ECF No. 123 at 32-34.

**V. CLAIM 5 – FRAUD, NEGLIGENT MISREPRESENTATION & CONSPIRACY**

**A.    Fraud at the closing.**

> "The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." (5 Witkin, Summary of Cal.Law (9th ed. 1988) Torts.

Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996).

Plaintiff alleges that BANA and BAC Mortgage committed fraud in connection with the creation of his mortgage, at the end of January 2001.[30]  Plaintiff alleges that he refused to go forward with the closing unless BANA agreed that no "escrow account" would ever be placed against the property (other than the initial escrow required by law since his down-payment was under 20% of the purchase price).[31]  Complaint ¶¶ 73 & 81 ("Plaintiff stopped

---

[30] This claim is alleged only against BANA and BAC Mortgage, as they are the only defendants alleged to have "tricked" plaintiff into signing the modified documents "knowing full well that they were not going to honor the modified terms regarding any future escrow account."  Complaint ¶ 86.

[31] The initial escrow account was closed after the home was re-

the entire purchase of the property at his final closing

paperwork signing on January 30, 2001 and was ready and willing

to cancel it had [BANA], BAC Mortgage authorized employees, not

agreed to his demand of 'absolutely no escrow accounts ever for

hazard insurance or property taxes'").  The Complaint alleges

that this was an oral agreement that was reduced to a "written

mutual agreement" at the closing.  Complaint ¶ 73.

The Complaint further alleges that BANA (through its agent,

Susan Birge), had plaintiff make changes to the "closing

paperwork" before signing, specifically, "forms BA 174 and

BA084," assuring him that the changes to those documents would

have the effect that he wanted, namely, it would prevent any

future escrow account from being placed against the mortgage.

Complaint ¶¶ 82-83.  Plaintiff alleges that in reliance upon

BANA's representations, he went forward with the closing, even

though he "could easily have gone to another lender" if BANA had

not agreed to the modifications prohibiting future escrow

accounts.  Complaint ¶ 83.

The Complaint further alleges that BANA's statements were

misrepresentations, because it "had no intention" of abiding by

the representations it had made regarding the promise of "no

escrow account ever for the remainder of the loan."  Complaint

¶ 82.  Plaintiff alleges that he did not discover the

misrepresentation until July 2010, when he discovered that BANA

and others had "created an escrow account on Plaintiff's loan"

the month before.  Complaint ¶¶ 84 & 86.  Finally, plaintiff

appraised.  See Complaint ¶¶ 20 & 21.

alleges that the creation of this escrow account was the start of
all the harm that he complains of now.

BANA moves to dismiss this claim because (1) it is barred by
the three-year statute of limitations, and (2) it is not specific
enough.

## 1. Limitations.

Fraud claims under California law are subject to a three-
year statute of limitations. Cal. Code Civ. P. § 338(d).
However, the fraud claim "is not deemed to have accrued until the
discovery, by the aggrieved party, of the facts constituting the
fraud or mistake." Id. Plaintiff specifically alleges that he
did not discover BANA's deceit until July 2010, when the escrow
account – which BANA promised in 2001 would never be created –
was created. Complaint ¶ 84. Defendant offers no reason the
court should reject plaintiff's assertion that the limitations
period is tolled until he discovers the fraud, and the court
knows of none.

## 2. Specificity.

As recounted above, the complaint sets forth with
particularity exactly what misrepresentations plaintiff is
challenging, namely, that no escrow account (other than the
initial PMI escrow account) would ever be placed against
plaintiff's mortgage account. Moreover, those allegations set
forth all of the elements of a fraud claim.

The fraud claim is not subject to dismissal, and will
proceed against BANA and BANA Mortgage.[32]

_____

[32] Accordingly, the court does not adopt the Magistrate Judge's
findings or recommendations on this issue. See ECF No. 123

**B. Fraud, Negligent Representation and Deceit in Loan Modification Activities.**

Plaintiff alleges that in 2010 and 2011, defendant BANA and BAC Home Loans, and others, acting through their agent, defendant Home Retention Group ("HRG"), created a false paper trail relating to his supposed request for a loan modification through the federal Home Affordable Mortgage Program ("HAMP") program. Plaintiff denies that he ever applied for loan modification.

Specifically, in April or May 2011, HRG sent plaintiff a letter falsely stating that plaintiff "had sent in their loan modification package for the 'HAMP,' that he was seeking a home loan modification and was asking for assistance." Complaint ¶ 91. On June 28, 2011, BAC Home Loans sent plaintiff a letter falsely stating that it had reviewed plaintiff's "request for a loan modification" under HAMP, even though plaintiff had never sent in such a request. Complaint ¶ 94. That letter also stated that plaintiff's supposed request "was denied because he had not sent in the requested documents." Id. On July 1, 2011, BANA sent plaintiff a letter falsely stating that it had received plaintiff's "request for workout assistance," even though plaintiff had never requested assistance. Complaint ¶ 97. Plaintiff alleges that defendants sent similar false letters to the HAMP administrator.[33] Complaint ¶ 95.

According to plaintiff, defendants did all this to collect money from plaintiff that he did not owe, and to create a false

---

at 36-37.

[33] This would serve as the predicate offenses for plaintiff's RICO claims, since if true, this conduct violates 18 U.S.C. § 1001 (false statements).

impression that they had complied with all guidelines permitting them to foreclose. Complaint ¶ 89-97. As a result, plaintiff alleges, plaintiff is now disqualified from applying for a loan modification through HAMP. Complaint ¶ 96.

Defendants move to dismiss based on the statute of limitations, since the loan was issued in 2001. This is no basis for dismissal, as the basis of the alleged fraud claim is conduct that took place in 2010 and 2011.

Defendants also move to dismiss asserting that the Complaint is not "specific enough" under Fed. R. Civ. P. 9(b), governing fraud allegations. This court finds that the allegations are sufficiently specific to allow defendants to defend themselves.

However, the Complaint on its fact does not state a claim for fraud or misrepresentation. An essential element of this claim is "deceit," that is, the victim of the fraud must be deceived, and take action (justifiable reliance) based upon that deceit. Here, plaintiff alleges that he knew that these letters were false, thus he was never deceived. Moreover, he does not allege that he justifiably relied upon the supposed truth of the communications. The claim for negligent misrepresentation also requires allegations that the victim was deceived and justifiably relied on the deception.

This portion of the fraud claim will be dismissed for failure to state a claim.

**C.    Conspiracy – The HAMP Program.**

Plaintiff alleges that BANA, BAC Home Loans and FHLMC conspired in the creation of the false paper trail relating to

the HAMP program, discussed above. This court has already found
that there was no viable claim for fraud or misrepresentation
against BANA, the only defendant charged with fraud. Therefore,
there can be no claim for <u>civil</u> conspiracy against anyone who
allegedly conspired with BANA to inflict a tort that never
occurred.

> There is no separate tort of civil
> conspiracy. The significance of the
> allegation is to hold each member of the
> conspiracy liable as a joint tortfeasor.
> <u>This joint liability does not accrue unless a
> wrongful act is carried out and damage
> results</u>.

<u>Robert H. Jacobs, Inc. v. Westoaks Realtors, Inc.</u>, 159 Cal.
App. 3d 637, 645 (2nd Dist. 1984) (emphasis added).

    The claim for conspiracy will therefore be dismissed in its
entirety, for failure to state a claim.

### VI.    CLAIM 6 – BREACH OF CONTRACT

> [T]he elements of a cause of action for
> breach of contract are (1) the existence of
> the contract, (2) plaintiff's performance or
> excuse for nonperformance, (3) defendant's
> breach, and (4) the resulting damages to the
> plaintiff.

    <u>Oasis West Realty, LLC v. Goldman</u>, 51 Cal. 4th 811, 821
(2011). Plaintiff alleges that BANA breached the contract (the
Deed of Trust) by (1) creating an "unlawful escrow account on
Plaintiff's Mortgage loan," and (2) failing to credit his
payments in a timely manner.

////

////

////

## A.    BANA and BAC Home Loans.

Defendants seek dismissal, asserting that plaintiff failed
to allege his own performance (and indeed, that he alleged his
own non-performance), and failed to allege defendant's breach.

As for plaintiff's own performance, it appears that
plaintiff's obligation to have a homeowner's insurance policy
arose in May 2001, when plaintiff took out a second mortgage on
his home.  See Complaint ¶ 23.  It further appears that for nine
(9) years, May 2001 until May 2010, BANA acquiesced in
plaintiff's failure to obtain insurance – or at least, his
failure to produce it – finally demanding it in May 2010.  Id.
Plaintiff accordingly alleges that defendant has waived this
provision of the Deed of Trust.  Thus, while plaintiff has not
alleged complete performance, he has alleged an excuse for non-
performance or waiver of performance.  Defendant does not address
the allegation of waiver, and the court will not reject it on its
own initiative.

Defendants assert that plaintiff failed to allege breach.
That is not so.  Plaintiff alleges that a written modification to
the Deed of Trust – which he has not attached to the complaint –
contains an agreement that BANA would never create an escrow
account against his mortgage, other than the initial PMI escrow
account.  He further alleges that in breach of that written
agreement, defendant created an escrow account against his
mortgage.[34]

---

[34] The court therefore does not adopt the Magistrate's finding
that plaintiff is alleging the breach of an oral contract.  The
modified contract is allegedly written, although apparently, it
has yet to be produced.

28

It does seem that plaintiff's allegation brushes right up against the "plausibility" standard of <u>Iqbal</u>.  It is hard to believe that a lender would ever agree to such a thing, and it is suspicious that plaintiff has never produced this written modification.[35]  However, it seems to the court that plaintiff's allegations are merely improbable, rather than implausible, and therefore they will survive dismissal.

> [s]ome improbable allegations might properly be disposed of on summary judgment, but to dismiss them as frivolous without any factual development is to disregard the age-old insight that many allegations might be "strange, but true; for truth is always strange, Stranger than fiction." Lord Byron, Don Juan, canto XIV, stanza 101 (T. Steffan, E. Steffan & W. Pratt eds. 1977)).

<u>Denton v. Hernandez</u>, 504 U.S. 25, 33 (1992).

**B.  QLS and Balboa.**

QLS and Balboa move to dismiss because plaintiff has not alleged that they were party to any contract with plaintiff.

---

[35] Defendant notes that plaintiff has not attached the modified documents to the complaint.  If this matter were being litigated in a California state court, the failure to set forth the exact language of the breached contract, or otherwise attached the contract, might be fatal.  <u>See Harris v. Rudin, Richman & Appel</u>, 74 Cal. App. 4th 299, 307 (2nd Dist. 1999) ("If the action is based on alleged breach of a written contract, the terms must be set out verbatim in the body of the complaint or a copy of the written agreement must be attached and incorporated by reference").  However, this matter is in federal court, where notice pleading rules govern.  <u>See Boland, Inc. v. Rolf C. Hagen (USA) Corp.</u>, 685 F. Supp. 2d 1094, 1102 (E.D. Cal. 2010) (Karlton, J.) (addressing pleading requirements for breach of contract claim: "California pleading requirements do not apply in federal court").

That is correct, and the court accordingly adopts the Magistrate

Judge's findings and recommendations that the claim be dismissed

against QLS and Balboa. <u>See</u> ECF No. 123 at 39.

### VII. DECLARATORY RELIEF

> "To qualify for declaratory relief, [a party]
> would have to demonstrate its action
> presented two essential elements: '(1) a
> proper subject of declaratory relief, and
> (2) an actual controversy involving
> justiciable questions relating to [the
> party's] rights or obligations.'"

<u>Jolley v. Chase Home Finance, LLC</u>, 213 Cal. App. 4th 872, 909

(1st Dist. 2013) (quoting <u>Wilson & Wilson v. City Council of</u>

<u>Redwood City</u>, 191 Cal. App. 4th 1559, 1582 (2011)).

Plaintiff seeks a declaration determining the respective

rights of the parties. Defendant seeks to dismiss solely on the

grounds that it is duplicative of the relief he seeks from the

lawsuit as a whole. It does appear that "this cause of action is

redundant of [plaintiff's] other claims," and will be dismissed

for that reason. <u>Jolley</u>, 213 Cal. App. 4th at 909. However, the

request for declaratory relief remains in the Complaint as one of

the requested elements of relief. See Complaint page 47.

### VIII. ACCOUNTING

Plaintiff seeks an accounting of moneys paid and due on the

mortgage transaction.

> A cause of action for an accounting requires
> a showing that a relationship exists between
> the plaintiff and defendant that requires an
> accounting, and that some balance is due the
> plaintiff that can only be ascertained by an
> accounting.

30

<u>Teselle v. McLoughlin</u>, 173 Cal. App. 4th 156, 179 (3rd Dist. 2009).

Defendants seek dismissal solely on the grounds that plaintiff has not alleged that any sums are due to him that would be the subject of an accounting. ECF No. 69 at 28-29. That is not so. Plaintiff alleges that "he has actually <u>overpaid</u> [defendants] and is entitled to a refund on his mortgage account." Complaint ¶ 134. Plaintiff seeks an accounting to determine the amount of his overpayment.

## IX. CONVERSION

Plaintiff alleges that defendants collected from him "escrow funds" which were to be credited to his mortgage payments (interest and principal) and, to the degree they were surplus, were to be returned to plaintiff. Complaint ¶¶ 136-37. Instead of doing either, plaintiff alleges, defendants wrongfully kept the funds. <u>Id.</u>

> "'Conversion is the wrongful exercise of dominion over the property of another.'" The elements of a claim for conversion are (1) "the plaintiff's ownership or right to possession of the property at the time of the conversion," (2) "the defendant's conversion by a wrongful act or disposition of property rights," and (3) damages. "It is not necessary that there be a manual taking of the property," only "an assumption of control or ownership over the property, or that the alleged converter has applied the property to his [or her] own use."

<u>Prakashpalan v. Engstrom, Lipscomb and Lack</u>, 223 Cal. App. 4th 1105, 1135 (2nd Dist. 2014) (citations omitted).

> A cause of action for conversion of money can be stated only where defendant interferes

> with plaintiff's possessory interest in a
> specific, identifiable sum, such as when a
> trustee or agent misappropriates the money
> entrusted to him. "'Money cannot be the
> subject of a cause of action for conversion
> unless there is a specific, identifiable sum
> involved, such as where an agent accepts a
> sum of money to be paid to another and fails
> to make the payment.

Kim v. Westmoore Partners, Inc., 201 Cal. App. 4th 267, 284 (4th Dist. 2011) (citations omitted).

Defendant moves to dismiss on the grounds that plaintiff's right to payment is a "mere contractual one." ECF No. 96 at 29. This misconceives the claim plaintiff is making. Plaintiff does not simply assert that defendants owe him money under the contract. Rather, he asserts that pursuant to the contract, he entrusted specific sums of money to defendants, which defendants were to use for a specific purpose – to credit plaintiff's mortgage account, and return the surplus. Plaintiff further asserts that defendants instead took the money entrusted to them, used it to pay fees plaintiff did not owe, and are refusing to return it, or even any surplus after the fees are paid. This states a claim for conversion.

## X.   WRONGFUL FORECLOSURE

Plaintiff asserts a claim for wrongful foreclosure, alleging numerous errors and points of unfairness, and also alleging that he has made "full and timely tender of all amounts owed to defendants." See Complaint ¶ 147. Defendant

> To obtain the equitable set aside of a
> trustee's sale or maintain a wrongful
> foreclosure claim, a plaintiff must allege
> that (1) defendants caused an illegal,

32

> fraudulent, or willfully oppressive sale of
> the property pursuant to a power of sale in a
> mortgage or deed of trust; (2) plaintiff
> suffered prejudice or harm; and (3) plaintiff
> tendered the amount of the secured
> indebtedness or were excused from tendering.
> Recognized exceptions to the tender rule
> include when: (1) the underlying debt is
> void, (2) the foreclosure sale or trustee's
> deed is void on its face, (3) a counterclaim
> offsets the amount due, (4) specific
> circumstances make it inequitable to enforce
> the debt against the party challenging the
> sale, or (5) <u>the foreclosure sale has not yet
> occurred</u>.

<u>Chavez v. Indymac Mortgage Services</u>, 219 Cal. App. 4th 1052, 1062

(4th Dist. 2013) (emphasis added) (citations omitted).

Defendant BANA moves to dismiss on the ground that plaintiff

has not alleged "tender." This has two problems. First,

plaintiff has alleged "tender." <u>See</u> Complaint ¶ 147. Second,

tender is not required where the claim is for "wrongful

foreclosure" where, as here, "the foreclosure sale has not yet

occurred." <u>Chavez</u>, 219 Cal. App. 4th at 1062.[36] BANA also

asserts that plaintiff has not performed under the Deed of Trust

by failing to obtain insurance on the property. As discussed

---

[36] As QLS points out, and as the Magistrate Judge found, a
wrongful foreclosure claim seeking to <u>set aside</u> a foreclosure
sale would be premature where no foreclosure sale had yet
occurred. To the degree federal magistrate judges and district
courts have held that <u>all</u> wrongful foreclosure claims are
premature unless a sale has occurred, this court respectfully
disagrees. The California courts acknowledge the validity of
claims for wrongful foreclosure prior to the foreclosure sale
where, as here, defendants are alleged to have violated laws
intended to avoid foreclosure. <u>See</u> <u>Pfeifer v. Countrywide Home
Loans, Inc.</u>, 211 Cal. App. 4th 1250, 1280 (1st Dist. 2012)
("[c]ourts, however, have not required tender when the lender has
not yet foreclosed and has allegedly violated laws related to
avoiding the necessity for a foreclosure").

above, plaintiff has credibly alleged that BANA has waived plaintiff's performance.

Defendant QLS moves to dismiss because plaintiff has not alleged it did anything unlawful, and because it acted in good faith. However, plaintiff has set out in excruciating detail all the things he says went wrong with the Notice of Trustee's Sale, and why he thinks they violate specified sections of California law. If QLS wishes to get this claim dismissed, it must set forth which allegations are not legally sufficient, and why. This court will not, on its own initiative, try to identify the allegations QLS thinks are insufficient and why.[37]

## XI. BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

Plaintiff asserts that all defendants breached the covenant of good faith and fair dealing in relation to the Deed of Trust. Broadly stated, that covenant requires that neither party do anything that will deprive the other of the benefits of the agreement. <u>Freeman & Mills, Inc. v. Belcher Oil Co.</u>, 11 Cal. 4th 85, 91 (1995).

### A. Defendants QLS and Balboa.

The court adopts the Magistrate's findings and recommendation that QLS and Balboa be dismissed from this claim

---

[37] This court is aware of its obligation to treat the Complaint with some liberality, since it is authored by a <u>pro se</u> plaintiff. However, the motion to dismiss is authored by a party represented by counsel. Defendant must, accordingly, do the work of getting the complaint dismissed, if it is to be dismissed, rather than simply pointing out that it does not like the Complaint, and demand that this court or the Magistrate Judge do all the research needed to establish whether the claim is valid or not.

because they are not alleged to be parties to the mortgage agreement.  See ECF No. 123 at 46-47.

**B.   BANA and BAC Home Loans.**

Defendants BANA and BAC Home Loans move to dismiss this claim because this claim "is limited to situations in which a fiduciary relationship exists."  ECF No. 96 at 30.  However, as the Magistrate Judge found, in California, every contract carries with it an implied covenant  of good faith and fair dealing.[38] See, e.g., Wilson v. 21st Century Ins. Co., 42 Cal. 4th 713, 720 (2007) ("The law implies in every contract … a covenant of good faith and fair dealing"); Freeman & Mills, Inc. v. Belcher Oil Co., 11 Cal. 4th 85, 91 (1995) ("'It is well settled that, in California, the law implies in every contract a covenant of good faith and fair dealing.'") (emphasis in text); Carma Developers (Cal.), Inc. v. Marathon Development California, Inc., 2 Cal. 4th 342, 371-72 (1992) (same).

BANA also asserts that the Complaint does not allege that defendants have frustrated plaintiff's ability to obtain the benefits of the original loan.  This is also not so.  Plaintiff alleges that by placing the escrow account against his mortgage, BANA has prevented plaintiff from paying off his mortgage in the manner he anticipated and agreed to, at the time he signed the

---

[38] The Magistrate Judge recommended that the claim be found to be barred by the statute of limitations.  The court will not adopt that recommendation however, as it is an affirmative defense which neither defendant raised in their motion.  In any event, the claim arose not upon the signing of the Deed of Trust in 2001, but upon the alleged breach of the covenant in 2010 or 2011.

modified mortgage agreement.

This claim will not be dismissed against BANA.[39]

## XII. NEGLIGENCE

The court adopts the Magistrate Judge's findings and recommendation that the negligence claim be dismissed as to BANA, BAC Home Loans and Balboa, except that the claim will be dismissed with prejudice.[40]  See ECF No. 123 at 48-49.

## XIII.    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The court adopts the Magistrate Judge's findings and recommendation that the claim for intentional infliction of emotional distress be dismissed as to BANA, BAC Home Loans, Balboa and QLS, except that the claim will be dismissed with prejudice.  See ECF No. 123 at 49-50.

## XIV. CALIFORNIA'S FAIR BUSINESS LAW

Defendants move to dismiss the claim under Cal. Bus. & Prof. Code § 17200 on the ground that the court should dismiss all the underlying claims of unfair or unlawful practices.  Since some of those claims have survived dismissal, this claim will not be dismissed, to the degree it is predicated on a surviving claim.

## XV.   CIVIL RICO

The court adopts the Magistrate Judge's findings and recommendation that the civil claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), be dismissed as to BANA, BAC Home Loans, Balboa and QLS, except that the claim

---

[39] BAC Home Loans is not alleged to have been a party to the contract, so it will also be dismissed.

[40] Defendant QLS did not move to dismiss this claim.

36

will be dismissed with prejudice.[41]  See ECF No. 123 at 28-29.

**CONCLUSION**

For the reasons set forth above:

1.   The motion of BANA, BAC Home Loans, Balboa and QLS to dismiss the complaint in its entirety for failure to comply with Rule 8 is **DENIED**;

2.   The motion of BANA and BAC Home Loans, to dismiss the RESPA claim (Claim One), under 12 U.S.C. § 2605(e) and 24 C.F.R. § 3500.21, is **DENIED**, as plaintiff has properly alleged that defendants failed to respond to three QWRs in a timely manner;

3.   The motion of BANA and BAC Home Loans, to dismiss the RESPA claim (also Claim One), under 12 U.S.C. § 2609 AND 24 C.F.R. § 3500.17, is **GRANTED** without leave to amend, as there is no private right of action.

Accordingly, this portion of Claim One is **DISMISSED** in its entirety, with prejudice;

4.   The motion of QLS, to dismiss the TILA and Regulation Z claim (Claim Two), is **GRANTED** without leave to amend, as the claim only lies against a creditor or lender.

Accordingly, this portion of Claim Two (against QLS) is **DISMISSED**, with prejudice;

5.   The motion of BANA and BAC Home Loans to dismiss the TILA and Regulation Z claim (also Claim Two), is **DENIED**, as the allegations that defendants failed to provide a pay-off balance, and failed to credit plaintiff's payment in a timely manner, are

---

[41] Defendant HRG did not move to dismiss this claim.

sufficiently pled, and the claim is not barred by the statute of limitations;

7.   The motion of BANA and BAC Home Loans to dismiss the FDCPA claim (Claim Three), is **GRANTED** without leave to amend, as BANA is categorically exempt as a "creditor," and BAC Home Loans is exempt because under the facts alleged in the Complaint, it is not a "debt collector."

Accordingly, this portion of Claim Three (against BANA and BAC Home Loans) is **DISMISSED**, with prejudice;

8.   The motion of QLS to dismiss the FDCPA claim (also Claim Three), is **DENIED**, as the Complaint sufficiently alleges that QLS is a "debt collector," and sufficiently alleges conduct that violates the FDCPA;

9.   The motion of BANA to dismiss the Rosenthal Act claim (also Claim Three) is **DENIED**, because BANA is not exempt and the Complaint sufficiently alleges that BANA falsely referred to QLS as "the attorneys;"

10.   The motion of BANA to dismiss the claim under Cal. Civ. Code § 2954(a)(1) (Claim Four), is **DENIED** for reasons set forth by the Magistrate Judge;

11.   The motion of BANA to dismiss the fraud claim (Claim Five), is **DENIED**, as it is not barred by the statute of limitations and sufficiently pleads a claim for fraud;

12.   The motion of BANA, BAC Home Loans and QLS to dismiss the Negligent Misrepresentation claim regarding loan modification

1 │ activities (also Claim Five) is **GRANTED** without leave to amend,[42]

2 │ as the allegations fail to state a claim.

3 │     Accordingly, this portion of Claim Five is **DISMISSED** in its

4 │ entirety, with prejudice;

5 │     13.  The motion of BANA and BAC Home Loans to dismiss the

6 │ conspiracy claim (also Claim Five), is **GRANTED** without leave to

7 │ amend, as the allegations fail to state a claim.

8 │     Accordingly, the conspiracy portion of Claim Five is

9 │ **DISMISSED** in its entirety, with prejudice;

10 │     14.  The motion of BANA to dismiss the breach of contract

11 │ claim (Claim Six), is **DENIED**, as the Complaint sufficiently

12 │ alleges the elements of the claim;

13 │     15.  The motions of and BAC Home Loans, Balboa and QLS to

14 │ dismiss the breach of contract claim (also Claim Six), are

15 │ **GRANTED** without leave to amend, as plaintiff does not allege any

16 │ contract with BAC Home Loans, Balboa or QLS.

17 │     Accordingly, this portion of Claim Six (against BAC Home

18 │ Loans, Balboa and QLS) is **DISMISSED**, with prejudice;

19 │     16.  The motions of BANA, BAC Home Loans, Balboa and QLS to

20 │ dismiss the claim for declaratory relief (Claim Seven), are

21 │ **GRANTED** without leave to amend, as the claim is redundant of the

22 │ request for relief.

23 │     Accordingly, Claim Seven is **DISMISSED** in its entirety, with

24 │ prejudice;

25 │

─────────────────────────

26 │ [42] It is theoretically possible that plaintiff could amend his
complaint to state a claim.  However, this is plaintiff's third

27 │ complaint in this case, and it does not appear that the pro se
plaintiff is capable of, or willing to, correct his pleadings.

28 │

1    17.  The motion of BANA and BAC Home Loans to dismiss the

2    claim for an accounting (Claim Eight), is **DENIED**, as the

3    Complaint sufficiently pleads the claim;

4    18.  The motion of BANA and BAC Home Loans to dismiss the

5    conversion claim (Claim Nine), is **DENIED**, as the Complaint

6    sufficiently pleads the claim;

7    19.  The motions of BANA, BAC Home Loans, Balboa and QLS to

8    dismiss the claim for wrongful foreclosure (Claim Ten), is

9    **DENIED**, as the Complaint sufficiently pleads the claim;

10   20.  The motion of BANA and BAC Home Loans to dismiss the

11   claim for breach of the covenant of good faith and fair dealing

12   (Claim Eleven), is **DENIED**, as the Complaint sufficiently pleads

13   the claim;

14   21.  The motions of Balboa and QLS to dismiss the claim for

15   breach of the covenant of good faith and fair dealing (also

16   Claim Eleven), is **GRANTED** without leave to amend, as the

17   Complaint does not allege they are parties to the contract.

18   Accordingly, this portion of Claim Eleven (against Balboa

19   and QLS) is **DISMISSED**, with prejudice;

20   22.  The motion of BANA and BAC Home Loans to dismiss the

21   claim for negligence (Claim Twelve), is **GRANTED** without leave to

22   amend, as the Complaint fails to state a claim;

23   Accordingly, Claim Twelve is **DISMISSED** in its entirety, with

24   prejudice;

25   23.  The motions of BANA, BAC Home Loans, Balboa and QLS to

26   dismiss the claim for intentional infliction of emotional

27   distress (Claim Thirteen), is **GRANTED** without leave to amend, as

28   the Complaint fails to state a claim;

1    Accordingly, Claim Thirteen is **DISMISSED** in its entirety,
2    with prejudice;
3    24.   The motions of BANA, BAC Home Loans, Balboa and QLS to
4    dismiss the claim for violation of Cal. Bus. & Prof. Code § 17200
5    (Claim Fourteen), is **DENIED** to the degree the claim is predicated
6    upon any of the surviving claims discussed above;
7    25.   The motions of BANA, BAC Home Loans, Balboa and QLS to
8    dismiss the claim for civil RICO (Claim Fourteen), is **GRANTED**
9    without leave to amend, for failure to state a claim;
10   Accordingly, Claim Fifteen is **DISMISSED** in its entirety,
11   with prejudice.
12   This matter is remanded to the Magistrate Judge for further
13   proceedings.
14   IT IS SO ORDERED.
15   DATED:  May 21, 2014.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT