1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11   CHRISTOPHER D. SCHNEIDER,          No. CIV. S-11-2953 LKK/DAD PS

12              Plaintiff,

13        v.                            **ORDER**

14   BANK OF AMERICA N.A., BANK OF
     AMERICA MORTGAGE, BANK OF
15   AMERICA HOME LOANS SERVICING
     LP, BALBOA INSURANCE CO.,
16   HOME RETENTION GROUP, QUALITY
     LOAN SERVICE CORP., CLIFF
17   COLER, DOES 1-40,

18              Defendants.

19

20        This is a mortgage foreclosure case.  Plaintiff, proceeding

21   <u>pro se</u>, alleges fifteen (15) federal and state causes of action

22   relating to the foreclosure of his home.  Defendants' motions to

23   dismiss were heard by a United States Magistrate Judge pursuant

24   to E.D. Cal. R. ("Local Rule") 302(c)(21).

25        On March 26, 2013, the Magistrate Judge filed extensive

26   Findings and Recommendations herein which were served on all

27   parties and which contained notice to all parties that any

28   objections to the Findings and Recommendations were to be filed

                                    1

1    within fourteen days.   Plaintiff timely has filed objections to

2    the Findings and Recommendations, and defendants have timely

3    filed a response to plaintiff's objections.

4         In accordance with the provisions of 28 U.S.C. 636(b)(1)(c)

5    and Local Rule 304, this court has conducted a de novo review of

6    this case.   Having carefully reviewed the entire file, this court

7    finds the Findings and Recommendations to be supported by the

8    record and by the Magistrate Judge's analysis, except as set

9    forth below.

10        Defendants Bank of American, NA ("BANA"), BAC Home Loans

11   Servicing LP ("BAC Home Loans") and Balboa Insurance Co.

12   ("Balboa"), assert that the 45-page complaint "should be

13   dismissed in its entirety, with prejudice," because it is not a

14   "short and plain" statement of the claims, and is confusing as to

15   which claims are asserted against which defendants.[1]   ECF No. 96

16   at 14-15.   It is within this court's discretion to dismiss an

17   incomprehensible or over-long complaint which no reasonable

18   defendant could comprehend or know how to respond to.   See, e.g.,

19   McHenry v. Renne, 84 F.3d 1172, 1179 (9th Cir. 1996).

20        It is true that plaintiff's pro se Complaint is a bit of a

21   mess.[2]   However, the Complaint does not deserve a Rule 8

22   _____

23   [1] The motions to dismiss were filed by defendants BANA, BAC Home
     Loans and Balboa, in one motion, and by Quality Loan Service
24   Corp. ("QLS"), in another.   No dismissal motions were filed by
     defendants Bank of America Mortgage ("BAC Mortgage"), Home
25   Retention Group ("HRG") or "FHLMC LBAC 173 a.k.a. Federal Home
     Loan Mortgage Corp." ("FLHMC").

26   [2] For example, the Complaint has an unfortunate tendency to lump
27   all defendants together.   However, it is possible to disentangle
     even these allegations, in most cases.   For example, plaintiff
28   typically alleges that Defendant A engaged in unlawful conduct,

2

1    dismissal, as the court is able to disentangle much of what

2    plaintiff is alleging.  The court also notes that pro se

3    plaintiff here is essentially caught in the legal vise created by

4    the defendants' complaining that the Complaint is at once too

5    specific for Rule 8, while also being not specific enough for

6    Rules 9(b) and 12(b)(6).

7                    **I.   CLAIM ONE - RESPA**

8         **A.   12 U.S.C. § 2605(e) and 24 C.F.R. § 3500.21.**

9         Plaintiff alleges that defendants BANA and BAC Home Loans

10   violated the Real Estate Settlement Procedures Act ("RESPA"), 12

11   U.S.C. § 2605(e), and 24 C.F.R. § 3500.21, by failing to respond

12   to his Qualified Written Requests ("QWR"), that is, letters he

13   wrote to defendant loan servicers regarding the servicing of his

14   loan.[3]

15        Specifically, **(1)** plaintiff alleges that on August 17, 2010,

16   he sent a QWR to defendant BAC Home Loans Servicing LP ("BAC Home

17   Loans"), the loan servicer at the time.  The QWR is attached as

18   Exhibit C to the Complaint.  See Second Amended Complaint (ECF

19   No. 91) ("Complaint") ¶ 27; Exhibit C to the Complaint (ECF

20   No. 91-1) at 31.[4]  BAC Home Loans "willfully ignored" the QWR and

21

22   and then alleges that Defendants A, B, C and D are liable without
     any allegation that would make Defendants B, C and D liable for

23   A's violation.  In that case, the court considers plaintiff to be
     alleging a claim only against Defendant A.

24

25   [3] Defendants BANA and BAC Home Loans assert that on July 1, 2011,
     BAC Home Loans merged into and became a part of BANA.  ECF No. 96

26   at 1 n.1.

27   [4] The document is attached to the Complaint as Exhibit C, and
     therefore is a part of the Complaint for all purposes.  See Fed.

28   R. Civ. P. 10(c).

                              3

1  "did not respond."[5]  Complaint ¶ 28.  **(2)** Plaintiff alleges that

2  on April 15, 2011, he sent another QWR to BAC Home Loans.  The

3  QWR is attached as Exhibit D to the Complaint.  Defendant did not

4  respond to this QWR in a timely manner.[6]  See Complaint ¶ 46.

5  **(3)** Plaintiff alleges that on July 24, 2011, he sent a third QWR,

6  this time to Bank of America, N.A. ("BANA"), who had become the

7  servicer on the loan.  This QWR is attached as Exhibit Q to the

8  Complaint.  Complaint ¶¶ 43 & 46; Exhibit Q to the Complaint (ECF

9  No. 91-1) at 33.  BANA did not timely respond to this QWR.

10  Complaint ¶ 43.[7]

11       The Complaint goes on to allege that defendants' conduct

12  "caused plaintiff actual damages and injuries … including in part

13  a detriment to plaintiff's ability to sell or refinance his

14  home."  Complaint ¶ 46 (emphasis in text).[8]

15

16  _____

17  [5] Plaintiff alleges that several other defendants also did not
    respond.  However, plaintiff does not allege that he sent a QWR
18  to them, nor does he allege any basis that would impose an obligation for
    those defendants to respond to a QWR that was not sent to them.

19

20  [6] The Complaint alleges that defendants failed to respond timely
    to any of the QWR's plaintiff sent between August 2010 and
21  October 2011.  Complaint ¶ 46.

22  [7] Plaintiff further alleges that between August 2010 and October
    2011, he sent BAC Home Loans and BANA "over 10 specific QWR's,"
23  none of which were responded to in a timely manner.  Complaint
    ¶ 46.  Plaintiff did not attach any of these other QWRs to the
24  Complaint, nor does he allege when he sent them, nor to which
    defendants, nor anything about the substance of the
25  communications, other than that they were QWRs.

26
    [8] Plaintiff also alleged that defendants' conduct caused him to
27  suffer "extreme emotional and physical stress and anxiety."
    Complaint ¶ 44.

28

1    Defendants BANA and BAC Home Loans move to dismiss.[9]  They

2    assert that, "save for one letter," plaintiff "has not alleged

3    the dates on which he sent each of his alleged QWR's."  BANA

4    Motion To Dismiss ("BANA Motion") (ECF No. 96) at 17.  There are

5    two problems with this assertion.

6    First, defendant does not address even that "one letter" –

7    the July 24, 2011 letter.  See BANA Motion at 17 ("Plaintiff now

8    alleges the date of only one such alleged letter, July 24, 2011,

9    that he claims constitutes a QWR to the bank").  RESPA does not

10   require that a loan servicer fail to respond to a slew of QWRs

11   before it will be found to have violated the law.  It states that

12   if one is sent, the loan servicer must respond to that one.  See

13   12 U.S.C. §§ 2605(e)(1)(A) (if a loan servicer "receives a

14   qualified written request from the borrower … the servicer shall"

15   acknowledge the letter within 5 days) (emphasis added),

16   2605(e)(2) (servicer must substantively respond to "any qualified

17   written request" within 30 days) (emphasis added).  Defendant

18   seems to argue that because plaintiff failed to allege the date

19   of each one of the QWR's (even assuming this is a fatal pleading

20   error), the claim must be dismissed even as to those QWR's where

21   the dates are alleged.  This court knows of no legal basis for

22   such an argument, nor has defendant provided any.

23   Second, plaintiff has specifically identified three

24

---

25   [9] The Magistrate Judge indicates that FHLMC also moved to
     dismiss.  ECF No. 123 at 10.  However, as best this court can

26   tell, FHLMC, which is apparently represented by counsel, has not
     answered, moved to dismiss, or otherwise responded to the

27   Complaint, although it has responded to plaintiff's Objections to
     the Findings and Recommendations.

28

1   communications he says are QWRs.  He specifies the dates they

2   were sent and to whom they were sent.  They are, as described

3   above, the August 17, 2010 letter, the April 15, 2011 letter, and

4   the July 24, 2011 letter, and all three are attached as exhibits

5   to the Complaint.  See Exhibits C, D & Q to the Complaint.[10]

6       Defendants also move to dismiss on the ground that plaintiff

7   "has failed to plead facts that establish actual damages as

8   required by the statute," citing 12 U.S.C. § 2605(f)(1)(A).

9   Specifically, defendants argue for dismissal because plaintiff

10  "fails to provide any detail as to how the alleged QWR violation

11  has damaged him."  BANA Motion at 17.  Defendants assert that:

12          Plaintiff only makes the general allegation
13          that that "[BANA'S] conduct has caused
            plaintiff countless unnecessary and
14          substantial actual costs, damages, fees and
            injuries in fact … Plaintiff has been and
15          continues to be subject to extreme and
            physical stress and anxiety over all of the
16          events that occurred after the July 24, 2011
            QWR."
17

18  BANA Motion at 17 (citing Complaint ¶ 45).

19      This supposedly complete recitation of plaintiff's alleged

20  damages ignores the very next paragraph of the complaint, which

21  alleges that plaintiff's damages include "a detriment to

22  plaintiff's ability to sell or refinance his home."  See

23  Complaint ¶ 46.  Defendant nowhere asserts that this damage

24  allegation is not specific enough, or lacks causality, and the

25  court will not make those arguments on defendants' behalf.[11]

26  _____

27  [10] As for the remaining, unidentified letters, defendant can
    simply ask for them, or ask about them, in discovery.

28  [11] The court is aware of the district court cases which seem to

In addition, plaintiff has specifically alleged three clearly identified instances where he sent a QWR to the loan servicer, and got no timely response to any of them. Accordingly, the Complaint alleges a "pattern or practice of noncompliance" sufficient to state a claim for statutory damages under RESPA.  See 12 U.S.C. § 2605(f)(1)(B) ("additional damages" are available "in the case of a pattern or practice of noncompliance with the requirements of this section").

In short, plaintiff alleges a violation of the Real Estate Settlement Procedures Act ("RESPA"):

> RESPA requires the servicer of a federally related mortgage loan to provide a timely written response to inquiries from borrowers regarding the servicing of their loans.  12 U.S.C. § 2605(e)(1)(A), (e)(2).  If the servicer fails to respond properly to such a request, the statute entitles the borrower to recover actual damages and, if there is a "pattern or practice of noncompliance," statutory damages of up to $1,000.  Id. § 2605(f).

Medrano v. Flagstar Bank, FSB, 704 F.3d 661, 665 (9th Cir. 2012), cert. denied, 133 S. Ct. 2880 (2013).

Defendant also asserts that the Complaint's allegation of damages resulting from stress and anxiety are "conclusory," and lacking in detail.  The court does not find the allegations to be

---

hold that the complaint must demonstrate a causal relationship between the alleged damages and the RESPA violation (at least one of which relies upon the Magistrate Judge's decision in this case).  See, e.g., Guidi v. Paul Financial LLC, 2014 WL 60253 at *4 (N.D. Cal. 2014).  It is not necessary to address the issue here, since plaintiff here does allege a causal relationship to a specific harm.  Moreover, plaintiff adequately alleges statutory damages, as discussed below.

conclusory.  To the contrary, plaintiff paints quite a clear picture.  Plaintiff found himself in a dispute with the Bank of America, and BAC Home Loans, the originator and servicers of his home mortgage, a dispute which he must have known could lead to him losing his home.  He wrote to the bank requesting information, and received no response, even though the bank was legally required to give him an acknowledgement and then a substantive response.  This failure to respond caused him "extreme emotional and physical stress and anxiety."  There is nothing "conclusory" about those allegations.  They set forth an entirely plausible, factual sequence of events – with clear causality between the violation and the damages – to which defendant must now respond.[12]

**B.   12 U.S.C. § 2609 and 24 C.F.R. § 3500.17.**

The court adopts the findings and recommendation of the Magistrate Judge that this portion of the first claim be dismissed as to BANA, BAC Home Loans and Balboa, for lack of a private right of action.  See ECF No. 123 at 18.

////

////

---

[12] Plaintiff also alleges that defendants' conduct violates 12 U.S.C. § 2605(k), which requires, among things, that a servicer timely "respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties."  12 U.S.C. § 2605(k)(1)(C). Defendants, all of whom are represented by counsel, have not briefed or moved to dismiss this claim.  Accordingly, the court will not adopt the Magistrate Judge's recommendation that it be dismissed.

## II.   CLAIM TWO – TRUTH IN LENDING ACT ("TILA")[13]

Plaintiff alleges that on November 9, 2011, he called BANA, BAC Home Loans and Quality Loan Service Corp. ("QLS"), requesting the exact amount his mortgage was in arrears, and the payoff balance.  Complaint ¶ 60.  Plaintiff alleges that these defendants never responded, in violation of banking regulations providing that "no servicer shall … [f]ail to provide, within a reasonable time after receiving a request from the consumer … an accurate statement of the total outstanding balance that would be required to satisfy the consumer's obligation in full as of a specified date."[14]  12 C.F.R. § 226.36(c)(1)(iii).[15]

Plaintiff also alleges that BAC Home Loans delayed posting plaintiff's December 13, 2010 mortgage payment for eight days.  Complaint ¶ 61.  See 12 C.F.R. § 226.36(c)(1)(i) ("no servicer shall … [f]ail to credit a payment to the consumer's loan account

---

[13] See 15 U.S.C. § 1601, et seq., and 12 C.F.R. § 226.36(c)(1).

[14] The court notes that 15 U.S.C. § 1639g provides that "A creditor or servicer of a home loan shall send an accurate payoff balance within a reasonable time, but in no case more than 7 business days, after the receipt of a written request for such balance from or on behalf of the borrower").

[15] The cited regulation is a part of "Regulation Z," Subpart E, originally promulgated by the Board of Governors of the Federal Reserve System "to implement the federal Truth in Lending Act." See 12 C.F.R. § 226.1 (Regulation Z: authority, purpose and coverage); Home Funds Direct v. Monroy (In re Monroy), 650 F.3d 1300, 1301 (9th Cir. 2011) ("As authorized by TILA, on October 1, 2009, new 12 C.F.R. § 226.36(c)(1)(iii) went into effect (also known as part of 'Regulation Z')," and "The Federal Reserve Board of Governors was authorized to promulgate Regulation Z under 15 U.S.C. § 1604(a)").  It appears that responsibility for enforcing Regulation Z now lies with the U.S. Consumer Financial Protection Bureau ("CFPB").  See 76 Fed. Reg. 79,768 (December 22, 2011) (effective December 31, 2011).

1   as of the date of receipt").[16]   Plaintiff alleges that this

2   posting delay caused him to be liable for a late fee of $48.43.

3   Complaint ¶ 61.

4   **A.   "Vague," "Incomplete" and "Generic" Allegations.**

5   Defendants BANA and BAC Home Loans move to dismiss both

6   parts of this claim because the allegations "are vague and

7   incomplete," ECF No. 96 at 20, and because the Complaint contains

8   only "generic allegations of a statutory violation, unsupported

9   by facts," ECF No. 96 at 19.   In fact, plaintiff's allegations of

10  defendants' Regulation Z violations are clear and very specific.

11  Plaintiff alleges that on a specified date, November 9,

12  2011, he called specified defendants, "both QLS and [BANA]," and

13  requested a specified piece of information, namely "the payoff

14  amount necessary to redeem his home, i.e. 'an accurate statement

15  of the total outstanding balance.'"   Complaint ¶ 60.   This

16  failure to respond is alleged to violate Regulation Z, which

17  makes it unlawful for those defendants to fail to provide the

18  above-specified information in a timely manner, once requested.

19  See 12 C.F.R. § 226.36(c)(1)(iii).

20  Plaintiff further alleges that on a specified date, December

21  13, 2010, "defendant [BAC Home Loans] received plaintiff's

22  payment" of a specified amount, namely $968.57.   Complaint ¶ 61.

23  Plaintiff further alleges that the payment "was for the full

24  monthly amount due on the loan."   Id.   Plaintiff goes on to

25

26  [16] The court notes that 15 U.S.C. § 1639f provides that "no
    servicer shall fail to credit a payment to the consumer's loan
27  account as of the date of receipt."

28

allege that BAC Home Loans delayed posting that payment until a specified date, namely, December 21, 2010, eight days later.[17] Id. The Complaint specifies the legal provision that this conduct violates, namely, 12 C.F.R. § 226.36(c)(i), which makes it unlawful for a servicer to "[f]ail to credit a payment to the consumer's loan account as of the date of receipt."

Defendants do not explain what is "vague," "incomplete" or "generic" about these allegations, or what additional information they would need in order to understand and respond to the claim. This court finds that there is nothing vague, incomplete or generic about these allegations.

**B.   Failure To Provide Pay-Off Balance.**

**1.   Defendant QLS.**

The court adopts the recommendation of the Magistrate Judge that the TILA/Regulation Z claim against QLS be dismissed, but will do so without leave to amend.  This court writes separately to set out its reasoning.

Defendant QLS asserts that it cannot be liable for the failure to provide a payoff balance because it is not a "lender," citing Chow v. Aegis Mortg. Corp., 286 F. Supp. 2d 956 (N.D. Ill. 2003) ("The only parties who can be liable for Truth in Lending Act ("TILA") violations are the original creditor, 15 U.S.C. § 1640, and assignees of that creditor, 15 U.S.C. § 1641").  QLS does not mention 12 C.F.R. § 226.36(c)(1), upon

---

[17] The Complaint contains an error that has the delay extending to "December 21, 2012."  Defendants' brief makes clear that they understand that this was just an error, and that the payment was allegedly delayed 8 days.

11

1   which plaintiff's claim rests, which specifically addresses

2   "[s]ervicing practices," and which specifically prohibits the

3   "servicer" from failing to provide the payoff balance to the

4   borrower within a reasonable time after being asked for it.  <u>See</u>

5   12 C.F.R. § 226.36(c)(1)(iii).

6       QLS does not <u>explain</u> why it is exempted from liability for

7   violations of Regulation Z that are specifically addressed to it

8   as a servicer.[18]  Rather, it has simply ignored the plain language

9   of the Complaint's allegations, leaving it to the Magistrate

10   Judge and this court to figure out, without any input from the

11   parties, whether plaintiff may have a claim against a servicer

12   under the plain language of Regulation Z.

13       Nevertheless, as QLS does argue, the governing statute here,

14   TILA, provides for civil liability only against the creditor and

15   its assignee.  <u>See</u> 15 U.S.C. §§ 1640(a) ("any <u>creditor</u> who fails

16   to comply with any requirement imposed under this part … is

17   liable") (emphasis added) & 1641 (liability of assignees of

18   creditors).[19]  This court knows of no principle that would permit

19   _____

20   [18] The court notes that the district courts are divided over
    whether there is an independent private right of action under

21   Regulation Z.  <u>See</u> <u>New Mexico ex rel. King v. Capital One Bank</u>
    <u>(USA) N.A.</u>, ___ F. Supp. 2d ___, 2013 WL 5944087 at *7

22   (D.N.M. 2013) (finds private right of action); <u>Purcell v.</u>
    <u>Universal Bank, N.A.</u>, 2003 WL 1962376 at *3 n.2 (E.D. Pa. 2003)

23   (same); <u>Runkle v. Federal Nat. Mortg. Ass'n</u>, 905 F. Supp. 2d
    1326, 1332 (S.D. Fla. 2012) (same).  <u>Contra</u>, <u>Kievman v. Federal</u>

24   <u>Nat. Mortg. Ass'n.</u>, 901 F. Supp. 2d 1348, 1353 (S.D. Fla. 2012)
    (no private right of action).

25

26   [19] At least one court has resolved the apparent dilemma created by
    a regulation that imposes an obligation on the servicer, under a

27   statute that imposes a liability only against the creditor, by
    saying that the creditor is liable for the servicer's violation.

28   <u>See</u> <u>Runkle</u>, 905 F. Supp. 2d at 1332-33 (creditor's assignee may

an implementing regulation to create a liability that is broader

than, or not even contemplated by, the governing statute.  To the

contrary,

> The rulemaking power granted to an administrative agency charged with the administration of a federal statute is not the power to make law.  Rather, it is "'the power to adopt regulations to carry into effect the will of Congress as expressed by the statute.'"

Ernst & Ernst v. Hochfelder, 425 U.S. 185, 212-214 (1976)

(quoting Dixon v. United States, 381 U.S. 68, 74 (1965)).

Therefore, even if the regulation creates a private right of

action, "its scope cannot exceed the power" granted to the Board

of Governors (or the CFPB), by the governing statute.  Ernst, 525

U.S. at 214.

Accordingly, this claim will not lie against QLS, which is

alleged to be a loan servicer, not a creditor or lender.[20]  See

Complaint ¶ 10 (QLS "is in the business of acting as a debt

collector, loan servicer, and foreclosure trustee").

### 2. Defendants BANA and BAC Home Loans.

Defendants BANA and BAC Home Loans argues that the claim is

vague, incomplete and generic.  See ECF No. 96 at 19-20.  As

discussed above, the allegations are sufficiently specific.  They

also argue that the claim is barred by the statute of limitations

---

be held liable for the loan servicer's RESPA violation, otherwise
the loan servicer could violate Regulation Z with impunity,
leaving both it and the creditor immune from liability).

[20] Since the claim must be dismissed, there is no need for the
court to address QLS's statute of limitations argument.

1    since the loan documents were signed in 2001.  However, the claim

2    is based upon conduct alleged to have occurred in 2010 and 2011.

3    The limitations argument fails.

4       **C.    Failure To Credit Payment – BAC Home Loans.**

5       Defendant BAC Home Loans asserts that it is not liable for

6    the alleged failure to post plaintiff's December 13, 2010

7    mortgage payment in a timely manner, because the claim is "time

8    barred after December 2011."  Defendant makes two limitations

9    arguments.  First, it asserts that the TILA and Regulation Z

10   claim is time-barred because the claim is based upon loan

11   documents that were signed in 2001.  The court adopts the

12   Magistrate Judge's findings and recommendation that the Complaint

13   not be dismissed on this basis.  See ECF No. 123 at 23-24.

14      Second, defendant asserts that the Second Amended Complaint,

15   which first explicitly asserted a claim under TILA and

16   Regulation Z, was filed in 2012, more than one year after the

17   delayed posting.[21]  Plaintiff's original complaint, however, was

18   filed on November 7, 2011, within the one-year limitations

19   period.  See ECF No. 1.  That complaint alleges that "the payment

20   he [plaintiff] made on December 10, 2010, was received" by BAC

21   Home Loans, but that defendants "specifically held the December

22

23   [21] BANA and BAC Home Loans also assert that the claim is

24   conclusory and internally inconsistent.  There is no real
     explanation of this argument and frankly, the court does not

25   understand it.  Plaintiff clearly alleges that defendants did not
     post his December 2010 payment for eight days, rather than

26   posting it immediately as required by Regulation Z.  As a result
     of their own delay, defendants charged plaintiff a late fee.  The

27   court does not view these allegations as being conclusory,
     unclear or internally consistent.

28
                                    14

10 payment and did not <u>credit</u> it until December 21, 2010." ECF No. 1 ¶ 67 (emphasis in text). It goes on to allege that "this was intentionally done … to produce a <u>knowingly false and inflated picture</u> of Plaintiff's <u>timely</u> payment under the contract." <u>Id.</u> (emphases in text). It concludes this allegation by stating that Defendants' actions "violated Federal and State debt collection laws …." <u>Id.</u> Thus, the original complaint of November 2011 expressly sets out the transactions and conduct that give rise to plaintiff's TILA and Regulation Z claim.

Under these circumstances, the "relation back" doctrine applies. Fed. R. Civ. P. 15(c)(1)(B) ("An amendment to a pleading relates back to the date of the original pleading when … the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading").[22] The <u>pro se</u> plaintiff's failure to explicitly mention the statute or regulation does not prevent him from taking advantage of the relation back doctrine.

The claim is not time-barred.[23]

### III. CLAIM THREE – FDCPA & ROSENTHAL ACT

**A.   Fair Debt Collection Practices Act ("FDCPA")**

Plaintiff alleges that BANA, BAC Home Loans and QLS violated

---

[22] Accordingly, the court does not adopt the Magistrate Judge's findings or recommendation on this point.

[23] Defendants also assert that the claim based upon their alleged failure to provide a payoff statement pursuant to plaintiff's November 9, 2011 request, is barred by plaintiff's "failure to allege tender." The "tender" defense is frivolous, as it has nothing to do with this case, inasmuch as the TILA claim does not seek rescission.

the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e and 1692g.

Section 1692e prohibits "debt collectors" from using any "false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e(1).  Among other things, debt collectors may not falsely represent or imply "that any individual is an attorney or that any communication is from an attorney."  15 U.S.C. § 1692e(3). They also may not falsely represent "the character, amount, or legal status of any debt."  Id., § 1692e(2)(A).

Section 1692g requires a debt collector to provide, upon request, "the name and address of the original creditor, if different from the current creditor."  15 U.S.C. § 1692g.

### 1.   BANA and BAC Home Loans.

Defendants BANA and BAC Home Loans assert that they are categorically exempt from the FDCPA because they are not "debt collectors."  The FDCPA exempts from its provisions the "originator" of a debt the person is trying to collect.  15 U.S.C. § 1692a(6)(F)(ii); De Dios v. International Realty & Investments, 641 F.3d 1071, 1074 (9th Cir. 2011) ("the person who originated the debt, such as a creditor to whom the debt was originally owed, is not considered a debt collector").  The Complaint alleges that BANA is the originator of the mortgage at issue here.  See Complaint ¶ 16.  Accordingly, the court adopts the Magistrate Judge's finding and recommendation that BANA be dismissed from the FDCPA claims because it is categorically exempt as a "creditor."

The court adopts the Magistrate Judge's recommendation that BAC Home Loans also be dismissed from the FDCPA claim, but not because BAC Home Loans is <u>categorically</u> exempt from the FDCPA based upon its status as a mortgage loan servicer.  According to the Ninth Circuit, the legislative history shows that "mortgage service companies" are only exempt "'so long as the debts were not in default when taken for servicing.'"  <u>De Dios</u>, 641 F.3d at 1075 n.3.

In fact, the FDCPA specifically exempts a person collecting a debt "which was not in default at the time it was obtained by such person."  15 U.S.C. § 1692a(6)(F)(iii); <u>De Dios</u>, 641 F.3d at 1076 ("International Realty is exempt from the definition of a 'debt collector' under § 1692a(6)(F)(iii) because it obtained the right to collect De Dios's rent before the debt was contractually overdue").  The Complaint alleges that BAC Home Loans became the servicer of the mortgage "in November 2009," before any alleged arrearage occurred.  Complaint ¶ 21.  Accordingly, BAC Home Loans, whether or not it is a "debt collector," is exempt from plaintiff's FDCPA claims.[24]

**2.   QLS.**

QLS asserts that "Plaintiff fails to support his conclusory statement that Quality is a debt collector within the meaning of the FDCPA."  QLS Motion at 13.  The FDCPA defines a "debt collector to be:

---

[24] The court notes, however, that BAC Home Loans' correspondence, attached as exhibits to the Complaint, states that "BAC Home Loans Service, LP is required by law to inform you that this communication is from a debt collector."  <u>See</u> Exh. H (ECF No. 91-1) at 41.

17

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6).  The Complaint alleges that QLS "is in the business of acting as a debt collector."  Complaint ¶ 10.  The Complaint also alleges that QLS is a "'debt collector'" as defined by 15 U.S.C. § 1692A(6), and that it is "not exempt from the requirements of the FDCPA."  Complaint ¶ 64.  In addition, the Complaint alleges that QLS was "trying to collect a debt," namely, the mortgage at issue here, and that some of the communications with QLS took place over the telephone, an instrument of interstate commerce.  Complaint ¶¶ 60 (phone call to QLS), 67 (QLS is trying to collect a debt).

These allegations, standing alone, are sufficient to allege that QLS is a debt collector within the meaning of the FDCPA, for purposes of this dismissal motion.[25]  The Complaint goes further, however, by attaching a communication from QLS to plaintiff.  See

---

[25] There are 9 separate exceptions to the definition of "debt collector" set forth at 15 U.S.C. § 1692a(6)(A)-(E) and F(i)-(iv).  Plaintiff need not set forth facts showing that QLS is not exempt pursuant to each and every one of these exceptions, as they are in the nature of affirmative defenses.  Accord, Scott v. Jones, 964 F.2d 314, 316 (4th Cir. 1992) ("Jones asserted the affirmative defense that he was not a "debt collector" as defined in the FDCPA, and therefore was not in violation of that statute"); Murphy v. Stephens & Michaels Associates, Inc.  2011 WL 1465761 at *1 (S.D. Cal. 2011) ("whether Defendant falls within an exception to the 'debt collector' definition under 15 U.S.C. Section 1692a is an affirmative defense").

Exhibit P ("Notice of Trustee's Sale").  The communication states, in bold, capital letters:

> **THIS NOTICE IS SENT FOR THE PURPOSE OF COLLECTING A DEBT.  THIS FIRM IS ATTEMPTING TO COLLECT A DEBT ON BEHALF OF THE HOLDER AND OWNER OF THE NOTE.  ANY INFORMATION OBTAINED BY OR PROVIDED TO THIS FIRM OR THE CREDITOR WILL BE USED FOR THAT PURPOSE.**

Exhibit P (ECF No. 91-1) at 66.[26]

QLS goes on to argue that the Complaint fails to allege that it engaged in any "unfair practices."  QLS Motion at 13.  The Complaint, in fact, alleges that QLS made a false, deceptive, or misleading representation in connection with its efforts to collect a debt, in violation of 15 U.S.C. § 1692e.  Specifically, the Complaint alleges that QLS falsely denied that it could give plaintiff information about the debt, and also, that "'only the lender could postpone the sale.'"  Complaint ¶ 36 (emphasis in text).  Yet, when plaintiff called the lender that same day, the lender's employee told plaintiff that he had to get the information from QLS, and that "'only the trustee [QLS] could postpone the sale.'"  Complaint ¶ 37 (emphasis in text).  There is nothing conclusory or vague about these allegations, which plainly point to an unfair credit collection practice.[27]

---

[26] The court is not ruling on whether this admission is conclusive.  However, the admission is certainly sufficient to put the burden on QLS to establish why it is not a debt collector.

[27] The court does not adopt the Magistrate Judge's findings and recommendation that FHLMC be dismissed from the FDCPA claim, because FHLMC, which is represented by counsel, has not moved to dismiss the claim.

Accordingly, the claim alleging that QLS violated 15 U.S.C. § 1692e(2)(A) & (3) will not be dismissed.

### B.   Rosenthal Fair Debt Collection Practices Act.

Plaintiff alleges that BANA violated the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code §§ 1788, et seq., by falsely referring to QLS, the entity it was referring plaintiff to in order to resolve the foreclosure, as "the attorneys."  Complaint ¶ 68.

BANA moves to dismiss solely on the grounds that it is exempt from the Rosenthal Act because it is a mortgage "lender[] and/or servicer[]."  As the Magistrate Judge points out, BANA incorrectly relies on the federal statute to argue that it is exempt under the state law.  BANA cites no provision of the Rosenthal Act where this asserted exemption can be found, and cites no cases decided under the Act that stand for this proposition.[28]  BANA has failed to show that it is exempt under the Rosenthal Act.

Plaintiff alleges that BANA is a "debt collector" pursuant to Cal. Civ. Code 1788.2 of the Rosenthal Act.  That provision defines "debt collector" broader than the FDCPA does, by including persons collecting their own debts, whereas such persons are expressly exempted under the FDCPA.  Compare Cal.

---

[28] BANA cites Caballero v. Ocwen Loan Serv., 2009 WL 1528128 at *1 (N.D. Cal. 2009) and Scott v. Wells Fargo Home Mortg. Inc., 326 F. Supp. 2d 709, 718 (E.D. Va.), aff'd mem., 67 Fed. Appx. 238 (4th Cir. 2003), both of which are about the FDCPA, not the Rosenthal Act.  It also cites Ines v. Countrywide Home Loans, Inc., 2008 WL 2795875 *3 (S.D. Cal. 2008) which defines "debt collectors" in the context of the FDCPA, not the Rosenthal Act.

1   Civ. Code § 1788.2(c) ("The term "debt collector" means any

2   person who, in the ordinary course of business, regularly, on

3   behalf of himself or herself or others, engages in debt

4   collection") (emphasis added), with 15 U.S.C. § 1692a(6) ("The

5   term 'debt collector' means any person who … regularly collects

6   or attempts to collect … debts owed or due or asserted to be owed

7   or due another") (emphasis added).

8        Accordingly, the court adopts the Magistrate Judge's finding

9   that BANA is not exempt under the Rosenthal Act.  See ECF No. 123

10  at 31.  However, the court does not adopt the recommendation that

11  the claim be dismissed for lack of specificity.  As noted above,

12  the Complaint specifically alleges that BANA falsely referred to

13  QLS as "the attorneys," conduct that is expressly made unlawful

14  by the Rosenthal Act.  See Cal. Civ. Code § 1788.13(b)

15  (prohibiting a debt collector from making "[a]ny false

16  representation that any person is an attorney or counselor at

17  law").

18          **IV.   CLAIM 4 – CAL. CIV. CODE § 2954(a)(1)**

19       Plaintiff alleges that BAC Home set up an illegal escrow

20  account against his mortgage.[29]  California law provides that:

21               [n]o … account for payment of … insurance
22               premiums or other purposes relating to the
                 property shall be required as a condition of
23               a … loan secured by a deed of trust or
                 mortgage on real property [except in
24               specified situations].

25

26  [29] The Complaint is clear that BAC Home is responsible for this
    alleged conduct, but it is unclear whether any of the other
27  defendants mentioned there are responsible.  The court interprets
    the claim to be against BAC Home only.

28

                                21

1   Cal. Civ. Code § 2954(a)(1).  It further provides that any such

2   account "established in violation" of Section 2954(a)(1) "is

3   voidable, at the option of the purchaser or borrower."

4   <u>Id.</u>

5        The court adopts the Magistrate Judge's findings and

6   recommendation that Claim 4 not be dismissed, and it will proceed

7   against BAC Home only.  <u>See</u> ECF No. 123 at 32-34.

8   **V. CLAIM 5 – FRAUD, NEGLIGENT MISREPRESENTATION & CONSPIRACY**

9        **A.   Fraud at the closing.**

10                "The elements of fraud, which give rise to
                  the tort action for deceit, are
11                (a) misrepresentation (false representation,
                  concealment, or nondisclosure); (b) knowledge
12                of falsity (or 'scienter'); (c) intent to
                  defraud, i.e., to induce reliance;
13                (d) justifiable reliance; and (e) resulting
                  damage." (5 Witkin, Summary of Cal.Law (9th
14                ed. 1988) Torts.

15

16  <u>Lazar v. Superior Court</u>, 12 Cal. 4th 631, 638 (1996).

17        Plaintiff alleges that BANA and BAC Mortgage committed fraud

18  in connection with the creation of his mortgage, at the end of

19  January 2001.[30]  Plaintiff alleges that he refused to go forward

20  with the closing unless BANA agreed that no "escrow account"

21  would ever be placed against the property (other than the initial

22  escrow required by law since his down-payment was under 20% of

23  the purchase price).[31]  Complaint ¶¶ 73 & 81 ("Plaintiff stopped

24  _____

25  [30] This claim is alleged only against BANA and BAC Mortgage, as
    they are the only defendants alleged to have "tricked" plaintiff
26  into signing the modified documents "knowing full well that they
    were not going to honor the modified terms regarding any future
27  escrow account."  Complaint ¶ 86.

28  [31] The initial escrow account was closed after the home was re-

                                    22

the entire purchase of the property at his final closing
paperwork signing on January 30, 2001 and was ready and willing
to cancel it had [BANA], BAC Mortgage authorized employees, not
agreed to his demand of 'absolutely no escrow accounts ever for
hazard insurance or property taxes'").  The Complaint alleges
that this was an oral agreement that was reduced to a "written
mutual agreement" at the closing.  Complaint ¶ 73.

     The Complaint further alleges that BANA (through its agent,
Susan Birge), had plaintiff make changes to the "closing
paperwork" before signing, specifically, "forms BA 174 and
BA084," assuring him that the changes to those documents would
have the effect that he wanted, namely, it would prevent any
future escrow account from being placed against the mortgage.
Complaint ¶¶ 82-83.  Plaintiff alleges that in reliance upon
BANA's representations, he went forward with the closing, even
though he "could easily have gone to another lender" if BANA had
not agreed to the modifications prohibiting future escrow
accounts.  Complaint ¶ 83.

     The Complaint further alleges that BANA's statements were
misrepresentations, because it "had no intention" of abiding by
the representations it had made regarding the promise of "no
escrow account ever for the remainder of the loan."  Complaint
¶ 82.  Plaintiff alleges that he did not discover the
misrepresentation until July 2010, when he discovered that BANA
and others had "created an escrow account on Plaintiff's loan"
the month before.  Complaint ¶¶ 84 & 86.  Finally, plaintiff

_____

appraised.  See Complaint ¶¶ 20 & 21.

1  alleges that the creation of this escrow account was the start of
2  all the harm that he complains of now.

3       BANA moves to dismiss this claim because (1) it is barred by
4  the three-year statute of limitations, and (2) it is not specific
5  enough.

6              **1.   Limitations.**

7       Fraud claims under California law are subject to a three-
8  year statute of limitations.  Cal. Code Civ. P. § 338(d).
9  However, the fraud claim "is not deemed to have accrued until the
10  discovery, by the aggrieved party, of the facts constituting the
11  fraud or mistake."  Id.  Plaintiff specifically alleges that he
12  did not discover BANA's deceit until July 2010, when the escrow
13  account – which BANA promised in 2001 would never be created –
14  was created.  Complaint ¶ 84.  Defendant offers no reason the
15  court should reject plaintiff's assertion that the limitations
16  period is tolled until he discovers the fraud, and the court
17  knows of none.

18              **2.   Specificity.**

19       As recounted above, the complaint sets forth with
20  particularity exactly what misrepresentations plaintiff is
21  challenging, namely, that no escrow account (other than the
22  initial PMI escrow account) would ever be placed against
23  plaintiff's mortgage account.  Moreover, those allegations set
24  forth all of the elements of a fraud claim.

25       The fraud claim is not subject to dismissal, and will
26  proceed against BANA and BANA Mortgage.[32]

27  _____

28  [32] Accordingly, the court does not adopt the Magistrate Judge's
    findings or recommendations on this issue.  See ECF No. 123

                              24

1

**B.   Fraud, Negligent Representation and Deceit in Loan
      Modification Activities.**

2

3        Plaintiff alleges that in 2010 and 2011, defendant BANA and

4   BAC Home Loans, and others, acting through their agent, defendant

5   Home Retention Group ("HRG"), created a false paper trail

6   relating to his supposed request for a loan modification through

7   the federal Home Affordable Mortgage Program ("HAMP") program.

8   Plaintiff denies that he ever applied for loan modification.

9        Specifically, in April or May 2011, HRG sent plaintiff a

10  letter falsely stating that plaintiff "had sent in their loan

11  modification package for the 'HAMP,' that he was seeking a home

12  loan modification and was asking for assistance."  Complaint

13  ¶ 91.  On June 28, 2011, BAC Home Loans sent plaintiff a letter

14  falsely stating that it had reviewed plaintiff's "request for a

15  loan modification" under HAMP, even though plaintiff had never

16  sent in such a request.  Complaint ¶ 94.  That letter also stated

17  that plaintiff's supposed request "was denied because he had not

18  sent in the requested documents."  Id.  On July 1, 2011, BANA

19  sent plaintiff a letter falsely stating that it had received

20  plaintiff's "request for workout assistance," even though

21  plaintiff had never requested assistance.  Complaint ¶ 97.

22  Plaintiff alleges that defendants sent similar false letters to

23  the HAMP administrator.[33]  Complaint ¶ 95.

24       According to plaintiff, defendants did all this to collect

25  money from plaintiff that he did not owe, and to create a false

26  _____

at 36-37.

27  [33] This would serve as the predicate offenses for plaintiff's RICO
    claims, since if true, this conduct violates 18 U.S.C. § 1001

28  (false statements).

1   impression that they had complied with all guidelines permitting

2   them to foreclose.  Complaint ¶ 89-97.  As a result, plaintiff

3   alleges, plaintiff is now disqualified from applying for a loan

4   modification through HAMP.  Complaint ¶ 96.

5       Defendants move to dismiss based on the statute of

6   limitations, since the loan was issued in 2001.  This is no basis

7   for dismissal, as the basis of the alleged fraud claim is conduct

8   that took place in 2010 and 2011.

9       Defendants also move to dismiss asserting that the Complaint

10  is not "specific enough" under Fed. R. Civ. P. 9(b), governing

11  fraud allegations.  This court finds that the allegations are

12  sufficiently specific to allow defendants to defend themselves.

13      However, the Complaint on its fact does not state a claim

14  for fraud or misrepresentation.  An essential element of this

15  claim is "deceit," that is, the victim of the fraud must be

16  deceived, and take action (justifiable reliance) based upon that

17  deceit.  Here, plaintiff alleges that he knew that these letters

18  were false, thus he was never deceived.  Moreover, he does not

19  allege that he justifiably relied upon the supposed truth of the

20  communications.  The claim for negligent misrepresentation also

21  requires allegations that the victim was deceived and justifiably

22  relied on the deception.

23      This portion of the fraud claim will be dismissed for

24  failure to state a claim.

25  **C.   Conspiracy – The HAMP Program.**

26      Plaintiff alleges that BANA, BAC Home Loans and FHLMC

27  conspired in the creation of the false paper trail relating to

28

the HAMP program, discussed above.  This court has already found
that there was no viable claim for fraud or misrepresentation
against BANA, the only defendant charged with fraud.  Therefore,
there can be no claim for <u>civil</u> conspiracy against anyone who
allegedly conspired with BANA to inflict a tort that never
occurred.

> There is no separate tort of civil
> conspiracy.  The significance of the
> allegation is to hold each member of the
> conspiracy liable as a joint tortfeasor.
> <u>This joint liability does not accrue unless a
> wrongful act is carried out and damage
> results</u>.

<u>Robert H. Jacobs, Inc. v. Westoaks Realtors, Inc.</u>, 159 Cal.
App. 3d 637, 645 (2nd Dist. 1984) (emphasis added).

     The claim for conspiracy will therefore be dismissed in its
entirety, for failure to state a claim.

### VI.   CLAIM 6 – BREACH OF CONTRACT

> [T]he elements of a cause of action for
> breach of contract are (1) the existence of
> the contract, (2) plaintiff's performance or
> excuse for nonperformance, (3) defendant's
> breach, and (4) the resulting damages to the
> plaintiff.

     <u>Oasis West Realty, LLC v. Goldman</u>, 51 Cal. 4th 811, 821
(2011).  Plaintiff alleges that BANA breached the contract (the
Deed of Trust) by (1) creating an "unlawful escrow account on
Plaintiff's Mortgage loan," and (2) failing to credit his
payments in a timely manner.

////

////

////

27

1

**A.    BANA and BAC Home Loans.**

2     Defendants seek dismissal, asserting that plaintiff failed

3 to allege his own performance (and indeed, that he alleged his

4 own non-performance), and failed to allege defendant's breach.

5     As for plaintiff's own performance, it appears that

6 plaintiff's obligation to have a homeowner's insurance policy

7 arose in May 2001, when plaintiff took out a second mortgage on

8 his home.  See Complaint ¶ 23.  It further appears that for nine

9 (9) years, May 2001 until May 2010, BANA acquiesced in

10 plaintiff's failure to obtain insurance – or at least, his

11 failure to produce it – finally demanding it in May 2010.  Id.

12 Plaintiff accordingly alleges that defendant has waived this

13 provision of the Deed of Trust.  Thus, while plaintiff has not

14 alleged complete performance, he has alleged an excuse for non-

15 performance or waiver of performance.  Defendant does not address

16 the allegation of waiver, and the court will not reject it on its

17 own initiative.

18     Defendants assert that plaintiff failed to allege breach.

19 That is not so.  Plaintiff alleges that a written modification to

20 the Deed of Trust – which he has not attached to the complaint –

21 contains an agreement that BANA would never create an escrow

22 account against his mortgage, other than the initial PMI escrow

23 account.  He further alleges that in breach of that written

24 agreement, defendant created an escrow account against his

25 mortgage.[34]

26 _____

[34] The court therefore does not adopt the Magistrate's finding

27 that plaintiff is alleging the breach of an oral contract.  The
modified contract is allegedly written, although apparently, it

28 has yet to be produced.

It does seem that plaintiff's allegation brushes right up against the "plausibility" standard of <u>Iqbal</u>.  It is hard to believe that a lender would ever agree to such a thing, and it is suspicious that plaintiff has never produced this written modification.[35]  However, it seems to the court that plaintiff's allegations are merely improbable, rather than implausible, and therefore they will survive dismissal.

> [s]ome improbable allegations might properly be disposed of on summary judgment, but to dismiss them as frivolous without any factual development is to disregard the age-old insight that many allegations might be "strange, but true; for truth is always strange, Stranger than fiction." Lord Byron, Don Juan, canto XIV, stanza 101 (T. Steffan, E. Steffan & W. Pratt eds. 1977)).

<u>Denton v. Hernandez</u>, 504 U.S. 25, 33 (1992).

   **B.   QLS and Balboa.**

   QLS and Balboa move to dismiss because plaintiff has not alleged that they were party to any contract with plaintiff.

---

[35] Defendant notes that plaintiff has not attached the modified documents to the complaint.  If this matter were being litigated in a California state court, the failure to set forth the exact language of the breached contract, or otherwise attached the contract, might be fatal.  See <u>Harris v. Rudin, Richman & Appel</u>, 74 Cal. App. 4th 299, 307 (2nd Dist. 1999) ("If the action is based on alleged breach of a written contract, the terms must be set out verbatim in the body of the complaint or a copy of the written agreement must be attached and incorporated by reference").  However, this matter is in federal court, where notice pleading rules govern.  See <u>Boland, Inc. v. Rolf C. Hagen (USA) Corp.</u>, 685 F. Supp. 2d 1094, 1102 (E.D. Cal. 2010) (Karlton, J.) (addressing pleading requirements for breach of contract claim: "California pleading requirements do not apply in federal court").

That is correct, and the court accordingly adopts the Magistrate Judge's findings and recommendations that the claim be dismissed against QLS and Balboa.  See ECF No. 123 at 39.

### VII. DECLARATORY RELIEF

> "To qualify for declaratory relief, [a party] would have to demonstrate its action presented two essential elements: '(1) a proper subject of declaratory relief, and (2) an actual controversy involving justiciable questions relating to [the party's] rights or obligations.'"

Jolley v. Chase Home Finance, LLC, 213 Cal. App. 4th 872, 909 (1st Dist. 2013) (quoting Wilson & Wilson v. City Council of Redwood City, 191 Cal. App. 4th 1559, 1582 (2011)).

Plaintiff seeks a declaration determining the respective rights of the parties.  Defendant seeks to dismiss solely on the grounds that it is duplicative of the relief he seeks from the lawsuit as a whole.  It does appear that "this cause of action is redundant of [plaintiff's] other claims," and will be dismissed for that reason.  Jolley, 213 Cal. App. 4th at 909.  However, the request for declaratory relief remains in the Complaint as one of the requested elements of relief.  See Complaint page 47.

### VIII.  ACCOUNTING

Plaintiff seeks an accounting of moneys paid and due on the mortgage transaction.

> A cause of action for an accounting requires a showing that a relationship exists between the plaintiff and defendant that requires an accounting, and that some balance is due the plaintiff that can only be ascertained by an accounting.

1   <u>Teselle v. McLoughlin</u>, 173 Cal. App. 4th 156, 179 (3rd

2   Dist. 2009).

3       Defendants seek dismissal solely on the grounds that

4   plaintiff has not alleged that any sums are due to him that would

5   be the subject of an accounting.  ECF No. 69 at 28-29.  That is

6   not so.  Plaintiff alleges that "he has actually <u>overpaid</u>

7   [defendants] and is entitled to a refund on his mortgage

8   account."  Complaint ¶ 134.  Plaintiff seeks an accounting to

9   determine the amount of his overpayment.

10                      **IX.   CONVERSION**

11       Plaintiff alleges that defendants collected from him "escrow

12   funds" which were to be credited to his mortgage payments

13   (interest and principal) and, to the degree they were surplus,

14   were to be returned to plaintiff.  Complaint ¶¶ 136-37.  Instead

15   of doing either, plaintiff alleges, defendants wrongfully kept

16   the funds.  <u>Id.</u>

17              "'Conversion is the wrongful exercise of
18              dominion over the property of another.'"
               The elements of a claim for conversion are
19              (1) "the plaintiff's ownership or right to
               possession of the property at the time of the
20              conversion," (2) "the defendant's conversion
               by a wrongful act or disposition of property
21              rights," and (3) damages. "It is not
               necessary that there be a manual taking of
22              the property," only "an assumption of control
               or ownership over the property, or that the
23              alleged converter has applied the property to
               his [or her] own use."
24

25   <u>Prakashpalan v. Engstrom, Lipscomb and Lack</u>, 223 Cal. App. 4th

26   1105, 1135 (2nd Dist. 2014) (citations omitted).

27              A cause of action for conversion of money can
               be stated only where defendant interferes
28

                            31

> with plaintiff's possessory interest in a specific, identifiable sum, such as when a trustee or agent misappropriates the money entrusted to him. "'Money cannot be the subject of a cause of action for conversion unless there is a specific, identifiable sum involved, such as where an agent accepts a sum of money to be paid to another and fails to make the payment.

Kim v. Westmoore Partners, Inc., 201 Cal. App. 4th 267, 284 (4th Dist. 2011) (citations omitted).

Defendant moves to dismiss on the grounds that plaintiff's right to payment is a "mere contractual one." ECF No. 96 at 29. This misconceives the claim plaintiff is making. Plaintiff does not simply assert that defendants owe him money under the contract. Rather, he asserts that pursuant to the contract, he entrusted specific sums of money to defendants, which defendants were to use for a specific purpose – to credit plaintiff's mortgage account, and return the surplus. Plaintiff further asserts that defendants instead took the money entrusted to them, used it to pay fees plaintiff did not owe, and are refusing to return it, or even any surplus after the fees are paid. This states a claim for conversion.

## X.   WRONGFUL FORECLOSURE

Plaintiff asserts a claim for wrongful foreclosure, alleging numerous errors and points of unfairness, and also alleging that he has made "full and timely tender of all amounts owed to defendants." See Complaint ¶ 147. Defendant

> To obtain the equitable set aside of a trustee's sale or maintain a wrongful foreclosure claim, a plaintiff must allege that (1) defendants caused an illegal,

> fraudulent, or willfully oppressive sale of the property pursuant to a power of sale in a mortgage or deed of trust; (2) plaintiff suffered prejudice or harm; and (3) plaintiff tendered the amount of the secured indebtedness or were excused from tendering. Recognized exceptions to the tender rule include when: (1) the underlying debt is void, (2) the foreclosure sale or trustee's deed is void on its face, (3) a counterclaim offsets the amount due, (4) specific circumstances make it inequitable to enforce the debt against the party challenging the sale, or (5) <u>the foreclosure sale has not yet occurred</u>.

<u>Chavez v. Indymac Mortgage Services</u>, 219 Cal. App. 4th 1052, 1062 (4th Dist. 2013) (emphasis added) (citations omitted).

Defendant BANA moves to dismiss on the ground that plaintiff has not alleged "tender." This has two problems. First, plaintiff has alleged "tender." <u>See</u> Complaint ¶ 147. Second, tender is not required where the claim is for "wrongful foreclosure" where, as here, "the foreclosure sale has not yet occurred." <u>Chavez</u>, 219 Cal. App. 4th at 1062.[36] BANA also asserts that plaintiff has not performed under the Deed of Trust by failing to obtain insurance on the property. As discussed

---

[36] As QLS points out, and as the Magistrate Judge found, a wrongful foreclosure claim seeking to <u>set aside</u> a foreclosure sale would be premature where no foreclosure sale had yet occurred. To the degree federal magistrate judges and district courts have held that <u>all</u> wrongful foreclosure claims are premature unless a sale has occurred, this court respectfully disagrees. The California courts acknowledge the validity of claims for wrongful foreclosure prior to the foreclosure sale where, as here, defendants are alleged to have violated laws intended to avoid foreclosure. <u>See</u> <u>Pfeifer v. Countrywide Home Loans, Inc.</u>, 211 Cal. App. 4th 1250, 1280 (1st Dist. 2012) ("[c]ourts, however, have not required tender when the lender has not yet foreclosed and has allegedly violated laws related to avoiding the necessity for a foreclosure").

1    above, plaintiff has credibly alleged that BANA has waived

2    plaintiff's performance.

3        Defendant QLS moves to dismiss because plaintiff has not

4    alleged it did anything unlawful, and because it acted in good

5    faith.  However, plaintiff has set out in excruciating detail all

6    the things he says went wrong with the Notice of Trustee's Sale,

7    and why he thinks they violate specified sections of California

8    law.  If QLS wishes to get this claim dismissed, it must set

9    forth which allegations are not legally sufficient, and why.

10   This court will not, on its own initiative, try to identify the

11   allegations QLS thinks are insufficient and why.[37]

12       **XI.   BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

13       Plaintiff asserts that all defendants breached the covenant

14   of good faith and fair dealing in relation to the Deed of Trust.

15   Broadly stated, that covenant requires that neither party do

16   anything that will deprive the other of the benefits of the

17   agreement.  <u>Freeman & Mills, Inc. v. Belcher Oil Co.</u>, 11 Cal. 4th

18   85, 91 (1995).

19       **A.   Defendants QLS and Balboa.**

20       The court adopts the Magistrate's findings and

21   recommendation that QLS and Balboa be dismissed from this claim

22

23   ─────────────────

24   [37] This court is aware of its obligation to treat the Complaint
     with some liberality, since it is authored by a <u>pro se</u> plaintiff.

25   However, the motion to dismiss is authored by a party represented
     by counsel.  Defendant must, accordingly, do the work of getting

26   the complaint dismissed, if it is to be dismissed, rather than
     simply pointing out that it does not like the Complaint, and

27   demand that this court or the Magistrate Judge do all the
     research needed to establish whether the claim is valid or not.

28

34

1   because they are not alleged to be parties to the mortgage

2   agreement.   See ECF No. 123 at 46-47.

3       **B.   BANA and BAC Home Loans.**

4       Defendants BANA and BAC Home Loans move to dismiss this

5   claim because this claim "is limited to situations in which a

6   fiduciary relationship exists."  ECF No. 96 at 30.  However, as

7   the Magistrate Judge found, in California, every contract carries

8   with it an implied covenant  of good faith and fair dealing.[38]

9   See, e.g., Wilson v. 21st Century Ins. Co., 42 Cal. 4th 713, 720

10   (2007) ("The law implies in every contract … a covenant of good

11   faith and fair dealing"); Freeman & Mills, Inc. v. Belcher Oil

12   Co., 11 Cal. 4th 85, 91 (1995) ("'It is well settled that, in

13   California, the law implies in every contract a covenant of good

14   faith and fair dealing.'") (emphasis in text); Carma Developers

15   (Cal.), Inc. v. Marathon Development California, Inc., 2 Cal. 4th

16   342, 371-72 (1992) (same).

17       BANA also asserts that the Complaint does not allege that

18   defendants have frustrated plaintiff's ability to obtain the

19   benefits of the original loan.  This is also not so.  Plaintiff

20   alleges that by placing the escrow account against his mortgage,

21   BANA has prevented plaintiff from paying off his mortgage in the

22   manner he anticipated and agreed to, at the time he signed the

23

24   [38] The Magistrate Judge recommended that the claim be found to be
     barred by the statute of limitations.  The court will not adopt
25   that recommendation however, as it is an affirmative defense
     which neither defendant raised in their motion.  In any event,
26   the claim arose not upon the signing of the Deed of Trust in
     2001, but upon the alleged breach of the covenant in 2010 or
27   2011.

28

1  modified mortgage agreement.

2     This claim will not be dismissed against BANA.[39]

3                    **XII.  NEGLIGENCE**

4     The court adopts the Magistrate Judge's findings and

5  recommendation that the negligence claim be dismissed as to BANA,

6  BAC Home Loans and Balboa, except that the claim will be

7  dismissed with prejudice.[40]   See ECF No. 123 at 48-49.

8       **XIII.     INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

9     The court adopts the Magistrate Judge's findings and

10 recommendation that the claim for intentional infliction of

11 emotional distress be dismissed as to BANA, BAC Home Loans,

12 Balboa and QLS, except that the claim will be dismissed with

13 prejudice.  See ECF No. 123 at 49-50.

14            **XIV. CALIFORNIA'S FAIR BUSINESS LAW**

15    Defendants move to dismiss the claim under Cal. Bus. & Prof.

16 Code § 17200 on the ground that the court should dismiss all the

17 underlying claims of unfair or unlawful practices.  Since some of

18 those claims have survived dismissal, this claim will not be

19 dismissed, to the degree it is predicated on a surviving claim.

20                 **XV.   CIVIL RICO**

21    The court adopts the Magistrate Judge's findings and

22 recommendation that the civil claim under the Racketeer

23 Influenced and Corrupt Organizations Act ("RICO"), be dismissed

24 as to BANA, BAC Home Loans, Balboa and QLS, except that the claim

25

26 [39] BAC Home Loans is not alleged to have been a party to the
   contract, so it will also be dismissed.

27
   [40] Defendant QLS did not move to dismiss this claim.
28

                              36

will be dismissed with prejudice.[41]  <u>See</u> ECF No. 123 at 28-29.

**CONCLUSION**

For the reasons set forth above:

1.   The motion of BANA, BAC Home Loans, Balboa and QLS to dismiss the complaint in its entirety for failure to comply with Rule 8 is **DENIED**;

2.   The motion of BANA and BAC Home Loans, to dismiss the RESPA claim (Claim One), under 12 U.S.C. § 2605(e) and 24 C.F.R. § 3500.21, is **DENIED**, as plaintiff has properly alleged that defendants failed to respond to three QWRs in a timely manner;

3.   The motion of BANA and BAC Home Loans, to dismiss the RESPA claim (also Claim One), under 12 U.S.C. § 2609 AND 24 C.F.R. § 3500.17, is **GRANTED** without leave to amend, as there is no private right of action.

Accordingly, this portion of Claim One is **DISMISSED** in its entirety, with prejudice;

4.   The motion of QLS, to dismiss the TILA and Regulation Z claim (Claim Two), is **GRANTED** without leave to amend, as the claim only lies against a creditor or lender.

Accordingly, this portion of Claim Two (against QLS) is **DISMISSED**, with prejudice;

5.   The motion of BANA and BAC Home Loans to dismiss the TILA and Regulation Z claim (also Claim Two), is **DENIED**, as the allegations that defendants failed to provide a pay-off balance, and failed to credit plaintiff's payment in a timely manner, are

---

[41] Defendant HRG did not move to dismiss this claim.

1   sufficiently pled, and the claim is not barred by the statute of

2   limitations;

3        7.   The motion of BANA and BAC Home Loans to dismiss the

4   FDCPA claim (Claim Three), is **GRANTED** without leave to amend, as

5   BANA is categorically exempt as a "creditor," and BAC Home Loans

6   is exempt because under the facts alleged in the Complaint, it is

7   not a "debt collector."

8        Accordingly, this portion of Claim Three (against BANA and

9   BAC Home Loans) is **DISMISSED**, with prejudice;

10       8.   The motion of QLS to dismiss the FDCPA claim (also

11   Claim Three), is **DENIED**, as the Complaint sufficiently alleges

12   that QLS is a "debt collector," and sufficiently alleges conduct

13   that violates the FDCPA;

14       9.   The motion of BANA to dismiss the Rosenthal Act claim

15   (also Claim Three) is **DENIED**, because BANA is not exempt and the

16   Complaint sufficiently alleges that BANA falsely referred to QLS

17   as "the attorneys;"

18       10.   The motion of BANA to dismiss the claim under Cal. Civ.

19   Code § 2954(a)(1) (Claim Four), is **DENIED** for reasons set forth

20   by the Magistrate Judge;

21       11.   The motion of BANA to dismiss the fraud claim

22   (Claim Five), is **DENIED**, as it is not barred by the statute of

23   limitations and sufficiently pleads a claim for fraud;

24       12.   The motion of BANA, BAC Home Loans and QLS to dismiss

25   the Negligent Misrepresentation claim regarding loan modification

26

27

28

1  activities (also Claim Five) is **GRANTED** without leave to amend,[42]

2  as the allegations fail to state a claim.

3      Accordingly, this portion of Claim Five is **DISMISSED** in its

4  entirety, with prejudice;

5      13.   The motion of BANA and BAC Home Loans to dismiss the

6  conspiracy claim (also Claim Five), is **GRANTED** without leave to

7  amend, as the allegations fail to state a claim.

8      Accordingly, the conspiracy portion of Claim Five is

9  **DISMISSED** in its entirety, with prejudice;

10      14.   The motion of BANA to dismiss the breach of contract

11  claim (Claim Six), is **DENIED**, as the Complaint sufficiently

12  alleges the elements of the claim;

13      15.   The motions of and BAC Home Loans, Balboa and QLS to

14  dismiss the breach of contract claim (also Claim Six), are

15  **GRANTED** without leave to amend, as plaintiff does not allege any

16  contract with BAC Home Loans, Balboa or QLS.

17      Accordingly, this portion of Claim Six (against BAC Home

18  Loans, Balboa and QLS) is **DISMISSED**, with prejudice;

19      16.   The motions of BANA, BAC Home Loans, Balboa and QLS to

20  dismiss the claim for declaratory relief (Claim Seven), are

21  **GRANTED** without leave to amend, as the claim is redundant of the

22  request for relief.

23      Accordingly, Claim Seven is **DISMISSED** in its entirety, with

24  prejudice;

25  _____

26  [42] It is theoretically possible that plaintiff could amend his
   complaint to state a claim.  However, this is plaintiff's third

27  complaint in this case, and it does not appear that the pro se
   plaintiff is capable of, or willing to, correct his pleadings.

28

1    17.   The motion of BANA and BAC Home Loans to dismiss the

2    claim for an accounting (Claim Eight), is **DENIED**, as the

3    Complaint sufficiently pleads the claim;

4    18.   The motion of BANA and BAC Home Loans to dismiss the

5    conversion claim (Claim Nine), is **DENIED**, as the Complaint

6    sufficiently pleads the claim;

7    19.   The motions of BANA, BAC Home Loans, Balboa and QLS to

8    dismiss the claim for wrongful foreclosure (Claim Ten), is

9    **DENIED**, as the Complaint sufficiently pleads the claim;

10   20.   The motion of BANA and BAC Home Loans to dismiss the

11   claim for breach of the covenant of good faith and fair dealing

12   (Claim Eleven), is **DENIED**, as the Complaint sufficiently pleads

13   the claim;

14   21.   The motions of Balboa and QLS to dismiss the claim for

15   breach of the covenant of good faith and fair dealing (also

16   Claim Eleven), is **GRANTED** without leave to amend, as the

17   Complaint does not allege they are parties to the contract.

18   Accordingly, this portion of Claim Eleven (against Balboa

19   and QLS) is **DISMISSED**, with prejudice;

20   22.   The motion of BANA and BAC Home Loans to dismiss the

21   claim for negligence (Claim Twelve), is **GRANTED** without leave to

22   amend, as the Complaint fails to state a claim;

23   Accordingly, Claim Twelve is **DISMISSED** in its entirety, with

24   prejudice;

25   23.   The motions of BANA, BAC Home Loans, Balboa and QLS to

26   dismiss the claim for intentional infliction of emotional

27   distress (Claim Thirteen), is **GRANTED** without leave to amend, as

28   the Complaint fails to state a claim;

1    Accordingly, Claim Thirteen is **DISMISSED** in its entirety,

2  with prejudice;

3    24.  The motions of BANA, BAC Home Loans, Balboa and QLS to

4  dismiss the claim for violation of Cal. Bus. & Prof. Code § 17200

5  (Claim Fourteen), is **DENIED** to the degree the claim is predicated

6  upon any of the surviving claims discussed above;

7    25.  The motions of BANA, BAC Home Loans, Balboa and QLS to

8  dismiss the claim for civil RICO (Claim Fourteen), is **GRANTED**

9  without leave to amend, for failure to state a claim;

10    Accordingly, Claim Fifteen is **DISMISSED** in its entirety,

11  with prejudice.

12    This matter is remanded to the Magistrate Judge for further

13  proceedings.

14    IT IS SO ORDERED.

15    DATED:  May 21, 2014.

16

17

18

19                                        _____
                                          LAWRENCE K. KARLTON
20                                        SENIOR JUDGE
                                          UNITED STATES DISTRICT COURT
21

22

23

24

25

26

27

28