UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| CHRISTOPHER D. SCHNEIDER, | No. 2:11-cv-02953-JAM-EFB |
|---|---|
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT QUALITY LOAN SERVICE CORPORATION'S MOTION FOR SUMMARY JUDGMENT** |
| BANK OF AMERICA N.A.; BANK OF AMERICA MORTGAGE; BANK OF AMERICA HOME LOANS SERVICING LP; BALBOA INSURANCE COMPANY; HOME RETENTION GROUP; QUALITY LOAN SERVICE CORPORATION; CLIFF COLER; and DOES 1-100, inclusive, | |
| Defendants. | |

Plaintiff Christopher Schneider's ("Plaintiff") home entered foreclosure after a dispute between Plaintiff and the beneficiary on his mortgage. Plaintiff sued multiple financial entities involved with the loan, including the trustee for the foreclosure sale, Defendant Quality Loan Service Corporation ("Defendant" or "Quality"), which now moves for summary judgment. For the reasons that follow, the Court grants

///

1

Quality's motion as to all claims.[1]

I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

Plaintiff took out a mortgage on his home in 2001.  See Defendant's Request for Judicial Notice ("RJN") Exh. A.  Bank of America, the beneficiary, later substituted Defendant Quality as trustee.  See RJN Exh. B; Louvan Decl. ¶ 4, Exh. 2.  In May 2010, Bank of America for the first time requested proof of Plaintiff's insurance policy on the property, which was required under the terms of the loan.  Schneider Depo. at 150:4-9, 154:24-155:2.  Plaintiff did not have insurance at that time, but spent the next several months attempting to secure a policy.  See id. at 155:9-15.  He eventually obtained one in December 2010.  Id. at 159:14-20.

In the meantime, Bank of America obtained a Lender Placed Policy ("LPP") on the property, effective May 2010.  See id. at 163:7-164:3.  The presence of this policy increased Plaintiff's monthly payments.  See id. at 166:16-18.  Bank of America cancelled the LPP after Plaintiff obtained his own policy, but Plaintiff believes he was improperly billed for the policy for months after December 2010.  Id. at 166:22-167:11; 188:18-189:1.  Plaintiff also contested the cost of the policy, when and whether the policy existed, and the means of notice about the policy provided by Bank of America.  See id. at 166:7-167:15.  He requested a copy of the policy, but states that Bank of

---

[1] This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled for October 21, 2015.

2

1  America never provided one.  Id. at 176:17-23.
2       In the ensuing dispute over the LPP and the proper billing
3  amounts, Bank of America determined (possibly incorrectly) that
4  Plaintiff had defaulted on the mortgage, and directed Defendant
5  Quality to initiate nonjudicial foreclosure proceedings.  See
6  id. at 183:17-184:25; RJN Exh. C; Louvan Decl. ¶ 5.  Quality did
7  so, by issuing a Notice of Default and later, a Notice of Sale.
8  Louvan Decl. ¶ 5.
9       A few days after Quality issued the Notice of Sale,
10 Plaintiff called Quality to inquire about reinstatement figures
11 for his loan and how to postpone the sale.  See Louvan Decl.
12 ¶¶ 6-8, 11.  Quality advised Plaintiff that Bank of America
13 would need to agree to postpone the sale.  See Learned Decl.
14 Exh. 3; Schneider Depo. at 236:10-15.  After speaking with
15 Plaintiff, Quality also contacted Bank of America to request
16 reinstatement figures, although Bank of America never provided
17 the figures.  Louvan Decl. ¶ 12.  There is no evidence that
18 Quality knew about the LPP dispute between Plaintiff and Bank of
19 America.  See, e.g., Schneider Depo. at 232:8-10 (stating that
20 Plaintiff never informed Quality about the dispute).
21      Two days before the call with Quality, Plaintiff filed this
22 suit against Bank of America, Quality, and others (Doc. #1).
23 Shortly afterward, the Court granted a temporary restraining
24 order to prevent foreclosure (Docs. ##9, 12).  Foreclosure still
25 has not occurred.  Louvan Decl. ¶ 13.
26      The defendants then filed multiple motions to dismiss.  The
27 now-operative complaint – the Second Amended Complaint –
28 contains fifteen causes of action (Doc. #91).  Of those fifteen,

3

ten allege claims against Defendant Quality.  Following yet another round of motions to dismiss (Doc. #132), only four claims remain against Quality:[2] (1) Violations of the Fair Debt Collection Practices Act ("FDCPA") and California's Rosenthal Fair Debt Collection Practices Act ("RFDCPA"); (2) Wrongful foreclosure; (3) Negligence; and (4) Violation of California's Unfair Competition Law, Business and Professions Code § 17200 et seq. ("UCL").

Defendant Quality now moves for summary judgment as to all four remaining causes of action (Doc. #231).  Plaintiff filed his opposition eight days late (Doc. #237), but the Court accepted the filing (Doc. #238) and has considered the opposition as well as Defendant's reply (Doc. #239).

II.   OPINION

A.   Judicial Notice

Defendant requests judicial notice of four documents, each of which was recorded in the Amador County Recorder's Office (Doc. #232): (1) the Deed of Trust recorded on February 6, 2001; (2) Substitution of Trustee recorded on July 21, 2011; (3) the Notice of Default and Election to Sell Under Deed of Trust recorded on July 21, 2011; and (4) the Notice of Trustee Sale recorded on October 26, 2011.  Each of these documents is in the public record and is not subject to reasonable dispute, so the Court takes judicial notice of them.  Fed. R. Evid. 201; see

---

[2] Other claims remain against other defendants, but those defendants do not move for summary judgment at this time so those claims are not addressed in this order.

Santa Monica Food Not Bombs v. City of Santa Monica, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006); Lee v. City of Los Angeles, 250 F.3d 662, 689 (9th Cir. 2001).

B. Analysis

1. Immunity from Liability Under All Claims

Defendant Quality first argues that the Court must dismiss all claims against it "because Quality's authority was limited to its role as the trustee advancing the nonjudicial foreclosure against Plaintiff's property and is immune from liability." Mot. at 3:4-6. The Court disagrees, because the case law does not support the sweeping proposition that a trustee is automatically immune from liability under any statute. See, e.g., Hamilton v. Bank of Blue Valley, 746 F. Supp. 2d 1160, 1174 (E.D. Cal. 2010); Gardner v. Am. Home Mortg. Servicing, Inc., 691 F. Supp. 2d 1192, 1201 (E.D. Cal. 2010). The Court therefore analyzes Defendant's motion for summary judgment as to each outstanding cause of action individually.

2. FDCPA and RFDCPA

The parties contest whether Defendant Quality is a "debt collector" within the meaning of the FDCPA or the RFDCPA. Defendant argues that a trustee engaged in foreclosure activities is not a debt collector under these statutes. Mot. at 7; Reply at 3. Defendant accurately cites Cochran v. The Bank of N.Y. Mellon Trust Co. N.A., 2015 WL 4573890 (C.D. Cal. July 29, 2015), for the proposition that a trustee engaged in foreclosure activities is not a debt collector under either act. Mot. at 7. Plaintiff attacks the argument in two ways, first attempting to persuade the Court not to follow Cochran, and

1  second asserting that Quality went beyond its role as trustee.
2  Opp. at 10-12.
3       Plaintiff acknowledges Cochran's holding, but contends that
4  Cochran "is hardly established case law."  Opp. at 12:3.
5  Plaintiff is correct in the sense that the Ninth Circuit has not
6  ruled on these issues.  And in an earlier phase of this
7  proceeding, the magistrate judge rejected Defendant's argument
8  that it was not a "debt collector" on the basis that the law was
9  not settled in this regard.  Schneider v. Bank of Am. N.A., 2013
10 WL 1281902, at *17 (E.D. Cal. Mar. 26, 2013) ("[W]hile the Ninth
11 Circuit has not specifically addressed the issue, several other
12 courts have concluded that foreclosing on a property pursuant to
13 a deed of trust or some other lien does constitute debt
14 collection under the FDCPA.") report and recommendation adopted
15 in part, rejected in part, 2014 WL 2118327 (E.D. Cal. May 21,
16 2014).
17      However, since then, federal and California courts have
18 reached further consistency and clarity on this issue.  See
19 Cochran, 2015 WL 4573890, at *3 ("The majority of courts in the
20 Ninth Circuit have concluded that legally-mandated actions
21 required for mortgage foreclosure are not debt collection under
22 the FDCPA.") (collecting cases) (citations, quotation marks, and
23 alteration omitted); Moriarity v. Nationstar Mortg., LLC, 2013
24 WL 3354448, at *5 (E.D. Cal. July 3, 2013) ("California courts
25 are now in consensus . . . that foreclosure is not a debt
26 collection under the RFDCPA.").  The Court agrees with those
27 courts' holdings that "legally-mandated actions required for
28 mortgage foreclosure are not debt collection[.]"  Cochran, 2015

WL 4573890, at *3; see Moriarity, 2013 WL 3354448, at *5 ("Foreclosures on mortgages are not debt collection because they do not represent 'enforcement of the obligation' or 'an attempt to collect funds from the debtor.'") (emphasis omitted) (citing Hulse v. Ocwen Fed. Bank, FSB, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002)).  The Court therefore concludes that any allegedly false statements contained in the Notice of Sale and Notice of Default were not cognizable under the FDCPA or RFDCPA.

Plaintiff has also argued that Defendant made false statements outside of these notices – specifically, that Quality told Plaintiff over the phone that "only [Bank of America] could give Plaintiff any information on his loan" including providing a reinstatement quote and postponement of the sale.  Opp. at 10:23.  To begin, there does not appear to be evidence that Defendant actually made this statement.  Even if there were evidence, the Court is not persuaded that the fact that Plaintiff called Defendant and asked questions about his loan brings Defendant outside its role as a trustee.

Plaintiff further states in his opposition that Quality "had a great deal of power" beyond that of a normal trustee.  Opp. at 11:18-19.  But Plaintiff's argument leaves unclear what other "power" Quality allegedly had, and regardless, Plaintiff has pointed to no evidence.  In opposing summary judgment, Plaintiff "may not rest upon the mere allegations or denials of the adverse party's pleading," but must provide affidavits or other sources of evidence that "set forth specific facts showing that there is a genuine issue for trial."  Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting Fed. R. Civ. P.

1  56(e)).  Plaintiff here identified no evidence to support his
2  position; the opposition contains no citation to evidence, and
3  Plaintiff's responses to the statement of facts simply cites to
4  allegations in the complaint.  See Opp. at 11; Statement of
5  Facts ¶ 10.  Because Plaintiff has failed to meet his burden,
6  the Court grants summary judgment as to the FDCPA and RFDCPA
7  cause of action.
8      Given this conclusion, the Court does not reach the
9  parties' arguments as to whether reliance on Bank of America's
10 information precludes Quality's liability.
11          3.   Wrongful Foreclosure
12     Plaintiff's wrongful foreclosure claim against Quality is
13 based on inaccurate information in the Notice of Sale and Notice
14 of Default.  See Opp. at 13-14.  In addition to factual
15 inaccuracies, the notices were allegedly invalid because they
16 were "undated[] and unsigned."  Opp. at 14.  Defendant Quality
17 acknowledges that the notices contained inaccurate information
18 and were not signed or dated, but argues that these "procedural
19 irregularit[ies]" were not prejudicial to Plaintiff.  Mot. at
20 16-17.
21     Prejudice is indeed an element of a wrongful foreclosure
22 claim.  Rockridge Trust v. Wells Fargo, N.A., 985 F. Supp. 2d
23 1110, 1146 (N.D. Cal. 2013).  To prove wrongful foreclosure, a
24 plaintiff must show "(1) the trustee . . . caused an illegal,
25 fraudulent, or willfully oppressive sale of real property
26 pursuant to a power of sale in a mortgage or deed of trust;
27 (2) the party attacking the sale . . . was prejudiced or harmed;
28 and (3) [that party] tendered the amount of the secured

indebtedness or was excused from tendering." Id. at 1145.

The Court agrees with Defendant Quality that its actions related to the notices were not prejudicial to Plaintiff, in that they did not cause the default here. Plaintiff's theory is that the property went into foreclosure because of a dispute with Bank of America about the LPP and Bank of America's refusal to provide a copy of the policy to Plaintiff. Opp. at 4-5; see Schneider Depo. at 179:25-180:2 ("Here is the situation. I'm fighting with Bank of America."). The default therefore was allegedly caused by Bank of America's actions and the LPP dispute - not any misinformation in the notices Quality sent or Quality's failure to sign and date them. The Court therefore grants summary judgement for Quality as to the wrongful foreclosure claim.

### 4. Negligence

Quality seeks summary judgment as to Plaintiff's negligence claim, arguing that it had no common law duty towards Plaintiff. Mot. at 18-19. Plaintiff counters, without legal citation, that "there is still a duty of reasonable care for agents like [Defendant Quality]." Opp. at 15:24-25. The Court agrees with Defendant.

"The trustee in nonjudicial foreclosure is not a true trustee with fiduciary duties, but rather a common agent for the trustor and beneficiary." Kachlon v. Markowitz, 168 Cal.App.4th 316, 335 (2008). The trustee does owe some duties to the trustor, but these duties are "exclusively defined by the deed of trust and the governing statutes. No other common law duties exist." Id. (citing I.E. Assocs. v. Safeco Title Ins. Co., 39

1  Cal.3d 281, 287-88 (1985) & Residential Capital v. Cal-Western
2  Reconveyance Corp., 108 Cal.App.4th 807, 827 (2003)).

3      The duties Plaintiff identifies in his negligence claim
4  fall outside these bounds.[3]  The thrust of Plaintiff's argument
5  is that Quality breached a duty by failing to investigate the
6  accuracy of the defaulting loan balance "even after [Plaintiff]
7  raised concerns." See Opp. at 16:11-20.  But investigation of
8  the amount of unpaid balance is not a duty owed by a trustee.
9  See In re Cedano, 470 B.R. 522, 534-35 (9th Cir. B.A.P. 2012)
10 (rejecting argument that trustee had a duty to "find out the
11 payoff amount" or to "ascertain the validity of the foreclosure
12 documents"); Kachlon, 168 Cal.App.4th at 342-44 (affirming
13 directed verdict for trustee where plaintiff argued that trustee
14 "record[ed] the notice of default without adequate investigation
15 and fail[ed] to rescind the notice upon being shown that the
16 original [] promissory note had been satisfied").  Rather, "the
17 trustee shall incur no liability for any good faith error in
18 stating the proper amount, including any amount provided in good
19 faith by or on behalf of the beneficiary."  Cal. Civ. Code
20 § 2924f(b)(7).  Defendant's actions here suggest no bad faith,
21 and Plaintiff offered no evidence to the contrary.  The Court

---

[3] To the extent Plaintiff argues that there was a breach of a duty related to the statutorily-required notices, see Opp. at 16 (asserting that Quality "issu[ed] false copies of notices" and "sen[t] a notice of default with a false APN number"), the Court has already concluded above that these actions did not cause Plaintiff's injury.  Plaintiff therefore cannot maintain a negligence claim based on these actions.  See Saelzler v. Advanced Grp. 400, 25 Cal.4th 763, 778 (2001) ("Actual causation is an entirely separate and independent element of the tort of negligence.") (citations omitted).

therefore grants summary judgment for Quality, and does not reach the parties' further arguments about the other elements of negligence.

### 5. UCL

Finally, Defendant moves for summary judgment as to Plaintiff's UCL cause of action on the basis that its conduct did not fall under the prohibitions of this statute. Plaintiff argues that Quality violated both the "unlawful" and "unfair" prongs of the UCL. Opp. at 18.

As to the unlawful prong, a plaintiff must show that the defendant's business practice violated a law. Khan v. CitiMortgage, Inc., 975 F. Supp. 2d 1127, 1145 (E.D. Cal. 2013) ("Where a plaintiff cannot state a claim under the 'borrowed' law, she cannot state a UCL claim either.") (citation omitted). Plaintiff's claim here fails, because all of his predicate claims against Quality have failed.

As to the unfair prong, a plaintiff must demonstrate that the "conduct [] threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." Id. (quoting Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone, 20 Cal.4th 163, 187 (1999)). Plaintiff argues that "all of the claims offend a public policy," Opp. at 18:10-11, but he declines to identify the specific public policy. He also fails to explain (or point to evidence about) how Defendant's actions significantly threaten or harm competition. Plaintiff therefore has not met his burden

11

to demonstrate that there is a genuine issue of material fact as to this claim. See Devereaux, 263 F.3d at 1076.

The Court accordingly grants summary judgment for Defendant Quality. The Court also need not and does not reach the parties' other arguments as to the available damages and whether Plaintiff suffered economic injury.

## III.  ORDER

For the reasons set forth above, the Court GRANTS Defendant Quality's motion for summary judgment. Because Plaintiff no longer has any claim against this defendant, Quality is hereby dismissed from the action.

IT IS SO ORDERED.

Dated: December 10, 2015

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE